IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2006 SEP 15  P 1: 26

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

RALPH WILSON LINGO,                    )

          Petitioner,                  )
                                       )
vs.                                    )  CIVIL ACTION NO.
                                       )  1:06-CV-703-MHT
                                       )
WILLIE R. COLLINS, et al.,             )
                                       )
          Respondents.                 )

## ANSWER

Come the Respondents, by and through the Attorney General for the State of
Alabama and, in response to this Court's order to show cause why Ralph Wilson
Lingo's petition for a writ of habeas corpus should not be granted, state that
Lingo's claims are procedurally barred and/or they lack merit; accordingly, the
petition should be denied on these bases.  In support of this position, Respondents
submit the following.

## A. Procedural History

On September 5, 2003, the Houston County Grand Jury returned an
indictment charging Lingo with intimidating a witness, in violation of Section
13A-10-123 of the Code of Alabama. *Exhibit A, pp. 7-8*  On November 3, 2004,

Lingo's trial began in the Houston County Circuit Court, and on November 4, 2004, the jury returned with a verdict of guilty to the charge of intimidating a witness. *Exhibit A, p. 4*  On December 9, 2004, the State offered evidence that Lingo had one prior felony conviction for receiving stolen property in the second degree; therefore, the judge sentenced Lingo under the Alabama Habitual Felony Offender Act [Ala. Code §13A-5-9(a)(1)] to twenty years' imprisonment. *Id.*

On appeal to the Alabama Court of Criminal Appeals, Lingo argued the following: 1) "Whether the trial court erred in denying to give a jury instruction on the lessor (sic) included offenses of criminal coercion and tampering with a witness"; 2) "Whether there was insufficient evidence to warrant a motion for judgment of acqiuttal (sic) of intimidating a witness"; and, 3) "Whether trial counsel's assistance at trial was ineffective". *Exhibits B and C*  On June 10, 2005, the appellate court affirmed Lingo's conviction in an unpublished memorandum, and subsequently overruled his application for rehearing. *Exhibits D and E*  The Supreme Court of Alabama denied Lingo's petition for a writ of certiorari on August 12, 2005. *Exhibit F*

On August 9, 2006, Lingo filed the instant federal habeas petition, pursuant to 28 U.S.C. §2254.

2

## B. Statute of Limitation

Lingo's petition does not appear to be barred by the one-year statute of limitation in 28 U.S.C. §2244(d). Lingo's conviction was affirmed by the Alabama Court of Criminal Appeals on June 10, 2005; the Supreme Court of Alabama denied his petition for a writ of certiorari on August 12, 2005;[1] and, Lingo filed this federal habeas petition on August 9, 2006, within one year after his conviction became final on direct review.

## C. Lingo's Federal Habeas Claims

Lingo presents the following claims in his federal habeas petition:

1. His arrest was illegal and the warrant pursuant to which he was arrested was illegal because he was arrested in Henry County by a deputy from Houston County;

2. His home was illegally searched and his property illegally seized because the warrant was issued in 2002 but served in 2004, and the officer executing the search warrant was from Houston County posing as a deputy from Henry County;

3. He was denied effective assistance of counsel because his attorney: failed to visit him in order to prepare a defense; failed to challenge the legality of the search of his home based on the officer acting outside his jurisdiction ("work to get

---

[1]  Lingo did not file a petition for a writ of certiorari in the United States Supreme Court but had until November 10, 2005, to do so. S. Ct. R. 13.1

the illegal search thrown out"); failed to argue the illegality of the search warrant; failed to challenge the fact that "he was kept in Dothan City Jail for 5 days without a first appearance"; prevented him from calling her by placing a "block" on her telephone; refused to subpoena witnesses for his defense; allowed him to be questioned by police "over 10 times" in her absence; encouraged him to plead guilty to a charge of which he was not guilty, stating that she "could get [him] a 'good deal'"; and, refused to file a motion to suppress evidence after he asked her to; and,

4. He should have been charged with harassment of a state witness as opposed to intimidating a witness. Lingo's petition pp. 6-11.

# D. Exhaustion and Procedural Default

Most of Lingo's federal habeas claims are procedurally defaulted. More specifically, the claims were not raised at trial, on direct appeal, or in a state post-conviction petition. Furthermore, Lingo no longer has an available state court remedy for pursuing these claims.

Lingo filed a direct appeal of his conviction in state court, but the claims he raises in this federal habeas petition were not raised on appeal. Admittedly, he did raise an ineffective assistance of counsel claim on direct appeal; however, all of the instances of counsel error that he alleges in this federal habeas petition were not raised at that time. *Exhibit B, pp. 30-36* Also, Lingo did not file a post-conviction petition raising any of the claims he raises in this federal habeas petition. He had until August 12, 2006, one year from the date of the issuance of the certificate of judgment on direct appeal, to do so. See Ala. R. Crim. P. 32.2(c)[2]

---

[2] "[T]he court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f) unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala. R. App. P.."

Because the one year deadline for filing a Rule 32 petition has passed, Lingo is now barred from raising these claims in a state post-conviction petition.[3] <u>See</u> <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir. 1998)("Federal courts may apply state rules about procedural bars to conclude that further attempts at exhaustion would be futile." ), *reversed and remanded on other grounds*.  Under these circumstances, therefore, Lingo's federal habeas claims, with the exception of two instances of ineffective assistance of counsel which are discussed below, are procedurally defaulted.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891(11th Cir. 2003)("Since Henderson failed to properly exhaust these claims in the state courts, and now is undeniably barred by firmly established and consistently applied state procedural rules from raising them, the claims are procedurally defaulted….").

Regarding federal habeas review of procedurally defaulted claims, the Eleventh Circuit Court of Appeals reiterates:

---

[3] Because none of Lingo's claims appear to be jurisdictional, they would be subject to the statute of limitation.  <u>See</u> <u>Sumlin v. State</u>, 710 So. 2d 940, 941-42 (Ala. Crim. App. 1998)( nonjurisdictional challenge to validity of arrest/arrest warrant subject to Ala. R. Crim. P. 32.2(c) statute of limitation); <u>Montanez v. State</u>, 592 So. 2d 650, 651 (Ala. Crim. App. 1991)(claim of illegal search and seizure barred by Rule 32.2(c) statute of limitation); <u>Cogman v. State</u>, 852 So. 2d 191, 192 (Ala. Crim. App. 2002)(ineffective assistance of counsel is nonjurisdictional claim subject to Rule 32.2(c) statute of limitation); <u>Bass v. State</u> 810 So. 2d 802, 803-4 (Ala. Crim. App. 2001)(sufficiency of evidence is nonjurisdictional and subject to Rule 32.2 grounds of preclusion).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. See Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); [Wainwright v.] Sykes, 433 U.S. [72], 87, 97 S.Ct. [2497], 2506 [1977]. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Id.; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir.2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. Murray, 477 U.S. at 495-96, 106 S.Ct. at 2678. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. Id.

Henderson, 353 F.3d at 891-92.

Based on Henderson, therefore, this Court may consider Lingo's procedurally defaulted claims on the merits only if Lingo is able to show either "cause" and "actual prejudice" or "a fundamental miscarriage of justice". Lingo has not pleaded either "excuse" for his procedural default in his federal habeas petition; accordingly, the Court should deny him relief on these claims on this basis.

## E. Merits of Lingo's Non-Defaulted Claim(s)

*Trial counsel was ineffective for failing to challenge the illegality of the search warrant and failing to file a motion to suppress.*

Lingo contends that his counsel was ineffective because, among other errors[4], he failed to file a motion to suppress and failed to challenge the illegal search of his home.[5] Specifically, he states that his counsel was ineffective because she "would not raise the issue of the illegality of the search warrant" and "should of filed a suppression of evidence motion and refused". See Lingo's petition pp. 9 and 17. In a pro se motion for new trial, Lingo alleged generally "I asked my attorney to bring up the search warrant during trial. She refused. The search warrant was very critical to my trial." *Exhibit A, p. 196* The trial court summarily denied the motion. *Exhibit A, p. 6* Lingo's appellate counsel did not elaborate on this claim on appeal[6], but merely reiterated what Lingo had asserted in his pro se

---

[4] Because the other instances of alleged counsel error that Lingo alleges in this federal habeas petition were not properly raised at trial, *Exhibit A, pp. 195-201*, or on direct appeal, *Exhibit B, pp. 30-37*, they are procedurally defaulted. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir.1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.").

[5] It is not clear whether Lingo intended these to be two separate claims (he mentions them separately in his petition); nevertheless, Respondents will address them as two separate claims. See Lingo's federal habeas petition, p. 18.

[6] Counsel does not mention Lingo's federal habeas allegation that counsel failed to file a motion to suppress. If this Court construes this as being a separate claim, because it was not properly raised by Lingo on appeal in state court, it too is procedurally defaulted in this federal habeas proceeding. See Footman v. Singletary, 978 F.2d at 1211.

motion for new trial. *Exhibit B, pp. 30-31* Consequently, the Alabama Court of Criminal Appeals, although not specifically addressing these instances of alleged counsel error, held that Lingo had failed to satisfy his burden of proving that his counsel's performance was deficient and that this deficient performance prejudiced his case, under <u>Strickland v. Washington</u>, 466 U. S. 668 (1984). *Exhibit D, p. 10* Therefore, because these claims were adjudicated on the merits in state court, and decided adversely to Lingo, this Court should deny Lingo relief on these claims.

The enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), brought new constraints on the federal habeas courts' power to grant a state prisoner relief on a claim that has been adjudicated on the merits in state court. Specifically, "a federal court may not grant relief unless the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>see also</u> <u>Brown v. Payton</u>, 544 U. S. 133, 140-41 (2005); <u>Diaz v. Sec'y of the Dept. of Corr.</u>, 402 F. 3d 1136, 1141 (11th Cir. 2005) (recognizing that, after enactment of the AEDPA, review of the state courts' decision is limited).

This case is unquestionably governed by <u>Strickland v. Washington, 466 U. S. 668</u> (1984). And the State appellate court analyzed Lingo's ineffective assistance of counsel claim under the standard announced in <u>Strickland</u>. *Exhibit D,*

*p. 10*  Also, Lingo has provided no federal cases in which the facts are materially indistinguishable from his facts, but in which the federal court arrived at an opposite conclusion from that reached by the state appellate court. Accordingly, Lingo is not entitled to relief under the "contrary to" inquiry. See Williams v. Taylor, 529 U.S. 362, 390 (2000); Diaz, 402 F. 3d at 1141 (refusing to "grant Diaz's habeas petition unless the determination of the Florida Supreme Court was either contrary to, or an unreasonable application of, Strickland . . . , which governs Diaz's claim of ineffective assistance of appellate counsel").

Likewise, the state court's application of Strickland was not unreasonable. "[A] state-court decision can involve an 'unreasonable application' of clearly established precedent in two ways." Diaz, 402 F. 3d at 1141. First, a state court decision unreasonably applies Supreme Court precedent when it identifies the correct governing legal rule, but unreasonably applies it to the facts of the case. Id. An unreasonable application also occurs when the state court "either unreasonably extends a legal principle . . . to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. The prisoner does not carry his burden to establish an "unreasonable application" to prove that, "in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 699 (2002).

Under Strickland, to establish a claim of ineffective assistance of counsel, first, a convicted defendant must show that his counsel's performance was deficient. That is, his counsel's representation must fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 687. Second, he must show that his counsel's deficient performance prejudiced his case. Id. Under this factor, a defendant must demonstrate "that counsel's errors were so serious as to deprive [him] of a fair trial[,]" such that "they actually had an adverse effect on the defense." Id. at 687, 693.

As the state appellate court correctly concluded, Lingo failed to show that his trial counsel's failure to challenge the search of his home and to file a motion to suppress was objectively unreasonable. Lingo also failed to establish that he was prejudiced by counsel's failure to challenge the search of his home and to file a motion to suppress. Specifically, he failed to show that "there is a reasonable probability that, but for counsel's [failure to challenge the search of his home and to file a motion to suppress], the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Accordingly, the state courts' determination that Lingo failed to prove his trial counsel acted ineffectively was not contrary to, nor did it involve an unreasonable application of, Strickland. Lingo, therefore, is not entitled to federal habeas relief on these claims.

11

## F. Exhibits

A - Record and transcript of Lingo's state court prosecution CC 03-599 (2 vols.);

B – Lingo's brief on direct appeal, CR 04-0602;

C - State's brief on direct appeal;

D - Alabama Court of Criminal Appeals memorandum opinion affirming Lingo's conviction;

E – Lingo's brief on rehearing and the appellate court's denial; and,

F – Lingo's petition and brief on writ of certiorari to the Alabama Supreme Court and the court's denial.

Respectfully submitted,

Troy King, ASB #KIN047
*Attorney General*
By-

Robin Scales (BLE002)
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2006, I served a copy of

the foregoing (including Exhibits) to Lingo, by placing the same in the United

States mail, first class, postage prepaid and addressed as follows:

> Ralph Wilson Lingo
> Autauga County Metro Jail
> 136 North Court Street
> Prattville, Al 36067

Robin D. Scales (BLE002)
*Assistant Attorney General*
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone: (334) 242-7300
Fax: (334) 242-2848
E-Mail: rscales@ago.state.al.us

176878/98595-001

COURT OF CRIMINAL APPEALS NO. _CR 04-0002_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

### FROM

### CIRCUIT COURT OF ___HOUSTON___ COUNTY, ALABAMA

CIRCUIT COURT NO. ___CC-2003-599___      Volume I

CIRCUIT JUDGE ___Jerry White___

**Type of Conviction / Order Appealed From:** ___Intimidating a Witness___

**Sentence Imposed:** ___20 years, $10,000.00 Fine  $1,000.00 Victim Compensation and Cost___

**Defendant Indigent:** [X] YES   [ ] NO

___Ralph Lingo___

___Jon Patrick Amason___          ___334-793-9009___          **NAME OF APPELLANT**
(Appellant's Attorney)                (Telephone No.)
___401 N. Foster Street___
(Address)
___Dothan___      ___Alabama___          ___36301___
(City)            (State)                (Zip Code)

### V.

## STATE OF ALABAMA

(State represented by Attorney General)          **NAME OF APPELLEE**
NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)


EXHIBIT
A

CLERK'S INDEX OF RECORD

CASE ACTION SUMMARY

INDICTMENT                                                                1 - 6

WRIT OF ARREST                                                            7 - 8

WAIVER OF ARRAIGNMENT                                                     9

DISCOVERY ORDER                                                          10

LETTER FROM DEFENDANT, AND ORDER THAT IT'S NOTED                         11

MOTION TO WITHDRAW                                                       12

MOTION TO WITHDRAW GRANTED                                              13

LETTER FROM DEFENDANT                                                   14

ORDER, TAMMY STINSON APPOINTED, NO TRANSCRIPT EXIST AT THIS TIME        15 - 17

MOTION REQUESTING RECOVERY OF ALL FILES                                 18

MOTION FOR DISCLOSURE AND NOTICE TO PRODUCE                             19 - 20

MOTION GRANTED                                                          21 - 23

REQUEST FROM DEFENDANT                                                  24

LETTERS, AND A REQUEST TO RECUSE FROM DEFENDANT                         25 - 26

ORDER, MOTION TO RECUSE DENIED, ALL FUTURE MOTION ARE TO BE FILED       27 - 32
BY DEFENDANT'S ATTORNEY

LETTERS FROM DEFENDANT                                                  33

MOTION TO RETURN ILLEGALLY SEIZED PROPERTY                             34 - 39

MOTION TO RETURN ILLEGALLY SEIZED PROPERTY DENIED                       40 - 41

LETTERS AND REQUEST FROM DEFENDANT                                      42

MOTION TO PRODUCE                                                       43 - 50

NO ORDER AT THIS TIME                                                   51 - 52

CONTINUANCE                                                             53

LETTERS AND REQUEST FROM DEFENDANT IN AUGUST 2004                       54

RESPONCE FROM DEFENDANT'S ATTORNEY                                      55 - 71

                                                                        72 - 82

CLERK'S INDEX CONTINED

LETTERS AND REQUEST FROM DEFENDANT IN SEPTEMBER 2004
83 - 153

LETTERS AND REWUEST FROM DEFENDANT IN OCTOBER 2004
154 - 173

MOTION TO TRANSPORT DEFENDANT
174 - 175

ORDER TO TRANSPORT
176

MOTION FOR DISCOVERY OF UNDISCLOSED INFORMATION
177 - 178

MOTION FOR RETURN OF SEIZED PROPERTY
179 - 180

MOTION TO SUPPRESS EVIDENCE AND CONTROVERY SEARCH WARRANT
181 - 182

MOTION FOR REAPPOINTMENT OF COUNSEL
183 - 184

MOTION IN LIMINE
185 - 187

MOTION TO SUPPRESS DEFENDANT'S STATMENTS
188 - 189

MOTION IN LIMINE
190 - 191

ORDER, MOTION TO SUPPESS DENIED
192

MOTION FOR APPOINTMENT OF NEW COUNSEL DENID, AND MOTION FOR JUDGMENT
OF ACQUITTAL DENIED
193

JUDGMENT
194

REQUEST FOR A NEW TRIAL
195 - 201

REQUEST FOR INDICTMENT TO BE DISMISSED
202

MOTIONS DENIED
203

NOTICE TO DEFENDANT of PREVIOUS CONVICTIONS AND NOTICE TO USE SUCH
CONVICTIONS FOR IMPEACHMENT PURPOSES
204

PREVIOUS JUDGMENTS
205 - 206

PROBATION AND PAROLE PRE SENTENCE INVESTIGATION REPORT
207 - 213

SENTECING ORDER
214

ORAL NOTICE FO APPEAL, FREE TRANSCRIPT ORDERED, BOND SET, AND COUNSEL
APPOINTED
215

REQUEST FOR BOND
216

REQUEST FOR SPECIFIC APPOINTED ATTORNEY
217 - 218

CLERK'S NOTICE OF APPEAL
219

DOCKETING STATMENT AND COURT REPORTER'S TRANSCRIPT ORDER
220 - 222

CLERK'S INDEX CONTINUED

COURT REPORTER'S INDEX OF EXHIBITS

                     223

STATE'S EXHIBIT NUBMER  1

                     224 - 226

STATE'S EXHIBIT NUBMER  2

                     227 - 227A

STATE'S EXHIBIT NUMBER  3

                     228 - 229

COURT REPORTER'S TRANSCRIPT  OF  RECORD

                     1-121

CERTIFICATE OF COMPLETION

                     351

0300    1

```
CR0372          ALABAMA JUDICIAL INFORMATION SYSTEM       CASE: CC 2003 000599.00
PER: PAS              CASE ACTION SUMMARY
P    1                 CIRCUIT  CRIMINAL                    RUN DATE: 09/24/2003
    ====================================================================
   THE CIRCUIT COURT OF  HOUSTON                                      JUDGE: JMW
STATE  OF  ALABAMA              VS        LINGO RALPH WILSON
                                          % HOUSTON COUNTY JAIL
CASE: CC 2003 000599.00
                                          DOTHAN, AL  36302 0000

DOB: 02/04/1962        SEX: M  RACE: W  HT: 6 00  WT: 350   HR: BRO EYES: GRN
SSN: 416969145  ALIAS NAMES:

CHARGE01: INTIMIDATING A WITNE CODE01: INTI  LIT: INTIMIDATING A TYP: F #: 001
OFFENSE DATE: 04/24/2003              AGENCY/OFFICER: 0380000 LUKER

DATE WAR/CAP ISS:
DATE      INDICTED: 09/05/2003        DATE ARRESTED: 05/08/2003
DATE      RELEASED:                   DATE    FILED: 09/24/2003
BOND      AMOUNT:       $200,000.00   DATE  HEARING:
                                          SURETIES:
DATE 1: 10/15/2003   DESC: ARRG
DATE 2: 12/08/2003   DESC: JTRL        TIME: 0900 A
                                       TIME: 0830 A
TRACKING NOS: DC 2003 001085 00   /

   DEF/ATY: BULLARD WILLIAM T                  TYPE: W/D  Tammy Stinson (A)
            P O BOX 398                                                   TYPE:
            DOTHAN        AL 36302         JOE HERRING     (C)
                                                            00000
PROSECUTOR: VALESKA DOUGLAS A
    ====================================================================
     CSE: DC200300108500 CHK/TICKET NO: WR03-9274     GRAND JURY: 000000003
     REPORTER:                    SID NO:  000000000
     STATUS: JAIL                 DEMAND: Y                       OPER: PAS
DATE        ACTIONS, JUDGEMENTS, AND NOTES
    ====================================================================
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|---|---|
| 10-15-03 | WAIVER OF ARRAIGNMENT |
| | RECIPROCAL DISCOVERY ORDER |
| | 10-15 2003 |
| | Within 14 days of this Order, the State and Defendant will make available for inspection and copying all materials discoverable under the Alabama Rules of Criminal Procedure. In addition, the State will make any exculpatory material available to the Defense. The State will make its materials available at the District Attorney's office and the Defense will do likewise at the Defense Counsel's office. |
| | C. LAWSON LITTLE CIRCUIT JUDGE |
| 10-23-03 | Letter From Deft. (Above Noted See Letter In File) |
| 11-19-03 | Motion To Withdraw |
| 12-8-03 | Motion To Withdraw granted |

State of Alabama vs.          Ralph Lingo

CC2003-599

12-17-03 — Tammy Stinson appointed to represent defendant. Discovery order issued on 10-15-03. No transcript exists to provide to defendant.

*[signature] Judge*

12-18-03 rec'd Tammy Stinson & DA

12-18-03  Letter requesting Recovery of all files.

12-19-2003  Motion for disclosure and notice to produce

December 23, 2003 — Motion for disclosure and to produce granted. Motion for recovery of files denied.

*[signature] Judge*

12-23-03 rec'd Tammy Stinson, deft at jail & DA

January 2, 2004 — Motion to recuse denied. Clerk to notify defendant that all future motions will be filed by his attorney. Clerk will accept no further motions filed by defendant.

*[signature] Judge*

1-23-04 rec'd Tammy Stinson, DA & Deft at Jail

5-25-2004  Motion to return illegally seized property — Motion denied. *[signature] Doug M. White, Jr.*

JUN 2 2004  N: Deft by email & DA

7-15-04  Motion for Disclosure of Criminal Juvenile Arrest Parole and Probation Records of Prosecution Witnesses.
Motion For Issuance of Subpoena.

7-19-04  Motion to Produce.

7-21-04  Motion For Production of Statements of Promices, Rewards, or Inducements.

8-04  File came back with no action taken

State of Alabama
Unified Judicial System

**CASE ACTION SUMMARY**
CONTINUATION

Case Number

rm C-7 Rev. 2/79

CC 2003 - 599.6

ID    YR    Number

Style: _State of Alabama vs. Lingo, Ralph Wilson_

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| | June 10, 2003 - Petition for writ of Habeas Corpus dismissed after hearing the evidence. _(signature)_ Judge |
| 3-11-03 6/30/03 | 3-11-03 - N. DA. T. Bullard, Jail Dept. _(signature)_ Judge |
| | Letter noted. |
| | ~ Larry K. Anderson, Judge |
| | 7-1-03 N: Dept. |
| | Sept. 14, 2004 - Case cont'd by agreement. _(signature)_ Judge |
| Oct 14-04 | Motion to Transport D/f'd |
| 10-19-04 | Order of Transport (ltm file) |
| 10/20/04 | Motion for Discovery of Undisclosed Info |
| | November 3, 2004 - Defendant's motion in limine granted as to any past conviction or pending charge not relevant to this indictment unless defendant chose to testify. Motion to Suppress statement of defendant denied. _(signature)_ Judge |
| | November 3, 2004 - Motion for appointment of new attorney denied _(signature)_ Judge |
| | November 3, 2004 - Motion for judgment of acquittal is denied. _(signature)_ |

0000

4

## JURY CONVICTION

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

VS.                                          CRIMINAL DIVISION

*Ralph Wilson Lingo*                  CASE NO. *CC 2003 - 599*

The Defendant having been indicted and arraigned upon the Indictment on a charge of *Intimidating Witness* and heretofore having plead not guilty thereto the case was tried before a jury composed of *Steven L. Henderson* as foreperson and eleven others. The Jury having been duly empanelled , sworn and charged by the Court according to law , with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of *Intimidating Witness* as charged in the Indictment (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of *Intimidating Witness* Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing .

IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT that the Defendant is guilty of said charge.

[X] A Sentence hearing is set for the *9th* day of *December*, 20*04* at *9:00* o'clock *A* M.

DONE, this the *4th* day of *November*, ~~2002~~ *2004*.

_____
CIRCUIT JUDGE

## SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____.

[X] to the penitentiary of the State of Alabama for a term of *20* years. ( ) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s) _with any sentences presently being served_

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ 10,000.00
(X) A Victim Compensation Assessment of $ 1,000.00
(X) All Court Costs.
( ) Restitution of $ _____ to _____
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( ) Alabama Dept. of Forensic Sciences-Dothan Division $_____
( ) Investigation restitution to ( )DPD ( ) HCSO $_____

ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $_____.
( ) Indigency status granted and free transcript is ordered.

PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _9th_ day of _December_, 20_04_.

_____
CIRCUIT JUDGE

| Date | ACTIONS, JUDGMENTS, CASE NOTES | 6 |
|---|---|---|
| 1-10-04 | Motion for a new trial. | |
| 10-28-04 | Motion for return of seized property. Motion to suppress evidence and controvert search warrant. | |

Nov. 18, 2004 - Motion for new trial denied. Motion to Suppress, etc denied.

(12-7-04 N: TS + DA)

*Jug M White*
*Judge*

December 9 2004 - Deft gave oral notice of appeal to Alabama Court of Criminal Appeals. Deft allowed free transcript. Patrick Amason appointed to represent deft on Appeal. Bail Set $50,000 Clerk to Notify Deft, Ct of Criminal Appeal and Mr. Amason.

(1-4-05 N: DA, PA, Jail)
*Jug M White*

| 1-5-04 | PENITENTIARY TRANSCRIPT MAILED TO DOC | |
| 1-5-04 | Clerks notice of appeal to CCA, AG, Deft, PA, CW + DA) | |
| 1-6-04 | CCA DOCketing statement of CR transcript order to CCA, AG | |

Grand Jury No. 038

Case No. CC2003-599

## INDICTMENT

The State of Alabama

Houston County

}

CIRCUIT COURT
TWENTIETH JUDICIAL

**JULY TERM, 2003**

### COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, RALPH WILSON LINGO, whose name is otherwise unknown to the Grand Jury, did attempt by use of a threat directed to DEBRA TICE BLACKSTONE, a witness or a person he believed would be called as a witness in an official proceeding, to corruptly influence the testimony of the said DEBRA TICE BLACKSTONE; to induce DEBRA TICE BLACKSTONE to avoid legal process summoning her to testify; or to induce DEBRA TICE BLACKSTONE to absent herself from the said official proceeding to which DEBRA TICE BLACKSTONE had been legally summoned, in violation of Section 13A-10-123 of the Code of Alabama, against the peace and dignity of the State of Alabama.

Douglas Albert Valeska
District Attorney

THE STATE OF ALABAMA
Houston County

Witnesses for Agency No. 03-3058

DEBRA TICE BLACKSTONE, 402 EMMONS DR., DOTHAN, AL 36301
TONY LUKER, DPD, DOTHAN, AL 36301
TODD REGISTER, STATE FIRE MARSHALL'S OFFICE  P. O. BOX 303352,
MONTGOMERY, AL 36130

THE CIRCUIT COURT
Twentieth Judicial Circuit

THE STATE
vs.
RALPH WILSON LINGO

Charges: 1.  INTIMIDATING A WITNESS

8

#38

## A TRUE BILL

_Juanita Loba M_
Foreman of the Grand Jury

Presented to the presiding Judge in open court foreman of the Grand Jury, in the presence of ___16___ Grand Jurors and filed in open court by order of the court on this the _5th_ day of _Sept_, 20_03_.

_Judy Byrd_
CLERK

## INDICTMENT

NO PROSECUTOR

Upon the arrest of Defendant let him be admitted to bail on giving bond in the sum of

_200,000_ _____ Dollars

With security to be approved by the Sheriff.

_Larry K. Anderson_
Judge Presiding

# WRIT OF ARREST

The State of Alabama
Houston County                                    CIRCUIT COURT

To Any Sheriff of the State of Alabama:   *Ralph Wilson Lingo*   No. *38*

An indictment having been found against

at the   *July*   Term, *03* of the Circuit Court of said County

for the offense of   *Intimidating A Witness*

you are therefore commanded forthwith to arrest the said Defendant and commit him to jail unless he gives bail to answer said Indictment, and you are further directed to make return of this writ according to law.

Dated this *5th* day of *September*, *03*

*Judy Byrd* Clerk

Defendant lives at _____

The officer executing this writ may admit the Defendant to bail upon entering into Bond in the amount of **$200,000** Dollars with two or more good securities approved by said officers.

*Judy Byrd* Clerk

Received in office this the _____ day of **SEP 0 5 2003** , *Lamar Glover* Sheriff

I have executed this writ by arresting the within named defendant and

☐ Taking Appearance Bond     ☒ Committing Defendant to Jail     ☐ Continued on Existing Bond

This the *7th* day of *September*, *2003*

Sheriff *Lamar Glover*     Deputy Sheriff *William Dorrotty*

TRI-STATE / DOTHAN

10

of Alabama
ed Judicial System

Form CR-9    Rev. 3/95

# PLEA OF NOT GUILTY AND WAIVER OF ARRAIGNMENT

Case Number
CC-03-599
CC-03-1339
CC-03-1340

IN THE ___Circuit___
(Circuit, District, or Municipal)    COURT OF ___Houston___
(Name of County or Municipality) , ALABAMA

☐ STATE OF ALABAMA v. ___Ralph Lingo___ , Defendant

Comes now, the defendant in the above-styled matter, and to the offense charged enters a plea of

☐    Not Guilty
☐    Not Guilty by Reason of Mental Disease or Defect
☐    Not Guilty and Not Guilty by Reason of Mental Disease or Defect

Defendant acknowledges receipt of the copy of the charge against him/her and further waives the right to have an arraignment at which the defendant is present in person, or at which the defendant is represented by an attorney. But, the defendant specifically and expressly reserves the right upon the filing hereof to hereafter, but before trial or before such date as may be set by the court, to interpose any defenses, objections, or motions which the defendant had the right as a matter of law or rule to interpose in this cause, prior to the filing hereof.

Defendant's date of birth is X ___2-4-62___    Defendant's age is X ___41___
The defendant is not eligible for consideration by the court for youthful offender status as provided by law.

___10-14-03___
Date ___10-14-03___    X ___Ralph Lingo___
Defendant
ate    ___W. Terry Bullard___
Attorney for Defendant

This is to certify that I am the attorney for the defendant in this matter, and that I have fully explained this form and all matters set forth herein, and pertaining hereto, to the defendant. I further state to the court that I have explained to the defendant his right to be arraigned in person and his right to have me represent him at arraignment. I further certify to the court that my client hereby knowingly, voluntarily, and intelligently waives these rights after a full and complete explanation of each of them to him/her by me. BOTH MYSELF AND THE DEFENDANT UNDERSTAND THAT I AM RESPONSIBLE FOR ASCERTAINING WHAT DATE, IF ANY, HAS BEEN SET BY THE COURT FOR THE MAKING OR FILING OF ANY DEFENSES, OBJECTIONS, OR MOTIONS. I FURTHER UNDERSTAND THAT I AM RESPONSIBLE FOR NOTIFYING MY CLIENT OF THE DATE HIS/HER CASE IS SET FOR TRIAL AND THAT I HAVE ADVISED AND INFORMED HIM/HER THAT IN THE EVENT HE/SHE FAILS TO APPEAR ON THE DATE HIS/HER CASE IS SET FOR TRIAL, ALL APPROPRIATE LEGAL ACTION WILL BE TAKEN BY THE COURT AGAINST THE DEFENDANT AND HIS/HER BOND. I further certify to the court that I have advised my client that he/she is responsible for obtaining the date his/her case is set for trial in this matter and that in the event he/she fails to appear on the date his/her case is set for trial all appropriate legal action will be taken by the court against the defendant and his/her bond, and I hereby certify that the defendant knows that he/she is personally responsible for obtaining the date his/her case is set for trial and for being present in court on that date.

___10-14-03___
Date    X ___[signature]___
Attorney for Defendant Signature

I certify that I served a copy of the foregoing plea and waiver of arraignment on the Prosecutor by mailing/delivering a copy of the same to him/her on:

___10-14-03___
Date    ___W. Terry Bullard___
Printed or Typed Attorney's Name
___P.O. Box 398, Dothan___
Address

This is to certify that my attorney has explained each and every matter and right set forth in this form and I have completely and fully read and do so understand each and every matter set forth in this form. I further state to the court that I do not wish to be personally present at an arraignment in this case and that I do not want to have an attorney represent me at an arraignment and WITH FULL KNOWLEDGE OF EACH OF THESE RIGHTS, I HEREBY EXPRESSLY WAIVE SUCH RIGHTS. I further state to the court that I have been informed of the charge against me and have received a copy of the charge.

___10-14-03___
Date    X ___Ralph Lingo___
Defendant Signature

Filed in office this date _____

FILED
OCT 14 2003

_____
Clerk    ___Judy Byrd___
JUDY BYRD, CLERK

11

RECIPROCAL DISCOVERY ORDER

10-15 ___, 20 03

Within 14 days of this Order, the State and Defendant will make available for inspection and copying all materials discoverable under the Alabama Rules of Criminal Procedure. In addition, the State will make any exculpatory material available to the Defense. The State will make its materials available at the District Attorney's office and the Defense will do likewise at the Defense Counsel's office.

C. LAWSON LITTLE
CIRCUIT JUDGE

CAse CC 2003 000599.00

This is to the court

I ask the court to put me on there Doy
and take elntimdating a Witnes
and take it to trail by next mouth
before a gran jerry Trail.

el would like to know the Judge on
my case and notife at once. I di't want
Judge Littles and I do't Want Tom Steinglee
and I do't want Larry Andersens and di't want
Judge Jackson bicause iho is already the
Judge in Abbeville He is doing one case
there.

Ralph Liligy

10-21-03

FILED

OCT 2 3 2003

CLERK
HOUSTON CO, AL

10-28-03   11403 at
NTB, S at
Dist

13

STATE OF ALABAMA,                    *        IN THE CIRCUIT COURT OF

     PLAINTIFF,                        *        HOUSTON COUNTY, ALABAMA

VS.                                  *        CASE NO.: CC-03-599

RALPH WILSON LINGO,                  *

     DEFENDANT.                        *

## MOTION TO WITHDRAW

COMES NOW the undersigned attorney, W. Terry Bullard, and withdraws as attorney-in-fact for the Defendant, RALPH WILSON LINGO, and as grounds therefore states as follows:

1.     That a conflict has arisen between the Defendant and the undersigned attorney.

WHEREFORE, premises considered, the undersigned prays this Honorable Court to grant him a withdrawal, as attorney, from the above styled case.

Dated this 19th day of November, 2003.

                                 BULLARD AND BULLARD L.L.C.

                                 W. TERRY BULLARD (BUL007)
                                 Attorney for Defendant
                                 Post Office Box 398
                                 Dothan, Alabama 36302
                                 (334) 793-5665

## CERTIFICATE OF SERVICE

I, W. Terry Bullard, hereby certify that I have this date mailed a copy of the foregoing Motion to Withdraw to the Honorable Douglas A. Valeska, District Attorney, by placing a copy of the same in his box at the Houston County Courthouse, and Ralph Wilson Lingo, Houston County Jail by hand delivery, this the 19th day of November, 2003.

                                 OF COUNSEL

14

12-8-03  Motion To Withdraw granted

Jerry M. White Judge

12-12-03  N: DA, L. Bullard + Deft by mail

On File with Judy Byrd                    12-1-03        15
(File with the Clerk of Court)            ~~12-00-00~~

I Ralph Lingo:

I am broke I like to ask for transcript and case number

CC 2003-599.6

I will love to ask the Court to respond to this in the next 10 working days

I also like to ask the court for motion of discovery of this case

Also motion of discovery on intimidating a state witness

Also want copies of all letters that has been filed by Terry Bullard

Ralph Lingo
~~12-00-000~~    12-1-03

CC 03-599

Case no. DC 2003  00 10 85. 00                    16

On File Judy Byrd                    12-1-03

(Keep on File with the Clerk of Cot)

Court

I Ralph Wilson Lingo:        case no.

Ask the court of Larry Anderson
to give me a statement under oath.
Court reporter present.

I will also like to ask Judge White to
give a statement under oath from
a court reporter.

I will love to ask the court to
respond back from this request in
ten working days.

I am representing myself.

I would like to ask both judges
to cooperate with the request.

Ralph Lingo

12-1-03

17
12-1-03
8/2/03

(File with Clerk of Court)
Judy Byrd

I Ralph Lingo:   case no: DC 2003 001085.07
CC03-599

Ask the Court for a 72 hour
hearing I ask for a court
order for this. Also ask for
a court reporter be present.

Also ask for Tony Lucker city
investagator be present at this
hearing

I also want a inventory list of
all things taken from my home



Ralph Lingo

12-1-03

18

State of Alabama vs.        Ralph Lingo

CC2003-599

12-17-03 — Tammy Stinson appointed to represent defendant. Discovery order issued on 10-15-03. No transcript exists to provide to defendant.

12-18-03 recfd Tammy Stinson & DA

*[signature]*
Judge

STATE OF ALABAMA.
   PLAINTIFF.
   VS,
Ralph Lingo
  DEFENDANT,

IN THE CIRCUIT COURT OF
HOUSTON COUNTY. ALABAMA

CASE NO CC-03-599

## I ASKED FOR A MOTION OF RECOVEY OF ALL MY FILES

1. I Asked the Covet to bring Ralph Lingo AND FORMER Attorney TERRY bullARD in FRONT OF the Judge to tvan over All FILES OF motion OF RECOVERY on my CAES And Any other EvidENCE he might have or holding.

2. I Asked the Court to mAil me All docKEt And Any letters that they may have in their Files. I Asked the Court For A copy OF motion OF RECovery iN Full,

DAtEd this 12-15-03        2003

SignutuRE Ralph Lingo 12-15-03

FILED

DEC 1 8 2003

JUDY BYRD, CLERK
HOUSTON CO., AL

20

STATE OF ALABAMA                    :   IN THE CIRCUIT COURT OF
    PLAINTIFF                       :
                                    :   HOUSTON COUNTY, ALABAMA
        VS                          :
                                    :   CASE DC 2003 00 1085, 00
Ralph Lingo                         :
DEFENDANT.                          :

I ASKED FOR A MOTION OF RECOVERY OF ALL MY FILES

1. I ASKED the court to bRING Ralph Lingo AND FORMER
   ATTORNEY TERRY BULLARD IN FRONT OF the JUDGE to tuRN
OVER all files of motion of RECOVERY ON MY CASE AND
ANY otheR EVidENCE hE might have oR holding.

2. I ASKED the court to mail me All docket AND
ANY letteRS that thEY MAY HAVE IN thEIR files.
I ASKED thE court FORA copy OF motioN OF
RECOVERY IN Full.

                        DATEd this  12 - 15 - 2003

SIGNUTURE, Ralph Lingo  12 - 15 - 2003

FILED
DEC 1 8 2003
JUDY BYRD CLERK
HOUSTON CO., ALA

21.

STATE OF ALABAMA,        )

                  )

        PLAINTIFF,     )

                  )

VS.                 )

                  )

RALPH LINGO,       )

                  )

        DEFENDANT.   )

**IN THE CIRCUIT COURT OF**

**HOUSTON COUNTY, ALABAMA**

**CASE NUMBER: CC-2003-599** *W*

**FILED**

DEC 19 2003

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

## MOTION FOR DISCLOSURE
### AND
### NOTICE TO PRODUCE

**COMES NOW** the defendant, **RALPH LINGO**, in the above referenced case and moves this Honorable Court pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution for an Order to Disclose the following materials which are in the custody and possession of the State:

1.      Any and all tape recordings and stenographic transcriptions of admissions, confessions and statements of the Defendant given at any time or place to any officer of the Houston County Sheriff's Department, Alabama Bureau of Investigation (ABI) or any and all other law enforcement departments involved, the District Attorney or any representative of the District Attorney office, or to any law enforcement officer or agent;

2.      Any and all tangible objects, currency, weapons, books, papers, and documents obtained from or belonging to the Defendant;

3.      Any and all tangible objects, books, papers, or documents obtained from any other persons relating to the charges against the Defendant;

4.      The arrest record summaries prepared by the FBI and/or the ABI which is available to the State on request for each and every one of State's witnesses;

*Donheing*

5.      The result and reports of any scientific or other test, analysis, experiments or studies made in connection with the instant case;

6.      All information of whatever form, source or nature, which tends to exculpate Defendant either through an indication of his innocence or through the potential impeachment of any State witness, and all information of whatever form, source or nature which may lead to evidence which tends to exculpated the Defendant whether by indicating his innocence or impeaching the credibility of any potential State witness, and all information which may become of benefit to the Defendant in preparing or presenting the merits of his defense of innocence at trial. The request includes all facts and information of whatever form, source or nature which the District Attorney or his assistants, the Sheriff's Department, Police Department, the ABI or any of their agents has or knows about, which is or may be calculated to become of benefit to the Defendant either on the merits of the case or on the question of credibility of witnesses; and,

7.      The pre-trial discovery requested in the foregoing Motion is essential to insure the Defendant his right to a fair hearing, his right to confrontation, his right to prepare a defense in his own behalf, and his right to effective assistance of counsel and due process of law guaranteed by the United States Constitution as well as those rights guaranteed by the Constitution of the State of Alabama and all other rights not herein enumerated including those rights provided by case law, statutory law, and the common law.

**WHEREFORE**, Defendant prays:

(a)     That the District Attorney be ordered to produce all information described directly herein or described by implication and allow the Defendant the right to examine, inspect, and copy photograph such material and information at a specific time and place to be fixed by the Court.

(b)     That the time set for the inspection and copying of the information requested be

23

made available to the Defendant at a reasonable time in advance of trial.

(c)    That the Court enter an Order requiring the District Attorney's office to make continuing disclosures of all matters requested herein up to and during the trial of the charges against the Defendant.

Respectfully submitted this the 19th day of December, 2003.

BRANTLEY & PARKER, L.L.C.

TAMMY L. STINSON (STI019)
ATTORNEY FOR DEFENDANT
401 NORTH FOSTER STREET
DOTHAN, ALABAMA  36303
(334) 793-9009

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Motion upon the Honorable Douglas A. Valeska, Esquire, District Attorney, Houston County Courthouse, by placing a copy of same in his appropriate Courthouse box, on this the 19th day of December, 2003.

ATTORNEY AT LAW

24

December 23, 2003 -
to produce granted    Motion for disclosure and
files denied           motion for recovery 2

12-23-03 recd Tammy Stinson,

*[signature] Judge*

25

DATE: 12-30-2003

STATE OF ALABAMA     IN THE CIRCUTT COURT OF
      PLAINTIEF       HOUSTON COUNTY. ALABAMA
VS
RALPH Lingo       CASE NO: CC-03-599
DEFENDANT.

I ASK THE CORT TWO LET ME HAVE STATEMENT.

① I ASK THE CORT TWO LET ME HAVE STATEMENT FROM JUAWITA TICE. WILL BE CALLED AS A WITNESS.

② I WONT FULL REST REPORT FROM Tony Lucker AND DATE AND TIME.

③ I WONT MATION OF DESCOVERY ON ALL OF my CASE's ON TONY Lucker. THE ARSTING OFFICER.

④ I ALSO WONT MATION DESCOVERY FROM THE FIRE MARSHAL Hows Co. STATE. AND ALSO ALL REPORT ON ALL CASE's

⑤ I ASK THE STATE TWO FURINISH ME A CRIMINAL BACK GROWN ON ALL WITTNESS.

26

STATE OF ALABAMA.          * IN THE CIRCUIT COURT OF
    PLAINTIFF.            * HOUSTON COUNTY, ALABAMA
VS.
RALPH WILSON LINGO ;
    DEFENDANT.            * CASE: DC 2003 001085.00
                   ; CASE: CC-2003-599

Im NOTIFYing The CORT im REPRESENTING mySELF.

① I wont copy of motion of DESCOVERY IN full.

② I WONT ALL of 911. TAPES AND TRAINSCRIP FROM CITY
of Dothan. FROM HOUSE NO: 402 Emmons DR.

③ I WONT ALL copy of Police REPORT From 402 Emmons DR

④ I WONT ALL copys of TAPE's From DISPATCHER From
LAST SIX 4EARS. AND TRAINSCRIPS STATE-COUNTY-CITY.

⑤ I WONT ALL WRITEN police from STATE COUNTY CITY.
From ANY REPORTS AT ALL From 402 Emmons DR Dothan
CITY LIMIT. From LAST SIX 4EARS.

                                DATE 12-30-2003

27

1/2/2004/

Dear: judge whight

Cases number CC-2003-599. fer Intimidaiteng a
state witness
you have appointed tammy I stintion tuo this
Cases. judge I don't not wont no Cort apaint attorn
you know as good as I know a Cort apoented attorney
will not realy fight fer you. this is my life were
talking about. so I ask you not tuo give me
anymore Cort oponty attorney. Im asking you
tuo send me amotion of descovery on this
cases (CC 2003-599) so were I can start repairin
my cases. I have already notife mrs tammy stintio
on this matter. Im notfieing the Cort Im repertiun
myself on this Cases, mrs tammy letter exsplains
it all tuo me. their at no money enved in a attorne
so I realy no she wont fight fer me.
judge if you will geve me a chances. ill prove it
tuo you. o realy wish you just geve me a chances
tuo do this cases myself.

Ralph Ligg  1-2-2004  8:20 p.m.

this is also for Motion of Descovery on all!        28

1/2/2004/

State of alabama                    * In the District Cont of
plaintiff
        vs.
                                    * Houston County alabama
Defendat
Ralph W. Lingo                      * Criminal Division

                                    * Case No: DC-2003-1083, 84 & 85

I ask the Cont for Motion Descovery on all of
theses cases.
I am also asking the Cort for a fast spedie
trial.
Im also asking the Court for a list for all
witness.
I also wont a criminal back gronn on all
witness.
I also wont each witnesses two give me a list of
all Docter they have been tuu in the last five years.
in medical and anty other Doctering resons
I also wont a NCIB run on all witness and criminal
reports.
I also wont a list on all witness that has been
meside in the last ten years. all ersses also
names and adress.

this is asking also for motion of Descovery on all!    29

1/2/2004/

State of alabama                    * In the District Cort of
plaintiff
        vs.                         * Houston County of alabama
Defendat
Ralph W. Lengo                      * Criminal Division

                                    * Cases. no: DC-2003-1083, 84 & 8_

Im also asking the Court send me all warnts from
the fire marshile and all lisites

I also wont the fire Marshile me a Copy of evry
time hes talk two me from the first time the Date
that was. and name evry location. and I wont a
Copy on evrything he has on me and my Cases.
and also name each location he has arested me at

I also wont a list from seargent tony Lucker from
the City of Dothan. time and Date fer cnay reser_
he has talked two me. and also went a Copy of
motion of Descever on anrything he has on me,

I also went two Dependa all busness Records of
Ralph Lingo bussness Repair of Mobile Homerepair

30

this is asking also for Motion of Descovery on all!

1/2/2004/

State of alabama          * In the District Cort of
plainiff
        vs.
                          * Houston County of alabama
Defendat
Ralph W Dingo            * Criminal Division

                        * Cases no: DC-2003-1083, 84 & 85

I also ask the state two list each person they have enterview

I also wont the state two list each endalvsion that has lission two the phene tapes from Ralph Dingo that wos take from him from the City of Dothan

I ask for Seargent tony lucker two give a full list two evry body that he hos lee lission two phene tapes I went evry body names. and how long they have lission two them and were they wos at and the names two evryfody he hos let have the tapes and also all files and Contracts

and a list of anybody he hos talked two about the Tapes. I also ask the Cort fer Rights two here all of my tapes.

31

STATE OF ALABAMA.          IN THE CIRCUTT COURT OF
     PLAINTIFF.            HOUSTON COUNTY. ALABAM,
VS.
RALph WILSON LinGo
    PEFENDANT.             CASE: DC 2003 001085.00
                          CASE: CC-2003-599  W

Im NOTiFYIng The CORT im REPRESENTing mySElF.

① I wont Copy of motion of DESCOVERY IN full.

② I WONT ALL of 9.11. TAPES AND TRAINSCRIP FROM CITY
OF DOTHAN. FROM HOUSE NO: 402 Emmons DR.

③ I wont ALL Copy of Police REPORT From 402 Emmons DR

④ I WONT ALL Copy's of TAPES From DIS PATCHER From
LAST SIX YEARS. AND TRAINSCRIPS STATE-COUNTY-CITY.

⑤ I WONT ALL WRITEN police From STATE County CITY.
From ANTY REPORTS AT ALL From 402 Emmons DR DOTHAN
FILED T. From LAST SIX YEARS.

JAN 0 5 2004

JUDY BYRD, CLERK

DSTE 12-30-2003

32

JAN 0 6 2004

Judy Byrd

JUDY BYRD, CLERK
HOUSTON CO., AL

DATE: 12-30-2003

STATE OF ALABAMA.   : IN THE CIRCUTT COURT OF
        PLAINTIFF.    : HOUSTON COUNTY ALABAMA
VS                    :
RALPH Lingo           :
DEFENDANT.            : CASE NO CC-03-599 W
                      :
                      :

FILE For A moanton Two Ask Judge white To step Down

① The Reson why im Asking Judge white To step Down
Is Becuses Hes goning Two Be Suspenoged in This
Trail And other Trails.

② I Ask Judge Anderson Two step Down on All of
my cases. you will Also Be called As A witness
on All of my cases.

③ I Ask Judge Larry Andesrson For A copy of his
sacatary writen Reports on This case. And Also
Phone messiges on This case.

④ I Ask The cort To Take or Let me Take A statement
From each Judge By A cort Reporter present on each
Judg. Larry Anderson + Judge white. During A privet
Hearing.

33

January 2, 2004
Motion to renew denied. Clerk to notify defendant that all future motions will be filed by his attorney. Clerk will accept no further motions filed by defendant.

Henry D. White
Judge

Received 3-24-04

34

Re: Case CC 03 - 1339, 40
Re: Case CC03 - 599

Re: Search Warrant

Ralph Lingo # 190083
E.C.F. 9A - 66
200 Wallace Dr.
Clio, Al. 36017

Hon. Larry Anderson

I am writing this letter to state my desires to you. First I would like for this letter to be part of the file pertaining to this case. First I am asking that Matthew Lamere be appointed to represent me. With the severity of the charges against me I need an experienced trial attorney, that is willing to fight on my behalf.

I want a Trial/Hearing on the validity of the search warrant, I believe that my rights were violated by my home being searched without anyone at home. When I did come home, I was forced to lie on the ground at gunpoint and was told by a Dothan City Police Officer in (Henry County) that he would blow my damn brains out if I didn't do what he said. I was never shown a search warrant and was told I could not enter my own home until the police wanted me to open my safe.

On several occasions since the search of my home, I have asked for a copy of the search warrant and the Affidavit in support of the Search Warrant, but as of this date my request has been ignored. Again I ask for

Re: Case No.(s) CC03-1339, 40
CC03-599

a Trial on the Validity of the search warrant within Thirty (30) days and a written response to this in Ten (10) days. Also I want a copy of the complete file pertaining to the charge(s) against me as a result of the search warrant executed on my home on 4-14-03.

Respectfully and sincerely submitted by U.S. Mail on this 18th day of March 2004

Ralph Lingo  3-18-03
Ralph Lingo #190083

* Return Receipt Requested and Verified *



Clerk's Office
Just file this letter as requested + requires doesn't require any action on my part. Smith

36

Ralph Lingo #190083
E.C.F. 9A-66
200 Wallace Dr.
Clio, Al. 36017

Hon. Larry Anderson.

I am writing this letter as an affidavit asking the Court to file charges against Vonda Sue Williams on my behalf. For the charges of Forgery (acts.) (She has forged my signature numerous times without my permission) and Identity Theft (act.) (She is portraying herself as me by operating my bussiness without my permission). I want her brought in front of the Grand Jury of Houston County so an Indictment can be brought against her. As a citizen of the State of Alabama and The United States of America, it is fully within my rights to file this complaint against a person that has comitted a crime against me.

Respectfully submitted on this 18th day of March 2004

Ralph Lingo 3-18-0
Ralph Lingo

* Return Receipt Requested and Verified *

\* Please Simp and
Keep on File \*

Date 3-23-04

Fitz    CC 2003-599
1339
1340
Ralph Lingo # 190083
ECF 9A - 66
200 Wallace Dr.
Clio AL 36017

Honorable Court Clerk
    I am writing this letter to request
that you provide me with a true and correct
copy of the following documents.

① Search Warrant
② Affidavit in Support of Search Warrant
③ Inventory of all seized.

**FILED**

MAR 23 2004

JUDY BYRD, CLERK
HOUSTON CO., AL

The Warrant was signed by Judge White and was
executed on 4-14-03 and my home located at
Highway 431 South in Newville in Henry County
    Thank you for your time and assistance

The warrant was executed            Sincerely
by Investigator T. Luker of the    Ralph Lingo
Dothan Police Department            Ralph Lingo

I live in Henry County but the warrant was
issued in Houston County according to the Circuit
Court Clerk of Henry County

\* Return Receipt Requested and verified \*

Mr. Lingo, you need to request this info. from your attorney.

Ix



*Very Important*

# GYPSY ETHRIDGE
## CIRCUIT CLERK OF HENRY COUNTY
### HENRY COUNTY COURTHOUSE
101 Court Square, Suite J
Abbeville, Alabama 36310-2135
(334) 585-2753

April 27, 2004

Ralph Lingo #190083 9A-66
Easterling Correctional Facility
200 Wallace Dr.
Clio, AL   36017

Mr. Lingo,

You appealed your plumbing case to Circuit Court for a jury trial.  On the day that your case was set, you told Judge Jackson that you wanted to dismiss your appeal and accept the guilty plea.  You wrote the Judge a letter saying that you wanted to appeal deciding to dismiss your appeal.  Judge Jackson denied you motion to reinstate your appeal.  You appealed that to the Court of Criminal Appeals and they refused to hear your appeal and that appeal was dismissed.

1.

The search warrant that was issued was done in Houston County on a Houston County case that was being investigated.  Henry County Sheriff's Deputy Troy Silva was there with the Officer from Houston County.  There was a possibility that an officer from the State Fire Marshall's office there also.  The Henry County court does not have anything to do with the search warrant and anymore papers or letters need to be addressed to the Houston County Circuit Clerk.

2.

There is no probable cause for a kidnapping charge in that you were being investigated for a crime in Houston County.  A warrant cannot be issued in Henry County.  Please understand that Henry County has nothing to do with anything that arose out of an investigation in Houston County.  Please address any further letters to Houston County Circuit Clerk.

Sincerely,

Gypsy Ethridge

Gypsy Ethridge

*CASE CC.2003.000 599,60*
*1340          1339*

40

IN THE CIRCUIT OF HOUSTON COUNTY, ALABAMA

RALPH WILSON LINGO

V.                                            CASE no. C.C.- 599   03

STATE OF ALABAMA


## MOTION TO RETURN ILLEGALLY SIEZED PROPERTY

Comes now the Defendant RALPH WILSON LINGO ProSe, with this above-styled motion. Defendant moves this Honorable Court to grant this motion and ORDER the PROPERTY returned to him.

1) On 4-14-03 a search warrant was executed by Sgt. Tony Luker of the Dothan Police Department on Defendant's residence located at 10666 Hwy 431 S Newville, Alabama.

2) The following items were siezed and Defendant demands that they be returned.

1) 5-drawer file cabnet w/assorted files.

2) 2-drawer file cabnet w/assorted files.

3) box w/ assorted floppy discs.

4) assorted audio tapes.

5) assorted video tapes.

6) assorted bussines files and holder.

7) Hewlett Packard computer

8) Elvis Presly Sun Records Lable Album Collection.

9) personel family photos

10) Auburn/Alabama Cracker Barrel Can collection

11) Golden Flake Can collection

12) $250,000.00 U.S. Currency

13) House keys, safe keys.

14) All Ralph Lingo Mobile Home Repair files.

15) All Newville Portable Building files

16) Video camera (Sony)

17) assorted video tapes (1500)

18) Access card for satalite takrn from safe

19) Personal medication

20) Stainless Steel Cookware

21) All monies siezed from Ralph Lingo Mobile Home Repair account



FILED

MAY 2 5 2004

Judy Byrd

JUDY BYRD, CLERK
HOUSTON CO., AL

WHEREFORE:

     Defendent    prays    that    this    Honorable    Court    take
jurisdiction in this matter and grant Defendent's Motion and ORDER
ALL PROPERTY RETURNED TO HIM.
Or... in the alternative order an evidentuary hearing so that ORAL
ARGUMENT CAN BE MADE IN SUPPORT OF THIS MOTION.

Respectfully submitted on this 24th day  of MAY, 2004.

                        RESPECTFULLY:

                        RALPH WILSON LINGO

42

5-25-2004  Motion to return illegally seized property — — Motion denied.

JUN 2 2004  N: Deft by email + DA

43.



# JUDY BYRD
### CIRCUIT CLERK
### AND
### DISTRICT COURT CLERK
### HOUSTON COUNTY
### DOTHAN, ALABAMA 36302

Elaine Love
Chief Clerk

(334) 677-4858
P.O. Drawer 6406

Mr. Ralph Lingo
Easterling Correction Facility
200 Wallace Drive
Clio, AL  36017

Mr. Lingo:

We are in reciept of you letter filed in our office on June 24, 2004.  You

requested a copy of a Search Warrant for a search performed on April 14, 2003

of your home in Henry County.


After a thorough search of our records in Houston County Clerk's office,

we find no Search Warrant in your name or for any property in Henry County.


As we have previously advised you of our search, and we found nothing, you

may want to check with the Henry County Records Department and see if they

may have what you are requesting.

Very truly yours,

Judy Byrd
Circuit Clerk
Houston County Alabama

CASE CC 2003.000 599.60
00,1340.00 )        1339.00

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

RALPH LINGO

v.

STATE OF ALABAMA

Case No. C.C. 03-1339,40, C.C. 03-

DEFENDANT's AFFIDAVIT IN SUPPORT OF MOTION FOR ISSUANCE OF SUBPOENA

Ralph Lingo , being first duly sworn, deposes and says:

1) I am the Defendant herein.

2) The material and document the Defendant seeks is vital to his defense.

3) The Defendant cannot safely go to trial without the material he requests because it can clear him of all charges.

4) The Defendant by reason of his poverty does not have sufficient means and is actually unable to pay the fees to have subpoenas issued, and still provide himself with the necessities of life.


Respectfully submitted on this ___ day of July,2004.


_Ralph Lingo_
Ralph Lingo
Easterling Correctional Facility
200 Wallace Dr.
Clio, Alabama,36017


Sworn to and subscribed before me on this _13_ day of July,2004.

_Byron K. Hamm_
(Notary Public)

FILED
JUL 1 4 2004

My commission expires on _5-7-2006_

Judy Byrd
CLERK
HOUSTON CO. AL

45

In The Circuit Court of Houston County, Alabama

Ralph W. Lingo

JMW

State of Alabama                    Case No. CC03-599, CC03-1339, 41

## Motion for Disclosure of Criminal, Juvenile, Arrest Parole and Probation Records of Prosecution Witnesses

Comes now the Defendant Ralph W. Lingo, ProSe, and respectfully requests this Honorable Court to enter an Order directing the Commissioner of Paroles and Probation or any appropriate party to provide the Defendant with certified copies of the following records of any and all persons whom the Prosecution intends to call as a witness at trial or any related proceeding herein:

1) Criminal convictions and adjudications of delinquency.

2) Arrests and criminal investigations, criminal and/or juvenile charges now pending and parole and/or probationary status.

In further support the Defendant maintains his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, also requires such disclosure for the use in cross examination of any prosecution witness in the issue of bias. Alford v. United States, 282 U.S. 687 (1931)

3) The Defendant further moves this Honorable Court to order the attorney for the Prosecution to disclose to the Defendant any knowledge he or anyone of his associates h...

upon the exercise of due diligence, may have, which pertains to paragraphs 1 and 2 above.

Wherefore: Defendant respectfully requests that this instant motion be granted.

Respectfully submitted on this 14 day of July, 2004

*Ralph W. Lingo* 7-14-04

Ralph W. Lingo

### Penalty of Perjury

I certify that the foregoing is true and correct to the best of my knowledge under 28 USC. 1746 Penalty of Perjury

*Ralph Lingo* 7-14-04

Ralph W. Lingo

### Certificate of Service

I certify that I have served a true and correct copy of the foregoing on the District Attorney of Houston County, Alabama, by placing same in United States Mail 1st Class postage prepaid on this 14th day of July, 2004.

*Ralph Lingo* 7-14-04

Ralph W. Lingo

I will not rule upon any further pleadings filed pro se by this defendant. All pleadings must be filed by attorney.

**FILED**

JUL 15 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA                47

RALPH LINGO

v.                              Case No.   C.C.03-1339,40 C.C. 03-599

STATE OF ALABAMA

### MOTION FOR ISSUANCE OF SUBPOENA

Comes now the Defendant Ralph Lingo ProSe, and respectfully moves this Honorable

Court for an Order that a Subpoena be issued addressed to the Houston County District

Attorney's Office located at P.O.Box 1632 Dothan Alabama,36302-1632, commanding

them to provide for Defendant's inspection all audio tapes seized from Defendant's

home on 4-14-03, and Defendant's automobile at the time of Defendant's arrest.

Defendant also request that a subpoena be issued for all written statements made

by any and all witness" the State intends to present at trial.

The above-named evidence and material are vital to Defendant's defence, the Defendant

cannot safely go to trial without the above-named evidence and material, and the

Defendant does not have sufficient means and is actually unable to pay the fees

required to have said subpoenas issued, as is more fully shown in the Defendant's

Affidavit attached hereto.

Respectfully submitted on this _____ day of July,2004.



FILED

JUL 15 2004

JUDY BYRD, CLERK
HOUSTON CO., AL.

_Ralph Lingo_
RALPH LINGO

EASTERLING CORRECTIONAL FACILITY

200 WALLACE DRIVE

CLIO, ALABAMA, 36017

Sworn to and subscribed before me on this 13 day of July,2004.

_Bryan K. Harmon_
(Notary Public)

My commission expires on _____ 5-7-2006

Date:
7-14-04

Re: Case No. CC03-599

Ralph Lingo # 190083 48
Easterling Corr. Fac. 7A-13L
200 Wallace Dr.
Clio, Al.
36017

Hon. Judy Byrd;

 I am writing to request that you provide me with a copy of the Case Action Summary for the above-referenced case and a copy of the documents relating to a bond hearing on this case.

Thank you in advance

    Sincerely
    Ralph Lingo
    _____
    Ralph Lingo

FILED

JUL 15 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

✳ Return Receipt Requested ✳

In The Circuit Court of Houston County, Alabama

Ralph W. Lingo

v.

State of Alabama

Case No. CC 2003-599
CC 2003-1339
CC 2003-1340

## Motion To Appoint Defendant Co-Counsel

Comes now the Defendant Ralph W. Lingo Prose, with this above-styled cause and moves this Honorable Court to take jurisdiction in this matter and grant Defendant's Motion. Defendant will show the court as follows:

1) Defendant is currently represented by the Honorable Tommy L. Stinson.

2) Defendant requests to be appointed as Co-Counsel in order to have fair and equal access to the courts and material that is relevant to his defense.

3) Defendant believes that the only way he will receive a fair trial is by being appointed Co-Counsel

## Conclusion

Wherefore: Defendant prays that this Honorable Court take jurisdiction in this matter and grant Defendant's Motion to Appoint him as Co-Counsel. Or... in the alternative order a Hearing so Oral Argument can be made in support of this Motion.

Respectfully submitted on this ___ day of July, 2004

50

Penalty of Perjury

Pursuant to 28 USC 1746 Penalty of Perjury I certify that the foregoing is true and correct to the best of my knowledge.

*Ralph W Lingo*

Ralph. W. Lingo

<u>Certificate of Service</u>

I certify that I have served a true and correct copy of the foregoing on the District Attorney of Houston County, Alabama, by placing same in the United States mail 1st class postage prepaid on this __ day of July, 2004

*Ralph W Lingo*

Ralph W. Lingo



FILED

JUL 15 2004

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

RALPH LINGO

v.                                    Case No. C.C. 03-1339,40 C.C.03-599

STATE OF ALABAMA

—

## MOTION TO PRODUCE

NOW comes the Defendant Ralph Lingo ProSe, with this above stated case, and moves this Honorable Court to take jurisdiction in this matter. Defendant will show the Court as follows:

1) Defendant requests that a copy of Scatt Casper's testimony be provided for Defendant's inspection.

2) Defendant requests a transcript of all audio cassette tapes that the prosecution has in their possession, also a copy of all audio tapes that the prosecution has in its possession.

3) Any and statements made by Vonda Sue Williams, Debra Tice Blackstone and any other witness the Prosecution intends to introduce at trial.

4) A certified copy of the Dothan City Jail Booking roster, and officer's on duty the day that Defendant was arrested and placed in jail.

5) A transcript of Sgt. Tony Luker's radio call log for the day that Defendant was arrested and placed in jail.

6) Transcript of audio cassette tapes given to Sgt. Tony Luker by Debra Tice Blackstone, (tapes dated 2-26-91 ).

7) A certified copy of the depositions made by witness' in order to obtain search warrant as set out by Title 15-5-4- Code of Alabama 1975.

8) A certified copy of the search warrant, affidavit in support of search warrant and inventory list of all items seized from the Defendant's home and vehicle.

9) Any other information that the Prosecution has that may prove Defendant's innocence.

## CONCLUSION

WHEREFORE: the Defendant prays that this Honorable Court take jurisdiction inin this matter and grant Defendant's motion. Or... in the alternative

order a hearing so that oral argument can be made in support of this motion.

Respectfully submitted on this 15 day of July, 2004

*Ralph Lingo*
Ralph Lingo # 190083
Easterling Corr. Fac. 8A-86
200 Wallace Dr.
Clio, Al. 36017

## PENALTY OF PERJURY

I certify that the foregoing is true and correct to the best of my knowledge
Pursuant 28 USC 1746 Penalty of Perjury.

*Ralph Lingo*
Ralph Lingo # 190083

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the foregoing on
the District Attorney of Houston County, Alabama, by placing same in the
United States mail 1st class postage prepaid on this 15 day of July, 2004

FILED

JUL 19 2004

JUDY BYRD, CLERK
HOUSTON CO., AL

*Ralph Lingo*
Ralph Lingo # 190083
Easterling Corr. Fac.
200 Wallace Dr.
Clio, Al. 36017

(2)

53

8-25-04. File came back with no action taken.

54

'7-1-03 N. Dept.

Sept. 14, 2004 - can cont'd by agreement.

[signature]
Judge

*PLEASE STAMP THIS BY THE COURT AND KEE
ONE ON FILE MRS. JUDY BYRD. AND WILL YOU
SEND ME A COPY BACK STAMP. THANKS.*

55

8-2-04
_Date_

Inmate's Name: *Ralph Lingo*    AIS# 190083

JUDY BYRD  OFFICE OF THE CLERK
Houston _____ County Circuit Clerk
Dothan Al _____, Alabama

To Whom It May Concern:

I am presently preparing to pursue possible post-conviction remedies in Case #'s CC-03-599
CC-03-1339, CC-03-1340 _____. There are
some documents that I am in need of from your office to assist me in the preparation
of my post-conviction remedy. These documents, or at least some of them, may have
been furnished previously; however, I am constrained because of circumstances
beyond my control and must request that I be sent them at this time.
It is already established in the Circuit Courts that I am indigent, and my status has
not changed. I make this request pursuant to the Code of Alabama, 12-17-94;
Article I, Section 6 of the Alabama Constitution; The Open Records Statute of the
Code of Alabama, 36-12-40; The Alabama Rules of Criminal Procedure; and the
First and Fourteenth Amendments of the U.S. Constitution, providing me with
access to the courts, due process and equal protection of the laws. If you are unable
to provide me with the below listed documents, please explain to me why I can't
have them.

Please provide me with a copy of the following documents:

____X__ (1) Case Action Summary Sheet
____X__ (2) Record of Transcript/Conviction Report
____X__ (3) Arrest Report
____X__ (4) Police Investigator's Report
→ __X__ (5) Indictments /SEARCH WARRANTS/AFFIDAVITS
____X__ (6) Notice of Intent to Enhance as HFOA status
____X__ (7) Plea Agreements
____X__ (8) "Ireland" Forms
____X__ (9) Complaints/Affidavits
____X__ (10) Any and all pre-trial motions

*Mailed Copies out
of CAS's and
arrest Report &
Indictments &
Plea Agreements
on 8-30-04*

In short, please send me the entire Clerk's record and/or the Circuit Court's file for
the above cited case number(s). These documents are important to me. Your
earliest and most serious attention to this request is most appreciated.
Thank You.

Sincerely,

*Ralph Lingo 8-2-04*

**FILED**

AUG 03 2004

*Judy Byrd*

Case # 599                                    56

Judy Byrd keep this on file with the court clerk and please stamp this.

A motion to fire my attorney                    Aug 5, 2004
and ask the Judge to step down

Dear Judge Wyatt,                               **FILED**

                                                AUG 0 9 2004

    I am asking you to step down from my
cases. I have had several letters filed to come
before you in a hearing. You gave me a
habeus Corpus hearing for intimidating a
state witness my bond was set at two
hundred thousand dollars by Judge Barry.
    After that hearing you told me you cannot
make a decision without talking everything
over with him.
    Barry used to date Debra back in their
younger days. I wouldn't be a prisoner today
if it hadn't been for you two Judges.
    You told me that you would do what
Barry tells you to do. Do you remember that?
You work under Barry at that time. I don't
know if you still do or not.
People with rape cases haven't got a bond
higher than twenty thousand dollars. Armed
Robbery isn't more than ten thousand.
    In my belief you and Barry knew I would
have gotten out of jail, I would've hired the
best attorney, but y'all made sure that I
    ...d in jail so I couldn't hire a good attorney.

Case #599

2.    Keep on file and stamp

You made sure that I couldn't appeal your
bond because you told the court reporter not
to take anything down.
    I feel that you violated my constitutional
rights. That was the second habeus corpus
hearing in two days.
    I feel like the court has violated all of
my constitutional rights. You know I cannot
read or write. I lost everything I had because
I feel like you Judge Wyatt could not give
an honest and fair bond because of listening
to Larry.
    I remember R.L. Tice used to carry Debra
around to all the court rooms and introduce
her as his niece and y'all better take care of
her is what he would say.
    Debra came home and told me all about
everything. But Judge you hold a high bond
over my head and thats unfair to me and
you know it.
    Judge Wyatt I am asking you to resign yourself
from my case. I will subpoena you and
Larry Anderson to my trial.
    In my belief I feel like you would have
lowered my bond because you told me that
    would the first day.

Case # 599                    58

3.  keep on file and stamp

During the second day you had to talk to harry Anderson about everything. I feel like that was wrong. I don't know if harry told you Debra used to be his girlfriend in their younger days before harry got married.

I don't know what they are doing now but I feel like she has something on him.

I asked you several times for a pre-trial and you keep denying me. I also filed for a fast and speedy trial on Debra Blackstone.

I want you to step down from my case because you and harry Anderson will be subpoenaed for my case.

By the way Judge Wyatt I have asked y'all several times to get Sammy Stinson off my cases. She works for y'all and not for me.

She told me not to call or to write but once a month and only half a page. She lies to me when she tells me she's coming to see me because she doesn't.

I will file more petitions on Sammy Stinson to get her off my cases. Her letters will speak for her. She made this choice herself.

Thank You and Goodbye to both of you. Write me back if there are any problems.

59.



# The City Of Dothan
# Municipal Court



Honorable Rose Evans-Gordon
Municipal Judgte

Nancy Martin
Municipal Court Administrator

August 11, 2004

Mr. Ralph Lingo
Bullock County Correctional Facility
P O BOX 5107
Union Springs, AL  36089

Dear Mr. Lingo,

I have received your request for a copy of your search warrant.  Unfortunately we are unable to provide you with a copy of this document.

I regret any inconvenience this may cause you.

Sincerely,

Melissa Woods
Staff Assistant
Dothan Municipal Court

JUDY BYRD
PLEASE STAMP RECIEVEI
AND PROVIDE ME WITH
RECEIPT.

→ CASE: CC 2003, 000 599. 60 CASE CC 2003, 000, 1340   CASE: 1339

Post Office Box 2128
Dothan, Alabama 36302-2128
(334) 615-4150
Fax (334) 793-1369

60

Mrs. Judy Byrd                                    Aug. 5, 2004

To the clerk of the court

Will you answer a couple of questions for me?
Every legal document that comes into your office
do you stamp them?
And do dockets stay in the court clerks office?
Will you write me a letter and notarize it
and sign it and date it and mail it back
to me for my records?
Thank You Mrs. Judy Byrd

Keep on file and stamped
and mail back please.

61

To: Clerk of Courts
From: Ralph Lingo
Date: 8-15-04
Re: Criminal Background Check

8-15-04

FILED

AUG 17 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

Dear Mrs. Judy Byrd,     I am writing
this for a document to keep on file with the
Clerk of Courts. Please stamp this document.
    Please keep this document with case
number.
  CC-03-599 - 1339 - 1340
    Please put a copy in each file.


    I am asking for a Criminal Background
check
    I am asking Doug Valeska the district
Attorney to give me a criminal backgroud on
Sue Williams. D.O.B. 11-11-50. Social Security
number 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. Age 52. A Criminal
background check and FBI criminal backgroud
check.
    I ask that you provide this within 30
days from stamped letter. While I get
ready for my defence.
                    Sincerly,   8-15-04

62

Keep on file and stamped,
and mail back Please.

8-15-04

To: Clerk of Courts
From: Ralph Lingo
Date: 8-15-04
Re: Criminal Background Check

Dear Mrs. Judy Byrd,

I am writing you for a document to keep on file with the Clerk of courts. Please stamp this document.

Please keep this document with case number CC-03-599    CC-03-1339   CC-03-1340

Please put a copy in each file.

I am filing a motion for a criminal Background Check.

I am asking Doug Valeska the district Attorney to give me a criminal background on Scott A. Casper. D.O.B 7-28-59. Social Security number 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. Age 43. Criminal Background Check and FBI criminal background check.

I ask that you provide me this within 30 days. While I get ready for my defence.

30 days from this stamped letter.

Sincerely, Ralph Lingo
8-15-04

63

Please stamp this Mrs. Judy Byrd and send me a copy.

Case number CC-05-599
CC-03-1339
CC-03-1340

I filed for a motion to ask the court for all documents to be interduced to the clerk of courts, and a copy of documents and all statements.

To provide me a copy of a Search Warrant and the aduidavit of the Search warrant.

I also ask the court for Tony Luker to turn over all records, filed documents. All pictures, an inventory list of everything reguarding of Ralph Lingo's home. Aduidavid for Search Warrant  We also asked Tony Luker to provide every statement of the individual that he had spoke to. We want all diery notes. We want a list of everybody that was in my home on 4-14-03 in Henry County. I also want the time.  I want all of Sue Williams statements, ~~court statements and court statements~~. Written report and every time she had talked to Tony Luker. Date and time.

Sincerly, Ralph Lingo
8-15-06

8-15-04                                    64

I asked the clerk of courts Mrs. Judy
Byrd to send me supena forms so that I
can have people brought to court. To mail
to me at Bullock Correctinal Center. I need
over 10 for each one.
    Please Mrs. Judy Byrd mail this back
to me.
                    Sincerly, Ralph Lingo
                    8-15-04

65

8-14-04

RALPH LINGO #190083
BULLOCK CORR. FACILITY
P.O. BOX 5107
UNION SPRINGS, ALA. 36089

HONORABLE JUDY BYRD
CIRCUIT CLERK
DISTRICT COURT CLERK
P.O. BOX 6406
DOTHAN, ALA. 36302

HON. JUDY BYRD,
    WE ASK THE COURT TO HAVE, TONY LUKER,
D.P.D. TO TURN OVER ANY AND ALL EVIDENCE ON
CASE# C.C. 2003-599, C.C. 2003-1340, CC-2003-1339,
SO THAT WE MAY REVIEW THEM. IN MOTION OF
DISCOVERY, A CHECK THAT I WAS SUPPOSE TO OF
CONTROLED, THE PROPERTY OF FOREMOST INSURANCE
COMPANY, WAS NOT IN THE THIS PACKAGE. IF THIS
CHECK WAS CASHED THEN THERE SHOULD HAVE
BEEN A COPY OF THE RETURN CHECK. WE ASK
THE COURT TO INCLUDE THIS, AND ANY AND ALL
OTHER EVIDENCE TO BE INCLUDED IN "DISCOVERY"
AND SENT TO ME, VIA US POSTAL SERVICES TO
THE ABOVE ADDRESS.
                    THANK YOU,
                    Ralph Lingo

66

8-14-04

HON. JUDY BYRD.
WE ASK THE COURT TO HAVE, TODD
REGISTER. STATE FIRE MARSHALL'S
OFFICE P.O BOX 303352 MONTGOMERY. AL
3610.

TO TURN OVER ANY AND ALL EVIDENCE
ON CASE # C.C. 2003-1340. CC-2003-1339.
SO THAT WE MAY REVIEW THEM. IN
MOTION OF DISCOVERY. A CHECK THAT I
WAS SUPPOSE TO OF CONTROLED, THE
PROPERTY OF FOREMOST INSURANCE
COMPANY, WAS NOT IN THE THIS PACKAGE.
IF THIS CHECK WAS CASHED THED
THERE SHULD HAVE BEEN A COPY OF
THE RETURN CHECK. WE ASK
THE COURT TO INCLUDE THIS, AND
ANT AND ALL OTHER EVIDENCE TO
BE INCLUDED IN "DISCOVERY"
AND SENT TO ME, VIA US POSTAL
SERVICES TO THE ABOVE ADDRESS.

Ralph Lingo 8-14-04

Keep on file with the
clerk of courts and send
me a stamped copy by
the court.

Page 1
M

Case Number cc-03-599-1339-1340

8-15-04

FILED

AUG 17


JODY BYRD, CLERK
HOUSTON CO., AL

I Ralph Lingo ask the state of Alabama
drop all charges against Ralph Lingo. The
state has failed along with the city of Dothan
to show no search warrant. And no search
warrant is on file with the Houston County
Clerks office. No inventory list has been
returned to the clerk of courts. Sgt. Tony
Luker of the city of Dothan did not return
the search warrant or a inventory list back
to the clerk of courts. It has not been
returned back to the city of Dothan. There
has not been one sent back to the Hendry
County clerk of courts Gyspy Everette in
Hendry county. I have got over 20 stamped
documents by the clerk of courts of Hendry
county. There has been no search warrant
retured to the clerk of courts and there is
none on file with the clerk of Hendry
county. It has been a year and a half and
both courts, Hendry County and Houston County
have no records.

8·15·04                    68

age 2

Case number CC-03-599-1339-1340

By both courts Houston County and Hendry county had no record of the search warrant.
   There was no search warrant to search Ralph Lingo's truck on 4-14-03 in Hendry county by the city of Dothan. Or there was no search warrants to search Ralph Lingo personaly and in Hendry County in Ralph Lingo's home.
   There was no search warrant to search Ralph Lingo's truck at his home.
   There had no Inventory list of Ralph Lingo's truck. There was no inventory list of things taken out of Ralph Lingo's truck. I.E. Pictures billing file.
   Ralph Lingo Safe. There was no search warrant to search it. There was no Hendry County officer present during the search. Title 15-10-10 Title 15-10-1  Title 6-5-338  Title 15-10-2 Title 15-5-3

8·15·04                69

ge 3

Case number CC-03-599-1339-1340

Title 11-40-10

Ex Parte Borden cite as 769 So. 2nd 950 (Ala. 2000)

These title will also follow the arrest into another
county by the city of Dothan and taken back to
the city of Dothan. I was in Hendry County
of the town of Helen when the arrest was
made, For intiminating a State witness.
13A-10-123 The arrest was made outside
the Dothan city limits into another county in
town. All my rights were violated

Go to rule of a search warrant. Rule of search
warrant of the state of Alabama.
Rule 3.10
Rule 1.4 (p)
Title 15-5-8
Title 15-5-12 Time for return of execution
Title 15-5-2
Title 15-5-14

70

8-15-04

age 4

Case Number cc-03-599-1359-1340

Rule 3.11 execution and return with inventory

Rule 3.3 (A) Ala. R Crim. P.
Rule 3.7. Authority to issue search warrant
I am asking Judge White to dismiss all charges and I'm asking Judge White to dismiss the search warrant.
 I am also asking the District Attorney office to dimiss all charges.
I ask for a 30 day hearing in Houston court for all charges to be dismissed and search warrant void. I ask to be brought in front of the court for a hearing no less than 30 days. I will also ask the court for a copy stamped of these 4 letters to be stamped by the clerk of courts.
 I want the court to furnish me a copy for my file. Judge White and the district Attorney to examine all copy's in the arrest and to dismiss all charges.

Ralph L Ince   8-15-04

71

8-15-04

To Mrs Judy Byrd personaly
Reply back with a letter head
stamed and dated from you.

Mrs. Judy Byrd would you please stamp
these 4 copies and send me a copy for my
files. There extremly important documents.

Mrs. Judy Byrd,
            I have wrote you a letter
a couple of months asking if you stamp
every letter that comes through your office,
and every document that every party is
filing. If the search warrant was in the
file would it be stamped by the clerk of
courts the day that it was filed.
 If a Police or a Judge asked you
to back date a document would you do
that?
 Will you write me letter the way you
write all documents, and send me a letter
the way the court does documents.

            Ralph L Ligo  8-15-0

# THE LAW OFFICE OF
## TAMMY L. STINSON
313 N. FOSTER ST, SUITE 1 / P.O. BOX 756
DOTHAN, ALABAMA 36302
334-699-2143(OFFICE) 334-699-2221 (FAX)
tammystinson@graceba.net

ERIN DORENKOTT
LEGAL ASSISTANT

August 27, 2004

Easterling Correctional Facility
Attn: Ralph Lingo #190083
P.O. Box 10
Clio, AL 36017

RE:    IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA
        CASE NO.:    CC-03-599
                     CC-03-1339
                     CC-03-1340

Dear Mr. Lingo:

Please be advised that a Trial pursuant to the above referenced matters has been set for
**September 14, 2004 at 8:30 a.m.** at the Houston County Courthouse; Judge Jerry White
presiding

If you have any questions regarding your cases, please feel free to write our office at the
address listed above.

Sincerely,

Shelly L. Brady
Shelly L. Brady
Legal Assistant

Sir, it is my office policy to respond in a timely manner to all of my clients with a written letter. You stated in you letter that I dodged you regarding the questions you have asked. I am not exactly sure which questions you are talking about. I do not intend to dodge you, as I try to answer any questions upon receipt. Unfortunately, I cannot afford to take a collect call from everyone that I represent. Therefore, I have to limit communication with my clients that are incarcerated outside of Houston County to written form. I have never once told you to limit you letters to a half page. As far as sending letters only once a month, I think that is very reasonable. In the past, you have written a letter to me at least once a week. I regret that I do not have time to respond to every single letter when received once a week. Therefore, I have asked that you compile all questions into a letter once a month. That will allow me to respond in a more timely manner.

I understand that you want me to get a obtain warrants against Rhonda Sue Williams for breaking into your office and Les Wilton for burglary. Unfortunately, the state does not compensate me to do that. I have an agreement with the State as far as representing you and that is not included. It is my responsibility to represent you on the charges against you by the State. If you are able, I recommend that you contact your family and friends to hire another attorney to handle that matter.

You stated in your letter that you begged me for a bond hearing. The judges do not hear bond hearings on individuals who are in the penitentiary serving time. When you let me know what your EOS date is, I will be more than happy to file for a bond hearing.

I will be sending you a report outlining what has been done regarding you case. That will be sent as soon as possible.

Sincerely,

Tammy L. Stinson
Attorney at Law

74

# THE LAW OFFICE OF
## TAMMY L. STINSON
313 N. FOSTER ST, SUITE 1 / P.O. BOX 756
DOTHAN, ALABAMA 36302
334-699-2143(OFFICE) 334-699-2221 (FAX)
tammystinson@graceba.net

ERIN DORENKOTT
LEGAL ASSISTANT

August 12, 2004

Easterling Correctional Facility
Attn: Ralph Lingo #190083
P.O. Box 10
Clio, AL 36017

Dear Mr. Lingo:

I am in receipt of your letter postmarked August 6, 2004. At this time, I will address the
questions and comments included in your letter. In regard to your case in Henry County,
I only did want you ask me. In your letter dated June 15th, for instance, you demanded
that I withdraw from all of your cases. Therefore, since you requested that action, I did
file a Motion to Withdraw in Henry County. As far as Houston County is concerned,
Judge White is out of the county at this time, however, as soon as he returns, I fully
intend to talk with him about this situation. I will notify you immediately of the outcome.

In regard to the discovery on your case, I have sent you a copy of all documents I
received from the District Attorney's office. The affidavit and search warrant should
have been included, however, in researching my copies, I do not find copies either. Since
I am still your attorney at this time, I have written the District Attorney to request that
those documents be made available to the defense. I have enclosed a copy of that letter
for you records.

I am aware that you want me to subpoena the phone records from the county jail and I
intend to do that.

In regard to your case in Barbour County, you stated that I left you hanging, however, as
I have explained to you several times that you lost that appeal because you did not file in
a timely manner. If you will remember, I even sent you the response from the Criminal
Court of Appeals with the denial reason highlighted. I was not involved in your case at
the time the appeal was filed. Therefore, the outcome is not a result of action on my part.
As soon as I received notice on the decision, I forward said information to you
immediately. Therefore, I do not understand why you claim that it took me six months to
notify you.

Westlaw.

117 So. 3
22 Ala.App. 468, 117 So. 3
(Cite as: 22 Ala.App. 468, 117 So. 3)

Page 1

C

Court of Appeals of Alabama

YOUNG
v.
STATE.

4 Div. 436

May 15, 1928

Appeal from Probate Court, Covington County;
H.J. Brogden, Judge.

Petition of Roy H. Young for habeas corpus. From
a judgment dismissing the petition, petitioner
appeals. Reversed and rendered.

West Headnotes

Arrest ☞66(2)
35k66(2) Most Cited Cases
(Formerly 35k66)

Arrest and restraint on warrants executed in one
county, but issued by justices of peace in other
counties, *held* illegal (Code 1923, §§ 3272, 3274).
*468 **3 Simmons & Simmons, of Opp, for
appellant.

Charlie C. McCall, Atty. Gen., for the State.

**4 BRICKEN, P.J.

The appellant, being in the custody of the sheriff
and confined in the county jail of Covington county,
complained by petition for writ of habeas corpus
that he is being thus held without authority of law.
The petition was directed to the Honorable H.J.
Brogden, judge of probate, and in response to the
writ the sheriff produced the *469 prisoner as
therein directed, and answered said writ by

admitting that he held the petitioner as alleged, and
stated that such detention was under and by
authority of two warrants of arrest--one issued by
one R. Cornell, a notary public and ex officio
justice of the peace of Tuscaloosa county, said
warrant being directed: "To Any Lawful Officer of
Said County." The other warrant appears to have
been issued by one P.B. Shaw, a justice of the peace
of Barbour county, Ala., and directed: "To Any
Lawful Officer of Said County." The petitioner
strenuously insists that the affidavits and warrants
aforesaid are void upon their face, and shows no
authority of law to justify his detention by said
sheriff.

From the proceedings before us, we need not
discuss the insistence as to the process aforesaid
being void for uncertainty, or that no offense is
therein charged, as it affirmatively appears the
purported warrants afford no authority to the sheriff
of Covington county, Ala., for the arrest or
detention of the petitioner.

There is a constitutional provision to the effect that
no person shall be accused, or arrested, or detained,
except in cases ascertained by law, and according to
the form which the same has prescribed.

Section 3272 of the Code 1923, provides that,
when a warrant of arrest is issued by a judge of the
Supreme Court, or Court of Appeals, or circuit
court, or by a judge of any court of record, such
warrant may be executed in any county in this state.
The same section also provides, however, if said
warrant is issued by any other magistrate, it can
only be executed in the county in which it was
issued, unless the defendant is in another county;
and, when the defendant is in another county, it may
be executed therein, but only upon a written
indorsement on the warrant by a magistrate of that
county signed by him, and giving authority that the
warrant may be executed in said county. Section
3274 prohibits such magistrate from making said
indorsement unless such magistrate is satisfied from
his own knowledge, or from oral or written
statement, on oath, of some credible persons,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

117 So. 3
22 Ala.App. 468, 117 So. 3
**(Cite as: 22 Ala.App. 468, 117 So. 3)**

proving the handwriting of the magistrate issuing the warrant.

The warrants here in question bear no such indorsement of any magistrate in Covington county, Ala.; therefore it affirmatively appears that the arrest of the petitioner thereunder was without proper authority of law, and that his subsequent restraint by incarceration in the county jail is illegal. Such order should have been entered by the court below. The failure so to do is error. An order is here entered discharging the prisoner from further custody in these proceedings.

Reversed and rendered.

22 Ala.App. 468, 117 So. 3

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

JERRY MOORE V. CLYDE CROCKER
CITE AS 852 So.2d 89

Arrestee brought action against police officer for assault, false imprisonment, and other torts
after arrestee was arrested without a warrant, jailed overnight, and subsequently released without
eer haing been charged. The Circuit Court, Perry County, No. CV-99-112, Jack W. Meigs, J., granted
officer's motion for summary judgment. Arrestee appealed. The Supreme Court, Johnstone, J., held
that officer exceeded his authority when he made warrantless arrest outside the county of the city
when he was employed, and thus, did not have discretionary function immunity from suit.
Reversed and remanded.

## Municipal Corporations

Police officer exceed his authority when he made warrantles arrest in county other than the county
which contained city that employed him, and thus, officer did not hae discretionary function
immunity from arrestee's action against him for assault and other torts. Code 1975, § 6-5-338

The plaintiff Jerry Moore appeals a summary judgment in favor of the defendant Clyde Crocker, a
police officer of the City of Brent, located in Bibb County. Moore sued Crocker and other for torts
allegedly committed in arresting Moore without a warrant at Moore's home in Marion in Perry County,
transporting him to Brent, and jailing him ther overnight without charging him. Moore asserted,
among other theories, assault and false imprisonment. Crocker asserted, among other defenses, peace
officers' immunity pursuant to § 6-5-338, Ala.Code 1975. We reverse and remand.

The order by the trial court states the operative facts and reveals the dispositive issue:
    "this matter is before the Court on the motion for summary judgment of the Defendant,
    Clyde Crocker. The other Defendants have been dismissed by prior order of this Court.
        "the undisputed facts relevant to this motion are that Officer Clyde Crocker at the
    time of the events complained of was employed as a police officer by the City of Brent
    located in Bibb County, Alabama. Acting on instructions from his Chief of Police,
    Officer Crocker and Officer Stewart Deerman, also of the Brent Police Department,
    proceeded to Marion in Perry County to the home of the Plaintiff, Jerry Moore. Crocker
    had been directed by the Brent Chief of Police to arrest Moore and bring him back to
    Brent for questioning regarding items that had been reported stolen from a residence in
    Brent, Alabama. He was acting on information given him by Sharon Jones, whose mother
    was living with Mr. Moore, the Plaintiff.
        "crocker and deerman went to Moore's house and told him why they were there. Crocker
    searched Moore's house but did not find any of the items. He then handcuffed Mr. Moore
    and transported him to the City of Brent and turned him over to the Chief of Police.
    Mr. Moore was placed in jail by another officer and released the next day without ever
    having been charged. He conteds that these actions by Crocker amounted to false
    imprisonment/arrest and an assault and battery.
        "Crocker contends that he is entitled to discretionary function immunity persuant to
    Section 6-5-338[, Ala.Code 1975.] That Code section provides that every 'peace officer
    ... shall have immunity from tort liability arising out of his or her conduct in
    performance of any discretionary function within the line and scope of his or her law
    enforcement duties.' Alabama caselaw has established that discretionary function
    immunity shields police officers who make an arrest based on probable cause even if the
    person arrested is ultimately acquitted. [Moore] contends, however, that Crocker did
    not have the authority to arrest Moore because he had no warrant and because he was
    outside his jurisdiction. Prior to the [adoption] of Rule 3.3 of the Alabama Rules of
    Criminal Procedure, Section 15-10-1[, Ala.Code 1975], controlled and stated that an
    arrest may only be made with or without a warrant by officers acting within their
    respective jurisdiction. The Alabama Court of Criminal Appeals has held in Smith v.
    State, 727 So2d 147 (Ala.Crim.App. 1998), that Rule 3.3 supersedes Section 15-10-
    1. That rule provides that any law enforcement officer within the State of Alabama may
    execute a warrant anywhere within the State of Alabama. In Smith, the Court ruled that
    an officer who has probable cause to arrest may do so anywhere within the State of
    Alabama pursuant to Rule 3.3. Because it appears that it is undisputed that the Brent
    Police Officers had probable cause to arrest Mr. Moore based upon the statements of the
    witness, Crocker was authorized to arrest him.
        "Accordingly, the Court finds that Crocker is entitled to discretionary function
    immunity and his motion for summary judgment is due to be granted. The Court hereby
    grants [Crocker's] motion for summary judgement and enters judgment in his favor."

The place of the arrest, Marion in Perry County, is over 20 miles from the City of Brent in Bibb
County, and is outside the police jurisdiction of the City of Brent, which employed Crocker as a
police officer.
    Section 6-5-338, Ala.Code 1975, inoked by Crocker, provides in pertinent part:

The phrase "within the State of Alabama" merely completes the description of the category of persons who may obtain and execute arrest warrants, to include all law enforcement officers within that category. The Committee Comment to rule 3.3 so indicates:

"The rules provide a functional definition of 'law enforcement officer'. Under the definition contained in Rule 1.4(p), anyone who serves as an officer, empolyee, or agent of the State of Alabama who has a legal duty to maintain order and to make arrests (whether in a general or limited cpacity) will be considered a 'law enforcement officer' and will be able to execute arrest warrants."

We conclude that the phrase "within the State of Alabama" does not address the question where arrest warrants may be executed, but only the question who may obtain and execute them. The statutory restrictions on where arrests warrants, once issued, may be executed remain binding, to protect the public from imposters and to prevent the unexplained disappearance of people from the county.

Section 15-10-10, which the officers violated in this case, is a public safety statute. It allows a judge or magistrate in a particular county to pass on the validity of an arrest warrant issued elsewhere and to pass on the identity and authority of the person who proposes to execute the warrant before that person may take someone there into custody and away from the county. Nothing in this statute conflicts with Rule 3.3(a), Ala.R.Crim.P., so as to imply that Rule 3.3(a) supersedes or preempts the statute.

ARREST

A law enforcement officer may not obtain an arrest warrant in one county and execute it in another county without also obtaining, before executing the warrant its endorsement by a judge or magistrate of the county where the arrest is to take place. Code 1975, §15-10-10.

ROSS v. NEFF 905 F.2d 1353-54

Illega Arrest, We have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. §1983 under the appropriate circumstances.

§ 6-5-338

CIVIL PRACTICE

§ 6-5-338

§ 6-5-338

acy where the evidence indicated that one of the officers knew of recent acts of vandalism in his neighborhood, did not recognize the plaintiff's car as belonging to someone living on the cul de sac, were therefore justified in performing an investigatory stop to determine what the plaintiff and his companions were doing in the neighborhood and, when the plaintiff failed to produce his driver's license, had probable cause to arrest him. Ex parte Duvall, 782 So. 2d 244 (Ala. 2000).

Police officer and the municipality which employed him were entitled to discretionary function immunity pursuant to this section where his actions in deciding how to conduct the search of the plaintiff's son, given that he allegedly knew that the youth was suicidal, and his decision not to relay the alleged suicide threats to the probation officers went beyond checking "yes" or "no" on a form, or driving to avoid potholes, and instead required "personal deliberation, decision and judgment." Richards v. Southeast Ala. Youth Servs. Diversion Ctr., 105 F. Supp. 2d 1268 (M.D. Ala. 2000).

A police officer was performing a discretionary act and entitled to immunity from liability pursuant to this section where, faced with a situation which required him to make a difficult split-second decision between pursuing a suspect being followed by a witness and securing a well-lit accident scene with no injuries, he chose to follow the suspect/drunk driver, which decision was "an exercise in judgment and choice and [involved] what [was] just and proper under the circumstances." Ex parte Tuck of Gadsden, 781 So. 2d 936 (Ala. 2000).

Police officer's investigation of a forgery, which involved the newspaper publication of a photograph of innocent parties with statements that they were suspects in the investigation, was a discretionary activity regarding which the officer was immune from liability, absent proof he acted with malice. Key v. City of Cullman, 826 So. 2d 151 (Ala. Civ. App. 2001).

Because there was no evidence tending to show that the officer was pursuing a discretionary function, i.e., was effectuating a lawful arrest, the city failed to demonstrate that it was entitled to immunity and the trial court erred in dismissing the wrongdoer's state-law claims. Telfare v. City of Huntsville, 841 So. 2d 1222 (Ala. 2002).

Law whose express intent was to extend immunity to peace officers, and governmental units or agencies authorized to appoint peace officers, for discretionary acts performed in enforcing the laws, provided the city with discretionary-function immunity for the police officer's conduct in arresting the criminal suspect as the evidence showed the arrest was done in the line and scope of his law-enforcement du-

ties. City of Birmingham v. Sutherland, 834 So. 2d 755 (Ala. 2002), cert. denied, 537 U.S. 1018, 123 S. Ct. 537, 154 L. Ed. 2d 425 (2002).

Where police officers had probable cause to arrest and detain an individual, the act of arresting him for a felony without a warrant was discretionary, and the officers were protected under Ala. Code § 6-5-338. Lee v. Minute Stop, Inc., — So. 2d —, 2003 Ala. LEXIS 187 (Ala. June 20, 2003).

Summary judgment for a police officer in a suit arising out of the officer's arrest of an injured party, who was subsequently acquitted, was reversed as to the excessive force, false arrest, false imprisonment, and assault and battery claims; because factual issues remained as to whether the officer had arguable probable cause to arrest the injured party, the officer was not entitled to discretionary function immunity under Ala. Code § 6-5-338 as a matter of law. Borders v. City of Huntsville, — So. 2d —, 2003 Ala. LEXIS 222 (Ala. July 25, 2003).

**Evidence.**

Summary judgment on the ground of discretionary function immunity was inappropriate where a jury could reasonably determine that the defendant-police officer's arresting and subsequently instituting criminal proceedings against the plaintiff was malicious and in bad faith. The evidence, viewed most favorably to the plaintiff, suggested that the defendant had no grounds to believe the plaintiff had committed any offense whatsoever but rather simply did not like his questioning his authority or suggesting racist motivations. Walker v. Briley, 140 F. Supp. 2d 1249 (N.D. Ala. 2001).

Where a driver was cited and arrested for reckless driving after refusing a plea bargain for speeding arising out of the same incident, the citing officer was entitled to immunity under Ala. Code § 6-5-338(a) since the existence of probable cause for both the arrest and the prosecution precluded any finding that the officer acted with malice or in bad faith. The officer's observation that the driver was substantially exceeding the speed limit in a large truck in an area of hazardous construction conditions provided sufficient cause to believe the driver was committing reckless driving, and the driver's refusal to sign the belated citation justified the arrest. Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003).

**Jurisdiction.**

If alleged assault occurred outside the town's police jurisdiction, then the officer and the mayor had no discretion in exercising police authority there. Newton v. Town of Columbia, 695 So. 2d 1213 (Ala. Civ. App. 1997).

A police officer's arrest of the plaintiff outside

the county containi officer exceeded hi foreclosed his claim Moore v. Crocker, 8

**Procedure — Tria**

The court refused on discretionary fu court had not yet c non-jurisdictional q defendants/police o was, however, witho the defense at a lat after there had bee ment. Hawkins v. Supp. 2d 1356 (M.D

**Illustrative cases.**

Officer was not in nicipal law enforcer tion. Crouch v. Wh (M.D. Ala. 1995).

The city police of the plaintiff establi established law, an enjoy qualified imr false arrest and ex the officer became the owner of a n advice and suggeste law, and where th handled plaintiff w ing her in his cru F.3d 1231 (11th Cir

Officer granted action for illegal ar tion, where plaintif comply to formal n and where the weig that officer had ha and search plainti 708 So. 2d 144 (Al

Police officers we ary function when and were therefore the arrestee's ma where the arrestee in the warrant, bu officers as to the a flicting so that the to make the arre Montgomery, 732 1999).

A police officer w ary function immu force in an arrest fo reasonable trier o amount of force emp egregious and that and colored by th haired acid freaks'

§ 6-5-338   § 6-5-338                    ACTIONS                              § 6-5-338

im v. Sutherland, 834 So.
t. denied, 537 U.S. 1018.
Ed. 2d 425 (2002).

s had probable cause to
l individual, the act of
llony without a warrant
d the officers were pro-
§ 6-5-338. Lee v. Minute
—, 2003 Ala. LEXIS 187

t for a police officer in a
he officer's arrest of an
i subsequently acquitted,
le excessive force, false
ment, and assault and
use factual issues re-
the officer had arguable
st the injured party, the
l to discretionary func-
la. Code § 6-5-338 as a
v. City of Huntsville, —
EXIS 222 (Ala. July 25.

on the ground of discre-
nit⸱⸱ ⸱s inappropriate
so        determine that
cer⸱ ⸱⸱resting and sub-
criminal proceedings
s malicious and in bad
wed most favorably to
that the defendant had
e plaintiff had commit-
⸱ver but rather simply
oning his authority or
tions. Walker v. Briley,
.D. Ala. 2001).

cited and arrested for
fusing a plea bargain
t of the same incident,
titled to immunity un-
(a) since the existence
th the arrest and the
iy finding that the of-
or in bad faith. The
t the driver was sub-
speed limit in a large
izardous construction
cient cause to believe
ing reckless driving,
to sign the belated
st. Wood v. Kesler, 323

red outside the town's
the officer and the
in exercising police
v. Town of Columbia,
Ar⸱ 1997).
of        ntiff outside

the county containing the city employing the
officer exceeded his authority and therefore
foreclosed his claim of peace officer immunity.
Moore v. Crocker, 852 So. 2d 89 (Ala. 2002).

**Procedure — Trial.**
    The court refused to dispose of the case based
on discretionary function immunity where the
court had not yet considered any evidence on
non-jurisdictional questions. The denial of the
defendants/police officers' motion to dismiss
was, however, without prejudice to their raising
the defense at a later stage of the proceedings,
after there had been time for factual develop-
ment. Hawkins v. City of Greenville, 101 F.
Supp. 2d 1356 (M.D. Ala. 2000).

**Illustrative cases.**
    Officer was not immune from suit as a mu-
nicipal law enforcement officer under this sec-
tion. Crouch v. Whatley, 900 F. Supp. 1567
(M.D. Ala. 1995).
    The city police officer's actions in arresting
the plaintiff established a violation of clearly
established law, and, thus, the officer did not
enjoy qualified immunity from the plaintiff's
false arrest and excessive force claims, where
the officer became enraged when the plaintiff,
the owner of a motel, rejected the officer's
advice and suggested that he did not know the
law, and where the officer aggressively man-
handled plaintiff while arresting her and plac-
ing her in his cruiser. Sheth v. Webster, 145
F.3d 1231 (11th Cir. 1998).
    Officer granted summary judgment in an
action for illegal arrest and malicious prosecu-
tion, where plaintiff's "Notice of Claim" did not
comply to formal notice or filing requirements,
and where the weight of the evidence indicated
that officer had had probable cause to arrest
and search plaintiff. Couch v. City of Sheffield,
708 So. 2d 144 (Ala. 1998).
    Police officers were engaging in a discretion-
ary function when they arrested the plaintiff
and were therefore immune from liability for
the arrestee's malicious prosecution claim,
where the arrestee was not the person named
in the warrant, but the facts available to the
officers as to the arrestee's identity were con-
flicting so that the officers had probable cause
to make the arrest. Montgomery v. City of
Montgomery, 732 So. 2d 305 (Ala. Civ. App.
1999).
    A police officer was not entitled to discretion-
ary function immunity from suit for excessive
force in an arrest for disorderly conduct, since a
reasonable trier of fact could find that the
amount of force employed by the defendant was
egregious and that some of it was precipitated
and colored by the officer's disdain for "long-
haired acid freaks" who needed to be run out of

town. Nolin v. Town of Springville, 45 F. Supp.
2d 894 (N.D. Ala. 1999).
    Officers' failure to comply with the manda-
tory written report requirements was not a
proximate cause of victim's death and the mu-
nicipality could, therefore, not be held liable for
the acts of the officers. Williams v. City of
Montgomery, 48 F. Supp. 2d 1317 (M.D. Ala.
1999), aff'd, 200 F.3d 821 (11th Cir. 1999).
    Full summary judgment should have been
granted where the city made a prima facie
showing that the officer arrested the defendant
with probable cause and without bad faith or a
malicious or willful intent, and the defendant
did not refute this showing before the partial
summary judgment was entered. Ex parte City
of Montgomery, 758 So. 2d 565 (Ala. 1999).
    Defendants were granted immunity where
they made an initial showing that they were
engaged in a discretionary function, the execu-
tion of a valid search warrant, and the plaintiff
could produce no substantial evidence indicat-
ing that the defendants' conduct was so egre-
gious as to amount to willful or malicious
conduct or conduct engaged in in bad faith.
Moore v. Adams, 754 So. 2d 630 (Ala. 1999).
    The claims of plaintiffs, employees of a flea
market vendor, against the City for the conduct
of a police officer who arrested and handcuffed
them, although there was no evidence that they
knew the merchandise they were selling was
unauthorized and/or that its sale would consti-
tute theft of a trademark in violation of § 13A-
8-10(b), were barred by this section, which
provides peace officers with immunity, as well
as by their failure to file a timely notice of claim
with the City as required by § 11-47-23.
Scarbrough v. Myles. — F. Supp. 2d —, 2000
U.S. Dist. LEXIS 11821 (S.D. Ala. July 28,
2000), rev'd on other grounds, 245 F.3d 1299
(11th Cir. 2001).
    The police officer who arrested two vendors of
trademarked goods without establishing
whether the vendors knew that the goods they
sold violated trademark laws was entitled to
qualified immunity where the officer violated
no clearly established law in formulating prob-
able cause, and his co-defendant, the testifying
officer, was entitled to absolute immunity in
spite of challenges to his credibility. Probable
cause does not require an arresting officer to
prove every element of a crime or to obtain a
confession before making an arrest Scarbrough
v. Myles, 245 F.3d 1299 (11th Cir. 2001).
    When police officer failed to abide by act, and
failed to impound driver's car, the officer, the
city, and the police chief were liable for statu-
tory negligence; if the car had been impounded,
the intoxicated driver, who cause fatal accident
five hours after being stopped by the police
officer, would not have had ready access to it.

105

## § 11-40-10. Police jurisdiction; territorial operation of ordinances for enforcement of police or sanitary regulations.

The police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits, and in cities having less than 6,000 inhabitants and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town.

Ordinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof shall have force and effect in the limits of the city or town and in the police jurisdiction thereof and on any property or rights-of-way belonging to the city or town. (Code 1907, § 1230; Code 1923, § 1954; Code 1940, T. 37, § 9.)

This section is constitutional. White v. City of Decatur, 225 Ala. 646, 144 So. 873 (1932).

Alabama's police jurisdiction statutes under which residents of unincorporated community on outskirts of city while denied right to vote in municipal elections were subjected to city's police and sanitary regulations, to criminal jurisdiction of city's court and to city's power to license businesses, trades and professions, were rational legislative response to problems faced by the state's burgeoning cities, and violated neither equal protection clause nor due process clause of fourteenth amendment. Holt Civic Club v. City of Tuscaloosa, 435 U.S. 914, 99 S. Ct. 383, 58 L. Ed. 2d 292 (1978).

Statute has statewide application. — Alabama statutes, including statute providing that municipal police and sanitary ordinances shall have force and effect in the limits of the city or town and in the police jurisdiction thereof and on any property or rights-of-way belonging to the city or town had statewide application and it was irrelevant that named defendants were local officials where those officials were functioning pursuant to a state-wide policy and performing a state function, and thus the convening of a three-judge district court was proper to hear constitutional attack on such statutes. Holt Civic Club v. City of Tuscaloosa, 435 U.S. 914, 99 S. Ct. 383, 58 L. Ed. 2d 292 (1978).

Power of state legislature. — The state legislature had power to confer on cities the power to exercise police jurisdiction over properties belonging to the city situated outside and beyond the general police jurisdiction of the city. City of Birmingham v. Lake, 243 Ala. 367, 10 So. 2d 24 (1942).

"Police jurisdiction" is a matter separately determined by the legislature and delegated to the municipalities alone. Since a municipality cannot barter away a governmental power specifically delegated to it by the legislature, it follows that it also cannot waive or relinquish such power. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So. 2d 242 (1975).

Section part of every municipal charter. — This section, being a general law, is considered a part of every municipal charter. Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 122 So. 2d 757 (1960).

Section in effect amended by section 11-51-91. — Since the application of this section would, in some sections of the state, create or result in an overlapping police jurisdiction, it was in effect amended and made more specific and directory in its application, with particular reference to overlapping territory, by § 11-51-91. Town of Graysville v. Johnson, 33 Ala. App. 479, 34 So. 2d 708 (1948). See note to § 11-51-91.

This section is not all encompassing, and it is not to be inferred that a city may exercise any and every police power over the zone outside its corporate limits, styled its "police jurisdiction," which it may exercise within its corporate limits. Roberson v. City of Montgomery, 285 Ala. 421, 233 So. 2d 69 (1970).

Power to enforce zoning regulations does not extend beyond municipal limits. Town of Gulf Shores v. Lamar Adv. of Mobile, Inc., 518 So. 2d 1259 (Ala. 1987).

Power extended to "adjoining territory" which is outside the city. — This section does not purport to add to the city's territorial extent, but does give the city the power to exercise certain specified authority called police jurisdiction within adjoining territory. Ex parte Wilson, 269 Ala. 263, 112 So. 2d 443 (1959).

The "police jurisdiction" exercised outside the corporate limits of a city covers territory that is not a part of the corporate body of that city, but is described in this section as "adjoining territory." The authority exercised within

§ 15-10-1                    CRIMINAL PROCEDURE                    § 15-10-1

## CHAPTER 10

## ARRESTS

### Article 1

### Arrest Before Indictment

Sec.
15-10-1.  Authority to arrest.
15-10-2.  Execution of warrant.
15-10-3.  Warrantless arrest; grounds — Domestic violence report.
15-10-4.  Warrantless arrest; execution.
15-10-5.  Repealed.
15-10-6.  Offense committed before judge.
15-10-7.  Citizens arrest; grounds.
15-10-8.  Notice of arrest for capital felony.
15-10-9.  Escape of arrestee.
15-10-10. Place of execution of warrant.
15-10-11. Pursuit into other county.
15-10-12. Execution of warrant in county other than issuing county.
15-10-13. Endorsement of arrest by judge.
15-10-14. Detention for shoplifting.

### Article 2

### Arrest After Indictment

15-10-30. Custody of defendant.

### Article 3

### Issuance and Execution of Writ

15-10-40. Generally.
15-10-41. Felony indictment; form of writ.

Sec.
15-10-42. Misdemeanor indictment; form of writ.
15-10-43. Number issued.
15-10-44. Execution authority.
15-10-45. Place of execution.
15-10-46. Copy of writ to jailer.
15-10-47. Return of writ.

### Article 4

### Bench Warrants

15-10-60. Definition.

### Article 5

### Arrest in Other Counties

15-10-70. Notice of arrest.
15-10-71. Removal order.
15-10-72. Endorsement of removal order.
15-10-73. Application for employment of guard in removal.
15-10-74. Fresh pursuit.

### Article 6

### Fingerprinting of Persons Taken Into Custody

15-10-90. Duty of sheriff.
15-10-91. Maintenance of records.
15-10-92. Equipment furnished to sheriff.
15-10-93. Cards.

## ARTICLE 1

## ARREST BEFORE INDICTMENT

## § 15-10-1. Authority to arrest.

An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable, acting within their respective counties, or by any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county.

**Cross references.** — This law is referred to in:
§ 15-10-7.
  Constitutional provision, accusation, arrest and detention, etc., Const. Ala., art. I, § 7.
  Municipal court, issuance of arrest and search warrants, § 12-14-32.
  Use of force in making arrest or preventing escape, § 13A-3-27.
**C.J.S.** — C.J.S., Arrest, §§ 10 et seq., 43 et seq.
**ALR.** — Burden of proof in civil action for using unreasonable force in making arrest as to rea-

sonable of force used. 82 ALR4th 598.
  Denial of, or interference with, accused's right to have attorney initially contact accused. 18 ALR4th 669.
  Validity, in state criminal trial, of arrest without warrant by identified peace officer outside of jurisdiction, when not in fresh pursuit. 34 ALR4th 328.

278

83

PLEASE STAMP RELIEVED
AND PROVIDE ME WITH COPY OF RECEIPT. 9-2-04

Ralph Lingo
Bullock County Correctional Facility
P O Box 5107
Union Springs, AL 36089

Judy Byrd
Circuit Clerk / District Court Clerk
Houston County
Dothan, Ala. 36302

Re: Dismissal of said Charges - Case: CC 2003 000 599, 60

Case: CC 2003 00 1340, 00  Case: CC 2003, 00, 1339, 00

Judy Byrd,

I'm filing for a Dismissal of all charges.
The City of Dothan has no record of a
search warrant. I have a signed letter
from Melissa Woods, STAFF ASSISTANT, Dothan
Municipal Court stating this fact. Or I ask
for a hearing in the next 30 days for
a judge to rule on this. If Houston County
doesn't drop these charges, I have no other
choice but to file civil suit against you.
I'll ask for (1) million dollars. 30 days is
dead-line

FILED

SEP 03 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO. AL

(Clerk Stamped Sealed)
(mail copy to me please)

84

9-3-04

FILED

SEP 07 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

Case #: CC-03-599
           CC-03-1339
           CC-03-1340

Judy Byrd,
District Clerk, Houston County Court Clerk:


I received a letter, advising me, that
I'm to be going to trial, September 14, 2004
at 8:30 a.m. at the Houston County Courthouse,
Judge Jerry White presiding.

What I want to know, is this a trial on
my cases, or a trial on Search Warrants.
If this is a trial, I ask that the trial be
stopped at once. I haven't got my deffense
ready. Every thing I asked my attorney to get
have not be done. We are not ready for trial.
If the State, take me to trial, after I notifie
them, can call Civil procedure. I want
the State to be fair to me, and I want to
be fair to the State. We are not ready for trial.

Ralph Liego 9-3-2004

85

**FILED**

SEP 2 3 2004

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

Ralph Lingo
-us-
State of Alabama
in the county of Houston county

CASE No. CC-2003-000599
Case No. CC-2003- 1339
Case No. CC-2003-1340

I, mr Ralph Lingo, ask the circuit of Houston
County for the following subpeonas. These
doc umets, These documents are for the
Henry county SHeriff Departmet to reply to
all requests and documents,

I, Ralph Lingo, ask the Circuit Court of
Houston county for the following subpeonas.
We ask for all of the requets to be met
Under a cout order before my trial. We
ask that there be no tril until these
requests are mre met for my defence,
ANd We ask for two Weeks to examine
these records before my trial. We ask
the Judge to grant Ralph Lingo these
requests and no attorney can Waive this.

aLL CLERK oFFice SEAL Stamp.

1. I request to have all records of Troy Silva with the Henry County Sherriffs Department. (Investigator) 101 W. Court Sq. suite G. Abbeville, Al. I request all records from the dates of 05, 07, 2003, 05-17-2003, 04-14-03, from the time of 5:00 A.M., until 10:00 P.M.

I'm also requesting the dispatch log sheets, all transcripts, all radio transmissions from Troy Silva to dispatch and from dispatch to Troy Silva, (Investigator) with the Henry County Sherriffs Department. I only request for times and dates above.

2. I am also requesting a background check (criminal) from N.C.I.C., and F.B.I. I also request a work report of Troy Silva (Investigator) with the Henry County Sheriffs Department.

3. I am requesting dispatch log on the radio, on 04-14-2003, 05-7-2003, 05-17-2003.

4. I am requesting any Alabama Uniform arrest reports from todays date back two years, or any type of report or any statement.

5. I am requesting any type of Report, criminal or otherwise, done by any Henry County Sheriffs Department personnel from three years back to todays date.

6. I ask of the Henry County Court to furnish me with a log sheet of each Judge on 04-14-2003.

7. I ask for dispatch log sheets on 04-14-2003 and 05-07-2003 from 6:00 A.M. to 6:00 P.M.

8. I ask that Henry County Sheriff, Lawton Ed Armstrong provide me with a copy of a liability bond, and a workmanship liability bond. It needs to be stamped by the circuit court clerk, (Gypsy Etheridge), from the date he was deputized. We also ask for any paper work from the time he was being deputized. All applications, all pictures, copy of fingerprint card. The officer we are talking about is Tony R. Luker of the Dothan Police Department

9. We ask that the Henry County Sheriff, Lawton E. Armstrong, provide me with a copy of the law that deputizes deputies. Also, to provide me with a copy of all cases Tony R. Luker has worked in Henry County.

10. I ask that you provide me with a copy of payroll checks for the time Tony R. Luker worked for the Henry County Sheriffs Department, or any checks given to him for any reason, along with the copy of the reason it was written. I Also ask for any and all reciepts That he gave the Henry County sheriffs Department for any reason, at any time. We also ask for a list (CONTINUED)

90

10. (continued) of complaints made against Tony R. Luker at any time he was working for the Henry County Sheriffs departments. We also ask for a list and a criminal background check on Tony R. Luker from the time he was deputized.

11. We also ask the sheriff of Henry County to give me (Ralph Lingo) a typed letter to name each one of his deputies and investigators on 04-14-2003, that were at Ralph Lingo's home

12. I am also requesting a copy of the search warrant and affidavet to support the search warrant, and a content list.

13. We ask that you give a written statement stating that you gave Tony R. Luker the authority To go to Henry County and search Ralph Lingo's home. (or anyone else of the Dothan City Police Department)

14. Would the Henry County Sheriffs Department be liable for any damages caused by Tony R. Luker any time he was in your county to arrest someone or to do a search of property without a Henry County deputy present. I ask for a written statement from Lawton Ed. armstrong, and for it To be notorized. We ask for this within 30 days.

We ask Sherriff armstrong to meet our request under a court order. It will be Used during trial

COUNTY of Houston. Case No. CC-2003-000.599
    COUNTY              Case No. CC-2003-1339
                        Case No. CC-2003-1340

Defendant, Ralph Lingo, asks for
these documents for his defense
during his trial. We ask Judge White to sign
This under a court order. Signature_____

Stamp and sign by Henry County
clerk of court

Sign_____        Stamp

Date_____        time_____

Sheriff of Henry county lawton Ed
armstrong.
Sign_____   Stamp of Sheriff seal

Date_____   time_____

Mail back to Houston County
clerks office to Judy Byrd.
        P.O. drawer 6406  Dothan. Al. 36302

Judy Byrd
Sign_____   Stamped seal of court

Date_____  time_____
    depenent Name, Ralph Lingo   date. 9-21-2004

92

93

Miss JUDY BYRD Will You staLpE EACh PACKECt
for me the sheRiFF Will not staLpE this
for me, he is BEiNG REAL hARd oN the
iN MARC timies I had No Ways to staLpE
this, Will You BLESS staLpE this
BLESS BLESS.

9-21-2004
Ralph Leigo

94

GYPSY ETHRIDGE
CIRCIT CLERK of HENRY COUNTY HENRY
COUNTY COURT HOUSE
101 court Square, Suite J
Abbe Ville, Alabama 36310-2135

CIRCUIT CLERK OF HENRY COUNTY
HENRY COUNTY COURTHOUSE
    CLERK SEAL Stamp
   and give to the SHERIFF's
Lawton Ed ARMSTRong


HENRY COUNTY
SHERIFF's DEPARTMENT
101 W. Cout Square Suite G
Abbe Ville, AL 36310

   SEAL Stamp FROM SHERIFF'S


aLL CLERK oFFice SEAL stamp

9-23-2004

To any Curcuit Judge     = Case on:

I Ralph Lingo Am praying to the court to grant an order for medical attention. ON Sept 23, 2004 at approximatly 9:00 Am I was Assaulted by C/o William of the Houston Co. Jail. I have request to the Houston Co. Jail for medical Attenion, in which I was given 2 Tynelodd. My Head was Assulted with 4 powerful Blows which has resulted in scriver Tooth and Gum pain, along ~~entire~~ with Jaw and Neck pain. My shoulder and complete Back has Accute pain also. After being Assulted by the C/o's Fist, I was knaked to the floor, repeatedly Kicked and hit with fist and feet after being hand cuffed. Also I was choked to the point of unconiousness. Judge I have requestd an Investigation and possible criminal charge in which they all have laughed and humileated me. Judge thier was no cause what so-ever for any of this to accure. Again I pray that you will at least look into this matter to I Am in great pain. Please Help as soon as possible

**FILED**

SEP 27 2004

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

Ralph Lingo 9-23-2004
Time: 9:00 p.m

97

SERial   Number - 111 33  44 18 18


To Doug Valeska,

I, Ralph lingo, ask you for an investigation of the Houston county jail They had a cell search on 09-23-04, in MPod, and instructed everyone to face the dayroom wall, spread Eagle style. We were told not to turn our head or we would be sprayed with mace and thrown on the ground. the search began, and they entered my cell, M-18. They said, and I quote "your damn rooms will be Fucked up when you return." While I was still facing the wall as I was told, I asked them to please not destroy my legal work. An officer then struck me in the head with his fist four times, then grabbed me by my neck choking me, while other officers grabbed my legs. I passed out. When I came to a few seconds later, I was handcuffed, and officers were kicking me in the ribs. Then the officer back, and slammed his knee into my back.

Ralph ino                    (officer Williams)

(2,)                                                                98

serial number ~ 111 33 44 1818

When the search was over, they all laughed about it, and said, quote "That is a sample of what happens when the task force comes for you". I had already had a problem with my teeth, and have been repeatedly refused medical attention. Now, after this incident, one of my teeth is loose and badly bleeding. There is a sharp pain in my back and arm. I have asked for emergency medical attention and have been refused. I would like you as district attorney to investigate these actions and turn it over to a state and federal investigator. I would like to file a warrant on the officer who attacked me. I would like a court order to examine the video tape of the M Pod Hallway security cameras from 8:00 a.m. to 10:00 a.m. on 09-23-04.

(Office Williams)

Rafel Leiga  9-23-2004

99

CIRCUIT CLERK OF HENRY COUNTY HENRY
COUNTY COURTHOUSE CLERK SEAL Stamp
and give to the SHERIFF'S
Lawton Ed ARMstRong


HENRY COUNTY SHERIFF's DEPARTMENT
101 W. Cout Square Suite G
Abbeville, AL 36310



SEAL Stamp FROM SHERIFF'S
all CLERK OFFICE SEAL Stamp

**FILED**

SEP 23 2004

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

100

Case No:    CC-2003-000.599
Case No:    CC-2003-1339
Case No:    CC-2003-1340

Ralph Lingo
   -us-
State of Alabama
in the County of Houston County

I, mr. Ralph Lingo, ask the Circuit Court of
Houston County for the following subpeonas,
These documets, These documents
are for the Henry County SHeriff
Departmet to reply to all requests
and documents,

I, Ralph Lingo, ask the Circuit court of
Houston County for the following subpeonas.
we ask for all of the requets to be met
under a cout order before my trial. we
ask that there be no tril until these
requests are met for my defence. AND
we ask for two weeks to examine these
records before my trial. we ask the
Judge to grant Ralph Lingo these
requests and no attorney can waive this.

aLL CLERK oFFice SEAL Stamp

1. I Request to have all records of troy Silva with the Henry County Sheriff's Department (Investigator) lol W. Court Sq. Suite G abbeville, Al. I request all records from the dates of 05-07-2003, 05-17-2003, 04-14-03 From the time of 5:00 a.m., Until 10:00 p.m.

I'm also requesting the dispatch log sheets, all transcripts, all radio Transmissions from Troy Silva to dispatch and from dispatch to Troy Silva (INVestigator) with the Henry County Sheriff Department. I only request for the time and dates above.

122

2. I'm also requesting a background check (criminal) from N.C.I.C. and the F.B.I. I would also request a work report of Troy Silva (Investigator) with the Henry County Sheriff Department.

3. I am requesting dispatch log on the radio on 04-14-2003, 05-07-2003, 05-17-2003.

4. I am requesting any Alabama Uniform arrest reports from two years back up until todays date, or any type of report or any statement

5. I am requesting any type of report, criminal or otherwise, done by any Henry County Sheriffs Department personnel from three years back to present date

103

6. I ask of the Henry County Court to furnish me with a log sheet of each Judge on 04-14-2003

7. We ask for dispatch log sheet, on 04-14-2003 and 05-07-2003 from 6:00 a.m. to 6:00 p.m.

8. We ask that Henry County Sheriff Lawton Ed Armstrong provide me with a copy of a liability bond, and a workmanship liability bond. It needs to be stamped by the Circuit Court clerk (Gypsy Etheridge) from the date he was deputized. We also ask for a copy of any paperwork from the time he was being deputized. All Applications, All Pictures, copy of fingerprint card. the officer we are talking about is Tony R. Luken of the Dothan Police Department

9. We ask that the Henry County Sheriff, Lawton Ed Armstrong, Provide me with a copy of the law that deputizes deputies. Also, Provide me with a copy of all cases Tony R. Luker has worked in Henry County.

10. We ask that you Provide me with a copy of payroll checks of the time Tony R. Luker worked for the Henry County Sheriffs Department or any check given to him for any reason. and a copy of the reason it was written. Also with any reciept that he gave the Henry County Sheriffs Department for any Reason, at any time. We also ask for a list (continued)

105

10. (continued) of complaints made against Tony R. Luker at any time he was working for the Henry County Sheriffs Department. We also ask for a list and a criminal background check on Tony R. Luker from the time he was deputized.

11. We also ask the sheriff of Henry County to give Ralph Lingo a typed letter to name each one of his deputies and Investigators on 04-14-2003 that was at Ralph Lingo's home.

12. I am also requesting a copy of the search warrant and affidavet to support the search warrant, and a content list.

13. We ask that you Give a written statement stating that you gave Tony R. Luker of the Dothan City Police Department, or anyone else the Authority to go to Henry County and search Ralph Lingo's Home.

14. Would the Henry County Sheriffs Department be liable for any damages caused by Tony R. Luker any time he was in your County to arrest someone or to do a Search of property without a henry county deputy present. I ask for a written statement from Lawton Ed. Armstrong and it to be notorized. I ask for this within 30 days.

We ask Sheriff Armstrong to meet our request under a court order. It will Be used during Trial

107

COUNTY of Houston
County

Case No: CC-2003-000,599
Case No: CC-2003-1339
Case NO: CC-2003-1340

Defendant, Ralph Lingo, asks for
these documents for his defense during
his trial. We ask for Judge White to sign this
under a court order    SIGNATURE _____

STamp and sign by Henry county
clerk of court

Sign _____    stamp of court seal
Date _____    time _____


Sheriff of Henry county Lawton Ed Armstrong
Sign _____    stamp of Sheriff seal
Date _____    time _____


mail back to Houston county clerks
office: Judy Byrd
         P.O. drawer 6406
         Dothan, Al. 36302




deponent Name, Ralph Lingo date: 9-21-2004

108

GYPSY ETHRIDGE
CIRCUIT CLERK OF HENRY COUNTY
HENRY COUNTY COURTHOUSE
101 Court Square, Suite J
Abbeville, Alabama 36310-2135

109

Case No: CC-2005-000599
Case No: CC-2003-1339
Case No: CC-2003-1340

Ralph Lingo
   -vs-
State of Alabama
in the county of Houston county

I, mr, Ralph Lingo, ask the circuit of Houston
County for the following subpeonas, These
documets, These documents are for the
Henry county Sheriff Departmet to reply to
all requests and documents,

I, Ralph Lingo, ask the circuit court of
Houston County for the following subpeonas.
We ask for all of the requets to be met
under a cout order before my trial. We
ask that there be no tril until these
requests are met for my defence, ANd we
ask for two weeks to examine these
records before my trial. We ask the Judge
to grant Ralph Lingo these requests and
no attorney can waive this,

**FILED**

SEP 2 3 2004

JUDY BYRD, CLERK
HOUSTON CO., AL

ALL CLERK office SEAL Stamp

1. I Request to have All records of Troy Silva with the Henry County Sheriffs Department. (Investigator) 101 W. Court Sq. Suiete C. Abbeville, AL. I Request All Records from the date's of, 5, 7, 2003, 5-17-2003, 4-14-03, from the time of 5:00 Am until 10:00pm

I'm Also requesting the dispatch Log sheets, All transcripts, All radio transmissions from Troy Silva to dispatch And From dispatch to troy Silva, (Investigator) with the Henry County Sheffif Department. I only request from time And date's Above.

111

2. I'm Also requesting A background Check (criminal) from N.C.I.C And the FBI. I would Also request A work Report of troy Silva (Investigator) with the Henry County sheriffs Department.

3. I Am Requesting Dispatch Log on the Radio, on 4.14.2003, 5.7.2003, 5.17.2003.

4. I Am Requesting Any Alabama Uniform Arest reports from todays Date Back two years, or Any type of report or Any Statement.

5. I Am Requesting Any type of Report Criminal or otherwise done by Any Henry County shefiffs department personell from Now to three Years Back.

112

6. I Ask of the Henry county Court to Furnish me with A log sheet of each Judge, on 4.14.2003.

7. We Ask for dispatch log sheet, on 4.14.2003. And 5.7.2003. From 6:00 Am to 6:00 pm.

8. We Ask that Henry county Sheriff Lawton Ed Armstrong, to provide me with A copy of A Liability Bond. And A workmanship Liability Bond, And It needs to be stamped By the Circut Court Clerk (Gypsy Ethridge) From the Date he was deputized. We Also Ask for A copy of Any paper work, From the time he was being deputized. All Applications, All pictures, copy of fingerprint card. the officer we Are talking About is tony R Luker of the Dothan Police Department.

113

9. We Ask that the Henry County Sheriff Lawton Ed. ARmstrong, to provide me with A copy of the Law that deputizes deputies. Also, provide me with A copy of All case Tony R Luker Has worked in your county, Henry county.

10. We Ask that you provide me with A copy of payroll checks, of the time Tony R Luker worked for the Henry County Sheriffs department, or Any check given to him for Any Reason, And A copy of the reason it was written. Also with Any reciept that he gave the Henry county Sheriffs department for Any Reason, At Any time. We Also Ask for A List

114

continued of complaints made Against tony
R. Luker. At Any time he was
working for the Henry County
Sheriffs department. We Also
Ask for A List And A criminal
Background check on tony R.
Luker, from the time he. was
deputized.

11. We Also Ask the sheriff of
Henry county to give Ralph Lingo
A typed Letter, to name each
one of his deputies or investigators
on 4.14.2003, that was A Ralph
Lingo's Home.

12. I Am Also requesting A copy of
the search warrent in Afidauet
to support the search warrent. And
A content List.

115

13. We Ask that you give A written statement, stating that you gave tony R Luker the Authority to go to henry county And search Ralph Lingo's Home. (Tony Luker of Dothan City Police Department), or Anybody Else.

14. Would the Henry County Sheriffs Department be Liable For Any damages caused by Tony R Luker Any time he was in your county to Arrest someone or to do A search of property without A Henry County Deputy present We Ask For A written statement from Lawton Ed Armstrong And it to be notorized. We Ask for this within 30 days

We Ask Sheriff Armstrong to meet our Request under A court order. It will be used during trial.

County of Huston
County

Case No. CC-2003-000.599
Case No. CC-2003-1339
Case No. CC-2003-1340

216

Defendant, Ralph Lingo, asks
for these documents for his defense
during his trial. We ask for Judge White
to sign this under a court order.

SIGNATURE: _____

Stamp and sign by Henry County
clerk of court.

Sign_____  stamp

Date_____  time_____

Sheriff of Henry County Lawton Ed
Armstrong
sign_____  stamp of sheriff seal

Date_____  time_____

mail back to Houston county clerks
office to: Judy Byrd
            P.O. Box 6406
            Dothan, Al. 36302

This copy is to be returned to Ralph
Lingo, All CLERK OFFICE SEAL Stamp,
depenent Name. Ralph Lingo  date, 9-21-2004

GYPSY ETHRIDGE
CIRCIT CLERK OF HENRY COUNTY HENRY
COUNTY COURT HOUSE
101 court Square, Suite J
Abbe Ville, Alabama  36310-2135

118

CIRCUIT CLERK OF HENRY COUNTY
HENRY COUNTY COURT HOUSE
CLERK SEAL stamp and give to the
SHERIFF's Lawton Ed ARMstRong


HENRY COUNTY SHERIFF's DEPARTMENT
101 W. Cout Square Suit G
Abbe Ville. AL 36310


SEAL Stamp FRom SHERIFF's

ALL CLERK OFFice SEAL Stamp

Case No: CC-03-599, CC-03-1339, CC-03-1340

Mr. Ralph Lingo
-vs-
State of Alabama in the county of
Houston County

I, Mr. Ralph Lingo, ask the circuit
Court of Houston County for the
following subpeonas. These documents
go to the city of Dothan Police
Department for documents to be
answered and divided to. We want
copies of all documents. We ask for
a court order for these documents.

# FILED

SEP 2 3 2004

_Judy Byrd_

JUDY BYRD, CLERK
HOUSTON CO., AL

aLL CLERK office SEAL stamp.

120

1. I'm requesting all dispatch log sheets, transcripts, radio calls from dispatch to police units, and police units to dispatch, all phone records, cellular phones also. All police reports and statements from the following police departments on 04-14-2003, 05-07-2003, from 6:00 A.M. to 6:00 p.m. from Tony R. Luker.

2. On 04-14-2003, I want a copy of Alabama Uniform arrest Report from each Investigator and each police officer who went to Abbeville, of Henry County to the home of Ralph Lingo and any other type of form that has been filled out.

3. I want a list of everyones name who went to Ralph Lingos house.

4. I want a copy of radio transcripts and log sheets from each police officer and investigator plus any type that has been filled out.

121

5. We ask for a copy of the search warrant and the affidavit to support the search warrant and we ask Tony R. Luker to provide a copy of a liability bond or a copy of a workmanship liability bond or any other type of bond to work outside the city limit territory or to work outside of Houston County territory since 1991, or to work in Henry County. If you hold any type of liability bond It must be stamped by Gypse Etheridge, circuit clerk of Henry County, since the day you have got deputized. It must show on record in Henry County by Gypse Etheridge, circuit clerk of Henry County. We ask for all liability bonds by Henry county to allow Tony R. Luker to work in Henry County.

6. On 5-7-2003, from 6:00 A.M to 6:00 P.M, we ask for a copy of all dispatch log and transcript from each Unit to respond to the arrest of Ralph Lingo from the city of Dothan Police Department to Headland of Henry County. We want each officer's name and a copy of radio Transcripts and log sheet.

7. On 5-7-2003 the police officer went to Henry county from the city of Dothan to pick up Ralph Lingo. He was pulled over by city of Dothan police officer, unmarked car of Tony R. Luker and State fire Marshall Todd Register. Tony Luker radioed back to the city of Dothan Police Department and the city of Dothan came to Headland. One of the police officers in uniform Handcuffed Ralph Lingo, put Him in the back of the police car and transfered Him from Headland of Henry county to the city of Dothan Jail in Houston county. (Continued on next page)

123

7. cont.
I want the officers name and badge number, And copy of the liability bond to go outside the county. I want a copy of all police reports from the officer, and all Alabama Uniform arrest Report and I want the city of Dothan to provide me with a copy of the city of Dothan territory limits. I'm asking for all of this in the next 30 days. I'm asking for the city of Dothan to furnish all reports we have asked for. More reports may be asked for at a later date during the investigation.

8.
On 5-7-2003, I asked the city of Dothan Jail to provide me a copy of the tape on security camera of the time of 12 p.m from arrival from the time I got out of the police car and from the time I went into the city Jail. I want the camera system inside docket and docket room. I want the camera of hall way through the Jail

124

8.  (cont.) I want the camera system for 72 hours from the time I was there to the time I left. I want the time I was booked in to show the time I was standing at the window being booked. I also want the camera system inside the control room for 72 hours from 5-7-2003. I also want camera system from inside and outside the jail on 4-14-2003 from 6:00 a.m. to the last 15 days of recording.

9.  We ask for all cassete tape be transcribed. We would also ask to listen to every tape after it is transcribed.

10.  James H. Johnson. 1305 Fleetwood Rd. Dothan, Al. 36303. We want to listen to all recorded statements given to the city of Dothan and all police reports given to Tony R. Lußer of each time.

11. We want every phone call from Debra Blackstone, 402 Emmons dr. Dothan, Al. 36301 to the city of Dothan dispatch requesting a police unit be sent to her address in the last four years. We ask for a copy of all 911 tapes from this address. We ask for all police reports taken from this address for the last four years. Also for all Alabama Uniform Arrest Reports and all radio calls from police unit to dispatch and from dispatch to police unit.

12. I want a criminal background check with the F.B.I. and your local police department on Thomas Richard Spradlin s.s. number 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.

13. We want all police reports from James H. Johnson 1305 Fleetwood Rd. Dothan, Al. 36303, or Ralph Lingo from the same address. We want all Alabama Uniform Arrest reports and any other police report that was filled out from this address.

13. (cont.) We also want all dispatch log sheets in the last four years from this address and 911 tapes from this address.

14. We also want all local police reports, taylor police reports, + county police reports from steve anderson at 1720 Bruner RD. Lot D Dothan, Al. 36301. and all recorded statements, all police reports logged from the city of Dothan and a criminal background check from your local police Department and the F.B.I.

15. We also want a criminal background check on Scott A. Casper S.S.N. 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 with your local police Department and the F.B.I., along with a credit report with both companies.

16. I want a local and F.B.I and a credit report by both credit companies for Vonda Sue Williams ssn 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

127

17. We ask for the city of Dothan Police Department to respond to all request in 30 days and we are asking for the court for a court order for all these answered and copied of all documents for Ralph Lingo defense. These are very important to Ralph Lingo's trial. More documents might be asked for during these investigations.

STamp by Judy Byrd, court seal

COUNTY OF Houston    CASE NO. CC-2003-000,599
    County          CASE NO. CC-2003-  1339
                    CASE NO. CC-2003- 1340

I ask that Judge white sign
and stamp all these documents.
SiGnature _____ Date _____

Stamp of seal

city clerk
P.O. Box 2128
Dothan, Al. 36302-2128

SiGnature _____ Date _____
    Stamp of seal

RETURN Back to Judy Byrd
    Judy Byrd
    circuit clerk
District court clerk
P.o. Drawer 6406
Dothan, Al. 36302

    SiGnature _____ Date _____

Stamp of seal.

depenent Name. Ralph Lingo. Date: 9-21-2004
ALL CLERK oFFice SEAL Stamp.

129

City of Dothan   CLERK OFFICE POLICE
Dept     P.O BOX 2128

Dothan, Alabama 36302-2128

130

Case no: CC-03-599, CC-03-1339, CC-03-1340

Mr. Ralph Lingo
        -v-s-
State of Alabama in the County of
Houston County.

I, mr. Ralph Lingo, ask the circuit
court of Houston County for the following
subpeonas. These documents go to City of
Dothan Police Departments for documents to
be answered and divided to. We want copies
of all documents. We ask for a court order
for these documents.

## FILED

SEP 2 3 2004

JUDY BYRD, CLERK
HOUSTON CO., AL

all CLERK office SEAL stamp. this is
Ralph Lingo Copy go Back to him

131

1. I'm requesting all dispatch Log sheets, transcripts, radio calls from dispatch to police units, and police units to dispatch. all phone records, cellullar phones also. All police reports and statements from the following police departments on 04-14-2003, 05-07-2003, from 6:00 A.M. to 6:00 P.M. from Tony R. Lurker,

2. On 04-14-2003, I want a copy of Alabama Uniform arrest Report from each Investigator and each police officer who went to Abbeville, of Henry County to the home of Ralph Lingo and any other type of form that has been filled out.

3. I want a list of everyones name who went to Ralph Lingos house.

4. I want a copy of raido transcripts and log sheets from each police officer and investagator plus any type that has been filled out.

5. We ask for a copy of the search warrant and the affidavit to support the search warrnt and we ask Tony R. Luker to provide a copy of a liability bond or a copy of a workmanship liability bond or any other type of bond to work outside of Houston County territory or outside the City Limit territory since 1991. Or to work in Henery County. If you hold any type of liability bond It must be stamped by Gypse Etheridge, Circuit Clerk of Henry County, since the day you have got deputized. It must show on record in Henery County by Gypse Ethridge, Circuit Clerk of Henry County. We ask for all liability bonds by Henry County to allow Tony R. Luker to work in Henry County.

9.    133

6. On 5-7-2003, from 6:00 A.M. to 6:00 p.m., we ask for a copy of all dispatch log and transcript from each unit to respond to the arrest of Ralph Lingo from the City of Dothan Police Department to Headland of Henry County. We want each officers name and a copy of radio transcripts and log sheets.

7. On 5-7-2003 the police officer went to Henry County from the City of Dothan to pick up Ralph lingo. He was pulled over by City of Dothan police officer, unmarked Car of Tony R. Luker and state fire marshall Todd Register. Tony Luker radioed back to the City of Dothan Police Department and the City of Dothan came to Headland. One of the police officers in uniform handcuffed Ralph Lingo, Put him the back of the Police Car and transferd him from Headland of Henry County to the City of Dothan Jail in Houston County. I want the officers name and badge number, and a Copy of the liability bond to go outside the County. I want a copy of all police reports from the officer, and all Alabama Uniform arrest reports

134

7. And I want the city of Dothan to provide me with a copy of the City of Dothan territory limits. I'm asking for all of this in the next 30 days. I'm asking for the City of Dothan to furnish all reports we have asked for. More reports may be asked for at a later date during the investigation

8. On 5-7-2003, I asked the City of Dothan Jail to provide me a copy of the tape on security camera of the time of 12 p.m. from arrival from the time I got out of the police car and from the time I went into the City Jail. I want the Camera system inside docket and docket room. I want the Camra of hallway through the Jail. I want the camera system for 72 hours from the time I was there to the time I left. I want the time I was booked into show the time I was standing at the window being booked. I also want the camra system inside the control room for 72 hours from 5-7-2003. I also want the Camra system from inside and outside the Jail on 4-14-2003 from 6:00 A.M. to the last 15 days of recording.

135

9. We ask for all cassete tape be transcribed. We would also ask to listen to every tape After it is transcribed.

10. James H. Johnson, 1305 Fleetwood Rd. Dothan, Al. 36303. We want to listen to all recorded statements given to the City of Dothan and all police reports given to Tony R. Luker of each time.

11. We want erry phone call from Debra Blackstone 402 Emmons Dr. Dothan, Al. 36301 to the City of Dothan dispatch requesting a police unit to be sent to her address in the last four years. We ask for a copy of all tapes from this address. We ask for all police reports taken from this address for the last four years. Also for all Alabama uniform arrest reports and all radio calls from police unit to dispatch and from dispatch to police unit.

12. I want a criminal background check with the F.B.I and your local police Department on Thomas Richard Spradlin S.S. number 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

136

13. We want all police reports from James H. Jhonson 1305 Fleetwood Rd. Dothan, Al 36303, or Ralph Lingo from the same address. We want all Alabama uniform Arrest reports and any other police report that was filled out from this address. We also want all dispatch log sheets in the last four years from this address and all 911 tapes from this address.

137

14. We also want all local police reports, taylor police reports, And county police reports from steve anderson at 1720 Bruner RD. Lot D Dothan, al. 36301. All recorded statements, all police reports logged from the city of Dothan and a criminal back ground check from your local police Department and the F.B.I.

15. We also want a criminal background check on Scott A. casper ssn 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 with your local police Department and the F.B.I, along with a credit report

16. I want a local and F.B.I report, and credit report For Venda sue Williams ssn 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

138

17. We ask for the city of Dothan Police Department to respond to all requests in 30 days and we are asking for the court for a court order for all these answered and copied of all documents for Ralph Lingo's defense. These are very important to Ralph Lingo's trial. More documents may be asked for.

   Stamp by Judy Byrd, Clerk of court.

COUNTY OF HOUSTON          CASE NO: CC 2003-000.599 339
        COUNTY             CASE NO: CC-2003-1339
                           CASE NO: CC-2003-1340

I ask that Judge White sign and
stamp all these documents.
Signature: _____ Date _____

STAMP of seal

CITY clerk
P.O. Box 2128
Dothan, Al. 36302-2128

Signature: _____ Date _____

STAMP of seal

RETURN Back to Judy Byrd
Judy Byrd
circuit clerk
District Court clerk
P.O. Drawer 6406
Dothan, Al. 36302

Signature: _____      Stamp of seal

Date _____

140

City of Dothan CLERK office poLicE
Dept    P.O Box 2128

Dothan, Alabama 36302-2128

141

miss JUDY BYRD Will you StaLpE EAch
PAckEct for me the shERiFF Will not
StaLpF this For me, he is peing
rEAL hARd ON the iNMARctimies
I had No ways to StaLpF this, Will you
BLESS StaLpF this BLESS.

Ralph Lingo
9-21-2004

To Mr. Lingo's attorney. Authorize the clerk's office to issue subpoena the individuals marked in red.
Tammy Stinson

State of Alabama
Unified Judicial System
Form C-12 Rev. 10/86

SUBPOENA REQUEST FORM

Plaintiff: State of Alabama V. Defendant: Ralph Lingo

142

IN THE HOUSTON OF COUNTY COURT OF HOUSTON

CASE NUMBER 2003-000-599.60 1339 1340

[X] Defendant

Date: 9-27-2004

* (1.) James H. Johnson
1305 Fleetwood Road
Dothan, AL 36303
#4 iss'd 10/22/04

FILED
SEP 28 2004
Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

* (2). Steve Anderson 1720 Bruner Road Lot D Dothan, AL 36301
#5 issued 10/22/04

* (3). Juanita Tice
402 Emmons Drive Dothan, AL 36301
#6 issued 10/22/04

* (4). JENNIFER STEEVER AGENCY
3123 WESLEY WAY
Dothan AL 36305-2020
#7 issued 10/22/04

* (5). Jason Lurie
104 Holiday Ct Dothan AL, 36301
#8 issued 10/22/04

6. SEARGENT BONIN C/O
901 E. Main St Dothan 36301

7. CheryLE DeLANE Motley
117 E, main St, Dothan AL. 36301

8

(COPY Back to Ralph Lingo)
(SEAL Stamp)

(1.)

State of Alabama
Unified Judicial System

CASE NUMBER
2003-000-599.60
1339.
1340 113

C-12   Rev. 10/86    SUBPOENA REQUEST FORM

State of Alabama V. Defendant: Ralph Lingo

[X] Defendant   Date: 9-27-2004

IN THE houston of county court of houston COUNTY ALABAMA

8, Rose Evans Gordon municipal
Judge P.O Box 398
City of DOTHAN, AL Zip 36302

9. Paula Little Dothan AL.
P.O Box, 6406

10. Judges Jerry W White
P.O Drawer Dothan AL
6406-36302

(1.) Larry K. Anderson
Dothan P.O Drawer
Zip 6406 36302

2. S. Edward Jackson
P.O Drawer Dothan AL,
Zip 6406-3602

3. Judy C. Byrd P.O Drawer 6406, 36302
Dothan AL

Copy Back to Ralph Lingo
SEAL Stamp

State of Alabama
Unified Judicial System

CASE NUMBER
2003-000-599.60
1339
1340

F 'n C-12 Rev. 10/86    SUBPOENA REQUEST Form
IN THE Houston of COUNTY COURT of HOUSTON COUNTY, ALAM.

4. Charles W Woodhom
101 W. court sg. ste.
HENRY COUNTY Abbeville Zip 36310

5. GYPSYE THRIDGE
HENRY COUNTY 101 court square
Suite J Abbeveille AL Zip 36310-2135

* #9
6. Donald GREEN. 1305 FIELDWood Dothan AL
issued 10/2/2004    drive - Zip. 30301

7. melissa Woods staff Assistant
Dothan municipal court
City Dothan AL. Zip. 36302-2128

8. LAWTON E.D. ARMSTRONG sheriff
101 West court square Abbeville,
HENRY COUNY AL Zip. 36310

1P
* 9. TROY SILVA Investigator
issued 10-2004  HENRY COUNTY SHERIFFS
101 W. court square suite Abbeville Zip 36340

10. VONDA SUE WILLIAMS 10666 HighWay 431 South
HENRY COUNTY Head land Zip 36345

COPY Back to Rath Liego. (SEE stamp)

145

| State of Alabama<br>Unified Judicial System<br>C-12  Rev. 10/86 | **SUBPOENA REQUEST FORM** | CASE NUMBER<br>2003-000-599.60<br>2003-    1339<br>2003 -    1340 |
|---|---|---|

IN THE _HOUSTON OF COUNTY_ COURT OF _HOUSTON_ _____ COUNTY, ALABAMA

Plaintiff: _State of Alabama_    v.  Defendant: _Ralph Lingo_

In the matter of _____

Court Date _____ Court Time _____ AM/PM  Date Requested _____

**TO BE COMPLETED BY REQUESTER**

The Clerk/Register is requested to issue an Order to Appear (Subpoena) for each of the following witnesses for:

☐ Plaintiff/State    ☒ Defendant    ☐ Grand Jury    ☐ Other

| | | Date issued | Date Executed | Remarks |
|---|---|---|---|---|
| 1. | Name _Larry K. Anderson_<br>Address _Dothan P.O. Drawer_<br>Zip _6406.36302_ | 9-27-2004 | | |
| 2. | Name _S. Edward Jackson_<br>Address _P.O. Drawer Dothan AL_<br>Zip _6406-3602_ | 9-27-2004 | | |
| 3. | Name _Judy C. Byrd_<br>Address _P.O. Drawer_<br>_Dothan_ Zip _6406-3602_ | 9-27-2004 | | |
| 4. | Name _Charles W Woodham_<br>Address _101 W. Court Sq. Ste._<br>_Henry County Abbeville_ Zip _36310_ | 9-27-2004 | | |
| 5. | Name _Gypsye Thridge_<br>Address _Henry County 101 Court Square_<br>_Suite J Abbeville AL_ Zip _36310-2135_ | 9-27-2004 | | |
| 6. | Name _Donald Green_<br>Address _Dothan AL 1305 Fifth Wood_<br>_Drive_ Zip _30301_ | 9-27-2004 | | |
| 7. | Name _Melissa Woods Staff Assistant_<br>Address _Dothan Municipal Court_<br>_City Dothan AL_ Zip _36302-2128_ | 9-27-2004 | | |
| 8. | Name _Lawton Ed Armstrong Sheriff_<br>Address _101 West Court Square Abbeville,_<br>_Henry County_ _AL_ Zip _36310_ | 9-27-2004 | | |
| 9. | Name _Troy Silva Investigator_<br>Address _Henry County Sheriff's_<br>_101 W. Court Square Suite J Abbeville AL 36310_ | 9-27-2004 | | |
| 10. | Name _Vonda Sue Williams_<br>Address _10666 Highway 431 South_<br>_Henry County Headland_ Zip _36345_ | 9-27-2004 | | |

**METHOD OF SERVICE REQUESTED:**

☐ Personal    ☐ Other _____

Date _____

Party Requesting Subpoena

_____

Signature

Requester Phone No.

146

| State of Alabama<br>Unified Judicial System<br>C-12  Rev. 10/86 | SUBPOENA REQUEST FORM | CASE NUMBER<br>2003-000599.60<br>2003- 1339<br>2003- 1340 |

IN THE _COUNTY OF HOUSTON_ COURT OF _HOUSTON_ _____ COUNTY, ALABAMA

Plaintiff: _State of Alabama_     v.  Defendant: _Ralph Lingo_

In the matter of _____

Court Date _____ Court Time _____ AM/PM Date Requested _____

## TO BE COMPLETED BY REQUESTER

The Clerk/Register is requested to issue an Order to Appear (Subpoena) for each of the following witnesses for:

☐ Plaintiff/State     ☒ Defendant     ☐ Grand Jury     ☐ Other

| | | Date Issued | Date Executed | Remarks |
|---|---|---|---|---|
| 1. | Name _James H. Johnson_<br>Address _1305 Fleet Wood Road_<br>_Dothan AL_  Zip _36303_ | 9-27-2004 | | |
| 2. | Name _Steve Anderson 1720 Bruner_<br>Address _Road Lot D_<br>_Dothan Al_  Zip _36301_ | 9-27-2004 | | |
| 3. | Name _Juanita Tice_<br>Address _402 Emmons Drive_<br>_Dothan, Al_  Zip _36301_ | 9-27-2004 | | |
| | Name _JENNIFER STEEVER AGENCY_<br>Address _3123 WESLEY WAY_<br>_DOTHAN AL_  Zip _36305-2020_ | 9-27-2004 | | |
| 5. | Name _Jason Lurie_<br>Address _104 Holiday Ct._<br>_Dothan, AL_  Zip _36301_ | 9-27-2004 | | |
| 6. | Name _SEARGENT BONIN C/o_<br>Address _901 E. Main St._<br>_Dothan, AL_  Zip _36301_ | 9-27-2004 | | |
| 7. | Name _Cheryl E DeLane Motley_<br>Address _117 E. Main St. Dothan, AL_  Zip _36301-0000_ | 9-27-2004 | | |
| 8. | Name _Rose Evans-Gordon Municipal_<br>Address _Judge P.O. Box 398_<br>_City of Dothan AL_  Zip _36302_ | 9-27-2004 | | |
| 9. | Name _Paula Little Dothan AL._<br>Address _P.O. Box 6406_  Zip ____ | 9-27-2004 | | |
| 10. | Name _Judges Jerry W White_<br>Address _P.o Drawer Dothat AL_  Zip _6406-36302_ | 9-27-2004 | | |

METHOD OF SERVICE REQUESTED:     Party Requesting Subpoena

☒ Personal     ☐ Other     _____

_____

Signature _____

Date _____

Clerk/Register

Requester Phone No.

CaSE ON: 2003-000.599,
1339,
1340,

Defendants Name: Ralph Lingo

**FILED**

SEP 2 8 2004

Judy Byrd

JUDY BYRD, CLERK
HOUSTON CO., AL

Dear: Judge White

I am fileing a petician in court honorable Judge White. To have a hearing particularly about these search warrants. This is not a binding search warrant. This could be leading to fraud by the City of Dothan. I am asking for the judge to dismiss the search warrant, and charges. City police-officer Tony Luker is not holding a liability bond, and a police officer can not work in one county and work in another county. I was arrested in Henry county by Tony Luker. But Tony Luker did not bring me back across the county line. You cannot have two searchwarrants. And a City police officer cannot cross county lines and pick you up, and bring you back. It was out of their territory, and had no Henry Co. Deputy present.

2)

Date, 9-24-1

148

Case; On 2003-000, 599, 00
                            1339,
                            1340

and no Abbeville police officer were present. You cannot go out of your territory to go looking for somebody to make an arrest. He suppose to have take to or call Henry Co. deputy. Let the Henry Co. deputy come out, and arrest me and take me to Henry Co. jail. When the Henry Co. deputy should have arrested me, he should have tanken me to the closest Henry Co. jail. I have been trying for over one year to get a copy of the search warrant, and stamp by the clerk of court. I have filed over forty request to Houston Co. clerk, and Abbeville clerk. I also have sent payment, and the court has filed, and the clerk has stamped every document, and also has the City of Dothan saying, there was no search - warrant. She also did a through investigation, about the search warrant, and warrant has not got a record. And Tony Luker cannot get a warrant magistrate to type a warrant outside her jurisdiction. And a judge cannot hold a search warrant it must be returned to the clerk of the court timed, signed, and stamped by the clerk of the court. I ask for this strictly for the search warrant and illegal arrest.

Ralph Lingo

Stamp Seal Clerk

149

Case No, 2003-000,599
1339
1340

Defendants Name: Ralph Lingo

To: Judge White

Judge White the Houston Co. Jail, has had a shake down on Thursday. Half of my law papers were destroyed by C/O officers Britt. They told us to go downstairs puts our hands agianst the wall, and don't look back, or we would be spray, and beat to hell and back. C/O officer Britt said whoever is in cell 18 the papers here are torn up, and alot of them have been put in the toilet. Now I do not have no part of any search-warrant. I need a copy of the search warrant. With my hands on the wall, I ask C/O officer Britt, please don't tear up my law work. The officer down stair call CRT, the officer told me "I said don't say a damn word didn't I", "Now turn around put your hands on the wall and look at me." He then hit me up side of the head with his bare t--, a total of 3 times. Then they all went to rabbing me.

150

They handcuffed me, and through me on the ground. And officer Williams tried to break my neck by twisting and turning and took my left side of my face down to the concrete. And hit me right in the jaw and knocked 3 of my teeth close, which will have to be pulled. And may have a cracked jaw and pulled disc in my back. My mouth full of blood. When urinating I pass blood from intestine damage from a kick from officer Rodgers. (Correction Neck not Back).

And probably a tore Rotary cup is a possibility. After it was over with officer Rodger went back playing basketball like he did the whole time of the shack-down. When they un-cuffed me, I had blood running down my mouth real bad. I requested to go to the hospital. They refused me medical treatment, from 1:00pm took up to the nurse Mrs. Spigner. From 1-3 o'clock Mrs. Spigner could not stop the blood, see me, or give me anything, because she was babysitting a 11-12 year old little Kid. The kid was playing with the medication on 9-23-04, from 1-3 o'clock pull the video tape and watch and see what happens. She didn't give me any medical tension, until about 8 minutes till 3:00 pm. The nurse not Mrs. Spigner, □ my blood pressure, gave me 2 Tylenol and Oral-Jel nd said they couldn't treat me for anything else □

151

go back to the dorm. Officer Rodgers, made a statement to me on 9-29-04-10-06-04 I will be on lock down. And you will not have any law or court paper we will tear them up. I've got about 25 signatures of people who seen, and heard everything. I'm asking you Judge White to sign a court order to Sheriff Lamar Glover. Do not take my law work away from me. Leave it in my posession at all times. It is my constitutional right, I have asked Doug Valeska and the Chief Dist. Attorney to investigate it, and allow me to sign a warrant agianst the officer for hitting me with his fist that is assault.

Please respond back it is an emergency Judge White, and don't let them get my law work they done destroyed my search warrant and other legal documents. I ask for all cases be put off, due to injury caused C/O officers at the Houston Co, Jail, To given further notice. I all ready had an absense footh, and could not get no medical help on that foget my neck exrayed and to sign a warrant. I ask for a court order.

Also other C/O officers said tho officers were wrong for what the did rand that

152

Case No - 2003-000-599
1339
1340

they had no right to do it. The name of the
officer will have to be sealed. Because they will
say anything to get fired, Lamar Glover will
fire them. All you had to do, pull the video
tape. Noone will have to tell on anyone, it will
show everything I did not resist, or move my held.
I want a warrant on C/O officers William,
and officers Rodgers. OR give me an emergency
transfer back to Bullock Correctional where I
can get medical Attention. Also sign a court
order where they can never take and destroy my
law work like officer Britt did. Locking me
down with no bed, can cause more injury to me, I
secrets report but no one will sign it or put a rule
violation on there. Copy are being made for a later
date, If you want a copy I will be happy to
furnish you with all copies. I need Medical
Attention.

Ralph Lingo  9-24-2004

CASE NO   -1339    153
CASE NO   -1340

To:
Court House Clerk: Judy Byrd.    Case No. 2003-000,599

Mrs. Judy Byrd, I ask
could you send me a blank search-
warrant, and a blank Affidavit application.
Please, I would really appreciate
it.

If you do have a search warrant,
pop up on file would you please mail it
to me. I have been trying to get one
sent to me for over a year.

And everything I have filed in court on
the above cases has been documented. I would
love for you to figure up how much all of them
cost that I have filed, and how many documents
it is so I can send you the money. As soon as
possible please. And please mail me a rule
32.

Ralph Lingo 8-24-04

Date 10-6-2004

154

Mrs. Judy Byrd,

Will you Please stamp each Page by the Clerk of County And keep them on file. Case Number Will be down below

CASE CC 2003 000 599, 00

CASE CC 2003 - 00 1340.00

CASE CC 2003 - 00 1339.00

Ralph Lingo     Date 10-6-2004

**FILED**

OCT 0 7 2004

Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

155

SEARCH WARRANT

(X) State of Alabama

( ) Municipality of The City of Dothan

Case Number: 02-007881

STATE OF ALABAMA
Henry County

TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:

Affidavit in support of application for a search warrant having been made before me, and the Court's finding that grounds for the issuance exist or that there is probable cause To believe that they exist, pursuant to Rule 3.8, Alabama Rules of Criminal Procedure, you are hereby ordered and authorized to forthwith search:

THE FOLLOWING PERSON OR PLACE:

(1) **10666 Highway 431 South, Newville Alabama.** To further describe this property, it is located on what is known in the community as Hatfield Mountain. On this property is a wooden frame house, a singlewide mobile home and a doublewide mobile home. The doublewide mobile home is Lingo's office/residence. When entering the driveway, drive past the wooden frame house and the single wide mobile home to Lingo's doublewide mobile home which is light in color.

(2) A White 2001 Dodge Pick-up VIN 1B7KC23691J214346.

(3) Any and all safes located inside Lingo's office/residence.

FOR THE FOLLOWING PROPERTY: Hand Guns, Audio Tapes, Business Records pertaining to Lingo's Mobile Home Repair and make return of this warrant and an inventory of all property seized there under before me within 10 days (not to exceed 10 days) as required by law.

(X) The Court find probable cause to believe that a nighttime search is necessary, and this warrant may be executed nighttime search is necessary, and this warrant may be executed at any time of the day or night.

ISSUED TO: SGT TONY R. LUKER, Dothan Police Department, on this 14th day of April 2003.

_____
JUDGE/MAGISTRATE

APPLICATION AND AFFIDAVIT FOR A **NO KNOCK** SEARCH WARRANT     ₁56

Case Number 03-003058

## STATE OF ALABAMA,
## HENRY COUNTY

2

Before me, Judge _____ Jerry M. White _____, the undersigned authority, personally appeared Sgt. Tony Luker, who being by me first duly sworn, deposes and says:

(1) I am Sgt. Tony Luker, of the Dothan Police Department. I am currently assigned to the Criminal Investigation Division as a Sergeant. I am also a State Certified Fire Investigator. The testimony contained in this affidavit is based on three independent witnesses, my personal knowledge and experience as set forth below.

(2) I have been employed with the City of Dothan Police Department for the past 19 years and have been involved in the investigation of several arsons and business fraud cases.

(3) I am investigating several cases involving Ralph Wilson Lingo for arson and theft of property by deception in both Houston and Henry County as well as in the States of Alabama, Georgia and Florida. This investigation is in conjunction with the State Of Alabama Fire Marshall's Office.

4) Ralph Lingo has an extensive Criminal History for the following charges: Assault Second Degree, Theft of Property Second Degree and Receiving Stolen Property Second Degree. He has been convicted of Arson Third Degree, Criminal Mischief Second Degree and Assault Third Degree. The Assault Third Degree was a conviction of a lesser included offense of Sexual Abuse First Degree.

(5) Lingo has business records, which are kept throughout the mobile home and in filing cabinets, which reflects contracts that he has altered and increased the amount owed to him. Lingo preys on the elderly and when they question the amount he threatens them into paying him. These records are located at Lingo's office/residence that is located at 10666 Highway 431 South in Newville Alabama. To further describe this property, it is located on what is known in the community as Hatfield Mountain. On the property there is a wooden frame house, a singlewide mobile home and a doublewide mobile home. The doublewide mobile home is Lingo's office/residence. When you enter the driveway of the residence, drive past the house and singlewide mobile home to the light colored doublewide mobile home of Lingo's.

(6) Lingo has also conspired with another individual in Luverne, Alabama to burn a trailer for insurance purposes. Lingo collected $5,000.00 from this individual. Lingo has

made a taped conversation of him and this individual talking about the conspiracy, as well as directions to the trailer.

(7) There have been several taped conversations between Lingo and different individuals on criminal activity, which is kept at Lingo's office and in a safe.

(8) This safe contains proceeds of Lingo's criminal activity, files, tapes and guns.

(9) Also located in Lingo's office/residence are several loaded weapons to include two 380 handguns located on each side of his bed in the bedroom. A 380 located next to a green recliner in the living room. A derringer on an end table in the living room. In the middle room of the mobile home are several shotguns and rifles.

(10) Lingo is also known to carry a handgun on his person or in his vehicle, a 2001 Dodge pick-up VIN 1B7KC23691J214346. Lingo uses this vehicle to facilitate his criminal activity.

Affiant shows that based on the above and forgoing facts and information, Affiant has probable cause to believe that the above described property is concealed upon the aforesaid premises, person, and vehicle and is subject to seizure and makes this affidavit so that a warrant may be issued to search said premises, person, and vehicle.

Sworn to and Subscribed before me this 14th day of April 2003.

_____
Signature of Affiant
Dothan Police Department

_____
JUDGE/MAGISTRATE

(2)

158

# RETURN AND INVENTORY

I certify that I executed the foregoing Search Warrant as directed by searching the person or place described at 10666 Highway 431 South, Newville Alabama, Any and all safes inside Lingo's office/residence and a White 2001 Dodge Pick-up VIN 1B7KC23691J214346, at approximately, 4:20 p.m. on the 14th day of April, 2003.

( ) Did not find and seize any property located thereon.

(x) Found and seized the following described property and made return of same to the Court at 7:0 o'clock (a.m./p.m.), April 16, 2003:

  (1) 1-Jennings Model #48 silver pistol Ser # 809158
  (2) 1-Jennings Model T38 black pistol Ser # 1422059
  (3) 1-Phoenix Arms Raven 25 Auto Ser #3095413
  (4) 1-5 Drawer File Cabinet w/assorted business files
  (5) 1-2 Drawer File Cabinet w/assorted business files
  (6) 1-Box w/3 1/2 Floppy Disk
  (7) Assorted Audio Tapes
  (8) Assorted Business Files on Metal Holder
  (9) 1-White Pill Bottle w/assorted pills

( ) Copy of warrant and endorsed copy of inventory left in accordance with Rule 3.11(a), Alabama Rules of Criminal Procedure.

(X) Copy of warrant and inventory given to defendant,


Date: 04/16/2003
Signature of Law Enforcement Officer
Title and Agency



Sergeant Tony Luker
Dothan Police Department

159

Receipt

I acknowledge receipt of return of the foregoing Search Warrant and all items, if any, noted on the foregoing inventory, at the date and time noted above.

Date: 04/ *16* /2003

_____
JUDGE

2

160



**Henry County**
# Sheriff's Dept.

322

Badge #

08-13-91

Date

This is to verify that

TONY LUKER

is a duly appointed Deputy Sheriff
of Henry County, Alabama

Lawton Ed Armstrong, Sheriff

## HENRY COUNTY SHERIFF'S OFFICE

Know All Men By These Presents:
That I, Lawton Ed Armstrong, as Sheriff
of Henry County, under and by virtue of
the authority conferred on me by the stat-
utes in such cases, made and provided,
do hereby constitute and empower
sworn   Tony Luker   as a
Deputy Sheriff   in and
for Henry County to act for me and in my
stead to enforce the law and to execute
any legal papers placed in his hands.

inder my hand this   13   day,
August   19 91

SIGNATURE

| DOB | | BLOOD TYPE | |
|---|---|---|---|
| | | AB+ | |
| HEIGHT | WEIGHT | HAIR | EYES |
| 5'11" | 200 | bro | blu |
| LEFT THUMB | | RIGHT THUMB | |



# The City Of Dothan
## Municipal Court

Honorable Rose Evans-Gordon
Municipal Judgte

Nancy Martin
Municipal Court Administrato

August 11, 2004

Mr. Ralph Lingo
**Bullock County Correctional Facility**
P O BOX 5107
Union Springs, AL  36089

Dear Mr. Lingo,

I have received your request for a copy of your search warrant.  Unfortunately we are unable to provide you with a copy of this document.

I regret any inconvenience this may cause you.

Sincerely,

Melissa Woods
Staff Assistant
Dothan Municipal Court

Post Office Box 2128
Dothan, Alabama 36302-2128
(334) 615-4150
Fax (334) 793-1369



162

# JUDY BYRD
### CIRCUIT CLERK
### AND
### DISTRICT COURT CLERK
### HOUSTON COUNTY
### DOTHAN, ALABAMA 36302

Elaine Love
Chief Clerk

(334) 677-4858
P.O. Drawer 6406

Mr. Ralph Lingo
Easterling Correction Facility
200 Wallace Drive
Clio, AL   36017

Mr. Lingo:

We are in reciept of you letter filed in our office on June 24, 2004.  You requested a copy of a Search Warrant for a search performed on April 14, 2003 of your home in Henry County.

After a thorough search of our records in Houston County Clerk's office, we find no Search Warrant in your name or for any property in Henry County.

As we have previously advised you of our search, and we found nothing, you may want to check with the Henry County Records Department and see if they may have what you are requesting.

Very truly yours,

Judy Byrd
Circuit Clerk
Houston County Alabama



*Very Important*

163





**GYPSY ETHRIDGE**
**CIRCUIT CLERK OF HENRY COUNTY**
**HENRY COUNTY COURTHOUSE**
101 Court Square, Suite J
Abbeville, Alabama 36310-2135
(334) 585-2753

April 27, 2004

Ralph Lingo #190083 9A-66
Easterling Correctional Facility
200 Wallace Dr.
Clio, AL   36017

Mr. Lingo,

You appealed your plumbing case to Circuit Court for a jury trial.  On the
day that your case was set, you told Judge Jackson that you wanted to dismiss
your appeal and accept the guilty plea.  You wrote the Judge a letter saying
that you wanted to appeal deciding to dismiss your appeal.  Judge Jackson denied
you motion to reinstate your appeal. You appealed that to the Court of Criminal
Appeals and they refused to hear your appeal and that appeal was dismissed.

The search warrant that was issued was done in Houston County on a Houston County
case that was being investigated.  Henry County Sheriff's Deputy Troy Silva was
there with the Officer from Houston County.  There was a possibility that an
officer from the State Fire Marshall's office there also.  The Henry County court
does not have anything to do with the search warrant and anymore papers or letters
need to be addressed to the Houston County Circuit Clerk.

There is no probable cause for a kidnapping charge in that you were being
investigated for a crime in Houston County.  A warrant cannot be issued
in Henry County.  Please understand that Henry County has nothing to do with
anything that arose out of an investigation in Houston County.  Please address
any further letters to Houston County Circuit Clerk.

Sincerely,

Gypsy Ethridge

Ralph Lingo

Date. 10-6-2004

164

(Also could you stamp and send me my copy)
(of the sependa list.

Make sure everything is stamped by
Clerk of Court.

Mrs Judy Byrd

Will you please stamp the with the clerk
of court each page. Please stamp each
page. and mail back to me for my records.
At Ralph Lingo A.I.S.# 190083- Dorm 14- Bed 18
P.O. Box 5107- Union Springs Al 36089

**FILED**

OCT 07 2004

Judy Byrd Mrs. Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO. AL

(This is Ralph Lingo Copy
Could you please mail back
CASE. CC 2003-000 599. 60
CASE. CC 2003-1340 — 1339)

I do not know if Jury do this what I'm
about to ask. Do you have any type of form
for a search warrent form, Will you please
mail me a copy of one to show me what
a search warrent form look like. Also

I send you some papers to send to Abbyville
and to the city of Dothan concerning radio transmission
and dispatch log. Could you please stamp and
Mail me my copy back. After the Judge sign it.
and could you please give me my next court
date for a Jury trial.

(Ralph Lingo 10-6-2004)

SEARCH WARRANT

(X) State of Alabama

( ) Municipality of The City of Dothan

Case Number: 02-007881

STATE OF ALABAMA
Henry County

TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:

Affidavit in support of application for a search warrant having been made before me, and the Court's finding that grounds for the issuance exist or that there is probable cause To believe that they exist, pursuant to Rule 3.8, Alabama Rules of Criminal Procedure, you are hereby ordered and authorized to forthwith search:

THE FOLLOWING PERSON OR PLACE:

(1)  **10666 Highway 431 South, Newville Alabama.** To further describe this property, it is located on what is known in the community as Hatfield Mountain. On this property is a wooden frame house, a singlewide mobile home and a doublewide mobile home. The doublewide mobile home is Lingo's office/residence. When entering the driveway, drive past the wooden frame house and the single wide mobile home to Lingo's doublewide mobile home which is light in color.

(2)  A White 2001 Dodge Pick-up VIN 1B7KC23691J214346.

(3)  Any and all safes located inside Lingo's office/residence.

FOR THE FOLLOWING PROPERTY: Hand Guns, Audio Tapes, Business Records pertaining to Lingo's Mobile Home Repair and make return of this warrant and an inventory of all property seized there under before me within 10 days (not to exceed 10 days) as required by law.

(X) The Court find probable cause to believe that a nighttime search is necessary, and this warrant may be executed nighttime search is necessary, and this warrant may be executed at any time of the day or night.

ISSUED TO: SGT TONY R. LUKER, Dothan Police Department, on this 14th day of April 2003.

_____
JUDGE/MAGISTRATE

## APPLICATION AND AFFIDAVIT FOR A **NO KNOCK** SEARCH WARRANT

Case Number 03-003058

**STATE OF ALABAMA,
HENRY COUNTY**

Before me, Judge _____*Jerry M. White*_____, the undersigned authority, personally appeared Sgt. Tony Luker, who being by me first duly sworn, deposes and says:

(1) I am Sgt. Tony Luker, of the Dothan Police Department. I am currently assigned to the Criminal Investigation Division as a Sergeant. I am also a State Certified Fire Investigator. The testimony contained in this affidavit is based on three independent witnesses, my personal knowledge and experience as set forth below.

(2) I have been employed with the City of Dothan Police Department for the past 19 years and have been involved in the investigation of several arsons and business fraud cases.

(3) I am investigating several cases involving Ralph Wilson Lingo for arson and theft of property by deception in both Houston and Henry County as well as in the States of Alabama, Georgia and Florida. This investigation is in conjunction with the State Of Alabama Fire Marshall's Office.

4) Ralph Lingo has an extensive Criminal History for the following charges: Assault Second Degree, Theft of Property Second Degree and Receiving Stolen Property Second Degree. He has been convicted of Arson Third Degree, Criminal Mischief Second Degree and Assault Third Degree. The Assault Third Degree was a conviction of a lesser included offense of Sexual Abuse First Degree.

(5) Lingo has business records, which are kept throughout the mobile home and in filing cabinets, which reflects contracts that he has altered and increased the amount owed to him. Lingo preys on the elderly and when they question the amount he threatens them into paying him. These records are located at Lingo's office/residence that is located at 10666 Highway 431 South in Newville Alabama. To further describe this property, it is located on what is known in the community as Hatfield Mountain. On the property there is a wooden frame house, a singlewide mobile home and a doublewide mobile home. The doublewide mobile home is Lingo's office/residence. When you enter the driveway of the residence, drive past the house and singlewide mobile home to the light colored doublewide mobile home of Lingo's.

(6) Lingo has also conspired with another individual in Luverne, Alabama to burn a trailer for insurance purposes. Lingo collected $5,000.00 from this individual. Lingo has

made a taped conversation of him and this individual talking about the conspiracy, as well as directions to the trailer.

(7) There have been several taped conversations between Lingo and different individuals on criminal activity, which is kept at Lingo's office and in a safe.

(8) This safe contains proceeds of Lingo's criminal activity, files, tapes and guns.

(9) Also located in Lingo's office/residence are several loaded weapons to include two 380 handguns located on each side of his bed in the bedroom. A 380 located next to a green recliner in the living room. A derringer on an end table in the living room. In the middle room of the mobile home are several shotguns and rifles.

(10) Lingo is also known to carry a handgun on his person or in his vehicle, a 2001 Dodge pick-up VIN 1B7KC23691J214346. Lingo uses this vehicle to facilitate his criminal activity.


Affiant shows that based on the above and forgoing facts and information, Affiant has probable cause to believe that the above described property is concealed upon the aforesaid premises, person, and vehicle and is subject to seizure and makes this affidavit so that a warrant may be issued to search said premises, person, and vehicle.

Sworn to and Subscribed before me this 14th day of April 2003.

_____
Signature of Affiant
Dothan Police Department


_____
JUDGE/MAGISTRATE

## RETURN AND INVENTORY

I certify that I executed the foregoing Search Warrant as directed by searching the person or place described at 10666 Highway 431 South, Newville Alabama, Any and all safes inside Lingo's office/residence and a White 2001 Dodge Pick-up VIN 1B7KC23691J214346, at approximately, 4:20 p.m. on the 14th day of April, 2003.

( ) Did not find and seize any property located thereon.

(x) Found and seized the following described property and made return of same to the Court at 7.0 o'clock (a.m./p.m.), April 16, 2003:

     (1) 1-Jennings Model #48 silver pistol Ser # 809158
     (2) 1-Jennings Model T38 black pistol Ser # 1422059
     (3) 1-Phoenix Arms Raven 25 Auto Ser #3095413
     (4) 1-5 Drawer File Cabinet w/assorted business files
     (5) 1-2 Drawer File Cabinet w/assorted business files
     (6) 1-Box w/3 1/2 Floppy Disk
     (7) Assorted Audio Tapes
     (8) Assorted Business Files on Metal Holder
     (9) 1-White Pill Bottle w/assorted pills

( ) Copy of warrant and endorsed copy of inventory left in accordance with Rule 3.11(a), Alabama Rules of Criminal Procedure.

(X) Copy of warrant and inventory given to defendant,


Date: 04/16/2003
Signature of Law Enforcement Officer
Title and Agency


Sergeant Tony Luker
Dothan Police Department

169

Receipt

   I acknowledge receipt of return of the foregoing Search Warrant and all items, if any, noted on the foregoing inventory, at the date and time noted above.

Date: 04/__16__/2003


_____
JUDGE



Henry County
# Sheriff's Dept.

This is to verify that

TONY LUKER

is a duly appointed Deputy Sheriff
of Henry County, Alabama

Lawton Ed Armstrong, Sheriff

322

Badge #

08-13-91

Date

## HENRY COUNTY SHERIFF'S OFFICE

Know All Men By These Presents:
That I, Lawton Ed Armstrong, as Sheriff
of Henry County, under and by virtue of
the authority conferred on me by the stat-
utes in such cases, made and provided,
do hereby constitute and empower
sworn  Tony Luker          as a
Deputy Sheriff          in and
for Henry County to act for me and in my
stead to enforce the law and to execute
any legal papers placed in his hands.

G    der my hand this  13  day,
of  August    19 91

SIGNATURE

| DOB | | BLOOD TYPE | |
|-----|-----|-----------|-----|
| ▓▓▓▓▓▓ | | AB+ | |
| **HEIGHT** | **WEIGHT** | **HAIR** | **EYES** |
| 5'11" | 200 | bro | blu |
| **LEFT THUMB** | | **RIGHT THUMB** | |



# The City Of Dothan
# Municipal Court

Honorable Rose Evans-Gordon
Municipal Judge

Nancy Martin
Municipal Court Administrator

August 11, 2004

Mr. Ralph Lingo
Bullock County Correctional Facility
P O BOX 5107
Union Springs, AL 36089

Dear Mr. Lingo,

I have received your request for a copy of your search warrant. Unfortunately we are unable to provide you with a copy of this document.

I regret any inconvenience this may cause you.

Sincerely,

Melissa Woods
Staff Assistant
Dothan Municipal Court

Post Office Box 2128
Dothan, Alabama 36302-2128
(334) 615-4150
Fax (334) 793-1369

*Very Important* 72



# GYPSY ETHRIDGE
## CIRCUIT CLERK OF HENRY COUNTY
## HENRY COUNTY COURTHOUSE
101 Court Square, Suite J
Abbeville, Alabama 36310-2135
(334) 585-2753

April 27, 2004


Ralph Lingo #190083 9A-66
Easterling Correctional Facility
200 Wallace Dr.
Clio, AL   36017


Mr. Lingo,

You appealed your plumbing case to Circuit Court for a jury trial.  On the
day that your case was set, you told Judge Jackson that you wanted to dismiss
your appeal and accept the guilty plea.  You wrote the Judge a letter saying
that you wanted to appeal deciding to dismiss your appeal.  Judge Jackson denied
you motion to reinstate your appeal. You appealed that to the Court of Criminal
Appeals and they refused to hear your appeal and that appeal was dismissed.

The search warrant that was issued was done in Houston County on a Houston County
case that was being investigated.  Henry County Sheriff's Deputy Troy Silva was
there with the Officer from Houston County.  There was a possibility that an
officer from the State Fire Marshall's office there also.  The Henry County court
does not have anything to do with the search warrant and anymore papers or letters
need to be addressed to the Houston County Circuit Clerk.

There is no probable cause for a kidnapping charge in that you were being
investigated for a crime in Houston County.  A warrant cannot be issued
in Henry County.  Please understand that Henry County has nothing to do with
anything that arose out of an investigation in Houston County.  Please address
any further letters to Houston County Circuit Clerk.

Sincerely,

Gypsy Ethridge



73

## JUDY BYRD
### CIRCUIT CLERK
### AND
### DISTRICT COURT CLERK
### HOUSTON COUNTY
### DOTHAN, ALABAMA 36302

Elaine Love
Chief Clerk

(334) 677-4858
P.O. Drawer 6406

Mr. Ralph Lingo
Easterling Correction Facility
200 Wallace Drive
Clio, AL  36017

Mr. Lingo:

We are in reciept of you letter filed in our office on June 24, 2004.  You
requested a copy of a Search Warrant for a search performed on April 14, 2003
of your home in Henry County.

After a thorough search of our records in Houston County Clerk's office,
we find no Search Warrant in your name or for any property in Henry County.

As we have previously advised you of our search, and we found nothing, you
may want to check with the Henry County Records Department and see if they
may have what you are requesting.

Very truly yours,

Judy Byrd
Circuit Clerk
Houston County Alabama

Trial Date
11-1-04

174

STATE OF ALABAMA,                    )    IN THE CIRCUIT COURT OF

     PLAINTIFF,                     )

VS.                                  )    HOUSTON COUNTY, ALABAMA

RALPH LINGO,                         )    CRIMINAL DIVISION

     DEFENDANT.                     )    CASE NUMBER: CC-2003-599

                           )

## MOTION TO TRANSPORT DEFENDANT

    **COMES NOW** the Defendant, **RALPH LINGO**, and hereby moves this Honorable Court for an Order to transport the Defendant, **RALPH LINGO**, who is incarcerated at **Bullock County Correctional Facility** to the **Houston County Courthouse**, Dothan, Alabama, **for a Trial scheduled herein on the 1st day of November 2004, at 8:30 A.M. before Judge White.**

    **WHEREFORE**, Defendant, prays that this Honorable Court shall enter an Order allowing the Defendant to be transported to the **Houston County Courthouse**, Dothan, Alabama.

Respectfully submitted,

_signature_

**TAMMY L. STINSON (STI019)**
**ATTORNEY FOR DEFENDANT**
**313 NORTH FOSTER STREET, SUITE 4**
**DOTHAN, ALABAMA 36303**
**(334) 699-2143**

**FILED**

OCT 1 4 2004

_Judy Byrd_
JUDY BYRD, CLERK
HOUSTON CO., AL

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Motion upon the Honorable Douglas A. Valeska, Esquire, District Attorney, Houston County Courthouse, by placing a copy of same in his appropriate Courthouse box, this the 14 day of October, 2004.

**ATTORNEY AT LAW**

176

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | IN THE CIRCUIT COURT OF |
| PLAINTIFF, | ) | HOUSTON COUNTY, ALABAMA |
| VS. | ) | |
| RALPH LINGO, | ) | CRIMINAL DIVISION |
| DEFENDANT. | ) | CASE NUMBER: CC-2003-599 |

## ORDER OF TRANSPORT

The matter before the Court is the "Motion To Transport Defendant" filed herein by the Defendant; This Court has read, understood, and considered said Motion and is of the opinion that said Motion should be **GRANTED**; accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** as follows:

1. That the Sheriff of Houston County, Alabama shall transport the Defendant from Bullock County Correctional Facility to the Houston County Courthouse on November 1, 2004, at 8:30 a.m., for the purpose of a Trial before the Honorable Judge White.

2. That immediately after said hearing, the Sheriff of Houston County, Alabama shall transport the Defendant back to Bullock County Correctional Facility.

This the _19th_ day of _October_ 2004.

**FILED**

OCT 1 9 2004

_Judy Byrd_
JUDY BYRD, CLERK
HOUSTON CO., AL

_(signature)_
**JUDGE**

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA                 177

STATE OF ALABAMA,

**FILED**

Plaintiff,

Vs.

OCT 2 7 2004

Case No: CC-2003-1339,1340,0599

Ralph Lingo,

*Judy Byrd*

Defendant, JUDY BYRD, CLERK
HOUSTON CO., AL

## MOTION FOR DISCOVERY OF UNDISCLOSED INFORMATION

COMES NOW, Ralph Lingo, Defendant, and requests this Honorable Court to Grant this his request for Discovery of items and material that is vital to his pending action before this Honorable Court. Defendant prays that this Court will let him proceed and obtain the requested listed materials to prove, and defend against the charges pending.

1. The Dothan City Police Department, dispatch logs, audio tapes, for the Dates of April 14, 2003, from 6 am to 6 pm. and for May 7, 2003, for 6 am to 6 pm.

2. The Henry County Sheriff's dispatch logs, or audio logs, for April 14, 2003, for 6 am to 6 pm. and May 7, 2003, for 6 am to 6 pm.

3. All video tapes for the Henry County Courthouse, video survaliance, for April 14-thru-16, 2003, from 6 am to 6 pm. for these dates.

4. The video tapes, both inside and outside, of the Dothan City Jail, (the Whole jail) for the dates of April 13-thru18, 2003, from 6 am to 6 pm, also for May 7-8, 2003, from 6 am to 6pm.

5. The dispatch logs, or audio tapes for the Houston County Sheriff's Department, for April 14, 2003, for 6 am to 6 pm, and May 7, 2003, from 6 am to 6 pm.

6. The video tapes for the Houston County Courthouse, for April 16, 2003, from 6 am to 6 pm.

1.

7. To produce or supply all tapes, both audio and video, and all photographs taken on the day of April 14, 2003, during the search and seizure of all properties from 10666 Highway 431 South Newville, Alabama, supposid residence of Ralph Lingo, which has never been provided or issued, or allowed to be viewed by Defendant of his legal Counsel, yet requested repeatly by such.

Defendant prays this Court will Order and Grant this Motion for what has not been revealed.


Done on this the 25th day of October, 2004.

                              Respectfully submitted,


                              *Ralph Lingo* 10-25-2004
                              Ralph Lingo, Defendant
                              190083  3-34
                              P.O. Box 1107
                              Elmore, Ala. 36025

2.

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA                179

State of Alabama

       Plaintiff,

VS.

                       CASE NUMBER: CC-2003-1339,1340
                                     CC-2003-0599

Ralph Lingo,

       Defendant.

# FILED

ОСТ 2 8 2004

MOTION FOR RETURN OF SEIZED PROPERTY

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

    COMES NOW, Ralph Lingo, Defendant, in the above styled cause and moves this Court to direct that certain property belonging to him, and which is listed upon this pleading, and which was unlawfully taken from him on April 14, 2003, and on May 7, 2003. At the premises known as 10666 Highway 431 South, Newville Alabama, in Henry County.

    The following items were taken unlawfully from the residence, and from the person of Ralph Lingo.

    1. One White 2001 Dodge Pick-up, VIN# 1B7KC23691J214346, which was impounded by the Dothan City Police Department.

    2. One Hewlett & Packard computer, taken from residence, and never listed upon RETURN AND INVENTORY, sheet signed by Sgt. Tony Luker, on April 14, 2003, but **not** listed upon the actual Police Inventory.

    3. One HONDA generator, taken from residence, but never listed upon **any inventory sheets.**

    4. Approximately 1500 (fifteen Hundred) video tapes, located within two (2) cardboard boxes, 4 ft. by 2½ ft. in size, that were taken from the defendants residence while he watched them being confiscated.

    5. All business files, listed under Newville Portable Building Company.

    6. One Xerox copy, fax machine, not listed upon any Inventory Sheets, yet taken on April 14, 2003, in defendant's presence.

    7. All other items taken and not listed upon any Inventory Sheets, by the Dothan City Police officer Sgt. Tony R. Luker.
    These items should be returned to the defendant through this Court's

1.

180

own Order.

These items that are listed upon the Dothan Police Department Property Evidence Receipt, form signed by one Sgt. Tony R. Luker, yet are not listed upon the RETURN AND INVENTORY, sheet dated April 16, 2003, signed by Sgt. Tony Luker, and the acknowledged reciept of such signed by Judge White, on April 16, 2003.

The Defendant prays that this Honorble Court will issue this Return of Seized Property.

Done this the 22nd, day of October, 2004.

Respectfully submitted,

*Ralph Lingo* 10-22-04
Ralph Lingo, defendant
190083 3-34
P.O. Box 1107
Elmore, Alabama 36025

2.

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

181

State of Alabama

      Plaintiff

VS.

                              Case Number: CC-2003-1339,1340

Ralph Lingo,

      Defendant.

**FILED**

OCT 2 8 2004

JUDY BYRD, CLERK
HOUSTON CO., AL

## MOTION TO SURPRESS EVIDENCE AND CONTROVERT SEARCH WARRANT

COMES NOW, THE DEFENDANT, Ralph Lingo, and moves this Honorable Court and Grant this his Motion to Surpress Evidence and Controvert Search Warrant. This Defendant will show this Honorable Court the following;

Defendant Ralph Lingo, moves to quash a search warrant, for case Number: 02-007881, issued on the 14th day of April, 2003, to Sgt. Tony R. Luker, of the Dothan City Police Department, by Judge White. And also to suppress as evidence the articles taken by means of such search and seizure, and any evidence gained by means of such search.

The grounds for this motion are:

1. The warrant was illegally executed.

2. The warrant was insufficient on it's face.

3. The property seized was not sufficiently described by the warrant.

4. That this search warrant does not name the Defendant, Ralph Lingo, as a party of the warrant.

5. That there are multi-residences listed as addressed upon this warrant, and the Defendant's mobile home was only one of many, listed upon the location of this address, as listed upon the warrant.

6. That the warrant was issued in Henry County, Alabama, the warrant was issued to a Dothan City Police Officer, in Houston County, where a city police officer, in another County, has no jurisdiction for such a warrant, or the jurisdiction to serve such.

7. This warrant does not name the person, or particularly describe the property to be searched.

8. The warrant is directed against the premisis of no certain person.

9. The White Dodge pick-up VIN # 1B7KC23691J214346, was searched at the address listed upon the warrant, on April 14, 2003, yet this same vehicle was later confiscated on May 7, 2003, and impounded by Sgt. Tony R. Luker, and the Dothan Police Department, and is still in thier possession.

1.

10. A copy of the search warrant was never served upon the Defendant as required by Alabama law, per Code of Alabama 15-5-11, or A.R.C.P. 3.11(a).

11. This Motion is made persuant to A.R.C.P. 3.13(b).

12. By reason of the foregoing, said search and seizure was unreasonable in violation of the Fourth Amendment to the United States Constitution, and defendant was compelled to give evidence against himself in violation of the self-discrimination clause of the Fifth Amendment. Done this the 22nd day of October, 2004.

Respectfully submitted,

*Ralph Lingo* 10-22-04

Ralph Lingo, Defendant
190083  3-34
P.O. Box 1107
Elmore, Alabama 36025

2.

183

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA,
     Plaintiff,

Vs.

                               Case No: CC-2003-1339,1340,0599

RALPH LINGO,
     Defendant.

## MOTION FOR REAPPOINTMENT OF COUNSEL

COMES NOW, Ralph Lingo, Pro se Defendant in the above styled Cause, and would respectfully ask this Honorable Court for the following:

1. The Defendant wishes to discharge/replace his present assigned Attorney, one Ms. Tammy Lynn Stinson, which this Court did appoint.

2. The Defendant and Ms. Stinson, do not have an equal or even mutual agreement on the defense or representation of this Defendant's case.

3. That Defendant has irreconcilable differences with Ms. Stinson, that cannot be overcome, or worked through, and these differentes hinder adequate representation.

4. That Defendant has infact filed a grievance/complaint against Ms. Stinson, with the Alabama Bar Association, for her not handling Defendant's pending case, as required by Alabama Law, and the United States Constitution, and the Alabama Bar Association creed requires.

5. That this Attorney Ms. Stinson has not prepared the Motions, Investigation nor invested the required time to properly prepare and give this Defendant due representation as required by law.

6. That Ms. Stinson return any and all funds paid to her by this Court for work undone by her towards this Defendant's defense.

7. That this Honorable Court appoint another Attorney to represent

this Defendant in the upcoming legal proceeding.

The Defendant prays that this Honorable Court will grant this his Motion, as required by law to fairly and justly be able to present to this Court the facts, at issue and set for trail.

Done on this the ____day of _____, 200___.

Respectfully submitted,

Ralph Lingo, Pro se    11-3-2004
190083   3-34
P.O Box 1107
Elmore, Alabama 36025

RL/gp

2.

185

STATE OF ALABAMA,         )     IN THE CIRCUIT COURT OF

                )

      PLAINTIFF,       )     HOUSTON COUNTY, ALABAMA

                )

VS.                )     CASE NUMBER: CC-2003-599

                )

RALPH LINGO,          )

                )

      DEFENDANT.     )

## MOTION IN LIMINE

**COMES NOW** the defendant, **RALPH LINGO**, in the above referenced case and moves this Honorable Court in limine for an Order instructing the District Attorney to refrain absolutely from making any direct or indirect reference whatsoever in person, by counsel, or through witnesses, to the evidence or testimony described. In support of his motion the defendant shows the following:

1.    The trial will involve a determination of these basic issues:

    (A)    Whether Ralph Lingo committed the offense of Intimidating a Witness against Debra Tice Blackstone on or about May 2, 2003;

2.    The defendant believes and alleges that at trial the State will attempt to introduce evidence, make reference to, or otherwise leave the jury with the impression that he has been involved as perpetrator, defendant, and subsequently convicted in previous cases charging the defendant with the offenses of Arson 3rd in Houston County, Arson 3rd and 2nd in Dale County and Criminal Mischief in Houston County, offenses occurring in 1988, the offense of Assault 3rd in Houston County offense occurring in 1991, the offense of Harassing Communications in Dale County offense occurring in 1994, the offense of No Plumbing or Gas

Certification and Assault 3rd in Henry County offenses occurring in 2002, and the offense of Criminal Conspiracy in Barbour County offense occurring in 2003, and other possible acts of the defendant completely unrelated to nor tending in any way to prove the offense at bar, other than to place the defendant's character in issue.

3.    It is immaterial and unnecessary to the disposition of this case and contrary to the rules of evidence recognized by law in this state to permit such evidence or inference and would be highly prejudicial to the defendant in the minds of the jury in that the evidence would place the defendant's character in issue and inform the jury of past crimes and offenses for which the defendant has been convicted.

4.    An ordinary objection during the course of trial, even if sustained with proper instructions to the jury, will not remove the effect of such evidence from the minds of the jurors even though the defendant's character has not been placed in evidence and these past activities of the defendant are too unrelated and too removed in time to have any evidentiary value in the case at bar.

The Defendant prays this Honorable Court exercise its discretion and make an Order absolutely prohibiting offers or references to these matters.

Respectfully submitted this the 3rd day of November, 2004.

TAMMY L. STINSON (STI019)
ATTORNEY FOR DEFENDANT
313 NORTH FOSTER STREET, SUITE 4
DOTHAN, ALABAMA  36303
(334) 699-2143

187

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Motion upon the Honorable Douglas A. Valeska, Esquire, District Attorney, Houston County Courthouse, by placing a copy of the same in his appropriate Courthouse box, on this the 3rd day of November, 2004.

**ATTORNEY AT LAW**

| STATE OF ALABAMA, | ) | IN THE CIRCUIT COURT OF |
| | ) | |
| PLAINTIFF, | ) | HOUSTON COUNTY, ALABAMA |
| VS. | ) | |
| | ) | CRIMINAL DIVISION |
| RALPH LINGO, | ) | |
| | ) | CASE NUMBER: CC-2003-599 |
| DEFENDANT. | ) | |

## MOTION TO SUPPRESS DEFENDANT'S STATEMENTS

**COMES NOW** the Defendant, **RALPH LINGO,** and hereby moves this Honorable Court to suppress any and all statements made by him to law enforcement officers after his arrest. In support of his motion, the defendant states:

1.  Ralph Lingo is charged with Intimidating a Witness.

2.     The State, by and through the District Attorney, will attempt to introduce into evidence at trial, oral admissions, a written statement, and/or tape recordings of statements made by the defendant to law enforcement officers while in custody.

3.     Those statements which incriminate the defendant were made in the absence of counsel and without an intelligent or knowing waiver of counsel.

**WHEREFORE,** Defendant, prays for a hearing to determine the voluntariness of the statements in the totality of circumstances and to determine the validity of any waiver of counsel prior to the interrogation.

The defendant also prays that he be granted a hearing prior to trial to determine whether the statements were voluntarily given.

189

Respectfully submitted,

TAMMY L. STINSON (STI019)
ATTORNEY FOR DEFENDANT
313 NORTH FOSTER STREET, SUITE 4
DOTHAN, ALABAMA 36303
(334) 699-2143

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Motion upon the Honorable Douglas A. Valeska, Esquire, District Attorney, Houston County Courthouse, by placing a copy of same in his appropriate Courthouse box, this the 3rd day of November, 2004.

ATTORNEY AT LAW

STATE OF ALABAMA,    ) IN THE CIRCUIT COURT OF
            )
    PLAINTIFF,   ) HOUSTON COUNTY, ALABAMA
            )
  VS.        ) CASE NUMBER: CC-2003-599
            )
RALPH LINGO,    )
            )
    DEFENDANT.  )

## MOTION IN LIMINE

   The defendant, RALPH LINGO, moves this Honorable Court to Order the District Attorney, agents of the State, and all witnesses to refrain absolutely from making any mention or reference, either direct or indirect, to the fact that this defendant is also charged with counts of Theft by Deception and Conspiracy to Commit Arson in the Circuit Court of Houston County and two counts of Receiving Stolen Property in Henry County.

1. The criminal charges in Houston County and Henry County are pending at this time and no adjudication of guilt or jury verdict has been obtained. To allow the State to bring in evidence of a separate and distinct crime or crimes from which this defendant has not been convicted would constitute a denial of due process, equal protection, and would make it legally impossible for this defendant to obtain a fair and impartial trial on the charges in this Court. The interest of justice dictate that an Order be given in this case to protect this defendant's constitutional rights under the Untied States and Alabama Constitutions.
2. In addition, to allow the State to make any reference to these other criminal charges would place this defendant's character into evidence unjustifiably and illegally and would result in reversible error.

   It is respectfully requested that this Court issue an Order prohibiting the State, including the District Attorney, agents of the State, and any and all witnesses to be called in the trial of this case, to refrain absolutely from making any mention or reference, either direct or indirect, to any of these other pending criminal charges.


              _____
              TAMMY L. STINSON (STI019)
              ATTORNEY FOR DEFENDANT
              313 NORTH FOSTER STREET, SUITE 4
              DOTHAN, ALABAMA 36303
              (334) 699-2143

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Motion upon the Honorable Douglas A. Valeska, Esquire, District Attorney, Houston County Courthouse, by placing a copy of the same in his appropriate Courthouse box, on this the 3rd day of November, 2004.

**ATTORNEY AT LAW**

192

November 3, 2004- Defendant's motion in
limine granted as to any past conviction
or pending charge not relevant to this
indictment unless defendant chose to testify
motion to suppress statement of defendant denied
Gary M. White, Judge

November 3, 2004 - Motion for appointment of new attorney denied

*Eugene M. White*
*Judge*

November 3, 2004. Motion for judgment of acquittal is denied.

*Eugene M. White*
*Judge*

**JURY CONVICTION**

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

*Ralph Wilson Lingo*                    CASE NO. _CC 2003 - 599_

     The Defendant having been indicted and arraigned upon the Indictment on a charge of *Intimidating Witness* and heretofore having plead not guilty thereto the case was tried before a jury composed of _Steven L. Henderson_ as foreperson and eleven others. The Jury having been duly empanelled , sworn and charged by the Court according to law , with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of *Intimidating Witness* as charged in the Indictment (a lesser included offense of that charge in the Indictment).

     In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of *Intimidating Witness* Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing .

     IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT that the Defendant is guilty of said charge.

     A Sentence hearing is set for the _9th_ day of _December_, 2004 at _9:00_ o'clock _A_ M.

     DONE, this the _4th_ day of _November_, ~~2002~~ 2004

                                        _____
                                        CIRCUIT JUDGE

Stamp and sec
by the clerk of court
and keep on file

Date 1, 05-2004

195

Page 1 of 7

Case number: 2003-casa-599
Defendant: Ralph Lingo
Plaintiff: Deborah Blackstone
Charge: Intimidating a state witness.

File in the Houston County Court, Dothan, Al.

I, Ralph Lingo, ask the court for a retrial. The reasons why:

1. Tony Luker was recording part of the trial with a hand tape recorder.

2. The court denied all my witnesses. The court did not let me know this.

3. Houston County Jail would not allow me to shave, or comb my hair, or get ready for court. Then I was lied to three different times when I asked if I was going to court.

4. My attorney had misled me, and had been lying to me ever since she has been on my case.

5. My attorney would not cross examine any of the witnesses.

Page 2 of 7

6. My attorney did not tell me that my witnesses would not be at my trial.

7. I asked my attorney to bring up the search warrant during trial. She refused. The search warrant was very critical to my trial.

8. I asked my attorney to bring up my arrest by Dothan Police officers while I was in another county and jurisdiction.

9. The judge would not allow me to be co-counsel to my attorney during my trial so that I could cross examine or question any of the witnesses. I feel my constitutional rights were violated.

10. Deborah Blackstone was never subpoenaed to be a state witness.

11. The court refused to give me any evidence I have asked for.

Page 3 of 7.

12. I feel like the Bullock Corrections investigator misled me during an investigation. He had me sign a paper and told me it was for medical reasons. He never mentioned Deborah Blackstone untill he turned on a tape recorder and suddenly began questioning me about her. He planned to turn this over to another investigator who was assigned to my case and trial.

13. This incident was already turned over to lieutenant Cunningham with Bullock correctional facility. That is, the incident I was questioned about.

14. The investigator for Bullock correctional did not ever question me about any type of criminal activity toward Deborah Blackstone until he turned on his tape recorder.

15. The jury was not questioned properly. Some of the jury were co-workers of Deborah Blackstone, and some were co-workers with her mother. She was talking to the jury during a lunch recess.

Page 4 of 7

16. a member of the jury witnessed me being handcuffed in front of him, and I was not allowed to take off my Houston county wristband during my trial.

17. I have asked my attorney to step off my case many times. I have filed a complaint to the bar that Tammy Stinson would not give me a copy of the motion of discovery. She also told me not to call her, not to write her more than once a month, she also stated she would only get prepared for my trial at the time of my trial. I had subpeonaed my own witnesses. I feel like my rights were violated when the judge denied me my witnesses.

18. In my and Deborah Blackstones divorce papers, Never has she made a report against me for any type of body harm to her.

19. my attorney would not bring up Deborah Blackstone's and my bank account together

Page 5 of 7

20. I asked my attorney to bring up and question Deborah Blackstone about our common law marriage. She and I had lived together for over four years, and common law marriages cannot testify against one another.

21. witnesses I had subpeonaed were critical to my case.

22. during a corpus haebus bond hearing, Judge White would not let the court reporter record anything.

23. During my trial, Judge White asked Deborah Blackstone more questions than the state attorney. I feel like he was leading the witness.

24. The judge agreed to a lesser offense charge, then changed his mind when the jury came in.

25. my attorney would not pull a criminal history report for state witness Lisa Robbins.

200

page 6 of 7

26. I asked for a pretrial hearing and my attorney said I could not have one.

27. file for a motion to depress all evidence and search warrant before any trial was ignored by the court

28. I was very sick and ill because of my blood pressure.

29. I never had a docket call.

30. I am asking the court to give me a retrial and to allow me my witnesses, and to bring up the jurisdiction law, as it applies to my case. I also want a hearing on the search warrant. T

31. I want to make sure that the transcripts have where I gave Judge white all the law on jurisdiction, He told me to give him all my paper work, and I did.

page 7 of 7

32. Judge White was withholding evidence from the jury, and would not let the defense give this evidence to the jury.

If the court does not allow me a retrial, I ask to be brought in front of the judge for sentencing without delay. I will then ask for an appeal, so I can start my appeal process. I ask the court to give me a hearing at once, within the next seven days.

Ralph Lingo

11-5-2004

Stamp and seal by the clerk of court and keep on file.

**FILED**

NOV 10 2004

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

202

Case number: 2003-000-599

stamp and seal and keep on
file by the Houston County clerk of Court

I am filing for a dismissal of
the indictment for intimidation of a
state witness. The indictment is not a
true bill.

1. the indictment misreads intentionally
2. Knowingly
3. Recklessly
4. Criminal negligence

It is found in 816 So. 2d 98
and the Judge would not let me bring this
up in trial. I want a trial dismissed because
This is not a true indictment.

Stamp and seal by the clerk of court
and keep on file

**FILED**

NOV 10 2004

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

13A-10-123
*Ralph Lingo,* 11-5-2004
Date

COURT OF CRIMINAL APPEALS NO. _CR 04-0602,_____

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

## FROM

## CIRCUIT COURT OF ___HOUSTON___ COUNTY, ALABAMA

CIRCUIT COURT NO.   CC-2003-599          Volume II

CIRCUIT JUDGE   Jerry White

Type of Conviction / Order Appealed From: ___Intimidating a Witness___

Sentence Imposed: 20 years, $10,000.00 Fine  $1,000.00 Victim Compensation and Cost

Defendant Indigent:   ☒ YES   ☐ NO

Ralph Lingo
_____          NAME OF APPELLANT

Jon Patrick Amason                334-793-9009
(Appellant's Attorney)                      (Telephone No.)
401 N. Foster Street
(Address)
Dothan          Alabama          36301
(City)            (State)          (Zip Code)

### V.

## STATE OF ALABAMA
_____          NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)

Nov, 18, 2004 - Motion for new trial denied.
Motion to Suppress, etc denied.

(12-7-04 N: TS + DA)

204

STATE OF ALABAMA                    *    IN THE CIRCUIT COURT OF
                                    *
VS.                                 *    HOUSTON COUNTY, ALABAMA.
                                    *
_Ralph Lingo_____         *    CASE NO._____

## NOTICE TO DEFENDANT OF PREVIOUS CONVICTIONS AND
## NOTICE OF INTENT TO USE SUCH CONVICTIONS FOR IMPEACHMENT PURPOSES

You are hereby notified that the District Attorney's Office has evidence of the following convictions, which, in the event of your conviction in the above case, will be presented to the Court for consideration under the Habitual Offender Statute, §13A-5-9, Code of Alabama, 1975.   Furthermore,  it is the State's intent to use such convictions for impeachment purposes should the defendant testify at trial - Rules 609(a )(b)&(c) of the Alabama Rules of Evidence:

| Date | Case No. | Charge | Disposition | Jurisdiction |
|------|----------|--------|-------------|--------------|
| 3-2-83 | cc-82-798 | R.S.P. II | 2 YRS. | Houston Co, ALA. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

You will be properly notified in the event the District Attorney receives evidence of any other additional convictions.

This the _8_ day of _Dec._____, 20_04_.

_____
Henry D. Binford
Assistant District Attorney

## CERTIFICATE OF SERVICE

I, Henry D. Binford, Assistant District Attorney, do hereby certify that I have this date served a copy of the foregoing on _____Tammy Stinson_____, attorney of record for the defendant, by ~~fax placing a copy of the same in his/her mailbox at the Houston County Courthouse~~ on this _8_ day of _Dec._ 20_04_.

_____
Henry D. Binford
Assistant District Attorney

# FILED

DEC - 8 2004

_Judy Byrd_
JUDY BYRD, CLERK
HOUSTON CO., AL

205

| State of Alabama Unified Judicial System | CASE ACTION SUMMARY (CRIMINAL) | Case Number |
|---|---|---|
| Form C-8  Rev 8/77 | | CC 82 798 |

IN THE ___ CIRCUIT ___ COURT OF ___ HOUSTON ___ COUNTY

STATE OF ALABAMA
vs.                    Date of Birth            Distinguishing Features:

| Defendant | Address | | SSAN | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ralph Wilson Lingo | | | Sex | Race | | Eyes | Hair | Height | Weight |
| | | Zip | Date War/Cap. Issued | | Date Committed to Jail | | | | |
| Employer  DOB: 2-4-62 | Date Docketed: 11-18-82 | | Writ 11-16-82 | | 11-17-82 | | | | |
| | | | Date Initial Appearance | | Date Released on Bond | | | | |
| Case Number | Date Arrested | Incarcerated | | | 11-17-82 | | | | |
| CC 82 798 [X] Jury [ ] Non-Jury | 11-17-82 | [ ] On Bond | Bond Amount | | Bond Type & Sureties | | | | |
| Cnarges [ ]Msd. [X]Fel. [ ]App. | Prosecutor Thomas W. Sorrells | Judge ID | $1,000.00 | | | | | | |
| | | | Dt. Prelim. Hearing | | Property | | | | |
| Receiving Stolen Property, Second Degree | Attorney | | Dt. Y.O. Applic. | | Dt. Probation Applic. | | | | |
| | | | Grand Jury No. 115 | | Dt. Indictment 11-16-82 | | | | |
| | | | Dt. Arraignment 11-24-82 | | Plea | | | | |

| Arresting Officer: | [ ] Municipal [ ] State [ ] County [ ] Conservation | Dt. Trial 3-2-83 | Dt. Sentenced |
|---|---|---|---|
| Complainant: | Address | Dt. Appeal Filed | Appeal Bond Amt. |

Additional Information And Remarks:                    Disposition

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| Nov 24, 1982 - | Forfeiture bail Cha wt ? arrest to issue. No new bail (White Judge) |
| Nov 24, 1982 - | Forfeiture Set aside (White Judge) |
| Nov 24, 1982 | Defendant arraigned on the indictment in this cause and pleads not guilty to the offense charged therein. Case set for trial Feb 28 , 1983 |
| 35-398 | ___ JUDGE |
| | ( over ) |

Court Record - White

| Date | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|

March 2, 1983. The Defendant _Ralph Wilson Lingo_ together with his attorney, being before the Court in open Court, and having been advised by the Court of the charge or offense embraced in the indictment, and having been further advised by the Court of the punishment for said offense provided by law, the said defendant _Ralph Wilson Lingo_ with the consent and advice of his attorney, pleads guilty to the offense of _Receiving Stolen Property_ as charged in the indictment. The Court adjudges the defendant _Ralph Wilson Lingo_ guilty of _Receiving Stolen Property_ as charged in the indictment, on his said plea of guilty thereto. Defendant sentenced to imprisonment in the penitentiary for _2 years_

_____
Judge Presiding

March 2, 1983 - Deft. makes application for Probation.
35-656

April 1, 1983 - Deft. placed on 5 years Probation

Circuit Court

State of Alabama, Houston County
I Judy Byrd, Clerk of The Circuit Court, hereby
certify that this is a true and correct copy of
Case Action Summary
filed in this Court on Ralph Lingo
This the 8 day of Dec , 2004

Judy Byrd
Circuit Clerk

207

# ALABAMA DEPARTMENT OF PARDONS AND PAROLES
## REPORT OF INVESTIGATION

Type of Investigation    Pre-Sentence    Officer    Will H. Johnston

Name    Lingo, Ralph Wilson    True Name    Same

Alias

RSA    W/M 42    DOB    02-04-62    Height and Weight    6' 1" 250

Complexion    Color of Hair    Brown    Color of Eyes    Hazel

Bodily Marks    Scars on knees

Driver's License    AL-4555145    SS#    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

AIS#    190083    FBI#    17755X    SID#    AL-008737127

Address    Alabama Department of Corrections    Phone#

PR#    1995-120630

County    Houston    Case#    CC 2003-599

Offense (s)    Intimidating a Witness

Sentence (s)

Date of Sentence    Date Sentence Began

Date of Arrest    05-08-03    Date of Bond    Bond Amt. $    200,000

Judge    Jerry M. White    D.A.    Douglas Valeska

Attorney    Tammy Stinson    Retained    Appointed    X

Total Court Ordered Restitution $

Barred from Parole    Yes    No    X

Date Prepared    12-07-04    Date Sent to Central Records

## NOTES:

1

208

# PRESENT OFFENSE

## County, Court, and Case Number:

Houston County 20th Judicial Circuit Court Case Number CC 2003-599

## Offense:

Intimidating a Witness

## Sentence:

## Date of Sentence:

## Details of Offense:

On 04-24-03, the victim, Debra Tice Blackstone of 402 Emmons Drive, Dothan, Alabama signed a warrant on her ex-husband, Ralph Lingo for harassing communications. Ms. Blackstone also signed a ex-parte protection order on the same date.

On 04-29-03, Ralph Wilson Lingo was arrested for Harassing Communications.

On 05-02-03, Debra Tice Blackstone was hand delivered a letter at her residence by an unknown black male. This letter contained nude pictures of Ms. Blackstone as well as a threat to ruin her really bad and to post these pictures all over Dothan. The letter also stated that Ms. Blackstone needed to contact Ralph Lingo and drop all charges that were pressed against him.

On 05-08-03, Ralph Wilson Lingo was arrested and charged with Intimidating a Witness.

## Serious Physical Injury Barring Parole:

None

## Subject's Statement:

The subject was unavailable to make a statement.

## Case Status of Co-Defendants:

None

**Victim Notification Information Form ( ) Completed ( ) Attached () Not Applicable:**

Debra Tice Blackstone 402 Emmons Drive, Dothan, Alabama.
**Victim Impact:**

The victim stated she has suffered emotionally due to this trial.

**Location of Offense:**

This offense occurred within the City Limits of Dothan, Alabama.

**Court Ordered Restitution:**

**RECORD OF ARREST (S)**

**Prior Arrest Record:**

| Arrest Date | Court | Offense | Disposition Date | Disposition |
|---|---|---|---|---|
| 09-19-81 | Houston County Sheriff's Department | Assault II | 02-02-82 | Dismissed |
| 06-23-82 | Houston County Circuit Court 38 CC 82-600 | Theft of Property I | 01-24-83 | Dismissed |
| 06-23-82 | Houston County Sheriff's Department | Larceny of Property II | | Unlisted |
| 09-15-82 | Houston County Circuit Court 38 CC 82-798 | Receiving Stolen Property II | | Sentenced to 3 Years |

| Date | Agency | Charge | Date | Disposition |
|---|---|---|---|---|
| 09-15-82 | Houston County District Court 38 CC 82-848 | Criminal Coercion | | Guilty 6 Months Suspended Sentence, Fined $50.00 |
| 01-25-88 | Dale County Sheriff's Department | Arson II | | Guilty, Pled down to Arson III, Sentenced to 30 Days, Fined $50.00 |
| 03-30-88 | Houston County Sheriff's Department | Burglary II | 08-17-88 | Pled down to Criminal Mischief II, Guilty Sentenced to 12 months, Fined $100.00 |
| 05-05-89 | Dothan Police Department | Assault III | 10-09-89 | Dismissed |
| 12-12-90 | Houston County Circuit Court 38 CC 91-217 | Sexual Abuse I | 11-15-91 | Pled down to Assault III, Guilty, Sentenced to 12 Months Suspended, 3 Years Probation, Fined $250.00 |
| 06-01-92 | Dothan Police Department | Indecent Exposure | 07-02-92 | Dismissed |
| 12-08-94 | Headland Police Department | Reckless Endangerment | 06-02-99 | Acquitted |
| 11-20-95 | Houston County Circuit Court 38 CC 96 -740 | Rape I | 11-20-95 | Dismissed |

| 11-20-95 | Houston County Circuit Court 38 CC 96-730 | Sodomy I | 10-30-96 | Pled down to Sodomy II, Convicted, Sentenced to Life |
| 12-13-95 | Houston County Circuit Court 38 CC 95-1475 | Rape I | 12-13-95 | Dismissed |
| 04-15-98 | Houston County Circuit Court 38 CC 98-1049 | Enticing a Child for Immoral Purposes | 11-19-98 | Acquitted |
| 05-08-03 | Houston County Circuit Court 38 CC 03-1340 | Conspiracy to Commit Arson | 11-30-04 | Remanded to the Grand Jury |
| 05-08-03 | Houston County Circuit Court 38 CC 03-1339 | Theft by Deception I | | Set for Jury Trial 01-10-05 |

## Subsequent Arrest Record:

| Arrest Date | Court | Offense | Disposition Date | Disposition |
| --- | --- | --- | --- | --- |
| 09-02-03 | Barbour County Sheriff's Department | Arson II | 09-25-03 | Guilty, Sentenced to 15 Years, Split 2 |

## PERSONAL/SOCIAL HISTORY

## Subject:

Ralph Wilson Lingo age 42, is a white male with a date of birth of 02-04-62. He is the eldest of 2 children born to James B. Lingo and Nattie Ruth Lingo of Dothan, Alabama. Ralph Lingo is born in Dale County, but has lived in the Dothan area his entire life.

**Marital Status/History:**

Records indicate that Ralph Lingo has been married to a Charlene Lewis and also a Debra Tice Blackstone.   Mr. Lingo is currently incarcerated with the Alabama Department of Corrections, therefore, no current marital status history was able to be obtained.

**Health:**

Records indicate that subject does not have any physical disabilities, and that he has never been treated for any mental or emotional problems.

**Education:**

Records indicate that Ralph Lingo completed the 8th Grade prior to dropping out. It is unknown whether Mr. Lingo has furthered his education or had any other type of training.

**Financial Status:**

Unknown

**Employment History:**

Records indicate that the subject has worked full time in the Lawn Care and Landscaping Field.   He has also been employed with Easom Plumbing, Twitchell Corp., and Whitehead Milling Company.

**Military Record:**

Unknown

**Offender's Family:**

**Father:**

James B. Lingo, whereabouts unknown.

**Mother:**

Nattie Ruth Lingo, whereabouts unknown.

213

**Siblings:**

Brother-Ricky Lingo, whereabouts unknown.

<div align="center">

### EVALUATION OF OFFENDER

</div>

**Psychological Reports:**

As there were no psychological reports available, no evaluation was made.

**Probation and Parole Officer's Remarks:**

This Officer recommends a medium to maximum sentence with the Alabama Department of Corrections.

**Signed and dated in Dothan, Alabama on this the 8th Day of December, 2004.**

<div align="center">

Will H. Johnston
Alabama Probation and Parole Officer

</div>

WHJ/sa

214

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s) _with any sentence presently being served_

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

( ) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ _10,000[00]_
(X) A Victim Compensation Assessment of $ _1,000[00]_
(X) All Court Costs.
( ) Restitution of $ _____ to _____
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.
( ) Alabama Dept. of Forensic Sciences-Dothan Division $_____
( ) Investigation restitution to ( )DPD ( ) HCSO $_____

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $_____
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _9th_ day of _December_ 20_04_.

_____
CIRCUIT JUDGE

215

December 9 2004 -    Deft given oral notice
of Appeal to Alabama Court of Criminal
Appeals.  Deft allowed free transcript.
Patrick Amason Appointed to represent
deft on Appeal.  Bail Set $50,000
Clerk to notify Deft, Ct of Crim'l Appeal
and Mr. Amason.

(1-4-05 N: DA, PA, Jail)

The State of Alabama
Houston County Courthouse
Dothan, Alabama          12-9-2004

316

Filing an appeal on intimidating a state witness.

I, Ralph Wilson Lingo, am giving the court
Notice of appeal for intimidating a state
witness. Case number! 03-000599.00. I want an
appeal bond, and the court reporters name and
address, and a copy of the transcript, and
who is doing my appeal. I am filing indigence.
Please stamp with a court seal and send a
Copy back to me, and please write a letter in a
clerk of court letter head stating that I have
filed for an appeal, 13A-10-123
against Debra Blackstone

                              Ralph Lingo 12-9-2004

Filed in office
12/14/04 Judy Byrd, clerk

217

Todays date: 12-9-4

The state of Alabama

Houston County

The city of Dothan

FILED

DEC 14 2004

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO. AL

Case number: 03-000 5

Filing in the Houston County court
with the clerk of court Judy Byrd

Please Give this letter to Judge White, and Keep a copy
on file.

   I, Ralph Lingo, am asking the court to
appoint to me Steve McGowan, attorney at
law, to represent me in my appeal for intimidating
a state witness, and to file a direct appeal.
I have been talking to Mr. McGowan about this
case, but I have not had the money to hire
him. So I asked him if he would take it
being court appointed and he said he would.
I ask you Judge White to appoint me Steve
McGowan to handle my appeal.
   Steve McGowan
   Attorney at Law          Office: (334) 678-8200
   119. S. Foster St.          Fax: (334) 678-1497
   Suite 101                  Toll Free: 1-888-944-5500
   P.O. Box 2101
   Dothan, Al. 36301
Judge White, if you will do this I would appreciate it.
Please stamp and send a copy
Back. Thank You.                Ralph Lingo 12-9-2004

218

FOR INTIMIDATING
STATE WITNESS'

2003-000599.00                    12-14-04

13A-10-123(a)

FILING IN THE HOUSTON COUNTY COURT HOUSE
IN THE STATE OF ALABAMA' I ASK JUDGE
WHITE TO RESPECTFULLY APPOINT STEVE NAGALE
TO BE MY APPEAL ATTORNEY AND I ALSO ASKING
THE COURT TO ALLOW STEVE NAGALE TO FILE A
DIRECT APPEAL. I AM ASKING THAT THE COURT
CLERK PLEASE CONTACT ME IMMEDIATELY AND
I AM ALSO REQUESTING THAT THE COURT SEND
A COPY OF ALL SUBPOENA I'VE FILED WITH THE
COURT CLERK'S OFFICE. I DO NEED THE STAMP SEAL
INDICATED ON SUBPOENA. PLEASE NOTE THAT
STEVE PRATICE LAW WITH TOMMY SCARBOROUGH
I DO NOT KNOW STEVE EXACT LAST NAME.
STEVE ADDRESS' 119 S. FOSTER ST.

SUITE 101                    **FILED**

PO BOX 2101

DOTHAN, AL 300 36302         DEC 17 2004

                             *Judy Byrd*
                             JUDY BYRD, CLERK
I ASKED JUDGE WHITE TO RESPECTFULLY HOUSTON CO. AL
STEVE TO REPRESENT ME ON ALL CURRENT CASES

PETITION TO CIRCUIT CLERK, MS JUDY BIRD TO KEEP ON FILE

*Ralph Liigo* 12-14-2004

ACR371
ALABAMA JUDICIAL DATA CENTER                                                  219
NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF HOUSTON COUNTY
STATE OF ALABAMA VS LINGO RALPH WILSON        JUDGE: JERRY M. WHITE

---

APPEAL DATE: 12/09/2004

INDIGENCY STATUS:
  GRANTED INDIGENCY STATUS AT TRIAL COURT:        __X__ YES  _____ NO
  APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:  _____ YES  __X__ NO
  INDIGENT STATUS REVOKED ON APPEAL:              _____ YES  __X__ NO
  INDIGENT STATUS GRANTED ON APPEAL:              __X__ YES  _____ NO

DEATH PENALTY: NO

APPEAL TYPE: STATE CONVICTION

---

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 11/04/2004        DATE OF SENTENCE: 12/09/2004

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 38/CC 2003 000599.00
CODE: INTI   CONVICTION: INTIMIDATING A W    ACTION: CONVICTED
                                             STATUTE: 13A-010-123
SENTENCE:   CONF: 20 YRS 00 MOS 000 DAYS
SENTENCE:   PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO  LIFEWO: NO

---

| POST-JUDGMENT MOTIONS FILED: | DT FILED | DT DENIED | CON BY AGREE |
|---|---|---|---|
| _X_ MOTION FOR NEW TRIAL | 11/10/2004 | 11/18/2004 | ----------- |
| _X_ MOTION FOR JUDG OF ACQUIT | 11/03/2004 | 11/03/2004 | ----------- |
| ___ MOTION TO W/D GUILTY PLEA | --------- | --------- | ----------- |
| ___ MOTION FOR ATTY TO W/DRAW | --------- | --------- | ----------- |
| ___ OTHER | --------- | --------- | ----------- |

---

COURT REPORTER(S):              WOODALL, CARLA H.
ADDRESS:                        C/O HON. LARRY ANDERSON
                                DOTHAN       , AL  36302

APPELLATE COUNSEL #1:           AMASON JON-PATRICK
ADDRESS:                        401 N FOSTER STREET

                                DOTHAN       , AL  36303
PHONE NUMBER:                   334-793-9009

APPELLATE COUNSEL #2:           ---------------------------------
ADDRESS:                        ---------------------------------
                                ---------------------------------
                                ---------------------------------
PHONE NUMBER:                   ---------------------------------

APPELLANT (PRO SE):             LINGO RALPH WILSON
ADDRESS:                        % HOUSTON COUNTY JAIL
                                DOTHAN       , AL  363020000
AIS #:

APPELLEE (IF CITY APPEAL):      ---------------------------------
ADDRESS:                        ---------------------------------
                                ---------------------------------

---

I CERTIFY THAT THE INFORMATION PROVIDED                OPERATOR: RHM
ABOVE IS ACCURATE TO THE BEST OF MY              PREPARED: 01/04/2005
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 4th DAY OF January 2005 _____
                                             CIRCUIT COURT CLERK

State of Alabama
Unified Judicial System
Form ARAP-26 (front)    8/91

**COURT OF CRIMINAL APPEALS**
**DOCKETING STATEMENT**

Criminal Appeal Number

_220_

**GENERAL INFORMATION:**

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF _Houston_ COUNTY

_Ralph Wilson Lingo_ , Appellant

V.  ☒ STATE OF ALABAMA  ☐ MUNICIPALITY OF _____

| Case Number | Date of Complaint or Indictment | Date of Judgment/Sentence/Order |
|---|---|---|
| CC-03-599 | 9-5-03 | 12-9-04 |

Number of Days of Trial/Hearing _____ Days    Date of Notice of Appeal  Oral: 12-9-04    Written: _____

Indigent Status Requested: ☒ Yes  ☐ No          Indigent Status Granted: ☒ Yes  ☐ No

**B. REPRESENTATION:**

Is Attorney Appointed or Retained?  ☒ Appointed  ☐ Retained.    If no attorney, will appellant represent self?  ☐ Yes  ☐ No

Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)
_Jon-Patrick Amason_        Telephone Number  334-793-9009

Address _401 N. Foster Street_    City _Dothan_    State _AL_    Zip Code _36301_

**C. CODEFENDANTS:** List each CODEFENDANT and the codefendant's case number.

| Codefendant | Case Number |
|---|---|
| | |
| Codefendant | Case Number **FILED** |
| | |
| Codefendant | Case Number  JAN 0 5 2005 |

**D. TYPE OF APPEAL:** Please check the applicable block.

☒ 1 State Conviction        4 ☐ Pretrial Order           7 ☐ Juvenile Transfer Order      10 ☐ Other (Specify):
2 ☐ Post-Conviction Remedy   5 ☐ Contempt Adjudication    8 ☐ Juvenile Delinquency
3 ☐ Probation Revocation     6 ☐ Municipal Conviction     9 ☐ Habeas Corpus Petition

_Judy Byrd_
JUDY BYRD, CLERK
HOUSTON CO., AL

**E. UNDERLYING CONVICTION/CHARGE:** Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § _____
2 ☐ Homicide - § _____
3 ☐ Assault - § _____
4 ☐ Kidnapping/Unlawful Imprisonment - § _____
5 ☐ Drug Possession - § _____
6 ☐ Trafficking in Drugs - § _____
7 ☐ Theft - § _____
8 ☐ Damage or Intrusion to Property - § _____
9 ☐ Escape - § _____
10 ☐ Weapons/Firearms - § _____
11 ☐ Fraudulent Practices - § _____
12 ☐ Offense Against Family - § _____
13 ☐ Traffic - DUI - § _____
14 ☐ Traffic - Other - § _____
15 ☒ Miscellaneous (Specify): _13A-10-129_

**F. DEATH PENALTY:**

Does this appeal involve a case where the death penalty has been imposed?  ☐ Yes  ☒ No

**G. TRANSCRIPT:**

1. Will the record on appeal have a reporter's transcript?  ☒ Yes  ☐ No
   - If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed.  _1-5-05_ (Date)
2. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk?  ☐ Yes  ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions?  ☐ Yes  ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

Form ARAP- 26 (back)    8/91

COURT OF CRIMINAL APPEALS DOCKETING STATEMENT

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

221

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| 11 | 10 | 04 | Motion for New trial | 11 | 18 | 04 |
| 11 | 3 | 04 | Motion for Judgment of Acquittal | 11 | 3 | 04 |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

New Attorney appointed on appeal.

Do not know yet.

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. *(Attach additional pages if necessary.)*

New Attorney appointed on appeal.

Do not know yet.

**SIGNATURE:**

1-5-05

Date

Signature of Attorney/ Party Filing this Form

| State of Alabama<br>Unified Judicial System<br>Form ARAP-1C          8/91 | **REPORTER'S TRANSCRIPT ORDER -- CRIMINAL**<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br><br>_____ - _____ |

**. COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

[X] CIRCUIT COURT  [ ] DISTRICT COURT  [ ] JUVENILE COURT OF  *Houston* _____ COUNTY

*Ralph Wilson Lingo* _____ , Appellant

V.  [X] STATE OF ALABAMA  [ ] MUNICIPALITY OF _____

| Case Number<br>*CC - 03 - 599* | Date of Judgment/Sentence/Order<br>*December 9th 2004* |
| Date of Notice of Appeal<br>Oral: *12-9-04*    Written: | Indigent Status Granted:<br>[X] Yes    [ ] No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**

I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY **(1)** THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR **(2)** THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-72, *CODE OF ALABAMA 1975*).

| Signature | Date | Print or Type Name |

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

MARK PROCEEDINGS REQUESTED:                                                    **COURT REPORTER(S)**

A. [X] TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence    *Carla Woodall*
proceedings, a transcript of the organization of the jury and arguments of counsel must    _____
be designated separately.                                                      _____

B. [ ] ORGANIZATION OF THE JURY - This designation will include voir dire examination and    _____
challenges for cause. Note that in noncapital cases the voir dire of the jury will not be    _____
recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)            _____

C. [ ] ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will    _____
not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)     _____

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

ADDITIONAL PROCEEDINGS REQUESTED                    DATE            **FILED**

D. _____

E. _____                                                 **JAN 0 5 2005**

F. _____                                                 *Judy Byrd*

G. _____                                                 **JUDY BYRD, CLERK**
                                                                    **HOUSTON CO. AL**

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER"S TRANSCRIPT:**

I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY **(1)** THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR **(2)** THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, **(3)** THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

| *(signature)* | *1-5-05* | *Jon Patrick Amason* |
| Signature | Date | Print or Type Name |

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:  **(1)** Clerk of the Court of Criminal Appeals,  **(2)** the District Attorney, **(3)** the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and **(4)** to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

(Clerk's printed form)  (Clerk's form)                                    (CIVIL / CRIMINAL)

COURT REPORTER'S INDEX OF TRIAL EXHIBITS — ARAP RULE 11(c)

IN THE CIRCUIT COURT OF __Houston__ — COUNTY
Dothan / ALABAMA — COUNTY SEAT

APPELLANT: Ralph Wilson Lingo

VS.                                                      appellant        ACTION (Case)
STATE OF ALABAMA - or -                                                   No. CC-2003-599
                                                                         [✓] State Criminal
                                                                         [ ] Civil (Law)
                                                                         [ ] City Appeal (Crim.)
                                                          appellee        [ ] Civil (Equity)
TO:    (name)  Judy Byrd _____ OF CIRCUIT COURT OF Houston ___ COUNTY.
FROM: (name)  Carla H. Woodall _____ COURT REPORTER OF: 20TH JUDICIAL CIRCUIT OF ALABAMA

REPORTER'S INDEX TO EXHIBITS

The following EXHIBITS were received by the Court Reporter in above Action and same have been properly marked and identified. Where capable said exhibit(s) have been assembled herein (in flat file); where incapable of being assembled herein such exhibit(s) placed in suitable separate container. This index includes all exhibits (herein assembled or separately housed - or - other, as indicated) and further indicates there offered, admitted or not admitted into evidence, etc...

[NOTE: (✓) check appropriate]

| Party | Exhibit No. | BRIEF DESCRIPTION OF EXHIBIT | (✓) Admitted Yes | No | Iden. Only (✓) | With-drawn (✓) | Released By Court To Party (✓) | Retained Required By Court (✓) | In File (✓) | | REMARKS, etc. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SX | 1 | letter | ✓ | | | | | | | | |
| SX | 2 | waiver | ✓ | | | | | | | | |
| SX | 3 | statement | ✓ | | | | | | | | |

NOTE: ARAP RULE 11(c)... Reporter shall file all exhibits with trial Court Clerk within 14 days (2 weeks) of date of the Notice of Appeal in Criminal and Civil Actions, assembled in a flat file (not stuck) and if incapable then assembled in a suitable container... with index.

1) ABOVE INDEX RECEIVED & FILED 1-28    1905
2) EXHIBITS IN FILE &/OR CONTAINER VERIFIED (except as noted)        DATED THIS 28 DAY OF January, 2005

/s/ Judy Byrd                    (en)      /s/ Carla H. Woodall
   CLERK - REGISTER - or - AUTHORIZED ASS'T.          COURT REPORTER
   CLERK'S OFC. [✓] — REGISTER'S OFC. [ ]              20TH JUDICIAL CIRCUIT

STATE'S EXHIBIT NUMBER 1



#1

You brought this on your own self. Noone has seen these. You tricked me. And you did something very very wrong. I still have the phone. I can ruin you real bad. fraud counts against you, the internal revenue. You thur Blacks. And cops but you don't think more than 3,000 of these will be placed all over Dothen. Every stop sign, light poles, just think again. Copies are made. So that you better see me or I will have to start defending myself

#2

I do not want any trouble with you. you know the law is on me real bad, trying to get anything on me. You know all about it, but I ain't guilty. I was framed and set up by Sue. I didn't know anything about it until it was all over with. I told the internal Revenue a little about you, but not enough to get you in any trouble. I would never do that unless I was forced to do so.

225

# 3

You know I can hurt you by a lot of people. you ran off from my buissness, that you have cussed out. I know at least three of these people want to sign warrents on you right now. I know why you did all of this is because of your lover, so here's the way it will go, you can keep your black lovers, your cop lovers, I haven't done anything but help you and giving you money. yes I was trying to fight to keep you, and to make sure you had plenty of money every week, that was what I wanted to do to keep you, to make sure you had your medication, money, and whatever your Kid needed. I will never call you again, I will never contact you again. you drop your phony warrent or you will be sued at the right time and be arrested with warrents against you. I will push the internal revenue to step in to investigate you, also GE to investigate you also. I will do whatever it takes to ruin you, destroy you, your name. You have lied on me, and tricked me with a phone call, and there's some stuff on you I won't mention, if you don't want to go down you better back off from me. I will be going to have a meeting with my investigators and I will put them on the case, I kept you out of these trials like you asked me but you with be in 3 in the near future, under oath. These phone tapes will prove you deal with a lot of customers. you want me to nail you, but you remember the fox, you know what this means. I am leaving and going to the beach this weekend, I will have my cell phone with me. I don't want to talk or see anyone but you face to face, to talk out our differences, you know my number, I am very depressed I have cried a million tears over you.

p-4

226

#4

I am not threatening you in no way. I am
making you a promise. You have 24 hours to
see me face to face. And we will start to work
to defending myself against accusations which aren't
true. Debra this will be up to you. You know
my cell number. ~~xxxxxxxx~~ If you want to meet
me to work this thing out, then I'd be more than
willing to show you. I'm not joking with you
three of your family members will get a copy
of a video tape and copy of these pictures along
with copies of phone tapes, this weekend. I have
not got any of this in my possession, all it would
take is a phone call and it will be delivered.
You have 24 hours for these to start coming
out on you. You want to go to the law, fine
we will also tell the law a lot of shit too
and it won't stop there. I know you have these
judges on your side, but you just don't know
what I know. I don't want any problems out of
you it's your money and your life, do you want
it destroyed or a person to person talk to work
all of this out, I might not word this letter
right, but one of your friends knows how to contact me
this will be up to you. I will have to do what
I have to do. Thank you very much
We can work this out and go our ~~seperate~~ seperate
ways.

Take this the way you
want to take this. It's your
Choice.

Thank You

1-4 pages - you have copies of your pictures        Do what yo

STATE'S EXHIBIT # 2

## RIGHTS FORM

227-A

Name: _Ralph Lingo_ AIS: _140083_

Race: _W_ Sex: _M_ DOB: _Feb 4-62_

Education: _-0-_

Place: _Bullock Co. Corr. Fac._

Date: _10-13-04_ Time: _9:35 AM_

Charge: _Sol. Murder_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent. Anything you say can and will be used against you in court.

You have the right to have a lawyer present to advise you before we ask you any questions and to have him present with you during the entire time you are being questioned.

If you cannot afford to hire a lawyer, one will be appointed to represent you if you wish without any cost to you. You have the right to have him present to advise you before we ask any questions and also during the entire time you are being questioned.

You also have the right to stop answering at any time until you talk to a lawyer.

Do you understand your rights?

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand what I am doing. No promises or threats have been made to me and no pressures or coercion of any kind has been used against me.

Signed: _Ralph L. Lingo 10-13-2004 9:40 AM_

WITNESS: _____

WITNESS: _____

TIME: _____

STATE'S EXHIBIT NUMBER 3

278-A

## STATEMENT OF INMATE RALPH LINGO

This is a taped-recorded interview with Inmate Ralph Lingo, AIS 190083. This interview is being conducted at Bullock County Correctional Facility on 10-13-04.

ES    Ralph, state your name and AIS.

RL    Ralph Lingo, 190083.

ES    Ralph, we've been discussing an alleged threat against a Ms. Debra Blackstone. Do you know Debra?

RL    Yeah I know Debra.

ES    What relation are you to her?

RL    Debra is my ex-wife.

ES    Ex-wife?

RL    Yes sir.

ES    Okay. And I believe Debra was also a witness against you in some (inaudible) tapes. Is that correct?

RL    Debra is more or less like a uh yeah a witness. Uh more or less like she was dating me (inaudible) me time when the this (inaudible) occur.

ES    Okay. But is she a witness (inaudible)?

RL    (inaudible) yes sir (inaudible) I mean, she a witness, but that's all I know. She just was you know dating me at the time

ES    Okay. While you was in the Houston County Jail, did you talk to any other inmates at the Houston County Jail about taking care of Debra by burning her house down with her in it?

RL    I ain't never made a statement for anybody no one not no one to hurt Debra Blackstone or nobody else.

ES    Do you have a case pending or is that case already been tried of threatening a witness?

RL    You mean intimidating the

ES    Intimidating the witness. Okay.



229

RL    Alright, the phone regiment had been tried. Uh the (inaudible) and that had been tried and I was found guilty on that and now the intimidating of the state witness uh had not been tried. (Inaudible) tried.

ES    Uh, so you have threatened Debra before by sending a person to her house with a naked picture of her?

RL    By only telephone. This here is something (inaudible) it didn't mean

ES    It doesn't matter what kind well what kind of case it is. Whether it was telephone harassment or whatever. You sent a person to her house with a naked picture of her. Is that correct?

RL    That person didn't know what were in there.

ES    I (inaudible) Debra knew what was in it. There was a naked picture

RL    Debra did.

ES    There was a naked picture of Debra in there.

RL    That true.

ES    Well why did you send that picture to Debra?

RL    (inaudible) the way for for you go in (inaudible) I got a case coming up on that. I mean you might

ES    Hay, you've been advised of your rights. You got a right to stop answering at any time you want to. (Inaudible)

RL    Well we'll stop it right now.

ES    That completed this interview at uh 12 minutes til 10 a.m.


ES/ch

```
ACR371                  ALABAMA JUDICIAL DATA CENTER
           NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                        BY THE TRIAL COURT CLERK
              IN THE CIRCUIT COURT OF   HOUSTON COUNTY
   ATE OF ALABAMA VS LINGO RALPH WILSON         JUDGE: JERRY M. WHITE
```

APPEAL DATE: 12/09/2004

INDIGENCY STATUS:
  GRANTED INDIGENCY STATUS AT TRIAL COURT:          X   YES  ___   NO
  APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:  ___  YES  _X_   NO
  INDIGENT STATUS REVOKED ON APPEAL:              ___  YES  _X_   NO
  INDIGENT STATUS GRANTED ON APPEAL:              _X_  YES  ___   NO

DEATH PENALTY: NO

APPEAL TYPE: STATE CONVICTION

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 11/04/2004          DATE OF SENTENCE: 12/09/2004

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 38/CC 2003 000599.00
CODE: INTI   CONVICTION: INTIMIDATING A W    ACTION: CONVICTED
                                             STATUTE: 13A-010-123
SENTENCE:    CONF: 20 YRS 00 MOS 000 DAYS
SENTENCE:    PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO  LIFEWO: NO

POST-JUDGMENT MOTIONS FILED:    DT FILED     DT DENIED     CON BY AGREE
  _X_ MOTION FOR NEW TRIAL      11/10/2004   11/18/2004    _____
  _X_ MOTION FOR JUDG OF ACQUIT 11/03/2004   11/03/2004    _____
  ___ MOTION TO W/D GUILTY PLEA _____  _____   _____
  ___ MOTION FOR ATTY TO W/DRAW _____  _____   _____
  ___ OTHER                     _____  _____   _____

COURT REPORTER(S):                    WOODALL, CARLA H.
ADDRESS:                              C/O HON. LARRY ANDERSON
                                      DOTHAN        , AL  36302

APPELLATE COUNSEL #1:                 AMASON JON-PATRICK
ADDRESS:                              401 N FOSTER STREET

PHONE NUMBER:                         DOTHAN        , AL  36303
                                      334-793-9009
APPELLATE COUNSEL #2:
ADDRESS:                              _____
                                      _____
                                      _____
PHONE NUMBER:                         _____

APPELLANT (PRO SE):                   LINGO RALPH WILSON
ADDRESS:                              % HOUSTON COUNTY JAIL
                                      DOTHAN        , AL  363020000
AIS #:

APPELLEE (IF CITY APPEAL):
ADDRESS:                              _____
                                      _____
                                      _____

I CERTIFY THAT THE INFORMATION PROVIDED              OPERATOR: RHM
ABOVE IS ACCURATE TO THE BEST OF MY              PREPARED: 01/04/2005
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO       _____
THIS ACTION ON THIS 4th DAY OF January 2005        CIRCUIT COURT CLERK
```

1            IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                     STATE OF ALABAMA

3    STATE OF ALABAMA,              *
                                    *
4    v.                            *      Case No. CC-2003-599
                                    *
5    RALPH WILSON LINGO,            *
                                    *
6         Defendant.               *

7

8

9         REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL

10

11

12   Before:

13            The Honorable Jerry M. White and jury

14                  November 3, 2004

15

16

17   APPEARANCES:

18            For the State

19                 Henry C. Binford, Esquire
                   Assistant District Attorney
20

21            For the Defendant

22                 Tammy Stinson, Esquire
                   Dothan, Alabama
23

24
     Carla H. Woodall, CSR
25   Court Reporter

1              I N D E X

2        State of Alabama  v.  Ralph Wilson Lingo
                  Case No. CC-2003-599
3

4                                                    PAGE

5   REPORTER'S TRANSCRIPT ORDER                     1

6   TITLE PAGE                                      2

7   INDEX                                           3

8   INDEX OF STATE'S EXHIBITS                       6

9   ROLL OF JURY VENIRE CALLED                      7

10  COLLOQUY                                        7

11  VOIR DIRE BY THE COURT                          7

12  VOIR DIRE BY MR. BINFORD                        9

13  VOIR DIRE BY MS. STINSON                        9

14  INDIVIDUAL VOIR DIRE                            9

15  STRIKES FOR CAUSE                               17

16  JURY STRUCK                                     20

17  JURY IMPANELED                                  21

18  JURY SWORN                                      21

19  COLLOQUY                                        21

20  JURY VENIRE EXCUSED                             22

21  OPENING STATEMENTS BY MR. BINFORD               22

22  OBJECTION BY MS. STINSON                        22

23  OPENING STATEMENTS BY MR. BINFORD CONTINUED     23

24  OPENING STATEMENTS BY MS. STINSON               23

25           STATE'S TESTAMENTARY EVIDENCE

1

# I N D E X  (Continued)

2

3  WITNESSES:

4  TONY LUKER

5      Direct Examination by Mr. Binford        23
       Cross Examination by Ms. Stinson         29
6
   DEBRA BLACKSTONE
7
       Direct Examination by Mr. Binford        33
8      Cross Examination by Ms. Stinson         40

9  ALICIA ROBERTS

10     Direct Examination by Mr. Binford        45
       Cross Examination by Ms. Stinson         49
11
   ED SASSER
12
       Direct Examination by Mr. Binford        53
13     Cross Examination by Ms. Stinson         70

14  STATE RESTS                                  72

15  MOTION FOR JUDGEMENT OF ACQUITTAL            73

16  RULING BY THE COURT                          82

17  DEFENSE RESTS                                82

18  CLOSING ARGUMENTS BY MR. BINFORD             82

19  CLOSING ARGUMENTS BY MS. STINSON             82

20  REBUTTAL ARGUMENTS BY MR. BINFORD            82

21  OBJECTION BY MS. STINSON                     83

22  REBUTTAL ARGUMENTS BY MR. BINFORD CONTINUED  83

23  JURY CHARGE                                  83

24  PROCEEDINGS FOR NOVEMBER 3, 2004 ENDED       99

25  TITLE PAGE                                  100

I N D E X  (Continued)

1

2

3    PROCEEDINGS FOR NOVEMBER 4, 2004 BEGAN          101

4    ALTERNATE JURORS EXCUSED                        101

5    JURY DELIBERATIONS                              101

6    VERDICT                                         102

7    JURY POLLED                                     102

8    ADJUDICATION                                    102

9    COLLOQUY                                        103

10   SENTENCING SET                                  104

11   PROCEEDINGS FOR NOVEMBER 4, 2004 ENDED          104

12   TITLE PAGE                                      105

13   PROCEEDINGS FOR DECEMBER 9, 2004 BEGAN          106

14   COLLOQUY                                        106

15   ARGUMENT BY MR. BINFORD                         107

16   ARGUMENT BY MS. STINSON                         109

17   COLLOQUY                                        110

18   SENTENCE                                        117

19   ORAL NOTICE OF APPEAL                           117

20   MOTION TO WITHDRAW                              117

21   MOTION TO APPOINT COUNSEL                       117

22   REPORTER'S CERTIFICATE                          119

23   CERTIFICATE OF COMPLETION                       121

24

25

INDEX OF STATE'S EXHIBITS

| EXHIBIT NO. | PAGE MARKED | PAGE ADMITTED | PAGE DENIED | PAGE WITHDRAWN |
|---|---|---|---|---|
| State's 1 | 28 | 40 | | |
| State's 2 | 53 | 57 | | |
| State's 3 | 53 | 67 | | |

* There were no exhibits for the Defense. *

PROCEEDINGS

(Jury venire present.)

THE COURT:  Ladies and gentlemen of the jury panel, at this time I'm going to ask the clerk to call the roll.  And when she calls your name, if you would, stand so these attorneys can identify you.  And once you've stood and announced your presence, then you may take a seat back where you are.

(At which time the roll of the jury was called by the clerk.)

THE COURT:  Now, ladies and gentlemen, I need to qualify you at this time as to the case of the State of Alabama versus Ralph Wilson Lingo who is charged with the offense of intimidating a witness.  This is Mr. Lingo sitting here at the table in the blue shirt with his attorney, Ms. Tammy Stinson.  And the case is being prosecuted by Mr. Henry Binford over here.

If the answers to any of these questions apply to any of you ladies and gentlemen, if you will, please let me know.

Now, was either of you on the grand jury of Houston County, Alabama, which returned this indictment against Ralph Wilson Lingo

1    charging him with intimidating a witness, that

2    being the grand jury of this county which met on

3    the 5th of September, 2003?  Was either of you on

4    that grand jury?

5                    (No response.)

6            THE COURT:  Or is either of you a witness in

7    this case either for the State of Alabama or for

8    the Defendant, Ralph Wilson Lingo?

9                    (No response.)

10           THE COURT:  Or is either of you related by

11   blood or by marriage to Ralph Wilson Lingo or to

12   Debra Tice Blackstone?

13                   (No response.)

14           THE COURT:  Ms. Blackstone lives here in

15   Dothan at 402 Emmons Avenue.  Any of you related

16   by blood or by marriage to either of those

17   people?

18                   (No response.)

19           THE COURT:  Has either of you heard anything

20   about the facts in this case, have you read or

21   seen anything about the facts in this case that

22   would bias your mind, prejudice your verdict, and

23   prevent you from giving a fair and impartial trial

24   both to the State of Alabama and to this Defendant

25   if you were selected as a juror to try this case?

1                    (No response.)

2          THE COURT:  Or does either of you have a

3     fixed opinion as to the guilt or the innocence of

4     this Defendant?

5                    (No response.)

6          THE COURT:  Does either of you have any

7     interest in the conviction or the acquittal of the

8     Defendant, Ralph Wilson Lingo?

9                    (No response.)

10         THE COURT:  Or has either of you made any

11    promise or given any assurance that you would

12    either convict or acquit this Defendant if you

13    were selected as a juror to try the case?

14                   (No response.)

15         THE COURT:  Questions for the State, Mr.

16    Binford.

17         MR. BINFORD:  Thank you, Judge.

18                   (At which time Mr. Binford further

19                   qualified the jury venire.)

20         THE COURT:  Questions for the Defendant, Ms.

21    Stinson.

22                   (At which time Ms. Stinson further

23                   qualified the jury venire.)

24         THE COURT:  Any of you ladies and gentlemen

25    have anything that you need to discuss with us at

1    the bench concerning the questions that were

2    asked?

3                    (Hands raised.)

4          THE COURT:  Let's just take the first row.

5                    (At which time the following proceedings

6                    were held at the bench outside of the

7                    hearing of the jury venire:)

8          A JUROR:  My name is Natalie Evans, and I had

9    a DUI conviction in 1989 or '88.

10         THE COURT:  Thank you, ma'am.

11              Yes, ma'am?

12         A JUROR:  My son has had a DUI.  We did this

13   the other day.

14         THE COURT:  Okay.  That's Ms. Gilmer.

15                   (At which time the following proceedings

16                   were held in open court:)

17         THE COURT:  Anybody on the second row?

18                   (Hand raised.)

19                   (At which time the following proceedings

20                   were held at the bench outside of the

21                   hearing of the jury venire:)

22         A JUROR:  I was convicted of something when I

23   was younger, eighteen.  It was youthful offender.

24   But the State prosecuted me.  Do you need to know

25   details or what?

1        MR. BINFORD:  Would it matter to you --

2        A JUROR:  Not really.

3        MR. BINFORD:  Would it matter to you if you

4    were on this trial and we're the D.A. and I guess

5    the people that prosecuted you?  Would it matter

6    to you if you sat on this jury?

7        A JUROR:  I don't know.  It was a long time

8    ago.

9        MS. STINSON:  Was it in Houston County?

10       A JUROR:  Henry.

11            Probably not.

12       MR. BINFORD:  You think you might look at law

13   enforcement a little differently than someone else

14   who did not have to go through what you went

15   through?

16       A JUROR:  No.  Because I was wrong.  But the

17   guy didn't want to press charges and the State

18   did.  So it kind of left a sore place a long time

19   ago.  But I'm over it now.  I just wanted to be

20   honest.

21       MS. STINSON:  What was your name again?

22       A JUROR:  Joel Kirkland.

23       THE COURT:  Yes, sir?

24       A JUROR:  James French.  To answer one of his

25   questions that was said yesterday, my father was

1    charged with DUI about thirty-five years ago.

2    Also, I know quite a few in law enforcement

3    people that I didn't just come out and name, but

4    I'm in state revenue department, and I've had some

5    dealings with Mr. Lingo.

6         MS. STINSON:  What was your name again?

7         A JUROR:  James French.

8         THE COURT:  Thank you.

9         A JUROR:  I've grown up with him.  Plus, his

10   sister, we had to drill his safety deposit box

11   twice for him, and I was in the room with her for

12   two hours each time, and we discussed one of his

13   cases, but I don't know if it is this one or not

14   or which case it was.  So I know some of the

15   details.  But I can't even begin to tell you.  I

16   just -- and then, also, I have a subpoena to be

17   testifying tomorrow in court.  Not on this case,

18   but in Judge Anderson's case.

19        THE COURT:  You say you talked to the

20   Defendant's sister?

21        A JUROR:  Yes, sir.

22        THE COURT:  About?

23        A JUROR:  I'm not sure if it was this case,

24   but she was talking about his case and him being

25   in jail and things to that effect.  So I don't

```
 1    know if it was this case or a prior case.
 2         THE COURT:  Would that effect you in any
 3    way?  Could you be fair and impartial?
 4         A JUROR:  Probably not.  I just know too much
 5    about him to be honest.
 6         THE COURT:  Your name is what?
 7         A JUROR:  Pamela Keel.
 8         THE COURT:  Ms. Keel will be excused on this
 9    case.
10              You can go and come back at nine in the
11    morning.
12         A JUROR:  I'm supposed to be there at
13    eight-thirty so I just go there first?
14         THE COURT:  Just go to the jury room.
15                   (At which time the following proceedings
16                   were held in open court:)
17         THE COURT:  We've got the first and second
18    rows.  Anybody on the third row?
19                   (Hand raised.)
20                   (At which time the following proceedings
21                   were held in open court:)
22         A JUROR:  Debra Blackstone's mother and I are
23    very, very good friends.
24         THE COURT:  Do you know anything about the
25    facts in this case?
```

```
 1              A JUROR:  I don't know anything about.

 2              THE COURT:  Would the fact that you're good

 3         friends with her mother influence you in any way?

 4              A JUROR:  I'm not real sure.

 5              MR. BINFORD:  Good friends with whose's

 6         mother?  Debra Blackstone?

 7              A JUROR:  Her mother and I are real good

 8         friends.

 9              THE COURT:  You don't know anything about the

10         facts in the case?

11              A JUROR:  Nothing at all.

12              THE COURT:  But you can't -- I mean, could

13         you listen to the evidence in this case and render

14         a fair and impartial verdict based upon the

15         evidence and not let your friendship with her

16         interfere?

17              A JUROR:  I believe so.

18              MS. STINSON:  And what was your name again?

19              A JUROR:  Mary Henderson.

20              THE COURT:  Thank you, Ms. Henderson.  You

21         can have a seat.

22                   (At which time the following proceedings

23                    were held in open court:)

24              THE COURT:  Anybody else on the third row?

25                   (No response.)
```

1        THE COURT:  How about the fourth or the

2    fifth?

3                (Hand raised.)

4                (At which time the following proceedings

5                were held at the bench outside of the

6                hearing of the jury venire:)

7        A JUROR:  Let me ask you, a question that

8    might pertain to anything going on that would keep

9    your minds, well, tomorrow, but there's a bull

10   sale that my wife is going to to try to buy a bull

11   for us or whatever.  And so spending that money

12   and all that and making sure she gets the right

13   bull, I don't think -- you know what I'm saying?

14   I could be concentrating on it.

15       THE COURT:  What is your name?

16       A JUROR:  Jason Martin.

17       MR. BINFORD:  Can I ask him one thing?

18               What time does that take place?

19       A JUROR:  Eleven o'clock tomorrow morning.

20   It starts at eleven.  She's supposed to be going

21   down there.

22               (At which time the following proceedings

23               were held in open court:)

24       THE COURT:  Anybody on this side?

25               (Hand raised.)

1           (At which time the following proceedings
2           were held at the bench outside of the
3           hearing of the jury venire:)
4       A JUROR:  I was just thinking about what he
5   said if you feel it in your gut that you just, you
6   know, can't make a decision and send somebody to
7   jail or whatever that you shouldn't serve.  And I
8   was thinking about that.  And I was thinking
9   about, you know, some other thing about you can
10  really judge people, you know, especially if you
11  weren't there to see it or whatever.  And I'm just
12  saying --
13      THE COURT:  What is your name?
14      A JUROR:  Johnny Johnson.
15      MS. STINSON:  Johnny Johnson.
16      THE COURT:  Okay.  Thank you, Mr. Johnson.
17          (At which time the following proceedings
18          were held in open court:)
19      THE COURT:  Does that take care of
20  everybody?
21          (Hand raised.)
22          (At which time the following proceedings
23          were held at the bench outside of the
24          hearing of the jury venire:)
25      THE COURT:  Yes, sir?

1    A JUROR: I went to school with him. I know
2    him. I've known some of the problems he's had in
3    the past, you know, troubles. Whether it would --
4    I don't really think it would have an effect on
5    the way I feel. But I followed it more because I
6    knew of him.
7    THE COURT: Are you telling me you know the
8    Defendant?
9    A JUROR: From school. We went to school.
10    And I've known some of the -- legal problems he's
11    had in the past.
12    THE COURT: I need to know, could you listen
13    to the evidence in this case and render a fair and
14    impartial verdict based upon the evidence and the
15    law given to you and put all of that aside?
16    A JUROR: Oh, probably so. I say yes.
17    THE COURT: Thank you.
18    MR. BINFORD: I challenge for cause, Judge,
19    Mr. Johnson, number ninety-four, the gentleman who
20    expressed some reserve about sitting in judgment
21    on other people and sitting on the jury because of
22    his beliefs about convicting people. I think he
23    said something to the effect that you can't really
24    judge people.
25    THE COURT: Do you have any question about

1        that -- about whether he --

2              MS. STINSON:  Whether to keep him or not?

3              THE COURT:  Uh-huh.

4              MS. STINSON:  Well, I would --

5              THE COURT:  I can bring him back and question

6        him further.

7              MS. STINSON:  Yeah.

8                    (At which time the following proceedings

9                    were held in open court:)

10             THE COURT:  Mr. Johnson, could you come

11       back?

12                   (At which time the following proceedings

13                   were held at the bench outside of the

14                   hearing of the jury venire:)

15             THE COURT:  I need to know if you were on

16       this jury could you listen to the evidence and

17       render a fair and impartial verdict based upon the

18       law and the evidence in this case, or would you

19       just refuse to render a verdict of any kind?

20             A JUROR:  You ask me to do it by the law?

21             THE COURT:  Pardon me?

22             A JUROR:  By the laws of the state, I guess I

23       could do that.

24             THE COURT:  You could do it?

25             A JUROR:  I think I could do it.

1      THE COURT:  You can have a seat.

2           I won't disqualify him.  That might be

3      some reason to strike, but not to disqualify.

4      MR. BINFORD:  Those are all the challenges

5      for cause.  Mr. French, is he on?  Is the Court

6      going to take him off because he's the revenue and

7      also he's had dealings with the Defendant?

8      MS. STINSON:  I was that and another one.

9      THE COURT:  You want him off?

10     MS. STINSON:  Yeah.  And then also Mary

11     Henderson.  She's the friend of Debra Blackstone's

12     mother.

13     THE COURT:  I questioned her, and she said

14     that she could render a fair and impartial verdict

15     without any interference -- without the

16     relationship interfering.

17          So it's agreed that Mr. French goes

18     off.

19     MR. BINFORD:  Yes, sir.  We won't object.

20     MS. STINSON:  Yeah.

21     THE COURT:  Okay.  You can mark Mr. French

22     off.  And you've already marked Keel off.

23          (At which time the following proceedings

24               were held in open court:)

25     THE COURT:  Mr. French, you can go until nine

1    o'clock in the morning.  Just come back to the

2    jury room downstairs at nine o'clock in the

3    morning.  Thank you very much.

4              Ladies and gentlemen, we're right at the

5    noon hour.  So you may -- and let me explain to

6    you why I'm doing what I'm doing.  You've got to

7    go to your lunch.  These lawyers have to go to

8    lunch, too.  And in addition thereto, they have to

9    strike the jury.  And it will take thirty or forty

10   minutes at a minimum for them to strike the jury

11   down to the twelve who are going to serve.  So

12   we'll be at recess at this time until two

13   o'clock.  That will give you time -- you'll have

14   an extended lunch period.  But they -- they are

15   going to have to go to lunch and do the striking.

16   So if you will, go to your lunch at this time.

17   And then just come back here at two o'clock this

18   afternoon.  Thank you very much.

19              (Jury venire not present.)

20              (At which time the attorneys and the

21              clerk struck the jury.)

22              (Off the Record.)

23              (Jury venire present.)

24        THE COURT:  If you will, please, ma'am, go

25   ahead and call the jury around.

1               And, ladies and gentlemen of the jury,

2    as she calls your name, if you will, come around

3    and have a seat in the jury box here to my left.

4        THE CLERK:  Gale Creamer.  Wesley Crowley.

5    Geneva Cull.  Jason Davis.  Willie Davis.  Jimmie

6    Harrison.  Steven Henderson.  Alfred King.  Dewey

7    Kirkland.  Joel Kirkland.  Jacquelyn Lester.

8    Thomas Leverette.  Melanie Marter.  Lawrence

9    Mathis.

10        THE COURT:  Please, ma'am, if you'll place

11    the jury under oath.

12            (At which time the jury was sworn by the

13            clerk.)

14        THE COURT:  Ladies and gentlemen, you're the

15    trial jury in this case of the State of Alabama

16    versus Ralph Wilson Lingo, who is charged with

17    intimidating a witness.  And during the course of

18    this trial and until all the evidence is in and

19    the case has been submitted to you for your

20    verdict, you should not discuss the case among

21    yourselves.  You should not discuss it with anyone

22    else.  You should not allow anyone to discuss it

23    with you.  You should not allow anyone even to

24    discuss it in your presence.  And if anyone

25    approaches you and attempts to discuss this case

1    with you or even to discuss it in your presence,

2    you should let the Court know immediately.

3         Now, in addition thereto, you should

4    not try to make any independent investigation of

5    the facts of this case outside the courthouse or

6    on your own at all.  All of the evidence that

7    you're allowed to hear will be that evidence that

8    will come from the witness stand.  And that's what

9    you'll have to base your verdict on.

10        Now, are you attorneys ready to make

11   your opening arguments?

12        MR. BINFORD:  Yes, sir.

13        MS. STINSON:  Yes, sir.

14        THE COURT:  Let me just say to the other

15   jurors, those not involved in this case, you may

16   go until nine o'clock in the morning.  Just if you

17   will, come back to the jury room downstairs at

18   nine in the morning.

19             (Jury venire excused.)

20        THE COURT:  Mr. Binford, you may state your

21   case to the jury.

22             (At which time opening statements were

23             made by Mr. Binford.)

24        MS. STINSON:  Objection, Your Honor.

25        THE DEFENDANT:  Object.

 1          THE COURT:  Mr. Lingo, she's the lawyer.

 2          MS. STINSON:  Alicia Roberts never worked for

 3     Mr. Lingo.

 4          THE COURT:  He's telling what his evidence --

 5     what he intends for his evidence to show.

 6          MS. STINSON:  Okay.

 7          THE COURT:  You can argue to the contrary, if

 8     he doesn't show it --

 9          MS. STINSON:  I understand.

10               (At which time opening statements were

11                continued by Mr. Binford.)

12          THE COURT:  Ms. Stinson.

13               (At which time opening statements were

14                made by Ms. Stinson.)

15          THE COURT:  Who will the State's first

16     witness be?

17          MR. BINFORD:  Judge, we call Investigator

18     Tony Luker.

19                          TONY LUKER

20     having first been duly sworn, was examined and

21     testified as follows:

22                      DIRECT EXAMINATION

23     BY MR. BINFORD:

24     Q    State your name for the jury, please, sir.

25     A    Tony Luker.

```
 1   Q    And are you an investigator with the Dothan
 2        Police Department?
 3   A    Yes, sir, I am.
 4   Q    And you have a rank within the Dothan Police
 5        Department, too; is that correct?
 6   A    That's correct.  I'm a sergeant.
 7   Q    And how long have you been employed altogether
 8        with the police department here?
 9   A    With Dothan about twenty-one years.
10   Q    And how long have you been employed in law
11        enforcement altogether?
12   A    Approximately twenty-three.
13   Q    And how long have you been in investigations?
14   A    Total time of my employment with Dothan has been
15        about fifteen years in investigation.
16   Q    That's not all consecutive, is it?
17   A    No.
18   Q    They rotate you in and out of investigations?
19   A    Yes, sir.
20   Q    And the investigations division, is that called
21        CID, or criminal investigations division?
22   A    It is.
23   Q    Did you participate in working on a case involving
24        Ralph Lingo wherein he is accused of intimidating
25        a witness?
```

```
 1   A   Yes, sir, I am.
 2   Q   As a part of your investigation in that case, did
 3       you take a statement from a lady by the name of
 4       Debra Blackstone, or Debra Tice Blackstone?
 5   A   Yes, sir, I did.
 6   Q   And you interviewed her; is that correct?
 7   A   That's correct.
 8   Q   Do you know a young lady by the name of Alicia
 9       Roberts?
10   A   Yes, sir.
11   Q   And have also you in the course of your
12       investigation talked to Ms. Roberts?
13   A   I have.
14   Q   When you talked to Ms. Blackstone, did you obtain
15       any kind of documents from her?
16   A   Actually, she had called whenever she received the
17       documents and a patrol officer came out and took
18       an initial report and took that document, and I
19       got it from the evidence vault.
20   Q   And that document is in your file at this time,
21       correct?
22   A   That's correct.
23   Q   And the patrol officer would have put it in the
24       evidence vault; is that right?
25   A   Yes.
```

| | | |
|---|---|---|
| 1 | Q | Since it was in the evidence vault, it would have |
| 2 | | been in the possession of the Dothan Police |
| 3 | | Department, and you can take it out or put it in |
| 4 | | as you see fit for court purposes, correct? |
| 5 | A | Yes.  Correct. |
| 6 | Q | What was the nature of Ms. Blackstone's complaint |
| 7 | | when she met with you? |
| 8 | A | Whenever I talked with her, she said that -- |
| 9 | | actually, she had took a warrant out on Mr. Lingo |
| 10 | | for harassing communications -- a city warrant in |
| 11 | | the city court.  After she did that, he was, of |
| 12 | | course, arrested.  And then she received a letter |
| 13 | | that contained naked pictures of her.  And in the |
| 14 | | letter it said that, you needed to drop the |
| 15 | | charges or these pictures were going to be |
| 16 | | plastered all over the City of Dothan and he was |
| 17 | | -- he would ruin her reputation or ruin her I |
| 18 | | think is what it said. |
| 19 | Q | And was the warrant that was being referred to |
| 20 | | taken out on April 24th of 2003 in the Dothan |
| 21 | | Municipal Court? |
| 22 | A | Yes, sir, it was. |
| 23 | Q | The Dothan Municipal Court is, again, located here |
| 24 | | in Dothan, Houston County, Alabama, correct? |
| 25 | A | Yes. |

| | | |
|---|---|---|
| 1 | Q | And it's not here in this building or in the Civic |
| 2 | | Center, but in the Kater Williams Building; is |
| 3 | | that correct? |
| 4 | A | That's correct. |
| 5 | Q | Now, what date did Ms. Blackstone make a complaint |
| 6 | | about this? |
| 7 | A | On May 2nd.  Whenever she was hand delivered this |
| 8 | | letter, she called and made a complaint. |
| 9 | Q | And the warrant taken out at the city hall or the |
| 10 | | Kater Williams Justice Center and the Dothan |
| 11 | | Municipal Court was for harassing communications; |
| 12 | | is that correct? |
| 13 | A | Yes, sir, that's correct. |
| 14 | Q | And is harassing communications, basically it's a |
| 15 | | misdemeanor offense involving usually telephone |
| 16 | | harassment? |
| 17 | A | That's correct. |
| 18 | Q | In your experience as an officer, you know that, |
| 19 | | correct? |
| 20 | A | Yes, sir. |
| 21 | Q | Now, after you interviewed Ms. Blackstone and you |
| 22 | | got the interview with Ms. Alicia Roberts and you |
| 23 | | looked at this document, did you sign a warrant |
| 24 | | for the arrest of Mr. Lingo? |
| 25 | A | Yes, sir, I did. |

1   Q   And was the charge that you signed the warrant for

2       intimidating a witness?

3   A   Yes, sir.

4   Q   And may I see the document that was turned over to

5       you through the vault by the patrol officer,

6       please, sir?

7   A   (Witness complied.)

8   Q   And you're showing me what appears to be three

9       pages; is that correct?

10  A   That's correct.

11                  (State's Exhibit No. 1 was marked for

12                  identification.)

13  Q   I'll show you a set of three pages, which has been

14      marked collectively as State's Exhibit No. 1.

15      It's a white sheet with photographs copied and

16      color on the front and then two other sheets with

17      handwriting on them and these sheets appear to be

18      yellow in color.  Are these the documents that you

19      received from the vault?

20  A   Yes, sir.

21  Q   Did you show those documents to Debra Tice

22      Blackstone?

23  A   Yes, sir.

24  Q   And was she able to confirm that that is what she

25      got from the man who delivered these to her?

1    A    Yes, sir.

2              MR. BINFORD:  Judge, that is all I have for

3         Investigator Luker at this time.

4              THE COURT:  Ms. Stinson.

5                        CROSS EXAMINATION

6    BY MS. STINSON:

7    Q    I have one question to ask you.  I notice looking

8         at this -- I've got a copy of the pictures and

9         stuff.  They're label -- the pictures is labeled

10        one?

11   A    Uh-huh.

12   Q    And then there is a page that's labeled three?

13   A    Yes.

14   Q    And then there's one labeled four?

15   A    Uh-huh.

16   Q    Do you know who labeled those?

17   A    Those were the way they were -- the first page

18        there has one two on it.  Which side?

19   Q    Okay.

20   A    One, two, three, and four.  And that's the way

21        they were labeled.

22              THE DEFENDANT:  I ask the jury to step out

23        for a moment, please.

24              THE COURT:  I have to know why.  It's not up

25        to you -- you're not to be making decisions.  It's

1          Ms. Stinson to make the decision.

2                    Ms. Stinson, do you want to approach

3          the bench?

4               MS. STINSON:  I'll discuss it with you.

5                         (At which time the following proceedings

6                         were held at the bench outside of the

7                         hearing of the jury:)

8               MS. STINSON:  Your Honor, he is wanting me to

9          question Mr. Luker about him arresting him in

10         Henry County.  And I tried to explain to him that

11         Mr. Luker has been deputized in Henry County.

12              THE COURT:  I don't know what it's got to do

13         with this anyway.

14                        (At which time the following proceedings

15                        were held in open court:)

16              THE COURT:  That motion is denied.

17                   Mr. Lingo, in the future, do all of your

18         communicating through Ms. Stinson.  Don't just

19         stand up and be making motions on your own.

20                   Is that all?

21              MS. STINSON:  No.  I've got one other thing.

22    Q    You were the individual that spoke to Alicia

23         Roberts, right?

24    A    No, I did not speak to her in the initial.  Deputy

25         State Fire Marshal Todd Register actually took the

1        initial statement from her.

2    Q   So you have not talked to her at all?

3    A   I talked to her the other day.

4    Q   In reference to this case?

5    A   Yes.

6    Q   And she told you basically that Ralph Lingo is the

7        one that got her to write the letter?

8    A   Yes, that's correct.

9            MS. STINSON:  No further questions.

10           THE COURT:  You may step down.

11               Who will the State's next witness be?

12           MR. BINFORD:  Debra Blackstone.

13           THE DEFENDANT:  Your Honor, at this time I

14       would like to fire my attorney.  I got legal

15       documents right here.  I was not prepared for this

16       trial here.  The Houston County Jail would not let

17       me take a bath, would not let me shave.  Have my

18       legal time with my attorney.  And the State had

19       not had none of my witnesses here.  And the way

20       all this trial is coming about, I hope to have

21       trial first on the search warrant.  I lived in

22       Henry County -- arrested in Henry County by the

23       City of Dothan and brought back to City of Dothan

24       without a Henry County deputy present.  My home

25       was searched with the City of Dothan with no Henry

32

1    County deputy present.  I was held under gun

2    point.  Taken to the back of my yard.  All my

3    property was taken out of my house and what was

4    took out of my house don't even match the property

5    they got.  And, Judge -- and on top of that, you

6    signed off on all of this.  And nothing matched.

7        THE COURT:  What is the point that you're

8    trying to make?

9        THE DEFENDANT:  Judge, the point what I'm

10   trying to make right here, every time I talk to my

11   attorney about this, trying to get witnesses up

12   and, you know, ain't got time, nobody talked to

13   me.  They bring me on into a trial.  You know, I

14   don't think I'm being did right here.  I had asked

15   my attorney probably over ten or twenty times and

16   writing.  The Court got it on document.  I asked

17   her to resign.  Because I would not --

18       THE COURT:  Ladies and gentlemen --

19       THE DEFENDANT:  And also we asked you --

20       THE COURT:  Hold on just a minute.

21           Ladies and gentlemen, if you will, go

22   to the jury room and recall the instructions I've

23   given you.  I'll call for you shortly.

24       THE DEFENDANT:  I'd like to enter documents

25   into the Court.

33

1          (Jury not present.)

2          THE COURT:  Let me see what you got.

3               This motion is denied.

4               If you would, tell the jury to come

5          back.  Bring the jury.

6          (Jury present.)

7                    DEBRA BLACKSTONE

8     having first been duly sworn, was examined and

9     testified as follows:

10                    DIRECT EXAMINATION

11    BY MR. BINFORD:

12    Q    Would you tell the jury your name, please, ma'am?

13    A    Debra Blackstone.

14    Q    And are you also known as Debra Tice Blackstone?

15    A    Yes.

16    Q    Now, you know Ralph Lingo; is that correct?

17    A    Yes.

18    Q    And is this Ralph Lingo next to his lawyer, Ms.

19         Stinson, here in the courtroom?

20    A    Yes.

21    Q    Tell the jury how you know or are acquainted with

22         Mr. Ralph Lingo.

23    A    He's an ex-husband.

24    Q    When were you and Ralph Lingo married?

25    A    January of 1989.

| 1 | Q | And when were you-all divorced? |
| 2 | A | '97 -- January of '97. |
| 3 | Q | And were you separated for any length of time |
| 4 | | before you-all were divorced? |
| 5 | A | Yes. |
| 6 | Q | Now, since then -- since the divorce in '97 I |
| 7 | | believe you said, have you had any kind of contact |
| 8 | | with Ralph Lingo over the years? |
| 9 | A | Yes. |
| 10 | Q | I don't want to go into the whole domestic history |
| 11 | | between you and Mr. Lingo, but what I do want to |
| 12 | | ask and take you to last year, 2003, on April 24th |
| 13 | | of last year, 2003, did you sign a warrant against |
| 14 | | Mr. Ralph Lingo for harassing communications in |
| 15 | | the City of Dothan Municipal Court? |
| 16 | A | Yes. |
| 17 | Q | About one week later did you receive a letter from |
| 18 | | some unidentified delivery man? |
| 19 | A | Yes. |
| 20 | Q | Where were you when you received that letter? |
| 21 | A | At my home. |
| 22 | Q | Is that here in Dothan? |
| 23 | A | Yes. |
| 24 | Q | And is that here in Houston County, Alabama? |
| 25 | A | Yes. |

1    Q    Now, I want to show you what we have marked as

2         State's Exhibit No. 1.  And first of all, I'm

3         going to ask you, you know there are some

4         photographs that were attached to this letter; is

5         that correct?

6    A    Yes.

7    Q    And I know it's embarrassing, and I told you we

8         would have to ask you about this in court.  But

9         are these nude photographs of you?

10   A    Yes.

11   Q    And who took those nude photographs of you,

12        please, ma'am?

13   A    Ralph Lingo.

14   Q    Did anyone else have access to these photographs

15        to your knowledge other than Ralph Lingo?

16   A    No.

17   Q    Was anyone else present when these photographs

18        were made other than Ralph Lingo?

19   A    No.

20   Q    Do you know when the photographs were made?

21   A    I'm not sure.

22   Q    Now, I'll show you.  We've marked this.  And I'll

23        ask you to look at it.  This is State's Exhibit

24        No. 1 which consisted of four copies of photos.

25        Do you recognize that?

1   A   Yes.

2   Q   And then it says four out of twenty pictures there

3       on that page; is that correct?

4   A   Yes.

5   Q   I'm showing you two other pages which are part of

6       that exhibit.  One has up at the top left number

7       three and then it goes down a page of handwriting

8       and then the other has number four, which is

9       another page of handwriting; is that right?

10  A   That's correct.

11  Q   And you received this at your home; is that

12      correct?

13  A   Yes.

14  Q   Now, you had the chance to look at this and review

15      it prior to today, correct?

16  A   Yes.

17  Q   I'm going to just ask you briefly to look at these

18      again and tell us if this is in fact the exact

19      document that was received by you one week after

20      you had taken out the harassing communications

21      warrant on Mr. Ralph Lingo?

22  A   Yes, it is.

23  Q   And did you alter it or change it or tamper with

24      it in any manner before you turned it over to the

25      police?

37

| | | |
|---|---|---|
| 1 | A | No, sir. |
| 2 | Q | And let me ask you about that.  How did you feel |
| 3 | | when you got that letter with those photographs |
| 4 | | with that letter saying what it said? |
| 5 | A | I was just -- I was overwhelmed.  I was just -- I |
| 6 | | was scared.  I was terrified.  I mean, I didn't |
| 7 | | know what he was going to do. |
| 8 | Q | Did it make you afraid to go to court? |
| 9 | A | Yes. |
| 10 | Q | Did you in fact later go to court, though? |
| 11 | A | Yes. |
| 12 | Q | And also you had taken out a protection from abuse |
| 13 | | order on Ralph Lingo when you got the arrest |
| 14 | | warrant for harassing communications; is that |
| 15 | | correct? |
| 16 | A | Yes. |
| 17 | Q | Was Mr. Lingo ultimately convicted of that charge |
| 18 | | that you had taken out on him? |
| 19 | A | Yes, sir. |
| 20 | Q | And without going into all of the details, was |
| 21 | | that harassing communications charge a harassing |
| 22 | | telephone call or was it an in-person-type of |
| 23 | | harassing communication? |
| 24 | A | It was a telephone call. |
| 25 | Q | And had that telephone call been received by you |

```
1              at your home?

2       A      Yes.

3       Q      Have you ever received any other harassing phone

4              calls from Mr. Ralph Lingo?

5       A      I've received some phone calls that nobody would

6              say anything.  They would just be beating on the

7              telephone.

8       Q      And this document in fact is not signed by anyone,

9              is it?

10      A      No, it's not.

11      Q      Nobody I guess wanted to put their name on it

12             before it was sent to you, correct?

13      A      Right.

14      Q      And can you describe the person who delivered the

15             letter to you?

16      A      He was a black male.  He was kind of short.

17             Probably in his thirties -- middle thirties.

18             Somewhere around there.

19      Q      Was it open like we have it open in court today,

20             or was it in an envelope?

21      A      It was in an envelope.

22      Q      Where were you when you received it?

23      A      Standing at my front door.

24      Q      And was it daylight or dark when you received it?

25      A      Daylight.
```

1    Q    Morning or afternoon?

2    A    I'm not -- I don't really remember the time.

3    Q    Now, you got this and you've testified it upset

4         you and worried and concerned about it, fair to

5         say?

6    A    Right.

7    Q    Now, when you got the letter, did you go

8         immediately and take it to the police, or did you

9         keep it and hold it awhile to think about it?

10   A    I did not hold it.  I immediately called the

11        police.

12   Q    And they came out -- a patrol officer came to your

13        house?

14   A    Yes, sir.

15   Q    What did you do with that letter when that patrol

16        officer came to your house?

17   A    I gave it to her.

18   Q    And did you see it again before trial?  You saw it

19        last week I think when I showed it to you?

20   A    Right.

21   Q    And Investigator Luker showed it to you?

22   A    Right.

23   Q    But other than that, since then you have not seen

24        it, correct?

25   A    Right.

```
 1    Q    But today it is in the same condition it was when
 2         you got it at your house a week after signing the
 3         warrant against Ralph Lingo; is that correct?
 4    A    Yes.
 5              MR. BINFORD:  Judge, we offer State's Exhibit
 6         No. 1 at this time and offer to publish it to the
 7         jury.
 8              MS. STINSON:  No objection.
 9              THE COURT:  Let it be admitted.
10                   (State's Exhibit No. 1 was admitted into
11                   evidence.)
12              MR. BINFORD:  Judge, that is all I have at
13         this time for Ms. Blackstone.
14              THE COURT:  Ms. Stinson.
15                        CROSS EXAMINATION
16    BY MS. STINSON:
17    Q    All right.  You had stated -- or testified that
18         you-all had divorced in '97 -- January of '97?
19    A    Yes.
20    Q    But you-all had had I guess a speaking
21         relationship on and off?
22    A    Yes.
23    Q    Up until now?
24    A    Right.
25    Q    Did you-all have any other kind of relationship as
```

|     |   |                                                          |
|-----|---|----------------------------------------------------------|
| 1   |   | far as a close relationship -- you and Mr. Lingo?        |
| 2   | A | You're talking --                                        |
| 3   | Q | Well, more like a husband and wife relationship or       |
| 4   |   | a friendship?  You know, what kind of relationship       |
| 5   |   | did you have?                                            |
| 6   | A | I didn't classify it as a husband/wife                   |
| 7   |   | relationship, no.  You know, I thought a lot of          |
| 8   |   | him.  But that was about it.                             |
| 9   | Q | So in essence, then, it was nothing for you to           |
| 10  |   | call him on the phone, see how he was doing, stuff       |
| 11  |   | like that?                                               |
| 12  | A | Right.                                                   |
| 13  | Q | Now, you-all were married in '89, right?                 |
| 14  | A | I believe that's the year.                               |
| 15  | Q | Estimate about how long you've known Mr. Lingo in        |
| 16  |   | total.                                                   |
| 17  | A | I really don't know.  I knew him probably whenever       |
| 18  |   | I was -- was it fourteen -- fifteen.                     |
| 19  | Q | So you've known him for quite some time now?             |
| 20  | A | Yeah.                                                    |
| 21  | Q | Can he read and write?                                   |
| 22  | A | No.                                                      |
| 23  | Q | He can't read and write at all?                          |
| 24  | A | No.                                                      |
| 25  | Q | Or very little?                                          |

```
 1    A    Well, he can read some small words.
 2    Q    So it would be easy for somebody to take advantage
 3         of him or to embellish something --
 4    A    Not --
 5    Q    -- in writing?  If he can't read and write, he's
 6         not going to know?
 7    A    Well, I don't know how to answer that because, I
 8         mean, he would make you read it over to him time
 9         and time again.  If he didn't trust you, he would
10         take it to somebody else that he did trust.
11    Q    So he would have to get somebody that he really
12         trusted to write the letter?
13    A    Right.
14    Q    Now, during the time of this occurrence as far as
15         harassing communications, April 24, 2003, is when
16         you did a warrant on him.  Prior to that and
17         around that time he used to send you roses, didn't
18         he?
19    A    Yeah.
20    Q    He would put a card in it?
21    A    Yeah.
22    Q    And it would say, I love you, you know who this
23         is, I love you?
24    A    Yes.
25    Q    I love you, I think about you every day, you're
```

1       still in my heart?

2   A   I don't remember what the cards all read.

3   Q   And then, I love you and always will, please call?

4   A   I received that one after the warrant was signed.

5   Q   Has Mr. Lingo ever beat you?

6   A   Yes.

7   Q   He has beat you?

8   A   (Witness nodded.)

9   Q   And when was this?

10   A   It was not long after we had gotten married.

11   Q   Did you put out a warrant for his arrest?

12   A   No.

13   Q   Did you go to the hospital?

14   A   Yes.

15   Q   You did?

16   A   Yes.

17   Q   Now, the letter that you received along with the

18       pictures, there's some statements in there that is

19       allegedly what Mr. Lingo had stated to the effect

20       of, I'm very depressed, I have cried a million

21       tears over you.  Do you remember reading that?

22   A   Yes.

23   Q   He was also stating -- or the letter also states

24       he was trying to fight to keep you, to keep you I

25       guess in the standard that he felt that you needed

```
 1              to be in; is that right?

 2    A    Not in my terminology it wasn't.

 3    Q    Now, let's go back to the harassing communications

 4         charge that was in the City of Dothan.  You had

 5         testified earlier that it was from a telephone

 6         conversation?

 7    A    Yes.

 8    Q    And I guess Mr. Lingo had been trying to contact

 9         you?

10    A    Yes.

11    Q    Throughout the day or week?

12    A    I had told him to stop calling me.

13    Q    Okay.  And so I guess when he called you, you told

14         him to stop calling you and then he called right

15         back?

16    A    Right.

17    Q    And then that's when you decided that you needed

18         to do a harassing communications?

19    A    Yes.

20    Q    Okay.  I know you had stated that he had beat you

21         at the beginning of you-all's marriage.  Has he

22         made any kind of threats or anything to you as far

23         as beating you recently?

24    A    You talking about threats?

25    Q    Any kind of -- yeah, threats.
```

| | | |
|---|---|---|
| 1 | A | He has threatened to burn my house down.  He has |
| 2 | | tried to hire somebody to kill me.  He has made |
| 3 | | the comment to me that the next person that puts |
| 4 | | him away will die. |
| 5 | Q | Have you ever made any kind of threats towards |
| 6 | | him? |
| 7 | A | No. |
| 8 | Q | Never? |
| 9 | A | (Witness nodded.) |
| 10 | Q | You-all have never argued back and forth? |
| 11 | A | We've argued, yes. |
| 12 | | MS. STINSON:  No further questions. |
| 13 | | THE COURT:  Anything else on direct? |
| 14 | | MR. BINFORD:  No, sir. |
| 15 | | THE COURT:  You may step down. |
| 16 | | MR. BINFORD:  We ask that she be excused, |
| 17 | | also, Judge, if she needs to be. |
| 18 | | THE COURT:  She's excused. |
| 19 | | Who will your next witness be? |
| 20 | | MR. BINFORD:  Alicia Rogers. |
| 21 | | ALICIA ROBERTS |
| 22 | | having first been duly sworn, was examined and |
| 23 | | testified as follows: |
| 24 | | DIRECT EXAMINATION |
| 25 | | BY MR. BINFORD: |

| | | |
|---|---|---|
| 1 | Q | Tell us your name, please, ma'am. |
| 2 | A | Alicia Roberts. |
| 3 | Q | And, Ms. Roberts, you live in Headland, I believe, |
| 4 | | in Henry County? |
| 5 | A | Yes, sir. |
| 6 | Q | Newville or Headland? |
| 7 | A | Headland. |
| 8 | Q | Now, you know the Defendant, Ralph Lingo, in this |
| 9 | | case; is that right? |
| 10 | A | Yes, sir. |
| 11 | Q | Tell the jury how you know Ralph Lingo. |
| 12 | A | I worked for him. |
| 13 | Q | And how did you work for him? |
| 14 | A | I worked filling out paperwork.  I cleaned his |
| 15 | | house and stuff like that. |
| 16 | Q | Cleaned his house? |
| 17 | A | (Witness nodded.) |
| 18 | Q | And where was that where you cleaned his house |
| 19 | | and stuff like that? |
| 20 | A | In the trailer that he lived in in Newville. |
| 21 | Q | In Newville.  And this is Ralph Lingo in court to |
| 22 | | your right and my left, correct? |
| 23 | A | Yes, sir. |
| 24 | Q | Now, I want to show you what we have marked as |
| 25 | | State's Exhibit No. 1.  And it's really three |

1    pages.  And I think it was in this order.  It's

2    some writing, some photographs, another page of

3    writing, and another page of writing.  Do you

4    recognize what is State's Exhibit No. 1?

5 A   Yes, sir.

6 Q   And would you tell the jury how you recognize

7    that, please, ma'am?

8 A   Because I wrote it.

9 Q   And where did you write that?

10 A   At his home.

11 Q   Are these your words?

12 A   Those are his words.

13 Q   How do you know that these are his words?

14 A   He told me -- he told me what to write because he

15    couldn't read or write.

16 Q   Did you write down what he asked you to write?

17 A   Yes, sir.

18 Q   And at this time you were his employee; is that

19    right?

20 A   Yes, sir.

21 Q   Is there anything in there that Alicia Roberts put

22    in there --

23 A   No, sir.

24 Q   -- because Alicia Roberts wanted to add something?

25 A   No, sir.

| | | |
|---|---|---|
| 1 | Q | Do you have any axe to grind against Debra |
| 2 | | Blackstone? |
| 3 | A | No, sir.  There was nothing, really.  I mean, me |
| 4 | | and her -- she got into it on the phone with me |
| 5 | | one time, but I really don't know her.  I don't |
| 6 | | have nothing against her. |
| 7 | Q | Did you try to add something in there that Ralph |
| 8 | | didn't tell you to add? |
| 9 | A | No, sir.  I threatened to put a warrant out on her |
| 10 | | because she was -- she was -- she had called me |
| 11 | | names and stuff over the phone.  That's it. |
| 12 | Q | Over the telephone? |
| 13 | A | Over the phone. |
| 14 | Q | Now, there are some pictures that are copied and |
| 15 | | attached to that letter, correct? |
| 16 | A | Yes, sir. |
| 17 | Q | Did you see those pictures when you were writing |
| 18 | | out the letter for Ralph Lingo? |
| 19 | A | Yes, sir. |
| 20 | Q | And -- |
| 21 | A | I helped him copy them. |
| 22 | Q | Did he give you those pictures? |
| 23 | A | He handed them to me to try to copy them on the |
| 24 | | scanner. |
| 25 | Q | And that was done where also?  In the same |

49

```
 1        building?
 2   A    In the same home in the trailer.
 3   Q    He had a copier and scanner in his home?
 4   A    He did have.
 5   Q    You're not coming in here bragging about doing
 6        this?
 7   A    No, sir.
 8   Q    And why did you do it?  Can I just point blank ask
 9        you why would you do that for somebody?
10   A    I really don't know why.  I mean, he asked me to,
11        and I done it, and I thought it was just a marital
12        thing.  I didn't know what it was about really.
13   Q    You wish you hadn't done it?
14   A    Yes, sir.
15   Q    You don't still work for Mr. Ralph Lingo, do you?
16   A    No, sir.
17            MR. BINFORD:  Judge, that's all I have for
18        Ms. Roberts at this time.
19            THE COURT:  Ms. Stinson.
20            MS. STINSON:  Okay, Your Honor.  Just a
21        moment.
22                    CROSS EXAMINATION
23   BY MS. STINSON:
24   Q    Ms. Roberts, you stated that you worked for Mr.
25        Lingo I guess cleaning house?
```

```
1    A    Uh-huh.

2    Q    What kind of paperwork did you do?

3    A    He had me to fill out some warrants -- not

4         warrants, but filing stuff with the Court --

5         courthouse to sue people with.  I took down the

6         names of phone numbers for the folks who had

7         called and left a message on the phone and stuff

8         like that.

9    Q    When you -- you testified that Mr. Lingo asked you

10        to write this letter?

11   A    Yes, ma'am.

12   Q    During the time that you were writing this letter,

13        did you -- how exactly did it occur?  I mean, did

14        he just say write the letter and that's it?

15   A    He asked me -- he told me -- first he asked me

16        did I know how to run a copier scanner.  I told

17        him yes.  And then he -- and then he's, like, I

18        want you to copy this.  Well, I copied it.  And

19        then he wanted me to write the letter.

20   Q    Did he tell you what do to write or did you --

21   A    He told me what to write.

22   Q    Except for about the warrants?

23   A    Ma'am?

24   Q    You had testified earlier that you had written

25        something about warrants?
```

| | | |
|---|---|---|
| 1 | A | No.  No.  No.  No, I threatened to put a warrant |
| 2 | | on her because she called me names over the phone, |
| 3 | | accused me of things that I wasn't doing.  I |
| 4 | | actually spoke to Warrick Ram about it actually. |
| 5 | Q | And when did this occur? |
| 6 | A | Around the same time.  When I first started.  The |
| 7 | | first day I was there. |
| 8 | Q | Mr. Black -- or Ms. Blackstone was cussing you out |
| 9 | | because supposedly she was accusing you of being |
| 10 | | with Mr. Lingo, wasn't she? |
| 11 | A | Yes, ma'am. |
| 12 | Q | And you-all supposedly had a relationship? |
| 13 | A | No.  I didn't have one with him, but she accused |
| 14 | | me of it.  She -- she actually called me a name on |
| 15 | | the phone. |
| 16 | Q | So -- now, you know that Mr. Lingo can't read and |
| 17 | | write, right? |
| 18 | A | Yes, ma'am. |
| 19 | Q | Did you read back the letter to him? |
| 20 | A | Yes, ma'am. |
| 21 | Q | And he -- okay -- |
| 22 | A | He okayed it.  And he also asked me to carry it to |
| 23 | | her.  And I told him no. |
| 24 | Q | Why did you write the letter? |
| 25 | A | I really don't know.  I mean, I just did it |

1        because he asked me to.  I didn't want to lose my

2        job because I needed the money to pay my car

3        payment.

4   Q    How long were you supposedly working for Mr. Lingo?

5   A    A few weeks.  About a month or something like

6        that.

7   Q    Okay.

8   A    I don't really know the time -- I mean, how long.

9        Because I wasn't there, like, every day, either.

10  Q    How much did you work?

11  A    I worked from, like, eight to, like, three in the

12       afternoon.  Something like that.

13  Q    Monday through Friday?

14  A    Yeah.  Unless he needed somebody to ride with him

15       to carry the portable buildings because he didn't

16       know exactly where it was.  That's how I started

17       working with him was one time when he couldn't

18       find Baker Hill and he had me and Joe -- Joe Helms

19       ride with him to carry the portable building

20       there.

21  Q    Okay.

22  A    And working with him and so I thought everything

23       was okay.

24  Q    You made a statement to Todd Register about this

25       letter, didn't you?

1   A   Who is Todd Register?

2   Q   He's the gentleman that interviewed you.

3   A   Yes, ma'am.

4   Q   Did you approach the police about this or did --

5   A   They approached me.

6   Q   -- they approach you?

7   A   They approached me.

8   Q   Okay.

9   A   The fire marshal approached me.

10         MS. STINSON:  No further questions.

11         THE COURT:  Anything further?

12         MR. BINFORD:  No, sir, not of this witness.

13   We would ask that she be excused also.

14         THE COURT:  You may step down, and you're

15   excused.  You may go.

16               (State's Exhibits No. 2 and 3 were

17               marked for identification.)

18                     ED SASSER

19   having first been duly sworn, was examined and

20   testified as follows:

21                 DIRECT EXAMINATION

22   BY MR. BINFORD:

23   Q   Would you tell the jury your name, please, sir?

24   A   My name is Ed Sasser.

25   Q   Mr. Sasser, where do you work?

```
1    A    I'm an investigator with the Alabama Department of

2         Corrections.

3    Q    And as an investigator with the Department of

4         Corrections, what do you do -- what day in and day

5         out do you do?

6    A    We investigate any crime that's committed within

7         the institutions or any personnel that violates

8         one of our laws or anything else that the

9         commissioner may want us to investigate.

10   Q    And how long have you been employed as an

11        investigator with the Department of Corrections?

12   A    Right at twenty years.

13   Q    Now, did you have an occasion to investigate a

14        complaint in one of your institutions concerning

15        an inmate by the name of Ralph Lingo?

16   A    Yes, sir.

17   Q    And where was Mr. Lingo at that time?

18   A    He was at Bullock County Correctional Facility.

19   Q    And what was the nature of the complaint that you

20        received?

21             MS. STINSON:  Objection.

22             THE COURT:  I'm sorry, what was the question?

23             MR. BINFORD:  What was the nature of the

24        complaint that he received.

25             THE COURT:  When he went to talk to --
```

55

```
 1              MR. BINFORD:  Mr. Lingo.
 2              THE COURT: -- Mr. Lingo at Bullock County?
 3              MR. BINFORD:  Yes, sir.
 4              THE COURT:  I'm going to sustain the
 5         objection as to anything -- to some other
 6         investigation that might have been going on,
 7         anything to do with that.
 8    Q    To by-pass that, let me ask you this.  You got a
 9         complaint concerning inmate Ralph Lingo, correct?
10    A    Yes, sir.
11    Q    And you went to Bullock County where he was to
12         talk to him; is that correct?
13    A    Yes, sir.
14    Q    And were you there working on behalf of the Dothan
15         Police Department?
16    A    No, sir.
17    Q    And did anyone with the, say, D.A.'s office or the
18         City of Dothan Police Department investigations
19         call you at your office and ask you to go to
20         Bullock County to interview Mr. Lingo?
21    A    No, sir.
22    Q    And your office is not in Bullock County or
23         Houston County, but your office is in Montgomery
24         County; is that correct?
25    A    Montgomery.
```

| 1 | Q | And after -- let me tell you -- ask you this, |
| 2 | | rather.  Where did you get a complaint from and |
| 3 | | where did the complaint originate? |
| 4 | A | From the warden at Bullock County Correctional |
| 5 | | Facility. |
| 6 | Q | Your job, of course, as you said is to investigate |
| 7 | | things like that? |
| 8 | A | Yes, sir. |
| 9 | Q | You went to Bullock County; is that correct? |
| 10 | A | Yes, sir. |
| 11 | Q | And there you met with an inmate by the name of |
| 12 | | Ralph Lingo; is that correct? |
| 13 | A | I met with Ralph Lingo, yes, sir. |
| 14 | Q | Do you recognize Ralph Lingo in the courtroom |
| 15 | | today? |
| 16 | A | Yes, sir. |
| 17 | Q | Is that Ralph Lingo with his attorney, Ms. Stinson? |
| 18 | A | That's Ralph Lingo. |
| 19 | Q | At that time did you advise Mr. Lingo of his |
| 20 | | Miranda rights? |
| 21 | A | I did. |
| 22 | Q | And I'll show you what we've marked as State's |
| 23 | | Exhibit No. 2 and I'll ask if you recognize that. |
| 24 | A | Yes, sir. |
| 25 | Q | And what is that, please, sir? |

```
 1   A    This is a -- one of our Miranda rights forms that
 2        I had filled out, advised him of his rights, and
 3        he signed it on the bottom.
 4   Q    Now, before he signed this waiver of rights form
 5        marked as State's Exhibit No. 2, did you or anyone
 6        in your presence offer him any kind of reward or
 7        inducement in order to get him to talk to you?
 8   A    No, sir.
 9   Q    Did you or anyone in your presence before he
10        signed Ralph Lingo at the bottom of this statement
11        threaten him or coerce him in any manner in order
12        to obtain any type of a statement from him?
13   A    No, sir.
14   Q    Did he sign this rights form -- or waiver of
15        rights on the rights form in your presence?
16   A    Yes, sir.
17   Q    In Bullock County, and did he do so voluntarily?
18   A    Yes, sir.
19            MR. BINFORD:  Judge, we would offer No. 2 at
20        this time.
21            THE COURT:  Is that the Miranda form?
22            MR. BINFORD:  Yes, sir.
23            THE COURT:  Let that be admitted.
24                (State's Exhibit No. 2 was admitted into
25                    evidence.)
```

```
 1   Q    I'll also show you what we have marked as State's
 2        Exhibit No. 3.  It's a two-page transcript -- or
 3        appears to be a two-page transcript; is that
 4        correct?
 5   A    Yes, sir.
 6   Q    And do you recognize that?
 7   A    I do.
 8   Q    Is that a transcript of the conversation that you
 9        had with Ralph Lingo in Bullock County?
10   A    Yes, sir.
11   Q    And was that taken last month?
12   A    It was taken 10-13-04.
13   Q    And, again, this is a true and correct copy of the
14        transcript; is that correct?
15   A    Yes, sir.
16             MR. BINFORD:  Judge, we would offer State's
17        Exhibit No. 3 at this time.
18             MS. STINSON:  Your Honor, I would like to
19        object at this time.
20             THE COURT:  Let me see what it says.
21                  I'm going to sustain the objection.
22             MR. BINFORD:  Judge, could we ask -- could we
23        take something up out of the presence of the jury?
24             THE COURT:  Ladies and gentlemen, I'm going
25        to ask you if you will, please, to go to the jury
```

```
 1        room.  Just recall the instructions I've given
 2        you, and we'll call for you shortly.
 3                    (Jury not present.)
 4             THE COURT:  Let the Record show that this is
 5        out of the presence and hearing of the trial
 6        jury.
 7             MR. BINFORD:  Judge, I want to add, is there
 8        a part of that the Court objects to?  That's what
 9        I was trying to figure out if we would excise
10        parts of it to make it admissible to the Court?
11             THE COURT:  Well, there's a mention of other
12        offenses in here.  I had indicated early on that,
13        you know, I wasn't going to allow anything like
14        that.  And the other thing --
15             MS. STINSON:  May I speak, Your Honor?
16             MR. BINFORD:  Can I hear what you have to
17        say, Judge, before?  I would like to hear what you
18        have to say.  I haven't heard an objection from
19        the Defense or the nature of the objection other
20        than just objection.  So I don't --
21             MS. STINSON:  Then I'll be glad to state
22        that.
23             MR. BINFORD:  I would rather hear what the
24        Court --
25             THE COURT:  Go ahead.
```

1      MS. STINSON:  I object to, of course, the

2    statement about the supposed other crime that's

3    occurring -- the solicitation of murder where the

4    -- Debra Blackstone supposedly they are trying to

5    -- well, excuse me, I'm sorry, Mr. Lingo is

6    supposedly soliciting somebody to burn her house

7    down while she's in it.  I object completely to

8    that.  I don't think it's relevant to this case

9    right here.  And there's nothing there.  They have

10    got an individual -- an inmate in Bullock County

11    by the name of Morris Bowman that has a long

12    record.  In fact, he's serving right now life with

13    the possibility of parole, and I -- yeah, two

14    robbery charges.  So to me --

15      MR. BINFORD:  What does that have to do with

16    this when we're not even calling him as a witness,

17    Judge?

18      THE COURT:  Yeah, I don't understand that.

19      MS. STINSON:  Also, the other thing I have a

20    problem with is that on 10-13-2004 I was his

21    counsel.  And I was not approached about this at

22    all.

23      MR. BINFORD:  Judge, I have a response.  I

24    would like to be heard on that also.  And my

25    response --

1    THE COURT:  When she gets through, I will let
2    you.
3    MS. STINSON:  I don't have anything else,
4    Your Honor.
5    MR. BINFORD:  That is not a ground to legally
6    suppress that statement, though, Judge, the fact
7    that he was represented by counsel.  He signed a
8    waiver saying he didn't want to talk to a lawyer.
9    This gentleman didn't go there to investigate him
10   on some pending case.  He didn't go as an agent of
11   the D.A.'s office.  He didn't go as an agent of
12   the Dothan Police Department.  He was there
13   investigating a threat.  And that is how they
14   started talking about this case.  But that was not
15   his purpose.  But the things that would justify
16   suppressing the statement on the ground that he
17   had a lawyer, did they violate his Miranda
18   rights?  No.  We have a State's Exhibit No. 2 in
19   evidence where he was advised of his rights and he
20   waived his rights.  Was the product -- the
21   statement a product of force or duress or a
22   promise of a reward or an inducement?  No.  This
23   gentleman has testified that none of those things
24   occurred.
25   The only other thing, Judge, that would

1    justify suppressing this statement as I understand

2    under the law would be a situation like this.  And

3    that is if a defendant is arrested, locked up, and

4    the police department -- or the law enforcement

5    agency engages in just outrageous conduct which

6    rises to the level of a due process violation.  An

7    example would be a case -- and I got it over lunch

8    on Lexis -- where a man was arrested, charged with

9    murder, I believe, taken to the police department,

10   his wife finds out where he is finally.  The

11   police won't even tell his wife where he is.

12   About twenty times she asks the jailer to speak to

13   her husband.  She calls one attorney, and the

14   attorney tries to get in touch with her husband at

15   the jail.  He's going to represent this man.  No,

16   they won't even confirm that he's in the jail.

17   Then she gets another lawyer, Mr. Storm.  This Mr.

18   Storm tries and tries and tries to get to this

19   defendant in the jail.  But the police never even

20   advise the defendant that he has lawyers out there

21   knocking on the door trying to get in touch with

22   him.   Rather, they secrete him and seclude him

23   away from the people that are there trying to help

24   him.   And in that case, the Alabama Supreme Court

25   said that does not rise to the level of a due

1    process violation such as would justify a court in

2    suppressing the statement.  Justice Maddox

3    dissented.  It was a dissent.  But Justice Maddox

4    said in this case I think this might have.  But

5    that case they discuss that.  But this was not

6    that situation, Judge.  Nobody was knocking on the

7    door of the Bullock County Penitentiary trying to

8    get in touch with Mr. Lingo.  No one was trying to

9    hide him from his lawyer.  There's no outrageous

10   or egregious conduct on the part of Mr. Sasser who

11   was just doing his job investigating a complaint

12   within the prison system.  And that's why I don't

13   think it ought to be suppressed on that ground.  I

14   just don't thing that's the law.  I would like to

15   say on the second page of that, Judge, they

16   exclusively except for maybe the top answer by Mr.

17   Ralph Lingo, they exclusively talk -- you know,

18   they talk about this case.  And I believe that

19   should be admitted.  If we could extract that from

20   the statement and offer that because he talks

21   about that.  He talks about, you know, you

22   threaten Debra by sending a person to her house --

23        THE COURT:  Is this the whole statement?  Is

24   that everything?

25        MR. SASSER:  Yes, sir, Your Honor.  When he

1    said he wanted to stop making a statement, I

2    stopped it at that point.  The last line down

3    there on the second page.

4         THE COURT:  And, let's see.  Do I understand

5    that -- of course, I didn't allow the complaint --

6    the substance of the complaint to go to the jury.

7    But what were you there to discuss with him?

8         MR. SASSER:  The Warden had called me and

9    told me that an inmate had come to him and said

10   that Mr. Lingo had come to the inmate wanting him

11   to look at some legal papers to see if there was

12   anything wrong with a search warrant.  And he

13   looked at the search warrant and he said Mr. Lingo

14   told him it really didn't matter anyway because he

15   had someone that was going to take care of Debra.

16   And the inmate, I took a statement from him, and

17   he told me that Mr. Lingo told him that he was

18   going to get this person to burn Debra's house

19   down with her in it.

20        THE COURT:  And that's what you were there to

21   talk to him?

22        MR. SASSER:  That was what I was -- that was

23   what I was there for.  And I didn't know what I

24   was there when I come down there.

25        THE COURT:  So you went to him --

```
 1              THE DEFENDANT:  I got the record at the
 2         county jail.
 3              THE COURT:  Have a seat, please.
 4              THE DEFENDANT:  I'm sorry.
 5              THE COURT:  And I believe Debra was also a
 6         witness against you in some -- something -- some
 7         kind of tapes?  What was --
 8              MR. SASSER:  I think that was some kind of
 9         case is what that --
10              THE COURT:  In some kind of case?
11              MR. SASSER:  I didn't know where the case
12         that I was talking to him about had been already
13         tried or what.
14              THE COURT:  Okay.  And then he said, Debra is
15         more -- or he said, Debra is more or less like,
16         uh, yeah, a witness, uh, like, more or less like
17         she was dating me.  And then you said, okay, but
18         she is a witness.  And he said, yes, sir.  I mean,
19         she's a witness -- that's all I know.  She was --
20         no, just dating me at the time.  And you said,
21         okay, while you was at the Houston County Jail did
22         you talk to any other inmates at the Houston
23         County Jail about taking care of Debra by burning
24         her house down with her in it.  Now, that's the
25         part right there.
```

1           MR. BINFORD:  Judge, can I say this, too, on

2     that point?  I know the Court said that you don't

3     want to get into other allegations.  But they

4     elicited that from Debra Blackstone herself on the

5     stand by testimony that he had threatened to burn

6     her house down.

7           THE COURT:  Make a statement for anybody not

8     no one hurt Debra Blackstone or anybody else.

9           MS. STINSON:  Another thing -- can I ask him

10    a question?  Is that all right, Your Honor?

11          THE COURT:  Yeah.  Just a minute.

12          MS. STINSON:  Okay.

13          THE COURT:  You want to say something else?

14          MS. STINSON:  Are you aware Mr. Lingo can't

15    read and write?

16          MR. SASSER:  He told me he couldn't read.

17          MS. STINSON:  Did you tell him what his

18    rights were then?

19          MR. SASSER:  I read his rights to him.

20          MS. STINSON:  And then after that he signed

21    it?

22          MR. SASSER:  He signed it.

23          MS. STINSON:  Were you aware that he had

24    counsel?

25          THE WITNESS:  The only time I was aware he

1    had counsel was when he said that he wanted

2    something to send to his lawyer -- that other

3    inmate said he wanted something to send to his

4    attorney.  And he mentioned nothing at all to me

5    about having an attorney.

6         MR. BINFORD:  Judge, we would be -- I mean,

7    my contentment is not your concern, but I would

8    be content with peel off the first page and limit

9    it to what he said about this case.

10        THE COURT:  I'm going to allow it.

11        MR. BINFORD:  They opened the door.

12        THE COURT:  I'm going to change my ruling.

13   I'm going to allow it in.

14             (State's Exhibit No. 3 was admitted into

15             evidence.)

16        MS. STINSON:  Just the part of the --

17        THE COURT:  No.  The whole thing.  Because

18   the jury has already heard the thing about burning

19   -- threatening to burn her and her house down.

20   There's nothing new there.

21        THE COURT:  You can bring the jury.

22             (Jury present.)

23        THE COURT:  Mr. Binford, you can go ahead.

24 Q   Now, we were showing you State's Exhibit No. 3,

25   which is a transcribed copy of the statement that

1        Mr. Lingo gave to you and that appears to be a

2        transcribed copy of it; is that correct?

3   A   Yes, sir.

4   Q   Now, in this statement you talk about the initial

5        complaint, correct?

6   A   Right.

7   Q   And in the statement the complaint you were

8        investigating was a complaint of Mr. Lingo

9        allegedly threatening to burn down Debra's trailer

10       with her in it; is that correct?

11  A   Yes, sir.

12  Q   In the statement Mr. Lingo denies making any

13       statements like that of any nature; is that

14       correct?

15  A   Yes, sir.

16  Q   On the next page of your transcript, do you begin

17       to ask Mr. Ralph Lingo about the charge here --

18       the charge in fact that is in trial right now

19       before this jury, the intimidating a witness

20       charge?

21  A   Yes, sir.

22  Q   Now, do you ask Mr. Lingo, have you threatened

23       Debra before by sending a person to her house with

24       a naked picture of her?  Did you ask him that?

25  A   Yes, sir.

| 1 | Q | And what did he say? |
| 2 | A | He said that the person that had it didn't know |
| 3 | | what was in it. And I asked him if Debra knew |
| 4 | | that -- what it was, that it was naked picture. |
| 5 | | And he said Debra did. And I said, there was a |
| 6 | | naked picture in there. And he said, that's |
| 7 | | true. And I said, well, why did you send the |
| 8 | | picture to Debra. And then he said -- he |
| 9 | | indicated that he was trying to say that he had a |
| 10 | | case pending, and I told him that he had been |
| 11 | | advised of his rights and could stop answering at |
| 12 | | any time. And he said, we'll stop now. |
| 13 | Q | Now, some places on the tape it says inaudible on |
| 14 | | this transcript? |
| 15 | A | Yes, sir. We were in a brick -- a block building, |
| 16 | | and it's awful hard to take a taped statement in a |
| 17 | | block building. |
| 18 | Q | Is there anything in here where the inaudibles |
| 19 | | appear where he said something contrary to what |
| 20 | | you testified about? |
| 21 | A | No, sir. |
| 22 | | MR. BINFORD: Judge, we would offer No. 3 |
| 23 | | again, the statement. |
| 24 | | THE COURT: Let it be admitted over their |
| 25 | | opposition. |

```
 1              MR. BINFORD:  That's all we have of Mr.
 2         Sasser at this time.
 3              THE COURT:  Ms. Stinson.
 4                   CROSS EXAMINATION
 5    BY MS. STINSON:
 6    Q    Now, you went to see Mr. Lingo, correct?
 7    A    Yes, ma'am.
 8    Q    Doing an investigation?
 9    A    Right.
10    Q    And you -- okay.  Now, when you went to go and
11         investigate -- or speak to Mr. Lingo, you were
12         going to speak to him about a fight in the Houston
13         County Jail; is that right?
14    A    No.  You're talking -- there's two different
15         occasions.  Approximately two -- three weeks prior
16         on the first day that Inmate Lingo came into
17         Bullock County Correctional Facility, I was
18         there.  The warden said, we have an inmate who is
19         claiming that he has been beaten by the Houston
20         County Sheriff's Department.  I said, well, bring
21         him up here and let me look at him and take
22         pictures so he can't blame this on us.  So they
23         brought him up here to where I was at.  I took
24         pictures of him.  And I took a statement.  He said
25         that he was beaten by jail personnel here at
```

1    Houston County.  I took that statement.  I also

2    took pictures.  He said that he had a broken jaw

3    and three loose tooth -- teeth.  I had the doctors

4    to do X-rays of him.  He did not have a broken

5    jaw, but he did have three teeth that were loose.

6    Other than that, he had one little mark on his

7    back.  And I sent that report to the District

8    Attorney here.  And this was -- that was

9    complete.  I was through with it.

10  Q    Okay.  So --

11  A    Because if anybody had wanted to pick it up and

12       investigate, it wasn't in my jurisdiction to do

13       that.  So this took place approximately two or

14       three weeks after he got there.

15  Q    Okay.  Well, when you went to go and speak to him

16       the second time, how did you introduce the

17       subject?

18  A    I asked him.  I asked him if he knew a Debra

19       Blackstone.  He said, yes, she's my ex-wife.

20            THE DEFENDANT:  Didn't do.  Didn't do it.

21       Object.

22  Q    Go ahead.

23  A    And we talked about it, and then I took a

24       tape-recorded statement from him.

25            MS. STINSON:  No further questions, Your

1    Honor.

2            MR. BINFORD:  That's all.

3            THE COURT:  You may step down.

4            MR. BINFORD:  May he be excused also?

5            THE COURT:  Yes, sir.  You're excused, and

6    you may go.  Who will the State have next?

7            MR. BINFORD:  Judge, we rest at this time.

8            THE COURT:  Ladies and gentlemen, I hate to

9    be running you back and forth between the jury

10   room.  I know you think we're going to wear a hole

11   in the floor between here and there.  But if you

12   will, I'm going to ask you to go back to the jury

13   room at this time.  Recall the instructions I've

14   given you, and we'll call for you shortly to

15   continue.  Thank you very much.

16            (Jury not present.)

17        THE COURT:  Let the Record show that this is

18   out of the presence and the hearing of the trial

19   jury.

20            The State has rested.

21            Now, Mr. Lingo, I need your attorney's

22   attention.  You are constantly on top of her and

23   bothering her, and you don't give anybody a chance

24   to do anything.  I need to talk to your attorney.

25            THE DEFENDANT:  Okay, Judge.  You can talk to

1       her.
2              THE COURT:  Ms. Stinson --
3              MS. STINSON:  Yes, sir.
4              THE COURT:  -- the State has rested.  Do you
5       have any motions to make?
6              MS. STINSON:  I would like to argue for a
7       motion for acquittal, Your Honor.
8              THE COURT:  All right.
9              MS. STINSON:  Your Honor, as I'm sure the
10      Court is aware, Mr. Lingo has been charged with
11      intimidating a witness.  I realize that the
12      evidence seems very harsh.  However, I don't
13      believe that the State has met the burden as far
14      as the elements of intimidating a witness.  Mr.
15      Lingo was just trying to come to terms with Ms.
16      Blackstone.  Granted it went a little bit further
17      than what it may have should have gone.  But he
18      was basically trying to reconcile with her.  The
19      elements of intimidating a witness -- they have to
20      prove three different things -- or one of the
21      other of them; that is, corruptly influence the
22      testimony of a person; induce that person to avoid
23      legal process, summoning him to testify; induce
24      that person to absence himself from an official
25      proceeding.  He was not trying to get her to

1    absent herself from the proceeding.  Nor was he

2    trying to get her to avoid any kind of legal

3    summons.  All he was trying to do was to reconcile

4    with her and hopefully be able to resolve it among

5    themselves.  That's all he was doing, Your Honor.

6    He was not trying to corruptly influence her

7    testimony.

8          THE COURT:  Where is the letter?  I saw it,

9    but I never really read it.

10          MR. BINFORD:  It's here.

11          THE COURT:  Let me ask you this.  Mr.

12    Binford, I'm looking at intimidating a witness.

13    The statute on intimidating a witness, in order to

14    constitute the offense of intimidating a witness,

15    it says that a person commits the crime of

16    intimidating a witness if he attempts by use of a

17    threat directed to a witness or a person he

18    believes will be called as a witness in any

19    official proceedings to corruptly influence the

20    testimony of that person.  I don't see in here

21    where -- in this letter where there's any attempt

22    to corrupt the testimony -- or to avoid legal

23    process summoning him to testify -- and I don't

24    see any demand that that be done -- or induce that

25    person to absent himself from an official

1   proceeding to which he has been legally summoned.

2   There's nothing in here -- the threats that are

3   made are concerning that legal proceeding is, I

4   want you to drop that case.

5           MR. BINFORD:  Judge, I had an argument, when

6   you tell me to give it, I'll make it.

7           THE COURT:  I will never contact you again.

8   You drop your phony warrant or you will be sued at

9   the right time and arrested with warrants against

10  you.

11              I guess my whole problem is that I

12  don't see where this fits into any of these one,

13  two, or three.  Now, you may convince me that it

14  does.  But right offhand I don't see it.

15          MR. BINFORD:  Judge, my argument and my

16  argument to the jury would be that, you know,

17  maybe he didn't want to try to influence her

18  testimony or corruptly influence, and maybe he

19  didn't -- it wasn't trying to induce her to avoid

20  legal process or maybe he wasn't trying to get her

21  to absent herself to a proceeding.  But when you

22  consider the letter in total --

23          THE COURT:  I mean, the letter is bad.

24          MR. BINFORD:  Yes, sir.

25          THE COURT:  It's a horrible letter.  And I'm

```
 1        just trying to clearly fit it into the --
 2             MR. BINFORD:  What I'm saying is, Judge, they
 3        ought to decide that.  When the Court views the
 4        evidence in the light most favorable to the State
 5        as the Court does at this point, has the State
 6        made out a prima facie case, I say absolutely we
 7        made out a prima facie case.  Now, if they have
 8        some evidence to rebut that and take it to the
 9        jury and say, oh, no, that was not my intent, I
10        had some other kind of intent, I only wanted to
11        get her to drop the case, well, that's fine, they
12        are entitled to do that.  But at this point at
13        this stage of the proceedings, the letter taken in
14        its totality along with the pictures with
15        knowledge that she was a witness in a case having
16        taken out one week before she got this
17        communication from him would in my opinion allow a
18        reasonable juror to conclude that this was a
19        threat in order to make her not come to court or
20        to change her testimony or to avoid legal summons.
21        In other words, I don't think there's any
22        requirement in the law that -- where the State
23        would have to prove that a direct communication
24        was sent to a witness, you'd better not accept a
25        subpoena.  We don't have to prove that in my
```

1    opinion reading the law.  We don't have to have

2    someone prove that someone said directly, you'd

3    better lie under oath, you'd better change your

4    testimony, you'd better not show up to court.  We

5    don't have to have testimony is what I'm saying

6    under the law directly on that.  Is this

7    circumstantial evidence of his intent to

8    accomplish those things that intimidating a

9    witness outlaws, I would say, yes.  You know,

10    certainly a jury has a right either to accept

11    that or reject that.  And if he's got some

12    evidence that he wants to present to the contrary,

13    then by all means, you know, it's wide open, let

14    him do it.  But in reality, Judge, I would think

15    that the State would rarely have a case where a

16    defendant says, you'd better change your

17    testimony, you'd better lie under oath, you'd

18    better not accept a subpoena, you'd better not

19    come to court.  In reality, people send it like

20    this.  Anonymous messages clothed with what things

21    are going to happen to you if you continue with

22    the prosecution.  So my argument, Judge, really

23    boils down to this.  At this stage, a jury ought

24    to have a right to decide yea or nay on that.  And

25    I don't think any Court would be reversed by

1    allowing this case to go to a jury.

2            MS. STINSON:  May I respond, Your Honor?

3            THE COURT:  Okay.

4            MS. STINSON:  My thinking, though, is this.

5    The warrant was issued against Mr. Lingo.  A

6    couple of days later he tries to get in touch with

7    her to see if they can come to some type of

8    agreement.  It did not get to the point where it

9    was actually going to trial.  He knew nothing

10   about a court date.  He knew nothing about her

11   being summoned.  Nothing like that.  He was just

12   trying to resolve it before, you know, it went any

13   further.  He was hoping this to be a friendly

14   ending like he stated in the letter.  That he

15   would have no more contact with her and stuff.  He

16   just wanted to talk over with her this situation.

17   He was not trying to influence her testimony or

18   anything like that.  He felt like it was a

19   misunderstanding.  You know, he wanted to resolve

20   it that way.

21           THE COURT:  I understand what you're saying.

22   And if the threats weren't in it, then, you know,

23   I might buy that.  But there are threats in it.

24           MR. BINFORD:  Judge, what I think Ms. Stinson

25   just said is a good jury argument.  You can argue

1    that to a jury.

2        THE COURT:  It's a good jury argument.  But

3    there are threats in the letter.

4        MR. BINFORD:  Judge, there's also a reference

5    in here, you better back off from me.  I think a

6    jury should be entitled to conclude for themselves

7    what he means by that based upon all of the

8    evidence.  There's some stuff on you I won't

9    mention; if you don't want to go down, you better

10   back off from me.  Well, does that mean don't go

11   to court?  You know, the jury ought to decide that

12   is what I'm saying.  If they want to say this is

13   just a friendly communication in an effort to

14   reconcile, they're entitled to argue that, put on

15   any testimony they have to that effect.  But he's

16   not now talking about dismissing a warrant, he's

17   talking about backing off.  And I don't think the

18   law requires us to prove that he use statutory

19   language in his threats.  But we are entitled to

20   prove that he made those threats by the language

21   he used in this letter.

22       MS. STINSON:  Your Honor, I did not mean to

23   intend or give the impression that it was

24   friendly, but he was desperate.  You know, he was

25   trying to make amends with his ex-wife.  And he

1    wanted to see if he could -- if they could resolve

2    it between themselves, and that's it.  You know,

3    he had no intention of, like I said, corrupting

4    her testimony or inducing her to avoid a summons,

5    or anything like that.  It had not come to that

6    point during the -- you know, for the warrant.  It

7    hadn't come to that point.

8         MR. BINFORD:  Judge, I disagree with that,

9    and I think a jury could reasonably disagree with

10   that.  A jury ought to decide that.

11        THE COURT:  What is the -- I know in her

12   opening argument she was talking about lesser

13   included offenses.  As you understand it, what is

14   the difference in 13A-10-123, 13A-10-124, and

15   13A-6-25?

16        MR. BINFORD:  Tampering with a witness is no

17   threat.  That would be, like, asking somebody not

18   to go to court, Judge, or asking somebody to

19   change their testimony and not threatening them.

20        THE COURT:  Okay.  No threat.  And then

21   criminal coercion says that a person commits the

22   crime of criminal coercion if without legal

23   authority he threatens to confine, restraining --

24   okay.  Tell me the difference between that and --

25             MR. BINFORD:  Criminal coercion is different

1    from the intimidating a witness charge because

2    there's no court involved with necessary criminal

3    coercion as I understand it, Judge.

4        MS. STINSON:  It's basically trying to get a

5    person to do something against their will that's

6    unlawful or to refrain from doing a lawful act is

7    what it boils down to.

8        THE COURT:  There's no -- nothing to do with

9    the court --

10        MS. STINSON:  I don't want to say it's no

11    court.  But it's like anything that is legal, for

12    instance -- not necessarily telling somebody going

13    to court, but I guess -- I would think just

14    getting somebody to withhold testimony.  If they

15    knew something about a crime, something to that

16    effect.  Not necessarily that -- the individual

17    has been charged with a crime and then the witness

18    finds -- you know, knows something about it.  They

19    may not know that the person is charged with a

20    crime, but they may know -- I'm not making any

21    sense.  Basically --

22        THE COURT:  But your understanding is the

23    difference is there's no court?

24        MR. BINFORD:  Not necessarily court action.

25        MS. STINSON:  Yeah.  Yeah.

82

1    MR. BINFORD:  Doesn't necessarily involve a

2  court proceeding.  It could, but it doesn't

3  necessarily involve it.

4    THE COURT:  Are you ready to proceed?

5    MS. STINSON:  Yes, sir.

6    THE COURT:  The motion for a judgment of

7  acquittal is denied.

8      (Jury present.)

9    THE COURT:  Please, ma'am, who will you

10  have?

11    MS. STINSON:  Your Honor, I don't have any

12  witnesses.

13    THE COURT:  The Defendant rests?

14    MS. STINSON:  Yes, sir.

15    THE COURT:  Is the State ready to argue its

16  case to the jury?

17    MR. BINFORD:  Yes, sir.

18      (At which time closing arguments were

19      made by Mr. Binford.)

20    THE COURT:  Ms. Stinson.

21      (At which time closing arguments were

22      made by Ms. Stinson.)

23    THE COURT:  Mr. Binford.

24      (At which time rebuttal arguments were

25      made by Mr. Binford.)

1          MS. STINSON: Objection, Your Honor. There's

2   not people that's been told that.

3          MR. BINFORD: His own ex-wife testified.

4          THE COURT: There's been some evidence in the

5   trial on questioning by you-all. I overrule.

6               (At which time rebuttal arguments were

7               continued by Mr. Binford.)

8          THE COURT: Now, ladies and gentlemen, you're

9   the trial jury in this case of the State of

10  Alabama versus Ralph Wilson Lingo. And Ralph

11  Wilson Lingo is being placed upon trial before you

12  here today on an indictment which was returned by

13  the grand jury of Houston County, Alabama, back on

14  or about the 16th day of September, 2003, and this

15  indictment reads as follows. It says here that

16  the State of Alabama, Houston County, Circuit

17  Court, Twentieth Judicial Circuit, July term,

18  2003, the grand jury of said county charge that

19  before the finding of this indictment that Ralph

20  Wilson Lingo, whose name is to the grand jury

21  otherwise unknown, did attempt by use of a threat

22  directed to Debra Tice Blackstone, a witness or a

23  person he believed would be called as a witness in

24  an official proceeding, to corruptly influence the

25  testimony of the said Debra Tice Blackstone, to

1    induce Debra Tice Blackstone to avoid legal

2    process summoning her to testify, or to induce

3    Debra Tice Blackstone to absent herself from said

4    official proceedings to which Debra Tice

5    Blackstone had been legally summoned, in violation

6    of Section 13A-10-123 of the Code of Alabama

7    against the peace and dignity of the State of

8    Alabama.  Now, as we've said, as these attorneys

9    have told you repeatedly, that indictment charges

10   this Defendant here with intimidating a witness.

11        Now, the law of the state of Alabama at

12   Title 13A Subsection -- or Section 10-123 says

13   that a person commits the crime of intimidating a

14   witness if he attempts by use of a threat directed

15   to a witness or a person he will -- believes will

16   be called as a witness in any official proceeding

17   to either corruptly influence the testimony of

18   that person, induce that person to avoid legal

19   process summoning him to testify, or induces that

20   person to absent himself from an official

21   proceeding to which he has been legally summoned.

22   That's a lot I know to take in.  But let me go

23   over that with you again because I want you to

24   understand what it takes to make up the crime or

25   the offense of intimidating a witness under the

1    laws of this state.  The statute says that a

2    person commits the crime of intimidating a witness

3    if he attempts by use of a threat -- and I'm going

4    to define in just a minute what I mean by a threat

5    -- if he attempts by use of a threat directed to a

6    witness or to a person that he believes will be

7    called as a witness in any official proceeding to

8    either corruptly influence the testimony of that

9    person, or induce that person to avoid legal

10   process summoning him to testify -- that means to,

11   like, for instance, to hide from the sheriff to

12   keep from getting a subpoena so you won't have to

13   come to court -- or to induce that person to

14   absent himself from an official proceeding to

15   which he has been legally summoned -- that means

16   trying to induce the person who has received a

17   legal subpoena to go to court to avoid going to

18   court and to stay away from going to court in that

19   proceeding to which he has been summoned.

20          Now, the law says that -- or defines

21   threat.  It says that threats used in this section

22   means any threat prescribed by Section 13A-6-25 on

23   criminal coercion.  So then we turn to 13A-6-25 to

24   see what the law says that a threat is, what the

25   definition of a threat is.  And in that section on

1    criminal coercion it defines threat as being a

2    threat to confine or restrain a person, or to

3    cause physical injury to the threatened person or

4    to some other person, or to damage the property or

5    to damage the reputation of the threatened person

6    or another person with the intent thereby to

7    induce the threatened person.

8         Therefore, in order to sustain the

9    charge of intimidating a witness in this

10   particular case, the State of Alabama must have

11   proven to you beyond a reasonable doubt that Ralph

12   Wilson Lingo attempted -- that Ralph Wilson Lingo

13   attempted by the use of a threat, a threat being

14   directed to Debra Tice Blackstone, the State's

15   witness, or a person that he believes will be

16   called as a witness or she would qualify as a

17   witness or a person believed to be called as a

18   witness in a legal proceeding.  So, of course, the

19   State attempted to show you that she was a witness

20   and expected to be called as a witness in a legal

21   proceeding in the Municipal Court of the City of

22   Dothan where she had taken out a warrant and had

23   charged him with harassing communications in the

24   Municipal Court of the City of Dothan, and that he

25   intended by making this threat to corruptly

1    influence the testimony of Debra Tice Blackstone,

2    or that he intended to induce Debra Tice

3    Blackstone to avoid legal process summoning her to

4    testify, or that he through the use of that threat

5    intended to induce Debra Tice Blackstone to absent

6    herself from the trial of that case in Municipal

7    Court to which she had been legally summoned.

8    Now, that's what it takes to make up the offense

9    of intimidating a witness.

10          And let me go over that with you once

11   more.  In order to sustain the charge of

12   intimidating a witness in this case, the State of

13   Alabama must have proven to you beyond a

14   reasonable doubt that this Defendant, Ralph Wilson

15   Lingo, attempted by the use of a threat directed

16   to Debra Tice Blackstone, who was a person that

17   was a witness in the case against him or a person

18   that he believed would be called as a witness in a

19   legal proceeding against him in the Municipal

20   Court of the City of Dothan, Alabama, that he by

21   making that threat intended to corruptly influence

22   her testimony, the testimony of Debra Tice

23   Blackstone in that case; or that he intended to

24   induce Debra Tice Blackstone to avoid legal

25   process summoning her to testify, that means that

1  he intended to induce her to keep from being
2  served with a summons to go to court to testify
3  against him; or that he intended to induce Debra
4  Tice Blackstone to absent herself from an official
5  proceeding to which she had been legally summoned,
6  that being, of course, the hearing of the case in
7  the City of Dothan Municipal Court where he had
8  been charged with harassing communications.
9          Now, you need to remember that the law
10 defines a threat as being a threat to confine or
11 restraining, or to cause physical injury to the
12 threatened person or to another person, or to
13 damage the property or the reputation of the
14 threatened person or another person with the
15 intent thereby to induce the threatened person or
16 another against his will to do an unlawful act or
17 refrain from doing an unlawful act -- actually, I
18 read too much to you there.  The threat is simply
19 -- the threat must be to confine, restraining, or
20 to cause physical injury to the threatened person
21 or another person; or the threat might be one to
22 damage the property or reputation of the
23 threatened person or another person.
24         Now, after you have had the opportunity
25 to weigh and to consider the evidence in this

1    case, that for the State and that for the

2    Defendant, if you're convinced beyond a reasonable

3    doubt that this Defendant is guilty of that

4    offense of intimidating a witness as charged in

5    the indictment, then, of course, you should find

6    him guilty of that offense.

7          On the other hand, if after you've so

8    weighed and considered all of the evidence you're

9    not convinced beyond a reasonable doubt that he is

10    guilty, then you should find him not guilty.

11          Now, I read the indictment in this case

12    to you, the indictment which charges him with

13    intimidating a witness.  And I need to caution you

14    that this indictment is not any evidence of this

15    Defendant's guilt.  And it must not and it cannot

16    be taken by you as any evidence of his guilt of

17    this offense.  The is merely the formal charge

18    that is made by the grand jury of the county

19    against a person so that he can be brought before

20    the bar of justice and before a petit jury, such

21    as yourselves, and the evidence presented by the

22    State and evidence presented by the Defendant so

23    that you, the petit jury, can make a determination

24    of his guilt or innocence.  The indictment is no

25    evidence of his guilt in this case.

1             Now, there was some discussion during

2    the oral arguments to the jury about lesser

3    included offenses.  The Court has determined that

4    there are no lesser included offenses under the

5    evidence in this case.  So that will not be

6    submitted to you.  You have the option, of course,

7    if you find beyond a reasonable doubt that he is

8    guilty as charged of finding him guilty of

9    intimidating a witness.  But if you aren't

10   convinced beyond a reasonable doubt that he is

11   guilty as charged, then you should find him not

12   guilty.  The evidence in this case does not

13   support and does not prove any lesser included

14   offense under the law in my estimation.

15             Now, this Defendant went into the trial

16   of this case with a presumption of innocence in

17   his favor.  And that presumption of innocence

18   stays with him and it attends him and abides with

19   him throughout the trial of the case until his

20   guilt is established to your satisfaction beyond a

21   reasonable doubt.  And, of course, if after you've

22   weighed and considered all of the evidence in the

23   case, that for the State and that for the

24   Defendant, if there remains in your minds a doubt,

25   a reasonable doubt, a doubt for which you can give

1    a reason which came from the evidence and the

2    evidence alone, then, of course, he would be

3    entitled to the benefit of that doubt and would be

4    entitled to an acquittal at your hands.

5            The Defendant, Ralph Lingo, did not

6    testify during the course of this trial.  And, of

7    course, the law of our state and of our nation

8    gives him that right and gives him that

9    privilege.  Under our constitution of both the

10    United States and the State of Alabama, a

11    defendant being placed upon trial on a criminal

12    charge has the right to take the witness stand and

13    to testify in his own behalf if he wants to.  But

14    if he does not want to, he may stay off the

15    witness stand, refuse to take it, and refuse to

16    testify.  That's his option.  His right to

17    choose.  And the law says that when a defendant

18    does choose to not testify, that cannot and must

19    not be taken against him by the jury when they

20    come to weigh and to consider all of the evidence

21    and to make up their verdict in the case.  You

22    cannot and you must not consider the fact that he

23    did not testify against him.  That's a

24    constitutional right.  And you must not consider

25    it against him.

1          Now, if you believe, ladies and
2    gentlemen, that there's been any witness who has
3    testified during the course of this trial whom you
4    believe to have testified willfully falsely about
5    any material matter in the case, it's within your
6    right to completely cast aside that witness'
7    testimony and say that you will not -- you will
8    not believe anything that he or she has testified
9    about.  Or on the other hand, you could take that
10   part of the testimony that you believe that the
11   witness has testified willfully falsely about and
12   cast it aside and then take that part of the
13   testimony that you believe that the witness has
14   testified truthfully about and give to that part
15   of the testimony whatever weight and whatever
16   credit that you ladies and gentlemen deem it to be
17   entitled.
18          Now, as I've told you repeatedly, the
19   law requires that you must be satisfied beyond a
20   reasonable doubt of the guilt of the party being
21   placed upon trial before you would be justified in
22   returning a verdict of guilty as against that
23   party.  Now, that does not mean that you must be
24   satisfied beyond all doubt to an absolute
25   certainty to the extent that you could not

1     possibly be mistaken.  But it does mean that if

2     after you have weighed and considered all of the

3     evidence in the case, that for the State and that

4     for the Defendant, if it is then your fixed

5     opinion, conviction, and judgment that the

6     Defendant is guilty, then within the meaning of

7     our law you are convinced beyond a reasonable

8     doubt.

9              Now, once the case is submitted to you

10    for your verdict, you should go back into the jury

11    room and the first order of business should be the

12    election of a foreman.  You should decide on a

13    foreman, or a foreperson, to preside over your

14    deliberations, to present all of the evidence, to

15    preside over your proceedings, to take a vote when

16    you get ready to vote, and then once a verdict has

17    been rendered to sign that verdict as foreman of

18    the jury.  Whichever verdict you render in this

19    case, one of your number should sign it as foreman

20    and it must be unanimous.  Each and every one of

21    you must agree upon it.  And the Court will

22    prepare forms of verdicts in line with those that

23    I've given to you in my oral charge to aid and

24    assist you in arriving at the form of your

25    verdict.

1          Now, I'm not going to submit the case
2     to you for a final verdict this afternoon because
3     it's about the end of the day, and I know that you
4     have got things that you need to do once you get
5     home.  And I'm going to take a recess, and then
6     you will be allowed to take the case in the
7     morning and to reach your verdict in the morning.
8     Do not discuss this case among yourselves until I
9     submit the case to you and allow you to go back in
10    the jury room.  Do not discuss the case with
11    anyone else.  Do not allow anyone to discuss this
12    case with you.  Do not allow anyone even to
13    discuss this case in your presence.  And if anyone
14    attempts to do either of those things, then you
15    should let the Court know immediately.  I do not
16    anticipate that there will be any newspaper
17    accounts of the events of this trial or radio or
18    television broadcasts concerning the events of
19    this trial because I've not seen any media people
20    in the courtroom today.  But in the event that
21    there should be, you should not read, watch, or
22    listen to those news accounts concerning the
23    events of this trial.  Do not attempt to make any
24    independent investigation of the facts of this
25    case.  You just don't be concerned about this case

1    until you get back here at nine o'clock in the

2    morning.

3            If you'll just come back at nine o'clock

4    in the morning and be in the jury room right at

5    the end of the hall.  It's, actually, the only

6    room beyond this one toward the west wall of the

7    courthouse.  It's right next door to this

8    courtroom.  If you'll just come back here at nine

9    o'clock in the morning, and we'll submit the case

10    to you for your deliberations and to render your

11    verdict.  At this time you may go, and we'll see

12    you in the morning.  Hope you have a good

13    evening.

14        THE DEFENDANT:  Judge --

15        THE COURT:  I'll give you a chance if you

16    will.

17            (Jury not present.)

18        THE COURT:  Let the Record show that this is

19    out of the presence and hearing of the trial

20    jury.

21        MS. STINSON:  I just wanted to put it on the

22    Record that I would object to jury instructions

23    not being given on criminal coercion and tampering

24    with a witness for appeal purposes.

25        THE COURT:  I just don't believe that -- a

ne and brought me back.

/.

Okay.  They didn't have no

ey did not show me no search

l up in my driveway, no Henry

:.  They pull a gun on me.  I

: a hundred -- way across that

/ home.  I could not never go

: was time for me to unlock my

it there and say we got a

a.  And I said, okay.  And I

ook at it.  And they said, no,

) warrant for nothing.  I

ahead and I cooperate with the

safe like I was told.  I went

There was no arrest made on

None.  Okay.  Then on Debra

what has any of that got to

Nothing you've said has got

this charge.

Okay.  Okay, Judge.  Here's

it I'm trying to explain to

being searched, okay, on

lating the State's witness,

1     Debra all the time call and check my answering
2     service.  Call and say I'm seeing other women.  I
3     thought this what mine and Debra's argument all
4     about.  This ain't the first time me and Debra had
5     this problem about naked pictures.  She threaten
6     me several times.  I mean, I did not know nothing
7     like this.  The law is doing on searching my home.
8     I didn't know Tony Luker had called her down there
9     and made a statement.  I didn't know anything
10    about none of that.  Not until way after I was
11    done arrested.  But when the arrest on
12    intimidating a State's witness, I live in Henry
13    County.  Tony Luker pulled me over in Henry -- in
14    Headland, okay.  He called back to Dothan, and it
15    was six police respond, City of Dothan come to
16    Headland and handcuff me and brought me and my
17    vehicle back to Dothan.  I asked for a warrant.  I
18    asked to see a warrant.  I could not see a
19    warrant.  Okay.  Later on, Judge, this what I
20    got.  And I looked -- I mean, I looked to
21    introduce these law -- I look to have some of
22    these on record.  I mean --
23          THE COURT:  No.  No.  Take your papers.  Take
24    your papers.  Go ahead.  Okay.
25          THE DEFENDANT:  Title 15-10-10, you know.

1    Section 4-3-38.  And, you know, a lot more law in

2    here.

3         THE COURT:  Okay.

4         THE DEFENDANT:  Conger law.  And, plus --

5         THE COURT:  Just hand her all of it if you

6    want to.

7         THE DEFENDANT:  Plus the indictment is not

8    correct.

9              (Complied.)

10              Here you go.

11        THE COURT:  Okay.  All right.

12        THE DEFENDANT:  And the indictment is not

13   correctly, Judge.  It ain't got none of the

14   special law what is supposed to be on there.

15        THE COURT:  Okay.  I overrule.  You can take

16   him on.

17        THE DEFENDANT:  And another --

18        THE COURT:  No.  No.  You're in his custody.

19              (The proceedings for November 3, 2004,

20              were concluded.)

21              (Off the Record.)

22

23

24

25

1              IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                        STATE OF ALABAMA

3   STATE OF ALABAMA,              *
                                   *
4   v.                            *      Case No. CC-2003-599
                                   *
5   RALPH WILSON LINGO,           *
                                   *
6        Defendant.               *

7

8

9        REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL

10

11

12  Before:

13            The Honorable Jerry M. White and jury

14                 November 4, 2004

15

16

17  APPEARANCES:

18            For the State

19                 Henry C. Binford, Esquire
                   Assistant District Attorney
20

21            For the Defendant

22                 Tammy Stinson, Esquire
                   Dothan, Alabama
23

24
    Carla H. Woodall, CSR
25  Court Reporter

```
 1                    (The proceedings for November 4, 2004,

 2                    began.)

 3                    (At which time the alternate jurors

 4                    were excused.)

 5                    (At 9:05 a.m. the jury began their

 6                    deliberations.)

 7                    (Off the Record.)

 8                    (At 9:12 a.m. the Court was notified the

 9                    jury had reached a verdict.)

10            THE COURT:  Bring the jury.

11            THE DEFENDANT:  Judge, I had witnesses

12      subpoenaed in my trial.  And none of them were

13      here in my trial.

14            THE COURT:  It might have been that they

15      didn't know anything that was relevant to this

16      case.  I know you had me subpoenaed -- or wanted

17      to subpoena me, and I didn't know anything about

18      the case.

19                    (Jury present.)

20            THE DEFENDANT:  Well, Judge --

21            THE COURT:  Hold it.

22                    Mr. Henderson, I understand that you're

23      the foreman of the jury; is that correct?

24            THE FOREPERSON:  Yes, sir, that's correct.

25            THE COURT:  And the jury has reached a
```

1     verdict?

2            THE FOREPERSON:  Yes, sir, that's correct.

3            THE COURT:  I'll read the verdict.

4                   It says here, we, the jury, find the

5     Defendant, Ralph Wilson Lingo, guilty of

6     intimidating a witness as charged in the

7     indictment.

8                         (At which time the jury was polled by

9                         the Court.)

10           THE COURT:  Let the Record show that the

11    Court polled the jury and that each and every

12    member of the jury replied that the verdict was

13    his or hers.

14                  Now, for the time being, ladies and

15    gentlemen, thank you very much for your service.

16    If you would, just have a seat back out in the

17    courtroom, and we'll know pretty soon, you know,

18    where we are, and we'll be able to let you know.

19    Thank you very much.

20                  Ralph Wilson Lingo, approach the bench.

21           THE DEFENDANT:  (Complied.)

22           THE COURT:  Now, Ralph Wilson Lingo, the jury

23    having found you guilty of intimidating a witness

24    as charged in the indictment, based upon that jury

25    verdict, I hereby adjudge you guilty of

1    intimidating a witness as charged in the

2    indictment.

3              Do you have anything to say as to why

4    sentence of law should not be pronounced upon you

5    at this time?

6         THE DEFENDANT:  Yes, sir, I do.

7         MS. STINSON:  We would like to request a

8    sentencing hearing, please.

9         THE DEFENDANT:  I would love to tell the

10   Defendant I am sorry for doing it.  But, Judge,

11   the jury were not told the truth.  The State

12   withheld evidence from the jury onto this trial.

13   I had over ten people subpoenaed to this trial

14   right here.  My arrest out of the jurisdiction and

15   my home being searched and phone tape we got it

16   was used for evidence.  And there were the State's

17   witness come involved.  And the search warrant,

18   Judge, did not even dated and signed.  Now, I

19   never got a search warrant until a year later.

20   And I have wrote probably over twenty --

21   twenty-five requests asking for a copy of the

22   search warrant.  Couldn't never get one.  Finally

23   I did get one three weeks ago.  The date was

24   wrong.  I told my attorney --

25        THE COURT:  Do you have anything else to say

```
 1        as to -- I'm giving you -- I'm not giving you a
 2        chance to stand up here and to rant and rave
 3        against the system that is causing you to be
 4        accountable for what you've done.  You can take
 5        him on.  You're in the custody of the sheriff.
 6             THE DEFENDANT:  Judge, why don't you go ahead
 7        and sentence me today.
 8             THE COURT:  His sentencing hearing is set for
 9        December 9th.
10             MS. STINSON:  Thank you, Your Honor.
11                  (The proceedings for November 4, 2004,
12                   were concluded.)
13                  (Off the Record.)
14
15
16
17
18
19
20
21
22
23
24
25
```

1              IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                        STATE OF ALABAMA

3    STATE OF ALABAMA,              *
                                    *
4    v.                            *      Case No. CC-2003-599
                                    *
5    RALPH WILSON LINGO,            *
                                    *
6         Defendant.                *

7

8

9         REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL

10

11

12   Before:

13          The Honorable Jerry M. White

14                December 9, 2004

15

16

17   APPEARANCES:

18          For the State

19               Henry C. Binford, Esquire
                 Assistant District Attorney
20

21          For the Defendant

22               Tammy Stinson, Esquire
                 Dothan, Alabama
23

24
     Carla H. Woodall, CSR
25   Court Reporter

```
 1                    (The proceedings for December 9, 2004,
 2               began.)
 3          THE COURT:  The State of Alabama versus Ralph
 4     Wilson Lingo.  I need to know what class this is.
 5          MR. BINFORD:  It's a Class C with habitual
 6     offender of three prior convictions.
 7          THE COURT:  Did you give notice?
 8          MR. BINFORD:  We filed notice.  And I would
 9     like to enter proof of the prior convictions.
10          THE COURT:  That makes it two to twenty?
11          MR. BINFORD:  We would like to offer this.
12     That's a certificatied copy of the priors.
13          THE COURT:  I didn't realize I had
14     encountered Mr. Lingo before, some twenty years
15     ago.
16               Mr. Binford, I will hear you as to why
17     -- or what you think would be a proper sentence in
18     this case.
19          MR. BINFORD:  Judge, first of all, I just
20     want to correct one thing in the report.  It says
21     he was convicted of sodomy -- or plead down to
22     sodomy two and sentenced to life in 1995.
23     Actually, what happened was I think he went to a
24     jury trial --
25          THE DEFENDANT:  Judge --
```

1          MR. BINFORD:  -- and he was convicted of a

2     crime, and he appealed that, and it was reversed

3     and rendered by the Court of Appeals.  So that is

4     not a prior conviction --

5          THE COURT:  Because they convicted him of a

6     lesser included offense that was not part of the

7     original.

8          MR. BINFORD:  Yes, sir.  And we would having

9     said that ask the Court to give proper

10     consideration to the fact that he has compiled in

11     his life a very impressive history of criminal

12     arrests going back to 1981.  He has managed to

13     scape through life somehow without spending much

14     time in the penitentiary in spite of his numerous

15     arrests.  A lot of these were bargoned down.  They

16     were reduced to misdemeanors; for example, assault

17     third.  He was convicted in this court of arson

18     third back in 1988 -- or convicted in Dale County,

19     rather, in 1988 of arson in the third degree.

20     He's managed basically to avoid taking

21     responsibility for a lot of things all of his

22     life.  And he's now in prison serving a sentence

23     for arson in Barbour County.  I also believe he

24     has some cases which do not appear on this record

25     that arise from Covington County.  He has an arson

1    case which is pending here in Houston County and a
2    theft case which is pending here in Houston County
3    which was remanded back to the grand jury to
4    correct a defect in the indictment.  All of these
5    arsons, Judge, involve burning trailers and filing
6    false insurance claims.  There just is very little
7    in the way of good things that you can say about
8    Mr. Ralph Lingo.  He's known to law enforcement in
9    this part of the state.  He has been known to law
10   enforcement and has a very poor reputation with
11   law enforcement in this part of the state, and we
12   would ask the Court to consider giving him a
13   sentence which is commensurate not only with his
14   record that he presents to the Court today but
15   with the facts of the case that you have heard at
16   this trial.  He was trying to interfere with a
17   judicial proceeding.  He didn't want the judge at
18   the city court or a jury or a judge in circuit
19   court ultimately to decide what should happen with
20   his case.  He wanted to take control of that.  He
21   wanted to be the one who controlled that and not
22   let a jury or a judge or the city judge decide his
23   fate.  And tampering with witnesses, Judge, I know
24   it's just a Class C, but if you want to rank the
25   Class C felonies, I would say that you can start

1       with the felonies that tend to discredit and

2       disable the court system that we have. He has no

3       respect for the court system. No respect for this

4       verdict in this case. And he never will. And we

5       just ask you to consider that, Judge.

6               THE COURT: Ms. Stinson?

7               MR. STINSON: Your Honor, as Mr. Binford

8       stated, he does seem like he has a long history.

9       However, I would like to point out to the Court

10      that eight of those charges that are listed were

11      either dismissed or he was acquitted on, and five

12      of those of the actual charges were misdemeanors,

13      and then he has the one prior felony in '83 that

14      Mr. Binford has stated. Also notice that Mr.

15      Binford stated that a lot of the charges were

16      reduced. Well, you know, most of these charges

17      are in Houston County and Henry County. They have

18      a reputation of being a very tough court system as

19      far as pursuing prosecutions -- or cases. The

20      fact that it was reduced leaves me to believe that

21      maybe there wasn't that much of a case there in

22      the first place. He also does have two pending

23      charges, but at this point in time he's not been

24      convicted of them. I would ask that, you know,

25      the sentence be as low as possible and also that

```
 1        it is run concurrent with the Barbour County case
 2        that he's serving time on now.
 3            THE COURT:  Ralph Lingo, approach the bench,
 4        please.
 5            THE DEFENDANT:  (Complied.)
 6            THE COURT:  Ralph Lingo, the jury having
 7        found you guilty of intimidating a witness and
 8        your having been adjudicated guilty of that
 9        offense back on November 4, 2004, do you have
10        anything to say as to why sentence of law should
11        not be pronounced upon you at this time?
12            THE DEFENDANT:  Yes, sir, I do.  I would like
13        to, you know, say what I got to say.  I would love
14        for it to be on Record.
15            THE COURT:  The lady is sitting there.
16            THE DEFENDANT:  I introduced some law into
17        the Court and gave it to you, Judge, about my
18        jurisdiction rights and about the search warrant,
19        the way all this case begin and also the
20        indictment is wrong.  And, you know, and the
21        witnesses.  I was denied my witnesses.  And, you
22        know, and I did not have allowed to testify.  And,
23        you know -- I had no control over the jury.  Three
24        people on the jury my wife knowed.  Me and my wife
25        are common-law married.  We got a bank account
```

```
 1        together.  You know, and none of this was never
 2        brought out, you know.  I never got a chance to --
 3        to really, you know, let the Court know
 4        everything, you know.  My home was searched.  You
 5        know, I never got a search warrant until three
 6        weeks ago.  And, you know, and Debra Blackstone
 7        was never summoned -- I mean, never gave a summon
 8        to be a -- a state witness until after all of this
 9        was done did, and -- you know.  And I felt like
10        the charges, you know, was a Class A felony.
11        And --
12              THE COURT REPORTER:  Was what?
13              THE DEFENDANT:  A Class A felony.
14              THE COURT REPORTER:  Okay.
15              THE DEFENDANT:  And, Judge, you know, the
16        District Attorney a minute ago stated on an
17        intimidation of state witness, yeah, we'll let the
18        man have one, a ten thousand dollar bond.  Judge,
19        my bond was two hundred thousand dollars because
20        my wife used to date the judge.
21              THE COURT:  Which judge?
22              THE DEFENDANT:  Judge Larry Anderson, you
23        know.  And all of this was brought into the
24        Record.  But, you know, I never -- it was denored
25        (phonetic), you know.
```

1          THE COURT REPORTER:  It was what?

2          THE DEFENDANT:  It was never brought out.  I

3     mean, none of my attorney would never bring all

4     this out.  The habeas and corpus bond hearing, you

5     know, I asked for a transcript where I can appeal

6     the decision on a bond where I can try to make

7     bond and get out where I can hire an attorney,

8     and, you know, and have me a fair chance, you

9     know, to prove ain't none of this true.  And I was

10    denied all my rights.  I feel like, you know.  I

11    mean, you know, and, you know, Judge -- and I

12    respect the Court.  And I respect you.  I respect

13    everybody.  But I just feel like, you know, all my

14    constitution was violated.  I mean, you know, my

15    home broken into and no search warrant for

16    eighteen months.  No search warrant.  And, you

17    know.  And then we all a sudden got a city search

18    warrant, and then we got a search warrant that was

19    signed by you, Judge, three weeks ago.  And all

20    this here tape and everything where the police

21    department been listening to, making charges

22    against me, these tapes here go back fifteen

23    sometimes eighteen years back, you know.  And they

24    getting trying to piece stuff together, trying to

25    make charges against me, you know.  I had no

| | |
|---|---|
| 1 | problem.  My name was forged to a false bill of |
| 2 | sale cause a trailer to be burt.  I've been denied |
| 3 | taking warrant out on the people.  I have been |
| 4 | denied fair -- you know, all my rights been |
| 5 | violated, you know.  And I got all these |
| 6 | documents, you know, by the Court, had send my |
| 7 | document back to me, and I thank the Court for |
| 8 | that, you know.  And now, you know, it look like, |
| 9 | I don't know we have to go through appeal process |
| 10 | now.  I don't really know, Judge.  But it look |
| 11 | like, you know, I, you know, ought to have a fair |
| 12 | chance, you know, say, hey, give this man a bond |
| 13 | where he can hire an attorney, hire an |
| 14 | investigator, you know, go out here and prove he |
| 15 | innocent or not or him guilty.  That's what trial |
| 16 | is all about, you know.  Give that man a fair |
| 17 | chance.  And then you find that man guilty, and |
| 18 | then, you know, that a different story.  Then hand |
| 19 | the law down.  But don't lock a man up where he |
| 20 | can't work and get attorney.  I mean, the court |
| 21 | session don't pay these attorneys here enough |
| 22 | money to fight your case.  Ain't know court's |
| 23 | attorney that fight for you like is supposed to be |
| 24 | fought.  Because ain't no money there for them. |
| 25 | And, you know, I can go out there and go to work |

1    and not hardly get paid, you know.  And me and my

2    attorney, you know, I ain't going no where with my

3    attorney, you know.  And but, you know, I just

4    feel like, you know, all my rights been violated.

5    And I had filed for a hearing been set up on the

6    reason why I been asking for a re-trial.  And, you

7    know, the Court won't respond.  I been asking for

8    a hearing --

9            THE COURT:  Ralph --

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  -- I'm going to give you about

12    five more minutes to talk, and then I'm going to

13    stop you.  So everything you want to say you need

14    to say in the next five minutes.

15           THE DEFENDANT:  The court paper -- I mean,

16    the jurisdiction paper I gave was never introduced

17    into the law.  I mean, I gave them to the judge,

18    but I don't know -- did the court session ever get

19    them -- the Title 15-10-10 and Title 6-5-33-8 and

20    Title 11 -- I forgot the other two codes on

21    jurisdiction rights, you know.  And also, Judge, I

22    was arrested in Barbour County for this, not --

23    Henry County.  I wasn't taken to the Henry County

24    Jail and booked and transported back.  I asked the

25    officers.  The officer said, no, I can do what I

1    want to, I can do anything I want to in Henry

2    County.  And took me to the City of Dothan, held

3    me there I think for three days, and then

4    transported me to the County.  You know, I just

5    felt like all my rights was violated.  So, you

6    know -- and I still hadn't had my trial on my

7    search warrant, well, you know, that be okay now.

8    I done filed that into the Federal Court.

9         THE COURT REPORTER:  To the what?

10        THE DEFENDANT:  I filed into the Federal

11    Court Middle District for a hearing on the search

12    warrant because I just feel like all my rights

13    been violated.  And that's all I got to say,

14    Judge.

15        MR. STINSON:  Can I point out one thing, Your

16    Honor?

17        THE COURT:  Sure.

18        MS. STINSON:  I noticed he had stated this

19    was a Class A felony.  That's not correct, and

20    I've already told him that.

21        THE COURT:  No.  No.  It's a Class C.

22        MS. STINSON:  Correct.

23        THE COURT:  And he has one prior conviction

24    that the State has filed a certificatied copy of

25    his conviction on, which bumps it up to a Class

```
 1      B.
 2              THE DEFENDANT:  Judge, I would like one more
 3      thing.
 4              THE COURT:  Okay.  You got --
 5              THE DEFENDANT:  I'm sorry.
 6              THE COURT:  I'm keeping time, and then I'm
 7      going to stop you.
 8              THE DEFENDANT:  Okay.  I got mad with my
 9      attorney during court.  But the thing -- I wasn't
10      understanding, you know.  The jail over there
11      won't give my medication to me.  I been trying to
12      see a doctor.  I ain't been seen one.  I'm about
13      like the other gentleman over there.  You know, we
14      in jail, and we catching all type of trouble.  We
15      got to getting all types of disease and stuff over
16      there, you know.
17              UNKNOWN PERSON:  For real.
18              THE DEFENDANT:  But anyway, you know, I want
19      to tell my attorney in the Court present in the
20      public present I am sorry for my behavior.
21              MS. STINSON:  Thank you.
22              THE DEFENDANT:  And I want to -- I want that
23      public known, you know.  I would -- I wouldn't say
24      it and a lot of things I wasn't understanding, you
25      know.  You know, I've been sick here lately, you
```

1    know.  I've been having mental problems, and, you

2    know, and I never got no help for it.  And as of

3    today I ain't got no help.  And, you know, I keep

4    being denied medical attention.  And so, Judge,

5    that -- well, go ahead.

6        MR. STINSON:  Your Honor, his family did

7    mention something to me about his behavior and

8    stuff and they were concerned about that.  Now, I

9    have not heard anything from Mr. Lingo as far as

10   what's going on.  But they have mentioned that to

11   me.

12       THE COURT:  I hereby sentence you to

13   imprisonment in the penitentiary of the State of

14   Alabama for a period of twenty years.  And as

15   further and additional punishment I hereby fine

16   you ten thousand dollars and all costs of court,

17   which will include a one thousand dollar Victim's

18   Compensation assessment.  This sentence is to run

19   consecutive with any sentences presently being

20   served.

21       MS. STINSON:  Your Honor, we would like to go

22   ahead and note that he will be entering an

23   appeal.  I also would like to go ahead and

24   withdraw from the case and have it transferred to

25   another attorney.  My understanding it's -- Mr.

1    Lamere has a conflict so it will need to go to

2    another court.

3         THE DEFENDANT:  And we ask for appeal bond,

4    Judge.  Appeal and appeal bond.  A reasonable

5    appeal bond.

6         THE COURT:  Okay.  I'll take care of that

7    later.

8         MS. STINSON:  Thank you, Your Honor.

9              (The proceedings for December 9, 2004,

10             were concluded.)

11             (Off the Record.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    * * * * * * * * * * * *

 2                    REPORTER'S CERTIFICATE

 3                    * * * * * * * * * * * *

 4     STATE OF ALABAMA

 5     COUNTY OF HOUSTON

 6

 7            I, Carla H. Woodall, Court Reporter and

 8     Notary Public in and for the State of Alabama at Large,

 9     do hereby certify that the above-styled and numbered

10     cause was reported stenographically by me and is a true

11     and correct transcript of the testimony, objections,

12     motions, rulings of the Court, and was transcribed by

13     or under my direction and control.

14            I further certify that I have filed all

15     exhibits offered in the trial of this cause, if any,

16     with the Circuit Clerk of Houston County, Dothan,

17     Alabama, for incorporation into the Record on Appeal.

18            I further certify that I have on this day,

19     filed with the Clerk of the Court of Criminal Appeals,

20     the Attorney General, and the parties here involved, a

21     copy of the Reporter's Index to the Testimony and a

22     Certificate of Completion of Reporter's Transcript of

23     the said cause.

24            I further certify that I have filed the

25     original and three copies of this transcript in the
```

1    office of the Circuit Clerk of the Circuit Court of

2    Houston County, Dothan, Alabama.

3

4         Done this the 28th of January, 2005.

5

6

7                          Carla H. Woodall, CSR
                           Court Reporter and Notary Public
8                          State of Alabama at Large

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| State of Alabama<br>Unified Judicial System | CERTIFICATE OF COMPLETION<br>REPORTER'S TRANSCRIPT | Page Number |
|---|---|---|
| Form ARAP 13 | | 121 |

TO:   The Clerk of the Court of Criminal Appeals          Fax: (334) 242-4689
P. O. Box 301555
Montgomery, Alabama 36130-1555

Criminal Appeals Case Number          CR 04 - 0602

_Ralph Wilson Lingo_          v. _State of Alabama_
Appellant's Name                                      Appellee

On appeal from the:   [✓] Circuit Court of
[ ] District Court of     _Houston_ County
[ ] Juvenile Court of

Trial Court Case Number _CC-2003-599_

Notice of Appeal Date _12-9-2004_

I, _Carla H. Woodall_ , certify that I have this date completed and filed with the clerk of the trial court an original and three copies of a true and correct transcript of all proceedings in the above referenced case that were reported by me and were specifically designated by the appellant for inclusion on the Reporter's Transcript Order.   The transcript, which is numbered serially in the upper right-hand corner of each page, begins with a copy of the Reporter's Transcript Order and an index of both the exhibits and the testimony of the witnesses. The original transcript concludes with the original of this notice and the copies of the transcript conclude with copies of this notice. The page number appearing in the upper right-hand corner of this certificate is the last page of my portion of the transcript in this case.

Done this the _28th_ day of _January_ , _2005_ .

_Carla H. Woodall_
Court Reporter

FILING AND SERVICE OF THIS FORM:     Pursuant to Rule 11(b), A.R.App.P., the court reporter should file a copy of this certificate with the Clerk of the Court of Criminal Appeals and should serve copies of the certificate on counsel for the appellant or the appellant if he or she is not represented by appellate counsel, the attorney general and the district attorney, unless the appeal is from a municipal appeal, in which event a copy of the form should be served on the municipal prosecutor rather than the attorney general and district attorney.

AP 14-3 Certificate of Completion and Transmittal of Record on Appeal by Trial Clerk

Total Pages 351

## CERTIFICATE OF COMPLETION AND TRANSMITTAL
## OF RECORD ON APPEAL BY TRIAL CLERK

Ralph Lingo
Appellant

TO: The Clerk of the Court of
Criminal Appeals of Alabama

V.

Case No. ___CC-2003-599___

State of Alabama
Appellee

Date of Notice of Appeal ___12-9-04___

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling ___229___ pages of the Clerk's record, and ___121___ pages of the Court Reporter's transcript, and that one copy of each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

DATED this ___31st___ day of ___January___ , ___2005___ .

*Judy Boyd*
Circuit Clerk

___Houston___
County

2005 FEB -1 A 9: 35

ATTORNEY GENERAL

RECEIVED

538036

IN THE ALABAMA COURT OF CRIMINAL APPEALS

CRIMINAL APPEALS COURT CASE NUMBER **CR-04-0602**

RALPH WILSON LINGO,
    APPELLANT,

VS.

STATE OF ALABAMA,
    APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA

CIRCUIT CASE NUMBER CC-03-599

Jon-Patrick Amason, Attorney at Law (AMA005)
Ala. State Bar # ASB-1057-T78A
401 North Foster Street.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT

EXHIBIT

B

PENGAD 800-631-6989

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested in this matter.

TABLE OF CONTENTS

TABLE OF AUTHORITIES CITED......................i

STATEMENT OF THE CASE  ........................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW.........2

STATEMENT OF THE FACTS..........................3

STATEMENT OF THE STANDARD OF REVIEW............12

SUMMARY OF THE ARGUMENT........................14

ARGUMENT.......................................16

CONCLUSION.....................................38

CERTIFICATE OF SERVICE.........................40

APPENDIX: TABLE OF ADVERSE DECISIONS.............42

## TABLE OF AUTHORITIES

Ballenger v. State, 720 So.2d. 1033, 1034(Ala.Crim.App.
1998). . . . . . . . . . . . . . . . . . . . . . 25,28

Breckenridge v. State, 628 So.2d 1012, 1018(Ala.Crim.App.
1993). . . . . . . . . . . . . . . . . . . . . . 27

Burns v. State, 229 Ala. 68, 155 So. 561(1934). . . . .12

Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert.
denied, 368 So.2d 877 (Ala. 1979). . . . . . . . .13,29

Daniels v. State, 650 So.2d 544, 552 (Ala.Crim.App.
1994). . . . . . . . . . . . . . . . . . . . . . .35

Daniels v. State, 581 So.2d. 536 (Ala.Crim.App.
1990) writ denied. . . . . . . . . . . . . . . . . 24

Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978). . .20

Ex parte Jefferson, 749 So.2d 406 (Ala. 1999). . . . . 31

Ex parte Myers, 699 So.2d 1285, 1290-91 (Ala. 1997). . 21

Ex parte Stork,475 So.2d 623, 624 (Ala. 1985).
cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d
648 (1998). . . . . . . . . . . . . . . . . . . . 20

Faircloth v. State, 471 So.2d. 485, 488 (Ala.Crim.App.
1984), aff'd, 471 So.2d. 493 (Ala. 1985). . . . . . 25,28

Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). . 12

Gavin v. State, 891 So.2d 907 (Ala.Crim.App. 2003). . .22

Hill v. State, 675 So2d. 484 (Ala.Crim.App. 1995). . . 32

Halford v. State, 629 So.2d 6 (Ala.Crim.App. 1992). . .34

Johnson v. State, 378 So.2d. 1164 (Ala.Crim.App. 1979),

cert. Quashed, 378 So.2d. 1173 (Ala. 1979). . . . . .24

Jones v. State,727 So.2d 866, 867 (Ala.Crim.App.

1998). . . . . . . . . . . . . . . . . . . . . . .31,32

Lami v. State, 43 Ala. App. 108, 180 So.2d 279

(1965). . . . . . . . . . . . . . . . . . . . . . . .12

MacEwan v. State, 701 So.2d 66, 69 (Ala.Crim.App.

1997). . . . . . . . . . . . . . . . . . . . . . .20,22

Metzger v. State, 565 So.2d 291, 292 (Ala.Crim.App.

1990). . . . . . . . . . . . . . . . . . . . . . . . 28

Montgomery v. State, 781 So.2d 1007, 1010 (Ala.Crim.App.

2000). . . . . . . . . . . . . . . . . . . . . . . . 33

Moss v. State, CR-03-1180 (Ala.Crim.App. 2005). . . .  22

Nunn v. State, 697 So.2d. 497, 498 (Ala.Crim.App.

1997). . . . . . . . . . . . . . . . . . . . . . . .26

Newsome v. State, 570 So.2d 703,710 (Ala.Crim.App.
  1989). . . . . . . . . . . . . . . . . . . . . . .28

O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.
1992). . . . . . . . . . . . . . . . . . . . . . . 26

Poole v. State, 645 So.2d. 330, 331 (Ala.Crim.App.
1994). . . . . . . . . . . . . . . . . . . . . . . 24

Similton v. State, 672 So.2d 1363 (Ala.Crim.App.
1995). . . . . . . . . . . . . . . . . . . . . . . 32

Strickland v. Washington, 466 U.S. 668 (1984).
. . . . . . . . . . . . . . . . . . . . . .13,26,27

Seaton v. State, 645 So.2d 341,343 (Ala.Crim.App.
1994). . . . . . . . . . . . . . . . . . . . . . . 24

Thomas v. State, 363 So.2d. 1020 (Ala.Crim.App.
1978). . . . . . . . . . . . . . . . . . . . 13,26,27

Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.
  1990). . . . . . . . . . . . . . . . . . . . . . .27

Ward v. State, 610 So.2d. 1190, 1191 (Ala.Crim.App.
  1992). . . . . . . . . . . . . . . . . . . . . . .24

Willis v. State, 447 So.2d. 199 (Ala.Crim.App.
1983). . . . . . . . . . . . . . . . . . . . . . . 26

Wilson v. State, 644 So.2d 1326, 1328 (Ala.Crim.App.

  1994). . . . . . . . . . . . . . . . . . . . . . .  34

Young v. State, 283 Ala. 676, 220 So.2d 843 (1969). .  27


**CONSTITUTIONS, STATUTES, RULES & TREATISES**


Code of Alabama, 1975, §13A-10-123. . . . . . . 17,19,22

Code of Alabama, 1975, §13A-6-25. . . . . . . . . . . 17

Code of Alabama, 1975, §13A-10-124. . . . . . . . .17,18

Code of Alabama, 1975, § 13A-1-9. . . . . . . . . . 21

Alabama Rules of Criminal Procedure, 20.2(a). . . . . 28

Alabama Rules of Criminal Procedure, 24.1(a). . . . . 33


iv

## STATEMENT OF THE CASE

The Appellant, Ralph Wilson Lingo hereinafter referred to as Mr. Lingo, was indicted on September 5, 2003 for the offense of Intimidating a Witness. (C 7-8).

Mr. Lingo was tried on November 3$^{rd}$ and 4$^{th}$, 2004, and December 9$^{th}$, 2004, before the Hon. Jerry White, Circuit Court Judge, Houston County Alabama (R 2), and convicted of Intimidating a Witness by a jury via the indictment.

Mr. Lingo filed a Motion for New Trial on November 5$^{th}$, 2004, (C 195-201), and the Motion for New Trial was denied on November 18$^{th}$, 2004 (C 203). Mr. Lingo also made a Motion for a Judgment of Acquittal on November 3$^{rd}$, 2004, (R 73), and the Motion for Judgment of Acquittal was denied on November 3$^{rd}$, 2004 (C 193).

Mr. Lingo was sentenced on December 9, 2004, to the penitentiary of the State of Alabama for a period of twenty years. (C 4-5). Mr. Lingo was ordered to pay a fine in the amount of $10,000.00, all of the costs of court, which included a $1,000.00 payment to the Victim's Compensation Assessment. (C 4-5).

The Defendant gave oral Notice of Appeal on December 9$^{th}$, 2004, (C 6). This Appeal follows.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.  WHETHER THE TRIAL COURT ERRED IN DENYING TO GIVE A
    JURY INSTRUCTION ON THE LESSOR INCLUDED OFFENSES OF
    CRIMINAL COERCION AND TAMPERING WITH A WITNESS? **YES**

II. WHETHER THERE WAS INSUFFICIENT EVIDENCE TO WARRANT A
    MOTION FOR JUDGMENT OF ACQIUTTAL OF INTIMIDATING A
    WITNESS? **YES**

III. WHETHER TRIAL COUNSEL'S ASSISTANCE AT TRIAL WAS
    INEFFECTIVE? **YES**

2

## STATEMENT OF THE FACTS

This matter was tried before the Hon. Judge Jerry White, Circuit Judge, presiding, on November 3$^{rd}$ through November 4$^{th}$, 2004, and December 9$^{th}$, 2004. The Hon. Henry C. Binford, Assistant District Attorney for the Circuit represented the State. The Hon. Tammy Stinson, Attorney at Law, Dothan, represented the Defendant, Mr. Lingo.

The State called its first witness, Sgt. Tony Luker, who was the investigating officer with the Dothan Police department. (R 24). Sergeant Luker testified that he was involved on a case where Ralph Lingo was accused of Intimidating a Witness. (R 24). Sergeant Luker testified further that he had interviewed Debra Tice Blackstone and Alicia Roberts during the course of his investigation. (R 25).

Sergeant Luker stated that Ms. Blackstone called the Police after receiving a package and a patrol officer came out and took an initial report and took the documents from her. He further stated that he had obtained the documents from the evidence vault. (R 25).

3

The State's Attorney asked Sergeant Luker the following question:

Q. What was the nature of Ms. Blackstone's complaint when she met with you?

A. Whenever I talked with her, she said that actually, she had taken a warrant out on Mr. Lingo for harassing communications - a city warrant in the city court. After she did that, he was, of course, arrested. And then she received a letter that contained naked pictures of her.

Sergeant Luker then stated that after interviewing Ms. Blackstone and Ms. Roberts he signed a warrant for the arrest of Mr. Lingo for the charge of Intimidating a Witness. (R 27-28). Sergeant Luker further testified that the documents at trial were the same documents he had recieved from the evidence vault. He also stated that Ms. Blackstone was shown these documents and confirmed that they were the same documents that she had received. (R 28).

Next the Defendant, Mr. Lingo, stood up and said that he would like to fire his attorney. Mr. Lingo stated that he had documents that he would like to enter to the court, and that he was not prepared for this trial because the jail would not let him take a bath, shave, have his legal

4

time with his attorney and that the State did not have any
of his witnesses present. Mr. Lingo continued by stating
that his home was searched in Henry County and that he was
arrested in Henry County by a City of Dothan police officer
without a Henry County Deputy present. (R 31).

Mr. Lingo stated further that he did not feel like he
was being done right and that he wanted to enter some
documents into the Court, whereby the Judge denied his
motion. (R 32-33).

The state's next witness called was Ms. Debra
Blackstone. She testified that Mr. Lingo was her ex-husband
and that they had been married in 1989 and divorced in
1997. (R 33-34). Ms. Blackstone stated that she had signed
a warrant against Mr. Lingo on April 24$^{th}$, 2003 for
harassing communications in the City of Dothan Municipal
Court. She also testified that about a week later she
received a letter at her home from some unidentified
deliveryman. (R 34).

The State's Attorney showed Ms. Blackstone the
documents and asked her if they were nude photographs of
her, which she answered yes. She then testified further
that Mr. Lingo had taken these pictures of her and that no

5

one else had access to them as far as she knew. (R 35). Ms. Blackstone was then shown the entire document and asked if this was the exact document that she had received at her home, at which time she responded that it was the same document. (R 36).

Ms. Blackstone also stated that when she received the documents she was overwhelmed because she did not know what Mr. Lingo would do. She also stated that it made her afraid to go to Court but she later went to Court anyway whereby Mr. Lingo was convicted of harassing communications. (R 37). She then stated that when she received the documents she called the police right away and that a patrol officer came out and took a report at her house. At that time she gave the documents to the patrol officer. (R 39). Ms. Blackstone then testified that the documents were in the same condition as they were when she received them at her house. (R 40).

The State then called Alicia Roberts as their next witness. Ms. Roberts testified that she had worked for Mr. Lingo to help fill out paper work and clean his house as well as other odd jobs. The State's attorney then showed Ms. Roberts the documents that were admitted into evidence

and asked her if she recognized them. Ms. Roberts said that she did recognize them because she had written the document. (R 47).

The State's Attorney asked Ms. Roberts the following questions:

Q. And where did you write that?

A. At his home.

Q. Are these your words?

A. Those are his words.

Q. How do you know that these are his words?

A. He told me - - he told me what to write because he couldn't read or write.

Q. Did you write down what he asked you to write?

A. Yes, sir.

Ms. Roberts further testified that she wrote the letter while she was an employee of Mr. Lingo and that she did not add anything to the letter of her own. She also stated that she did not have an axe to grind with Ms. Blackstone and she just did it for Mr. Lingo because she thought it was just a marital thing. (R 48-49).

The state then called Ed Sasser as their next witness. Mr. Sasser testified that he was an investigator with the

Alabama Department of Corrections. (R 54). Mr. Sasser
stated that he investigated a complaint concerning an
inmate by the name of Ralph Lingo at Bullock County
Correctional Facility. (R 54). Mr. Sasser told the State's
Attorney that he was investigating a complaint concerning
Mr. Lingo and that he was not working on behalf of the
Dothan Police Department. He also stated that he had not
been contacted by any D.A.'s office to go and investigate
the complaint. (R 55).

Mr. Sasser then told the Court that he had went to
Bullock County Correctional Facility to speak with Mr.
Lingo regarding the complaint. He testified that he read
Mr. Lingo his rights and that Mr. Lingo freely and
voluntarily waived his rights by signing a Miranda waiver.
Mr. Sasser then proceeded to explain the nature of Mr.
Lingo's statement that he had taken. (R 56-57). Mrs.
Stinson timely objected to the statement and requested that
the statement be suppressed due to the fact that it was not
relevant to the case and that Mr. Lingo could not read or
write so he did not know what he was signing. At this time
the Court heard arguments from both sides outside the

8

presence of the jury and overruled the Defense's objection. (R 58-67).

Mr. Sasser continued to explain the statement that he had taken from Mr. Lingo and said that they talked about the complaint. He also stated that he asked Mr. Lingo about the charge of Intimidating a Witness and asked him if he had ever sent naked pictures to Ms. Blackstone at her house. Mr. Sasser said that Mr. Lingo told him that the deliveryman did not know what was inside the envelope but Ms. Blackstone did. (R 68-69). Mr. Sasser then said that he asked Mr. Lingo why he did that, and at that time Mr. Sasser told him that he had been informed of his rights and that they could stop at any time. Mr. Lingo then stated that he would like to stop now. (R 69). The State then rested.

Mrs. Stinson subsequently made a Motion for Judgment of Acquittal. Mrs. Stinson argued that Mr. Lingo has been charged with Intimidating a Witness, and that the State has not met the burden of proof as to the elements of Intimidating a Witness. (R 73). Mrs. Stinson argued that Mr. Lingo might have taken things further than he should have, but he was only trying to resolve the problems he had

9

with his ex-wife. Mrs. Stinson stated that the elements of
Intimidating a Witness under 13A-10-123 are that the State
must show one of the following: 1) That Mr. Lingo had to
corruptly influence the testimony of a witness or a person
he believes will be called as a witness; 2) That Mr. Lingo
tried to induce that person to avoid legal process,
summoning them to testify; or 3) That he induced that
person to absent themself from an official proceeding. (R
73). Mrs. Stinson further argued that the State has simply
not proven any of the three and the defendant should be
acquitted.

The Trial Court then looked at the evidence in front of
the court and agreed that there was nothing in the letter
to show that Mr. Lingo's conduct fell into the parameters
of Intimidating a Witness. (R 74-75). The Court then heard
arguments from the State in rebuttal to Mrs. Stinson's
argument at which time the trial court denied the motion
for judgment of acquittal. (R 82).

The court then allowed closing arguments by both
Defense counsel and the State. The Court then charged the
jury as to the offense of Intimidating a Witness and the
elements thereof. After the Court charged the jury Mrs.

Stinson timely objected to the court's refusal to give a jury charge on the offenses of Criminal Coercion and Tampering with a Witness, which should have been given as lesser-included offenses of Intimidating a Witness. (R 95). The Defendant then proceeded to address the court as to many issues that he felt needed to be discussed regarding his case, and after he had finished the Court overruled his objections. (R 96-99)

The Houston County Jury found the Defendant guilty of Intimidating a Witness. (R 102). The Court then set a sentencing hearing for December 9, 2004 upon the request of Mrs. Stinson. On December 9, 2004 Mr. Lingo requested to address the Court again to state objections to his trial, which after a lengthy recital the Court then sentenced the Defendant to twenty years in the penitentiary of the State of Alabama, a fine of $10,000 dollars and all cost of court, which will include a $1,000 Victim's Compensation assessment. (R 117).

Upon sentencing by the Court the Defendant then gave oral notice of Appeal. (R 117).

11

## STATEMENT OF THE STANDARD OF REVIEW
## APPLICABLE TO EACH ISSUE PRESENTED FOR REVIEW

"An individual accused of the greater offense has a
right to have the court charge on the lesser offenses
included in the indictment, when there is a reasonable
theory from the evidence supporting his position. Fulghum
v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may
properly refuse to charge on lesser included offenses only
(1) when it is clear to the judicial mind that there is no
evidence tending to bring the offense within the definition
of the lesser offense, or (2) when the requested charge
would have a tendency to mislead or confuse the jury. Lami
v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). In fact,
our decisions are to the effect that every accused is
entitled to have charges given which would not be
misleading, which correctly state the law of his case, and
which are supported by any evidence, however weak,
insufficient, or doubtful in credibility. Burns v. State,
229 Ala. 68, 155 So. 561(1934)."

The trial court's denial of a motion for a judgment of
acquittal must be reviewed by, "determining whether there
existed legal evidence before the jury, at the time the

12

motion was made, from which the jury by fair inference could have found the appellant guilty." Thomas v.State, 363 So.2d 1020 (Ala.Crim.App. 1978). "In determining the sufficiency of the evidence to support the verdict of the jury and the judgment of the trial court, we view the evidence in the light most favorable to the prosecution." Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).

"When reviewing a claim of ineffective assistance of counsel we apply the two-pronged standard of review first announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of his counsel's performance."

13

## **SUMMARY OF THE ARGUMENT**

Mr. Lingo argues that the trial court erred in refusing to give a jury instruction as to the lesser-included offenses of Criminal Coercion and Tampering with a Witness. Specifically, Mr. Lingo argues that the state failed to prove a prima facie case against him on the charge of Intimidating a Witness. Mr. Lingo argues that the State failed to prove that he attempted to corruptly influence the witness, attempted to induce the witness to avoid legal process, or that he attempted to induce a witness to absent him or her self from an official proceeding that they had been summoned to.

Mr. Lingo further argues that the trial court erred in denying his motion for judgment of acquittal. In particular, he argues that the evidence submitted at trial was merely circumstantial and that the evidence was insufficient to warrant a conviction on the charge of Intimidating a Witness. Mr. Lingo contends that the evidence presented at trial did not prove a prima facie case for the State and that the Judge should have granted his motion for judgment of acquittal.

14

Mr. Lingo also argues that he was denied the effective assistance of counsel at trial. Mr. Lingo specifically asserts that he requested for his attorney to call certain witnesses on his behalf at trial and his attorney refused to do so. Mr. Lingo also states that he asked his attorney to question the officer on the issues of the validity of his arrest and the search of his home, which trial counsel did not do. Mr. Lingo argues that had he been adequately represented at trial then he probably would have had a different outcome to his case.

**ARGUMENT**

**ISSUE ONE**

**WHETHER THE TRIAL COURT ERRED IN DENYING TO GIVE A JURY INSTRUCTION ON THE LESSOR INCLUDED OFFENSES OF CRIMINAL COERCION AND TAMPERING WITH A WITNESS?** <u>YES</u>

The Appellant, Ralph Lingo, contends that the trial court erred in refusing to instruct the jury on the elements of the crime of Criminal Coercion and Tampering with a Witness, arguing that they are lesser-included offenses of Intimidating a Witness. The trial court denied the Defense a jury instruction on Criminal Coercion and Tampering with a Witness. (R 95-99).

The Appellant, through his attorney, moved for a judgment of acquittal at the end of the State's case in chief and the trial court noted that the defense counsel had argued for lesser-included offenses. (R 80). Defense counsel also timely objected to the court's refusal to give a jury charge on the lesser-included offenses of Criminal Coercion and Tampering with a Witness, which the trial court overruled. (R 99). The Appellant argues that since there was no evidence presented at trial to prove

16

that he tried to corruptly influence the testimony of a witness or person he believes will be called as a witness; or that he tried to induce that person to avoid legal process; or that he tried to induce that person to absent themselves from an official proceeding pursuant to 13A-10-123 Code of Alabama 1975, which is Intimidating a Witness, then he should have been entitled to a jury charge on the lesser-included offenses of Criminal Coercion and Tampering with a Witness.

Pursuant to Section 13A-6-25 Code of Alabama 1975 and Section 13A-10-124 Code of Alabama 1975 the Trial Court should have charged with the jury charge of Criminal Coercion and Tampering With a Witness. The Code of Alabama 1975, Section 13A-6-25 states as follows:

(a) A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act.

(b) Criminal Coercion is a Class A misdemeanor;

17

And Section 13A-10-124 Code of Alabama 1975, on Tampering
with a Witness states as follows:

   a) A person commits the crime of tampering with a
witness if he attempts to induce a witness or a person he
believes will be called as a witness in any official
proceeding to:

   (1) Testify falsely or unlawfully withhold testimony;
or

   (2) Absent himself from any official proceeding to
which he has been legally summoned.

   (b) Tampering with a Witness is a Class B misdemeanor.

      In the instant case the Appellant's trial counsel

argued in her motion for judgment of acquittal that there

was no evidence presented at trial to prove that the

Appellant was guilty of Intimidating a Witness. Trial

counsel simply stated that even though the letter that the

Appellant sent to his ex-wife was a bit harsh, in no way

did it rise to the level of Intimidating a Witness. (R 74)

The Appellant was simply trying to resolve the issue with

his ex-wife, and in no way did he try to corruptly

influence her testimony, or induce her to absent herself

from a proceeding, or to avoid legal process. (R 74).

      Furthermore, the Trial Court stated that it did not

see how the conduct of the Defendant satisfied any of the

18

elements of 13A-10-123 Code of Alabama 1975. The trial

Court stated:

> The statute on Intimidating a witness, in order to
> constitute the offense of Intimidating a witness, it
> says that a person commits the crime of Intimidating a
> witness if he attempts by use of a threat directed to
> a witness or a person he believes will be called as a
> witness in any official proceedings to corruptly
> influence the testimony of that person. I don't see in
> here where – in this letter where there's any attempt
> to corrupt her testimony -- or to avoid legal process
> summoning her to testify – and I don't see any demand
> that that be done – or induce that person to absent
> herself from an official proceeding to which she has
> been legally summoned. There's nothing in here – the
> threats that are made are concerning that legal
> proceeding is, I want you to drop that case… I will
> never contact you again. You drop your phony warrant
> or you will be sued at the right time and arrested
> with warrants against you… I guess my whole problem is
> that I don't see where this fits into any of these
> one, two, or three.

(R 74-75).

The Trial Court refused to give the jury instructions

on Criminal Coercion and Tampering with a Witness because

the State argued that the letter taken as a whole could be

construed as threat and that the jury should decide if the

Appellant intended to intimidate a witness according to the

statute. The Trial Court stated that it just seemed like it

would be reversible error if they instructed the jury on

the offenses of Criminal Coercion and Tampering with a

19

Witness. However, there was no evidence admitted or
testimony given that the appellant's conduct rose to the
level set out in the statute for Intimidating a Witness.

The Appellant contends that although there was
testimony that the Appellant threatened Ms. Blackstone, the
ultimate decision of his conduct should have been given to
the jury under the jury charge of Criminal Coercion and
Tampering with a Witness.

"A person accused of the greater offense has a right
to have the court charge on lesser included offenses when
there is a reasonable theory from the evidence supporting
those lesser included offenses.' MacEwan v. State, 701 So.2d
66, 69 (Ala.Crim.App. 1997). An accused has the right to
have the jury charged on "any material hypothesis which the
evidence in his favor tends to establish.'" Ex parte
Stork,475 So.2d 623, 624 (Ala. 1985). 'Every accused is
entitled to have charges given, which would not be
misleading, which correctly state the law of his case, and
which are supported by any evidence however weak,
insufficient, or doubtful in credibility,' Ex parte
Chavers, 361 So.2d 1106, 1107 (Ala. 1978), 'even if the
evidence supporting the charge is offered by the State.' Ex

20

parte Myers, 699 So.2d 1285, 1290-91 (Ala. 1997), cert.
denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648
(1998). However, the court shall not charge the jury with
respect to an included offense unless there is a rational
basis for a verdict convicting the defendant of the
included offense.'"

Therefore a determination of whether under the facts
of the instant case, there is a reasonable theory from the
evidence to support the theory that Criminal Coercion and
Tampering with a Witness were lesser-included offenses of
Intimidating a Witness needs to be made.

Section 13A-1-9, Ala. Code 1975, provides, in
pertinent part:

    (a)    A defendant may be convicted of an offense
            included in an offense charged. An offense is an
            included one if:

    (1)    It is established by proof of the same or fewer
            than all the facts required to establish the
            commission of the offense charged; or

            . . . ;

    (4)    It differs from the offense charged only in the
            respect that a less serious injury or risk of
            injury to the same person, property or public
            interests, or a lesser kind of culpability
            suffices to establish its commission."

Moss v. State, CR-03-1180 (Ala.Crim.App. 2005).

It seems to be well settled that "a defendant is entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that would support the lesser included offenses." Gavin v. State, 891 So.2d 907 (Ala.Crim.App. 2003); MacEwan v. State, 701 So.2d 66, 69 (Ala.Crim.App. 1997).

The Appellant argues that had the trial court instructed the jury on Criminal Coercion and Tampering with a Witness as a lesser-included offense, then the jury may have found the defendant guilty of one of these lesser offenses rather than Intimidating a Witness under Section 13A-10-123.

It is clear that the evidence presented in this case at trial would have supported instructions on Criminal Coercion and Tampering with a Witness as lesser-included offenses of the offense of Intimidating a Witness, and the trial court committed reversible error by refusing to give such instructions.

## ISSUE TWO

**WHETHER THERE WAS INSUFFICIENT EVIDENCE TO WARRANT A MOTION FOR JUDGMENT OF ACQIUTTAL OF INTIMIDATING A WITNESS? YES**

The second issue presented for review by the Appellant pertains to the sufficiency of the evidence and whether the evidence warrants the Appellant's conviction for Intimidating a Witness. The Appellant asserts that the evidence was insufficient to sustain the conviction. Once the State rested, defense counsel moved for a judgment of acquittal based on the fact that the State had failed to prove a prima facie case on the charge in the indictment. The court denied the motion for judgment of acquittal after supporting arguments were made, and then the defense rested.

The Appellant argues that the State failed to prove the charge in the indictment, specifically, the part of the indictment that states that the Appellant attempted by use of a threat to a witness or person he believed would be called as a witness, to corruptly influence their testimony, to induce them to avoid legal process summoning them to testify, or to induce them to absent themselves from an official proceeding that they had been

23

summoned to. The State failed to prove beyond a
reasonable doubt that the Appellant intended to
intimidate a witness.

   If the Appellant raises an argument that is based on a
sufficiency of evidence issue, then the Court in
reviewing that issue must view the evidence presented at
trial in a light most favorable to the state. Seaton v.
State, 645 So.2d 341,343 (Ala.Crim.App. 1994); Daniels v.
State, 581 So.2d. 536 (Ala.Crim.App. 1990) writ denied;
Poole v. State, 645 So.2d. 330, 331 (Ala.Crim.App. 1994).
Furthermore, " a verdict of conviction will not be set
aside on the ground of insufficiency of the evidence
unless, allowing all reasonable presumptions for its
correctness, the preponderance of the evidence against
the verdict is so decided as to clearly convince this
court that it was wrong and unjust." Ward v. State, 610
So.2d. 1190, 1191 (Ala.Crim.App. 1992); Johnson v. State,
378 So.2d. 1164 (Ala.Crim.App. 1979), cert. Quashed, 378
So.2d. 1173 (Ala. 1979).

      The Appellant contends that there was insufficient
evidence to support his conviction. The Appellant was
convicted of Intimidating a Witness. The appellant argues

24

that the State did not prove any of the three elements of
Intimidating a Witness. The trial Court even states that
they do not see any evidence in the letter that shows
that the appellant tried to corruptly influence the
testimony of a witness, induce the witness to avoid legal
process, or induce the witness to absent themself from an
official proceeding. (R 74-75) The evidence in this case
was mostly circumstantial and there was no evidence
offered to show that the appellant intended to intimidate
a state witness. This Court has previously addressed the
viewpoint an appellate must follow in reviewing a
conviction based on sufficiency of the evidence.

   "'In determining the sufficiency of the evidence to
sustain the conviction, this Court must accept as true
the evidence introduced by the State, accord all
legitimate inferences therefrom, and consider the
evidence in the light most favorable to the
prosecution.'" Ballenger v. State, 720 So.2d. 1033, 1034
(Ala.Crim.App. 1998); (quoting Faircloth v. State, 471
So.2d. 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d.
493 (Ala. 1985)). " The test used in determining the
sufficiency of evidence to sustain a conviction is

whether, viewing the evidence in the light most favorable
to the prosecution, a rational finder of fact could have
found the defendant guilty beyond a reasonable doubt."
Nunn v. State, 697 So.2d. 497, 498 (Ala.Crim.App. 1997)
(quoting O'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992)). It is clear in the present case
that based on the facts a rational fact finder could not
find the appellant guilty of Intimidating a Witness
because the State failed to prove any of the elements of
the offense that the appellant was charged with.

The trial court's denial of a motion for judgment of
acquittal must be reviewed by determining if there was
legal evidence in existence before the jury at the time
the motion was made, in which a jury, by fair inference,
could have found the appellant guilty. Thomas v. State,
363 So.2d. 1020 (Ala.Crim.App. 1978). The appellate
court, in reviewing the denial of a judgment of
acquittal, will only determine if the legal evidence
presented was such that a jury could have found the
defendant guilty beyond a reasonable doubt. Willis v.
State, 447 So.2d. 199 (Ala.Crim.App. 1983).

It is customary that when a defendant moves for a judgment of acquittal, that the trial court must examine the evidence in order to determine its sufficiency in light of the charges contained in the indictment. Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990).

The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v.  State, 363 So.2d 1020 (Ala.Crim.App. 1978).

It has also been stated that a motion for judgment of acquittal tests the sufficiency of the evidence to support a conviction, "when the evidence raises a question of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal by the trial court does not constitute error. Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App. 1993); Young v. State, 283 Ala. 676, 220 So.2d 843 (1969). This is not the case here because the evidence was insufficient to prove that the appellant was guilty of the offense he was charged with. However, such a

determination and ruling by a trial court would not prevent the appellate court from reviewing the issue. Newsome v. State, 570 So.2d 703,710 (Ala.Crim.App. 1989). The review by an appellate court requires that " in determining the sufficiency of the evidence to sustain a conviction, the reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." Ballenger v. State, 720 So.2d. 1033, 1034 (Ala.Crim.App. 1998); (quoting Faircloth v. State, 471 So.2d. 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d. 493 (Ala. 1985)). Furthermore, if an appellate court does discover that there is the existence of conflicting evidence, then it will prevent any appellate review of the evidence or its sufficiency. Metzger v. State, 565 So.2d 291, 292 (Ala.Crim.App. 1990).

The Appellant understands that it is necessary to protect the record for review, and that to protect this record for review the defendant must file a motion for new trial or a motion for judgment of acquittal. Rule 20.2(a), Ala.R.Crim.P. In the case at bar, the Appellant filed a motion for judgment of acquittal. (R 73).

Therefore, the question to be answered is whether a jury might find that the evidence excluded every reasonable hypothesis except that of guilt? Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert denied, 368 So.2d 877 (Ala. 1979). The Appellant contends that a jury could not reasonably do so here, and that the Appellant's case should be reversed and remanded with the appropriate instructions.

## ISSUE THREE

### WHETHER TRIAL COUNSEL'S ASSISTANCE AT TRIAL WAS INEFFECTIVE? YES

Appellant, Ralph Lingo, contends that he was denied the effective assistance of counsel at trial. Mr. Lingo argues that during his trial he made an attempt to fire his attorney because of her failure to investigate his case and for her failure to cross examine the State's witnesses as to pertinent information that might have led to his acquittal. (R 31-32).

The appellant filed a motion for new trial on November 10, 2004 stating the reasons that he should be entitled to a new trial. (C 195-201). Mr. Lingo states in his motion that his attorney had misled him and would lie to him about his case, and he states that his attorney would not cross-examine any of the witnesses as to certain areas he believed to be relevant. (C 195-196) Mr. Lingo also says that his attorney had not informed him that none of witnesses would be called at trial; he also claims that his attorney would not question the officers about him being arrested outside of the county that issued the arrest warrant. Mr. Lingo also contends that he asked his attorney

30

to bring up the issue of his home being searched without a valid search warrant and she refused to do so. (C 196)

Mr. Lingo also states in his motion that his attorney did not question the jury properly because some of the jurors were co-workers of the victim. (C 197). Mr. Lingo further argues that he had asked his attorney several times to withdraw from his case because she said not to call him and to only write her once a month, and that she would only get prepared for trial right before trial. Also, he brings up the fact that his attorney would not question the victim about her common law marriage to Mr. Lingo, which would have brought her testimony under the spousal privilege not to testify against your spouse. (C 198-199). Thus, for the reasons set out above the appellant believes that his trial counsel denied him the right to effective assistance that was necessary for him to get a fair trial.

The appellant argues that even though his motion for new trial was not extremely specific and was not supported with affidavits he is not precluded from review by this court under Ex parte Jefferson, 749 So.2d 406 (Ala. 1999). "Normally, a defendant's motion for a new trial requires verification in the form of an affidavit. Jones v. State,

31

727 So.2d 866, 867 (Ala.Crim.App. 1998) (citing Hill v.
State, 675 So2d. 484 (Ala.Crim.App. 1995).

In Similton v. State, 672 So.2d 1363 (Ala.Crim.App.
1995) the Court of Criminal Appeals said that an unverified
motion were only bare allegations and could not be
considered as evidence of the facts alleged. However, in
Hill v. State, 675 So2d. 484 (Ala.Crim.App. 1995), "the
Court of Criminal Appeals changed their holding from
Similton and reversed the trial court's denial of a motion
for new trial and remanded the case to the trial court
because the allegations of ineffective assistance of
counsel were supported by facts contained in the record on
appeal. Supporting affidavits or other evidence is not
necessary where the grounds relied on in the motion for new
trial are shown by the record." Hill v. State, supra.

To analogize with Hill, in the present case the
allegations relied on by Mr. Lingo can be supported by the
actual trial transcript. The record reflects that during
the trial the allegations that Mr. Lingo asserts can be
proven very easily simply by reading the transcript and
noticing that the counsel at trial did not in fact do what
a reasonable attorney would have done. Furthermore, Mr.

Lingo argues that, "If the record on appeal shows that the
trial counsel's assistance at trial was so deficient as to
fall below an objective standard of reasonableness, as the
record here reflects, there is no need for a more specific
motion." Therefore, in the present case Mr. Lingo's motion
for new trial that raises allegations of ineffective
assistance of counsel was sufficient to preserve the issue
for appeal.

The appellant is aware that in order to raise the issue
of ineffective assistance of counsel on appeal that he must
first present the issue to the trial court in a motion for
new trial. Montgomery v. State, 781 So.2d 1007, 1010
(Ala.Crim.App. 2000). Mr. Lingo did file a motion for new
trial on November 5, 2004. (C 195) He filed the motion
before his sentence date and it was ruled on before his
sentence date, which in effect deems the motion to have
been filed on the date of sentencing, and denied by
operation of law. . Rule 24.1(a), Ala.R.Crim.P.

In order for an appellant to prevail on a claim for
ineffective assistance of counsel they must satisfy the
test set by the Supreme Court which is:

1.    An appellant must show that his counsel's
      performance at trial was deficient and,

2.    That he was prejudiced by the deficient performance.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984).

In order to prove the first element of the test the
appellant must prove that his counsel made errors that
were so egregious that he was denied the representation
that is guaranteed him under the Sixth Amendment. The
appellant must also show that he was prejudiced by the
deficient performance by proving that his counsel made
errors that were so serious that he was deprived of a
fair trial. Id at 687. In proving the elements of the
test the appellant has the burden of proof and must
satisfy the test with by a preponderance of the evidence.
Wilson v. State, 644 So.2d 1326, 1328 (Ala.Crim.App.
1994). However, there is a presumption that trial counsel
did provide the appellant with effective assistance at
trial. Halford v. State, 629 So.2d 6 (Ala.Crim.App.
1992).

In a case such as this the performance element is an
objective standard that is, "whether counsel's

34

assistance, judged under prevailing professional norms
was reasonable considering the circumstances." Daniels v.
State, 650 So.2d 544, 552 (Ala.Crim.App. 1994) (quoting
Strickland, supra). " A court in deciding an actual
ineffectiveness claim must judge the reasonableness of
counsel's challenged conduct on the facts of the
particular case, viewed as of the time of counsel's
conduct." Strickland, supra. The prejudice component
requires that there be proof that counsel's errors at
trial were so serious as to deprive the defendant of a
fair trial, a trial whose result is reliable. Strickland,
supra.

When asserting an ineffective of counsel claim the
Defendant has to prove that there was a reasonable
probability that, but for counsel's unprofessional
errors, the result of the case would have been different.
Even a reasonable probability is sufficient to undermine
confidence in the outcome of the case. Id at 696.

In the case at bar Mr. Lingo argues that his trial
counsel's performance at trial was deficient. Mr. Lingo
points to the record and alleges in his motion for new
trial that his attorney did not call any witnesses on his

35

behalf like he requested, his attorney would not cross

examine any of the witnesses on issues that would have

helped his case significantly. (R 195-201) Specifically,

he asserts that his attorney would not question the

officer that arrested him on the grounds of the validity

of the arrest warrant whereby he was arrested in Henry

County with a Houston County warrant without said warrant

being domesticated. (R 31-32). Mr. Lingo believes that

his Constitutional right to have the effective assistance

of counsel has been violated. Mr. Lingo further contends

that his attorney failed to question the victim as to her

common law marriage with the Appellant, which could

preclude her testimony against Mr. Lingo. (C 199).

Mr. Lingo also states that he did not have any time to

talk with his attorney, that she did not want him to call

her, and that he had requested that she withdraw from his

case and the court would not allow it. (R 31-32).

Furthermore, Mr. Lingo asserts that because of the above

mentioned errors performed by his attorney he was

prejudiced by the deficient acts of his trial counsel,

because if counsel had of investigated his case more

professionally then the outcome of his case would have been different.

Therefore, the fact that Mr. Lingo's counsel at trial failed to perform many of the ministerial acts performed by attorney's at trial, he was rendered helpless and without the effective assistance of counsel. The record in this case shows that Mr. Lingo requested his attorney to perform a number of acts pertaining to his case in which the trial counsel simply had refused to perform. The mere fact that the trial counsel was requested to perform these functions and the record supporting the fact that they were not done proves that the trial counsel's performance was deficient and that because of this deficiency Mr. Lingo was prejudiced by an unjust result at his trial.

Mr. Lingo prays this Honorable Court will grant him relief by reversing and remanding this matter to the Trial Court with instructions to enter a judgment of acquittal, or in the alternative, reverse the trial court and render a verdict of not guilty.

## CONCLUSION

Mr. Lingo submits to this Honorable Court that the Trial Court erred in refusing to give a jury instruction as to the offenses of Criminal Coercion and Tampering with a Witness, which should have been lesser-included offenses of Intimidating a Witness.

Mr. Lingo further contends that his motion for judgment of acquittal should have been granted due to the fact that the State failed to meet their burden in proving a prima facie case against him. The State did not produce any evidence or testimony at trial that would prove that the conduct of Mr. Lingo was commensurate with the conduct required to be guilty of the offense of Intimidating a Witness.

Mr. Lingo also asserts that he was prejudiced by his attorney and if he had been afforded the effective assistance of counsel at trial then the result of his case would have been different. Mr. Lingo states several times in the record that he was unhappy with the assistance that he was being given and that his attorney would not proceed

with his case in the manner that a reasonable attorney would have.

Wherefore, Mr. Lingo prays this Honorable Court will grant him relief by reversing and remanding this matter to the Trial Court with instructions to enter a judgment of acquittal, or in the alternative, reverse the trial court and render a verdict of not guilty.

Respectfully submitted this the _14th_ day of _April_, 2005.


Jon-Patrick Amason, Attorney at Law (AMA 005)
Ala. Bar # ASB-1057-T78A
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Brief of Appellant upon the Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36130, by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, on this the _____14th_____ day of _____April_____, 2005.


Jon-Patrick Amason, Attorney at Law (AMA 005)
Ala. Bar # ASB-1057-T78A
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT

40

**APPENDIX**

## TABLE OF ADVERSE DECISIONS

Page

C 32      Motion to Recuse from the case denied.

C 42      Motion to Return Illegally Seized Property denied.

C 192     Motion to Suppress denied.

R 30      Defendant's oral Motion denied.

R 33      Defendant's Motion to admit Documents denied.

R 67      Defense objection to admission of Defendant's statement overruled.

R 82      Motion for Judgment of Acquittal denied.

R 83      Defense Objection to State's Closing Argument overruled.

R 95      Defense Objection to jury instructions not being given on criminal coercion and tampering with a witness overruled.

C 193     Motion for Appointment of New Counsel denied.

C 193     Motion for Judgment of Acquittal denied.

C 203     Motion for Indictment to be dismissed denied.

C 203     Motion for New Trial denied.

No. 04-0602

In the COURT of CRIMINAL APPEALS
of ALABAMA

♦

RALPH WILSON LINGO,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

♦

On Appeal From the Circuit Court
of Houston County
(CC-03-599)

**BRIEF OF APPELLEE**

Troy King
*Attorney General*

Robin Blevins Scales
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
May 13, 2005            (334) 242-7401, 242-7300*

EXHIBIT

C

PENGAD 800-631-6989

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument. "The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Ala. R. App. P. 34(a)(3).

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ......................... i

TABLE OF CONTENTS ........................................ ii

TABLE OF AUTHORITIES .................................... iii

STATEMENT OF THE CASE ..................................... 1

ISSUES PRESENTED FOR REVIEW .............................. 4

STATEMENT OF THE FACTS ................................... 5

STANDARD OF REVIEW ....................................... 8

SUMMARY OF THE ARGUMENT .................................. 9

ARGUMENT ................................................ 11

  I. Lingo Failed To Preserve For Appellate Review His
  Claim That The Trial Court Erred When It Failed To
  Instruct The Jury On Criminal Coercion And Tampering
  With A Witness When He Failed To Properly Object To
  The Court's Failure To Give The Instructions By
  Specifically Stating Grounds For His Objection. ........ 11

  II.  The State Presented Sufficient Evidence To Show
  That Lingo's Sent A Threatening Letter To The Victim
  With The Intent Of Intimidating Her Into Abandoning
  Criminal Action Which She Initiated Against Him. ....... 14

  III. Lingo Failed To Establish A Meritorious Claim
  Of Ineffective Assistance Of Counsel Because He
  Failed To Show That His Counsel's Performance Was
  Deficient Or That He Was Prejudiced By This Deficient
  Performance. .......................................... 17

CONCLUSION .............................................. 20

CERTIFICATE OF SERVICE .................................. 21

# TABLE OF AUTHORITIES

## Cases

Bullock v. State, 697 So. 2d 66 (Ala. Crim.
  App. 1997) .......................................... 13

Burger v. State, CR 03-0236, 2005 WL 435117 (Ala.
  Crim. App. Feb 25, 2005) ............................. 12

Cliff v. State, 352 So. 2d 838 (Ala. Crim. App. 1977) .... 21

Ex parte Baldwin, 456 So. 2d 129 (Ala. 1984) ............ 18

Finney v. State, 860 So. 2d 367 (Ala. Crim. App. 2002) ... 19

King v. State, 730 So. 2d 261 (Ala. Crim. App. 1998) ..... 16

Similton v. State, 672 So. 2d 1363 (Ala. Crim.
  App. 1995) .......................................... 19

Strickland v. Washington, 466 U.S. 668 (1984) ........... 18

Williams v. State, 480 So. 2d 1265 (Ala. Crim.
  App. 1985) .......................................... 18

Woods v. State, 845 So. 2d 843 (Ala. Crim.
  App. 2002) .......................................... 15

## Other Authorities

Code of Alabama,

  Section 13A-10-123 ................................... 14

## Rules

Alabama Rules of Criminal Procedure,

  Rule 21.3 ............................................ 13

iii

## STATEMENT OF THE CASE

This is an appeal by Ralph Lingo from a judgment of conviction for intimidating a witness and a twenty year sentence, entered in the Houston County Circuit Court. The Honorable Jerry White was the presiding judge.

On September 5, 2003, the Houston County Grand Jury returned an indictment against Lingo, charging him with intimidating a witness. (C. 7-8) While represented by counsel, on October 15, 2003, Lingo filed a "Plea of not Guilty and Waiver of Arraignment". (C. 1, 10)

On November 10, 2003, Lingo's attorney filed a "Motion to Withdraw", stating that "a conflict has arisen between the defendant and undersigned counsel". (C. 1, 13) Judge White granted the motion on December 8, 2003. (C. 1, 14) On December 17, 2003, Judge White appointed Lingo new counsel. (C. 1, 18)

Due to the numerous motions and requests being filed by Lingo pro se, on January 20, 2004, Judge White entered an order informing Lingo that the court would not be accepting any further motions prepared by Lingo. (C. 2, 33) On April 14, 2004, Lingo sent a letter to Judge White asking

the court to appoint Attorney Matthew Lamere to represent
him in this case.  (C. 34-35)

On July 15, 2004, Lingo filed a motion requesting that
the court permit him to act as co-counsel to his appointed
counsel.[1]  (C. 49-50)  Lingo, through counsel, filed a
motion to suppress any statements made by Lingo to law
enforcement officers, and a motion in limine.  (C. 188-189)
(C. 188-189, 190-191) On November 3, 2004, the court
granted the motion in limine "as to any past convictions or
pending charges not relevant to this indictment unless
defendant chooses to testify", but denied the motion to
suppress Lingo's statements.  (C. 192)  On the same day,
the court denied Lingo's request for appointment of new
counsel, and judgment of acquittal.  (C. 193)

On November 10, 2004, Lingo filed pro se a motion for a
new trial and a request for the dismissal of his
indictment.  (C. 195-201)  The court denied both motions on
November 18, 2004.  (C. 203)

---

[1] Before and after requesting to be permitted to act as co-
counsel in his case, Lingo filed numerous letter, motions,
and requests for documents.  (C. 36, 37, 40-41, 44, 45-46,
47, 48, 51-52,55, 56-58, 60, 61, 63-64, 65-71, 78, 83-155,
164, 177-187)  Most of these documents do not appear to
pertain to this case.

On November 3, 2004, Lingo's trial began in the Houston County Circuit Court. (R. 1) Lingo appeared in court with counsel, a jury was struck, empaneled, and administered an oath by the clerk. (R. 21) Evidence was presented by the State and after the State rested its case, Lingo, through counsel, moved for judgment of acquittal arguing that the State failed to prove the elements of the crime of intimidating a witness. (R. 73) After giving the attorneys an opportunity to argue their respective positions relative to the motion for acquittal, Judge White denied the motion. (R. 82) The defense presented no witnesses. (R. 82)

After the attorneys gave their closing argument the judge gave his oral charge to the jury. At the conclusion of the oral charge, defense counsel made the following statement: "I just wanted to put it on the record that I would object to jury instructions not being given on criminal coercion and tampering with a witness for appeal purposes". (R. 95) The trial resumed on November 4, 2004, and after deliberating on the evidence, the jury returned a verdict of guilty to the charge of intimidating a witness as alleged in the indictment. (C. 194) On December 9,

2004, Lingo again appeared in court with counsel and the judge held a sentence hearing. (R. 105-118)  The State, having previously given notice to Lingo of its intent to offer evidence of one prior conviction for receiving stolen property in the second degree for purposes of the Habitual Felony Offender Act, introduced certified evidence of Lingo's prior conviction.  (C. 204; R. 106) At this time, the judge sentenced Lingo to twenty years' imprisonment and imposed a ten thousand dollar fine, plus costs, and a one-thousand dollar victim compensation assessment.  (R. 117) Lingo gave oral notice of appeal.  (R. 117)  This appeal followed.

## ISSUES PRESENTED FOR REVIEW

1.  Did Lingo fail to preserve for appellate review his claim that the trial court erred when it failed to instruct the jury on criminal coercion and tampering with a witness when he failed to properly object to the court's failure to give the instructions?

2.  Did the State present sufficient evidence to convict Lingo of intimidating a witness?

3.   Did Lingo fail to establish a meritorious claim of ineffective assistance of counsel based on the standard of Strickland v. Washington?


## STATEMENT OF THE FACTS

On April 24, 2003, Debra Tice Blackstone, Lingo's ex-wife, signed a warrant against Lingo in the Dothan Municipal Court for making harassing communications.  (R. 26-27, 33-34) A week later, specifically on May 2, 2003, Blackstone received an envelope from Lingo (State's exhibit 1) that was hand-delivered by a black man to Blackstone's home in Dothan.  Inside the envelope was a letter and some nude photographs of Blackstone that Lingo had taken. Blackstone immediately called the Dothan Police Department and a patrol officer came to her home and confiscated the package.  (R. 27, 35-36, 38-39) The letter (State's exhibit 1) was three pages in length, one page consisted of nude photographs of Blackstone copied onto a sheet of paper and hand-writing, and the other two pages were primarily handwriting.  (R. 28-29) Sergeant Tony Luker, with the Dothan Police Department, was assigned to investigate the

case and, after reviewing the letter, signed a warrant for Lingo's arrest for intimidating a witness.  (R. 27-28)

At trial, Blackstone testified that she was "overwhelmed", "scared", and "terrified" when she received the letter, and afraid to go to court (although she did go to court and Lingo was convicted on the harassing communications charge).  (R. 37) Blackstone also testified that during their relationship, Lingo was physically abusive to her.  The abuse began soon after they were married and once, after she was beaten so badly that she had to go to the hospital, she signed a warrant for Lingo's arrest.  (R. 43)  Blackstone further testified that, in the past, Lingo had made threats to burn down her home and kill her, and she recalled him specifically stating that the next person that puts him away will die.  (R. 45)

Alicia Roberts, Lingo's former employee, wrote the letter to Blackstone while at Lingo's trailer in Newville. Lingo told her what to write.  She also copied the photographs for Lingo.  (R. 31, 46-48, 50)

On October 13, 2004, Ed Sasser, a corrections officer with the Alabama Department of Corrections, went to the Bullock County Correctional Facility to investigate a

complaint given to him by the warden. The complaint was against Lingo who was an inmate at the facility at the time. (R. 53-56, 58) Before asking Lingo any questions, he advised Lingo of his Miranda rights; afterward, Lingo voluntarily signed a waiver (State's exhibit 2) and gave a statement (State's exhibit 3). (R. 56-58) During the interview, Lingo denied threatening to burn down Blackstone's house; and, when asked about the pending charge of intimidating a witness and sending naked photographs to Blackstone, he merely indicated that he had a case pending. (R. 68-69)

The State rested after presenting the foregoing evidence, and the defense moved for a judgment of acquittal. (R. 72-73) Defense counsel specifically argued that the State had failed to prove each element of the crime of intimidating a witness, suggesting that Lingo was merely trying to reconcile with Blackstone. (R. 73) After hearing the attorneys' argument, Judge White denied the motion for judgment of acquittal. (R. 82) The defense rested after counsel informed the court that there would be no witnesses for the defense. (R. 82)

## STANDARD OF REVIEW

1. This Court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court." Eastland v. State, 677 So. 2d 1275, 1276 (Ala. Crim. App. 1996), quoting Abbott v. Hurst, 643 So. 2d 589 (Ala.1994). "An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented." Pate v. State, 601 So. 2d 210, 213 (Ala. Crim. App. 1992).

2. The appellate court's role in reviewing the sufficiency of the evidence in criminal cases is as follows:

> In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala. 1985).' Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, '[t]he role of appellate courts is not to say what the facts are. [Their role]

is to judge whether the evidence is legally
sufficient to allow submission of an issue for
decision [by] the jury.' Ex parte Bankston, 358 So.2d
1040, 1042 (Ala.1978).

Woods v. State, 845 So. 2d 843, 845-846 (Ala. Crim.
App. 2002), quoting Ex parte Woodall, 730 So. 2d 652, 658
(Ala. 1998).

3. When reviewing claims of ineffective assistance of
counsel, the courts must determine if counsel's performance
was deficient and, if so, whether the appellant suffered
any prejudice from the deficient performance.  Strickland
v. Washington, 466 U.S. 668 (1984).  The appellate court
indulges a strong presumption that counsel's conduct was
appropriate and reasonable.  Brown v. State, 807 So. 2d 1,
12 (Ala. Crim. App. 1999), cert. quashed, 807 So. 2d 17
(Ala. 2001).

## SUMMARY OF THE ARGUMENT

Lingo failed to preserve on appeal his issue that the
trial court erred in failing to instruct the jury on
criminal coercion and tampering with a witness, by not
specifically objecting to the court's failure to give the
instruction.

The State's evidence was sufficient to present the case to the jury on the issue of guilt. Lingo was charged with intimidating a witness, and the evidence showed that soon after the victim initiated criminal action against Lingo, he sent the victim a threatening letter, suggesting that he would cause certain things to happen to her unless the two of them could work things out on their own. He enclosed nude photographs of the victim, stating that he would post them around the city and disseminate them to her family unless she allowed then to resolve this matter themselves. Based on this evidence, a rational jury could find Lingo guilty of intimidating a witness.

Lingo failed to present a meritorious claim of ineffective assistance of counsel by showing that his counsel's performance was deficient and that he was prejudiced by this deficient performance. On appeal, as in his unverified motion for new trial, Lingo's bare allegations are insufficient to warrant any relief.

## ARGUMENT

I.  **Lingo Failed to Preserve for Appellate Review his Claim that the Trial Court Erred When It Failed to Instruct the Jury on Criminal Coercion and Tampering with a Witness When he Failed to Properly Object to the Court's Failure to Give the Instructions by Specifically Stating Grounds for his Objection.**

Lingo states that "the trial court erred in refusing to instruct the jury on the elements of the crime of Criminal Coercion and Tampering with a Witness, arguing that they are lesser included offenses of intimidating a Witness". Lingo's brief p. 16.

The record does not show where the defense provided the court with any written requested instructions; nor is there any indication in the record that Lingo orally requested the instructions. Lingo implies that he orally requested the instructions, stating that "the trial court noted that the defense counsel had argued for lesser-included offenses". Lingo's brief p. 16. He has not, however, pointed to any place in the record where he clearly asked the judge to instruct the jury on criminal coercion and tampering with a witness. In fact, during the discussion referred to by Lingo, on the defense's motion for judgment of acquittal, what the judge actually stated was: "I know

11

in her opening argument she was talking about lesser included offenses". The judge then solicited discussion from the attorneys concerning the difference between tampering with a witness and criminal coercion. (R. 80) Even at this point, counsel did not request that the jury be given these instructions. (R. 80-82) This discussion was insufficient to preserve the issue however. See Burger v. State, CR 03-0236, 2005 WL 435117, at *3 (Ala. Crim. App. Feb 25, 2005)("They discussed this charge at the charge conference, but they did not specifically object to the court's failure to give it or state a particular ground.")

Finally, at the conclusion of the court's oral charge, defense counsel objected to the court's failure to instruct the jury on the offenses; however, the objection was insufficient to preserve for appellate review the court's failure to give these instructions. Specifically, counsel stated:

> "I just wanted to put it on the record that I would object to jury instructions not being given on criminal coercion and tampering with a witness for appeal purposes". (R. 95)

Rule 21.3 of the Alabama Rules of Criminal Procedure provides as follows:

> No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Ala. R. Crim. P. 21.3.  Therefore, in order to preserve for appellate review a trial court's failure to give a jury instruction, the party requesting the instruction must object to the court's refusal to give the instruction by stating with particularity the grounds for the objection. See Bullock v. State, 697 So. 2d 66, 66 (Ala. Crim. App. 1997); see also Burger v. State, 2005 WL 435117, at *3.

Because Lingo failed to properly objection to the court's failure to give jury instructions on criminal coercion and tampering with a witness, stating specifically the grounds for his objection, this claim is not preserved for review by this Court.

**II. The State Presented Sufficient Evidence to Show that Lingo's Sent a Threatening Letter to the Victim with the Intent of Intimidating her into Abandoning Criminal Action Which she Initiated Against him.**

Lingo contends that the evidence was insufficient to sustain his conviction.  He specifically argues that the State failed to prove the three essential elements of the crime of intimidating a witness.

Section 13A-10-123 of the Code of Alabama provides:

"(a) A person commits the crime of **intimidating a witness** if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:

(1) Corruptly influence the testimony of that person;

(2) Induce that person to avoid legal process summoning him to testify; or

(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.

"In determining the sufficiency of the evidence to sustain a conviction, [this Court] must accept as true all evidence introduced by the State, accord the State all

legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." <u>Woods v. State</u>, 845 So. 2d 843, 845-846 (Ala. Crim. App. 2002), *quoting* <u>Ex parte Woodall</u>, 730 So. 2d 652, 658 (Ala. 1998). This Court's function, therefore, is to determine whether the evidence is legally sufficient to allow submission of an issue for a decision by the jury. <u>Id.</u>

According to the evidence presented at trial, on April 24, 2003, Debra Tice Blackstone, Lingo's ex-wife, signed a warrant against Lingo for harassing communications. (R. 26-27, 33-34) A week later, specifically on May 2, 2003, Blackstone received an envelope from Lingo (State's exhibit 1) hand-delivered to her home in Dothan by a black man. Inside the envelope was a letter and some nude photographs of Blackstone that Lingo had taken. Blackstone immediately called the Dothan Police Department, and a patrol officer came to her home and confiscated the package. (R. 27, 35-36, 38-39) The letter (State's exhibit 1) was three pages in length, one page consisted of copied nude photographs of Blackstone and hand-writing, and the other two pages were primarily handwriting. (R. 28-29) Blackstone testified that after receiving the letter she felt "overwhelmed",

"scared", and "terrified", and afraid to go to court (although she did go to court and Lingo was convicted on the harassing communications charge).  (R. 37)

In the letter, Lingo makes statements such as: "you drop your phony warrant or...", and "if you don't want to go down you better back off from me", and "you want to go to the law, fine we will also tell the law a lot of shit too".  (C. 224-226)  The general tone of the letter is threatening.  Lingo is threatening the victim that, unless she allows them to settle the matter themselves as opposed to allowing it to be settled by the law, all sorts of "bad" things will happen to her, including posting nude photographs of the victim around Dothan and sending copies to her family(a sample of which he sent to the victim to show that he means what he is saying).

The fact that this threatening letter was sent to Blackstone a week after she signed a warrant against Lingo, and the charge was still pending when he sent the letter, a jury could rationally find Lingo guilty of intimidating a witness.  Therefore, the evidence was sufficient for the court to submit the case to the jury.  See King v. State, 730 So. 2d 261, 263 (Ala. Crim. App. 1998).

III.  **Lingo Failed to Establish a Meritorious Claim of Ineffective Assistance of Counsel Because he Failed to Show that his Counsel's Performance was Deficient or that he was Prejudiced by this Deficient Performance.**

Lingo contends that he was denied effective assistance of counsel at trial, based on his counsel's conduct before and during his trial.  On appeal, Lingo makes general statements, the same as in his pro se motion for new trial, such as, counsel: failed to investigate his case, cross examine the State's witnesses concerning "pertinent information", "misled him and would lie to him about his case", "had not informed him that none of witnesses would be called at trial", "would not question the officers about him being arrested outside of the county that issued the arrest warrant", refused to "bring up the issue of his home being searched without a valid search warrant", did not "question the jury properly because some of the jurors were co-workers of the victim", etc.  Lingo's brief pp. 30-31, 35-36)  While Lingo appears able to cite instances where his counsel allegedly failed to perform or performed inadequately, he has failed to show that his counsel's performance was deficient or that he was prejudiced.

Therefore, he has failed to establish a meritorious claim of ineffective assistance of counsel.

To establish a meritorious claim of ineffective assistance of counsel, a convicted defendant must show that his counsel failed to perform reasonably under the circumstances; that his performance was deficient. Also, he must show that this deficient performance prejudiced his case. Strickland v. Washington, 466 U.S. 668, 693 (1984); Ex parte Baldwin, 456 So. 2d 129, 134 (Ala. 1984). Both parts of this standard must be met. Williams v. State, 480 So. 2d 1265, 1267 (Ala. Crim. App. 1985).

"In determining whether a defendant has established his burden of showing that his counsel was ineffective, [the court] [is] not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs." Strickland, at 697. Lingo has failed to show that his counsel's performance was deficient, by identifying exactly what his counsel should have or should not have done. In particular, he does not state how his counsel was deficient in his investigation of his case, or which State's witnesses she failed to cross examine "as to

pertinent information" and what this information consists of, or how his counsel "misled him" or what aspects of the case did she "lie to him about". And, more importantly, why counsel's conduct in the particular instances was deficient performance by an attorney.

Lingo notes that his claim of ineffective assistance of counsel was first presented in his pro se motion for new trial. Aside from the fact that it too contained bare and sometimes vague allegations, the motion for new trial was unverified and unsupported by affidavit or other evidence; therefore, its assertions could not be considered evidence or proof of the facts alleged. See Similton v. State, 672 So. 2d 1363, 1365 (Ala. Crim. App. 1995). Furthermore, Lingo's bare assertions are not supported by facts in the record. See Finney v. State, 860 So. 2d 367 (Ala. Crim. App. 2002).

Clearly, there is no basis for this Court to conclude that Lingo's counsel was ineffective because Lingo has failed to present any facts to support his contention. Accordingly, Lingo's claim of ineffective assistance of counsel was properly denied and the denial is due to be upheld on appeal.

## CONCLUSION

Based on the foregoing, the judgment of conviction entered in the Houston County Circuit Court is due to be affirmed.

Respectfully submitted,

Troy King
*Attorney General*
By-

_____
Robin Blevins Scales
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2005, I served a copy of the foregoing on the attorney for Lingo by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

> Jon-Patrick Amason Esq.
> 401 North Foster Street
> Dothan, Al 36303

_____
Robin Blevins Scales
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, AL  36130
(334) 242-7300

202290/75586-001

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

P. O. Box 301555

Montgomery, AL 36130-1555

**RELEASED**

JUN 10 2005

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-04-0602                    Houston Circuit Court CC-03-599

_Ralph Wilson Lingo v. State of Alabama_

Baschab, Judge.

The appellant was convicted of intimidating a witness, a violation of §13A-10-123(a), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of twenty years in prison. _See_ §13A-5-9(a)(1), Ala. Code 1975. The appellant filed motions for a judgment of acquittal and for a new trial, which the trial court summarily denied. This appeal followed.

Debra Tice Blackstone, the victim, testified that the appellant is her ex-husband; that they were married in January 1989 and divorced in January 1997; that the appellant could not read and write very well; that, on April 24, 2003, she signed a warrant against the appellant in the Dothan Municipal



EXHIBIT

D

Court for harassing communications based on a telephone call; that she also got a protection from abuse order against the appellant; that, about one week later, she received an unsigned letter, which included copies of photographs of her naked and written threats, from an unidentified delivery man at her home; that the appellant was the only person who had access to the photographs; and that she was overwhelmed, scared, terrified, and afraid to go to court, even though she did later go to court. She also testified that the appellant

> "has threatened to burn my house down. He has tried to hire somebody to kill me. He has made the comment to me that the next person that puts him away will die."

(R. 45.)

The State introduced the photographs and the letter into evidence. The letter included the following:

> "You brought this on your own self. No one has seen these. You tricked me and you did something very, very wrong. I still have the phone tape. I can ruin you real badly with fraud counts against you with the internal revenue. You love blacks, and cops but you don't think more that 3,000 of these will be placed all over Dothan. Every stop sign, light poles, just think again. Copies are made. You better see me or I will have to start defending myself.

> "I do not want any trouble with you. You know the law is on me real bad, trying to get anything on me. You know all about it, but I ain't guilty. I was framed and set up by Sue. I didn't know anything about it until it was all over with. I told the internal Revenue a little about you, but not enough to get you in any trouble. I would never do that unless I was forced to.

> "4 out of 20 pictures

> "You know I can hurt you by a lot of people you

2

ran off from my [business], that you have cussed out. I know at least three of those people want to sign warrants on you right now. I know why you did all of this is because of you lover, so here's the way it will go. You can keep your black lovers, your cop lovers. I haven't done anything but help you and giving you money. Yes I was trying to fight to keep you, and to make sure you had plenty of money every week. That was what I wanted to do to keep you, to make sure you had your medication, money, and whatever your kid needed. I will never call you again. I will never contact you again. You drop your phony warrant or you will be sued at the right time and be arrested with [warrants] against you. I will push the internal revenue to step in to investigate you.    [A]lso GE to investigate you also. I will do whatever it takes to ruin you, destroy you, your name. You have lied on me, and tricked me with a phone call, and there's some stuff on you I won't mention. If you don't want to go down you better back off from me. I will be going to have a meeting with my investigators and I will put them on the case. I kept you out of these trials like you asked me, but you [will] be in 3 in the near future, under oath. These phone tapes will prove you deal with a lot of customers. You want me to nail you but you remember the fox. You know what this means. I am leaving and going to the beach this weekend. I will have my cell phone with me. I don't want to talk or see anyone but you face to face, to talk out our differences. You know my number. I am very depressed. I have cried a million tears over you.

"I am not threatening you in no way. I am making you a promise. You have 24 hours to see me face to face. And we will start to work to defending myself against accusations which aren't true. Debra this will be up to you. You know my cell number. If you want to meet me to work this thing out, then I'd be more than willing [to] show you I'm not joking with you. Three of your family members will get a copy of a videotape and a copy of

these pictures along with copies of phone tapes, this weekend. I have not got any of this in my possession. All it would take is a phone call and it will be delivered. You have 24 hours for these to start [coming] out on you. You want to go to the law, fine. We will also tell the law a lot of shit too, and it won't stop there. I know you have these judges on your side, but you just don't know what I know. I don't want any problems out of you. It's your money and your life. Do you want it destroyed or a person to person talk to work all of this out. I might not word this letter right, but one of your friends knows how to contact me. This will be up to you. I will have to do what I have to do. Thank you very much. We can work this out and go our [separate] ways.

"Take this the way you want to take this. It's your choice.

"Thank you.

"1-4 pages - you have copies of your pictures. Do what you want to do."

(C.R. 224-26.)

Alicia Roberts testified that she worked for the appellant; that she wrote the above-referenced letter, using the appellant's words, at the appellant's request; and that she helped the appellant copy the photographs.

Finally, the appellant made a statement to Ed Sasser, an investigator for the Alabama Department of Corrections, in which he admitted that he had sent someone to the victim's house with a photograph of her naked. He contended that the person did not know what was in the package, but that the victim did.

I.

The appellant argues that the trial court erroneously

4

refused to instruct the jury on criminal coercion[1] and tampering with a witness.[2]

> "No party may assign as error the court's ... failing to give [an] instruction ... unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."

Rule 21.3, Ala. R. Crim. P. After the trial court's oral charge, the appellant made a general objection to the fact that the trial court had not instructed the jury on criminal coercion and tampering with a witness, but he did not state any grounds in support of the objection. Therefore, he did not properly preserve this argument for our review. See Rule

---

[1]Section 13A-6-25(a), Ala. Code 1975, provides, in pertinent part:

> "A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act."

[2]Section 13A-10-124, Ala. Code 1975, provides, in pertinent part:

> "(a) A person commits the crime of tampering with a witness if he attempts to induce a witness or a person he believes will be called as a witness in any official proceeding to:
>
> "(1) Testify falsely or unlawfully withhold testimony; or
>
> "(2) Absent himself from any official proceeding to which he has been legally summoned."

5

21.3, Ala. R. Crim. P.; <u>Bullock v. State</u>, 697 So. 2d 66 (Ala. Crim. App. 1997).

Moreover, in response to the appellant's objection, the trial court stated:

> "I just don't believe that -- a lesser included offense is an offense that is lesser -- less than all of the other -- of the main charge as I understand it of the law of Alabama. And the way I see it under the testimony that was given, and the testimony was pretty much undisputed, that it -- that this has got to be either intimidating a witness or nothing. It's one or nothing is the way I see it. As a matter of fact, I think if I gave a charge on those offenses as lesser included offenses and he were convicted on one of them, that it would be reversible error."

(R. 95-96.)

> "No error occurs in not giving a charge on a lesser included offense when there is no reasonable theory to support the lesser offense. <u>See</u> <u>Dill</u>. '"A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense."' <u>Dill</u>, 600 So. 2d at 360, quoting <u>Gurganus v. State</u>, 520 So. 2d 170, 174 (Ala. Cr. App. 1987)."

<u>Williams v. State</u>, 601 So. 2d 1062, 1075 (Ala. Crim. App. 1991), aff'd, 662 So. 2d 929 (Ala. 1992) (table).

The record supports the trial court's finding that jury instructions on criminal coercion and tampering with a witness were not warranted. Under the facts of this case, the appellant was either guilty of intimidating a witness or not guilty of anything. Therefore, the appellant's argument is without merit.

II.    .

6

The appellant also argues that the State did not present sufficient evidence to support his conviction.

"(a) A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:

"(1) Corruptly influence the testimony of that person;

"(2) Induce that person to avoid legal process summoning him to testify; or

"(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.

"(b) 'Threat,' as used in this section, means any threat proscribed by Section 13A-6-25 on criminal coercion."

§13A-10-123, Ala. Code 1975.

"In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So. 2d 280 (Ala. Cr. App.), cert. denied, 387 So. 2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So. 2d 1020 (Ala. Cr. App. 1978). In applying this standard, the

7

appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. <u>Willis v. State</u>, 447 So. 2d 199 (Ala. Cr. App. 1983); <u>Thomas v. State</u>. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. <u>Young v. State</u>, 283 Ala. 676, 220 So. 2d 843 (1969); <u>Willis v. State</u>."

<u>Breckenridge v. State</u>, 628 So. 2d 1012, 1018 (Ala. Crim. App. 1993).

"'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' <u>Faircloth v. State</u>, 471 So. 2d 485, 489 (Ala. Cr. App. 1984), affirmed, <u>Ex parte Faircloth</u>, [471] So. 2d 493 (Ala. 1985).

"'...

"'"The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is <u>legally</u> sufficient to allow submission of an issue for decision to the jury." <u>Ex parte Bankston</u>, 358 So. 2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." <u>Kelly v. State</u>, 273 Ala. 240, 244, 139 So. 2d 326 (1962). ... A verdict on conflicting evidence is conclusive on appeal. <u>Roberson v. State</u>, 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence

8

offered by the defendant is in sharp
conflict therewith and presents a
substantial defense." <u>Fuller v. State</u>, 269
Ala. 312, 333, 113 So. 2d 153 (1959), cert.
denied, <u>Fuller v. Alabama</u>, 361 U.S. 936, 80
S. Ct. 380, 4 L. Ed. 2d 358 (1960).'
<u>Granger [v. State]</u>, 473 So. 2d [1137,] 1139
[(Ala. Crim. App. 1985)].

"... 'Circumstantial evidence alone is enough to
support a guilty verdict of the most heinous crime,
provided the jury believes beyond a reasonable doubt
that the accused is guilty.' <u>White v. State</u>, 294
Ala. 265, 272, 314 So. 2d 857, cert. denied, 423
U.S. 951, 96 S. Ct. 373, 46 L. Ed. 2d 288 (1975).
'Circumstantial evidence is in nowise considered
inferior evidence and is entitled to the same weight
as direct evidence provided it points to the guilt
of the accused.' <u>Cochran v. State</u>, 500 So. 2d 1161,
1177 (Ala. Cr. App. 1984), affirmed in pertinent
part, reversed in part on other grounds, <u>Ex parte
Cochran</u>, 500 So. 2d 1179 (Ala. 1985)."

<u>White v. State</u>, 546 So. 2d 1014, 1017 (Ala. Crim. App. 1989).
Also,

"'[c]ircumstantial evidence is not inferior
evidence, and it will be given the same
weight as direct evidence, if it, along
with the other evidence, is susceptible of
a reasonable inference pointing
unequivocally to the defendant's guilt.
<u>Ward v. State</u>, 557 So. 2d 848 (Ala. Cr.
App. 1990). In reviewing a conviction
based in whole or in part on circumstantial
evidence, the test to be applied is whether
the jury might reasonably find that the
evidence excluded every reasonable
hypothesis except that of guilt; not
whether such evidence excludes every
reasonable hypothesis but guilt, but
whether a jury might reasonably so
conclude. <u>Cumbo v. State</u>, 368 So. 2d 871

9

(Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979).'

"Ward, 610 So. 2d at 1191-92."

Lockhart v. State, 715 So. 2d 895, 899 (Ala. Crim. App. 1997).

Based on the evidence presented, the jury could have reasonably concluded that the appellant was guilty of intimidating a witness. Therefore, the appellant's argument is without merit.

### III.

Finally, the appellant argues that his counsel rendered ineffective assistance during the trial proceedings. In his unverified motion for a new trial, he listed several instances in which he contended that his counsel rendered ineffective assistance. We have reviewed the record and the appellant's ineffective-assistance claims. Although he has made several allegations, he has not satisfied his burden, under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), of proving that counsel's performance was deficient and that such allegedly deficient performance prejudiced him. In fact, we note that many of the appellant's claims appear to relate to other judicial proceedings in which he is involved rather than to this proceeding. Furthermore, the record on appeal does not show that his trial counsel's performance was so deficient that it fell below an objective standard of reasonableness. See Ex parte Jefferson, 749 So. 2d 406 (Ala. 1999). Accordingly, the appellant is not entitled to relief on his ineffective-assistance-of-counsel claims.

For the above-stated reasons, we affirm the trial court's judgment.

**AFFIRMED.**

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.

10

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA



Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk

P. O. Box 301555
Montgomery, AL 36130-1555
(334) 242-4590
Fax (334) 242-4689

June 24, 2005

**CR-04-0602**

Ralph Wilson Lingo v. State of Alabama   (Appeal from Houston  Circuit Court: CC03-599)

## <u>NOTICE</u>

You are hereby notified that on June 24, 2005 the following action was taken in the above referenced cause by the Court of Criminal Appeals:

Application for Rehearing Overruled.

**Lane W. Mann, Clerk**
**Court of Criminal Appeals**

cc: Hon. Judy Byrd, Circuit Clerk
    Jon-Patrick Amason, Attorney
    Robin Blevins Scales, Asst. Atty. Gen.



EXHIBIT
E
PENGAD 800-631-6989

Scales
75586

IN THE ALABAMA COURT OF CRIMINAL APPEALS


RALPH WILSON LINGO,
        APPELLANT,

VS.

STATE OF ALABAMA,
        APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CIRCUIT COURT CASE NO. CC-03-599

CRIMINAL APPEALS COURT NO. CR-04-0602

---

## APPLICATION FOR REHEARING AND SUPPORTING BRIEF

---

JON-PATRICK AMASON  (AMA005)
Attorney For Applicant
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
(334) 793-2037 Facsimile

IN THE ALABAMA COURT OF CRIMINAL APPEALS

RALPH WILSON LINGO,
    APPELLANT,

VS.

STATE OF ALABAMA,
    APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CIRCUIT COURT CASE NO. CC-03-599

CRIMINAL APPEALS COURT NO. CR-04-0602

---

APPLICATION FOR REHEARING AND SUPPORTING BRIEF

---

JON-PATRICK AMASON (AMA005)
Attorney For Applicant
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
(334) 793-2037 Facsimile

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................... i

APPLICATION FOR REHEARING...............................ii

TABLE OF CITATIONS AND AUTHORITIES.................... iii

STATEMENT OF THE CASE ................................vii

STATEMENT OF POINTS OF LAW APPLICANT RESPECTFULLY BELIEVES THIS HONORABLE COURT OVERLOOKED OR MISAPPREHENDED........ix

MOTION TO ADOPT STATEMENT OF FACTS.....................  x

STATEMENT OF THE FACTS.................................1

STATEMENT OF THE STANDARD OF REVIEW APPLICABLE TO EACH ISSUE PRESENTED FOR REVIEW...........................  10

SUMMARY OF THE ARGUMENT ..............................  12

ARGUMENT............................................  14

CONCLUSION..........................................36

CERTIFICATE OF SERVICE................................38

i

## APPLICATION FOR REHEARING

COMES NOW the Applicant, RALPH WILSON LINGO, in the above-styled cause, and makes application to this Honorable Court to rehear the above styled matter. Respectfully, the Applicant moves that upon rehearing this matter this Honorable Court reconsider, revise, reverse, and withdraw its judgment rendered on June 10, 2005, affirming the judgment of the Circuit Court of Houston County, Alabama. Further, the Applicant moves this Honorable Court to enter an order reversing its June 10, 2005 judgment and enter judgment and order in favor of the Applicant. Submitted herewith is a brief and argument in support of said application.

Respectfully submitted this the _16_ day of June, 2005.

Jon-Patrick Amason (AMA005)
Attorney For Applicant
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009 Telephone
(334) 793-2037 Facsimile

ii

# TABLE OF AUTHORITIES

Ballenger v. State, 720 So.2d. 1033, 1034(Ala.Crim.App. 1998). . . . . . . . . . . . . . . . . . . . . . 25,28

Breckenridge v. State, 628 So.2d 1012, 1018(Ala.Crim.App. 1993). . . . . . . . . . . . . . . . . . . . . . 27

Burns v. State, 229 Ala. 68, 155 So. 561(1934). . . . . .12

Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). . . . . . . . . .13,29

Daniels v. State, 650 So.2d 544, 552 (Ala.Crim.App. 1994). . . . . . . . . . . . . . . . . . . . . . . . .35

Daniels v. State, 581 So.2d. 536 (Ala.Crim.App. 1990) writ denied. . . . . . . . . . . . . . . . . . 24

Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978). . .20

Ex parte Jefferson, 749 So.2d 406 (Ala. 1999). . . . . 31

Ex parte Myers, 699 So.2d 1285, 1290-91 (Ala. 1997). . 21

Ex parte Stork,475 So.2d 623, 624 (Ala. 1985). cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). . . . . . . . . . . . . . . . . . . . . . 20

Faircloth v. State, 471 So.2d. 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d. 493 (Ala. 1985). . . . . . 25,28

Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). . 12

Gavin v. State, 891 So.2d 907 (Ala.Crim.App. 2003). . .22

Hill v. State, 675 So2d. 484 (Ala.Crim.App. 1995). . . 32

Halford v. State, 629 So.2d 6 (Ala.Crim.App. 1992). . .34

Johnson v. State, 378 So.2d. 1164 (Ala.Crim.App. 1979), cert. Quashed, 378 So.2d. 1173 (Ala. 1979). . . . . . .24

Jones v. State, 727 So.2d 866, 867 (Ala.Crim.App. 1998). . . . . . . . . . . . . . . . . . . . .31,32

Lami v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). . . . . . . . . . . . . . . . . . . . . .12

MacEwan v. State, 701 So.2d 66, 69 (Ala.Crim.App. 1997). . . . . . . . . . . . . . . . . . . . .20,22

Metzger v. State, 565 So.2d 291, 292 (Ala.Crim.App. 1990). . . . . . . . . . . . . . . . . . . . 28

Montgomery v. State, 781 So.2d 1007, 1010 (Ala.Crim.App. 2000). . . . . . . . . . . . . . . . . . . . . 33

Moss v. State, CR-03-1180 (Ala.Crim.App. 2005). . . . 22

Nunn v. State, 697 So.2d. 497, 498 (Ala.Crim.App).

1997). . . . . . . . . . . . . . . . . . . . . .26

Newsome v. State, 570 So.2d 703,710 (Ala.Crim.App.

1989). . . . . . . . . . . . . . . . . . . . . .28

O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.

1992). . . . . . . . . . . . . . . . . . . . . . 26

Poole v. State, 645 So.2d. 330, 331 (Ala.Crim.App.

1994). . . . . . . . . . . . . . . . . . . . . . 24

Similton v. State, 672 So.2d 1363 (Ala.Crim.App.

1995). . . . . . . . . . . . . . . . . . . . . . 32

Strickland v. Washington, 466 U.S. 668 (1984).

. . . . . . . . . . . . . . . . . . . . . .13,26,27

Seaton v. State, 645 So.2d 341,343 (Ala.Crim.App.

1994). . . . . . . . . . . . . . . . . . . . . 24

Thomas v. State, 363 So.2d. 1020 (Ala.Crim.App.

1978). . . . . . . . . . . . . . . . . . . . 13,26,27

Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.

1990). . . . . . . . . . . . . . . . . . . . . .27

Ward v. State, 610 So.2d. 1190, 1191 (Ala.Crim.App.

1992). . . . . . . . . . . . . . . . . . . . . .24

v

<u>Willis v. State</u>, 447 So.2d. 199 (Ala.Crim.App.

1983). . . . . . . . . . . . . . . . . . . . . 26

<u>Wilson v. State</u>, 644 So.2d 1326, 1328 (Ala.Crim.App.

1994). . . . . . . . . . . . . . . . . . . . 34

<u>Young v. State</u>, 283 Ala. 676, 220 So.2d 843 (1969). . 27

## CONSTITUTIONS, STATUTES, RULES & TREATISES

<u>Code of Alabama</u>, 1975, §13A-10-123. . . . . . . 17,19,22

<u>Code of Alabama,</u> 1975, §13A-6-25. . . . . . . . . . 17

<u>Code of Alabama</u>, 1975, §13A-10-124. . . . . . . . .17,18

<u>Code of Alabama</u>, 1975, § 13A-1-9. . . . . . . . . . 21

Alabama Rules of Criminal Procedure, 20.2(a). . . . . 28

Alabama Rules of Criminal Procedure, 24.1(a). . . . . 33

## STATEMENT OF THE CASE

The Appellant, Ralph Wilson Lingo hereinafter referred to as Mr. Lingo, was indicted on September 5, 2003 for the offense of Intimidating a Witness. (C 7-8).

Mr. Lingo was tried on November 3$^{rd}$ and 4$^{th}$, 2004, and December 9$^{th}$, 2004, before the Hon. Jerry White, Circuit Court Judge, Houston County Alabama (R 2), and convicted of Intimidating a Witness by a jury via the indictment.

Mr. Lingo filed a Motion for New Trial on November 5$^{th}$, 2004, (C 195-201), and the Motion for New Trial was denied on November 18$^{th}$, 2004 (C 203). Mr. Lingo also made a Motion for a Judgment of Acquittal on November 3$^{rd}$, 2004, (R 73), and the Motion for Judgment of Acquittal was denied on November 3$^{rd}$, 2004 (C 193).

Mr. Lingo was sentenced on December 9, 2004, to the penitentiary of the State of Alabama for a period of twenty years. (C 4-5). Mr. Lingo was ordered to pay a fine in the amount of $10,000.00, all of the costs of court, which included a $1,000.00 payment to the Victim's Compensation Assessment. (C 4-5).

vii

The Defendant gave oral Notice of Appeal on December 9th,
2004, (C 6). This Appeal follows.

## STATEMENT OF POINTS OF LAW APPLICANT RESPECTFULLY BELIEVES THIS HONORABLE COURT OVERLOOKED OR MISAPPREHENDED

The Applicant respectfully submits that this Honorable Court overlooked or misapprehended the following points of law when initially reviewing the Appeal in this cause, to-wit:

WHETHER THE TRIAL COURT ERRED IN DENYING TO GIVE A JURY INSTRUCTION ON THE LESSOR INCLUDED OFFENSES OF CRIMINAL COERCION AND TAMPERING WITH A WITNESS? **YES**

Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). Lami v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). Burns v. State, 229 Ala. 68, 155 So. 561(1934)

WHETHER THERE WAS INSUFFICIENT EVIDENCE TO WARRANT A MOTION FOR JUDGMENT OF ACQIUTTAL OF INTIMIDATING A WITNESS? **YES**

Thomas v.State, 363 So.2d 1020 (Ala.Crim.App. 1978) Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).

WHETHER TRIAL COUNSEL'S ASSISTANCE AT TRIAL WAS INEFFECTIVE? **YES**

Strickland v. Washington, 466 U.S. 668 (1984).

ix

## MOTION TO ADOPT APPLICANT'S STATEMENT OF FACTS
## PURSUANT TO RULES 39(d)(5), 39(k) and 40(e)
## ALABAMA RULES OF APPELLATE PROCEDURE

COMES NOW the Applicant, RALPH WILSON LINGO, in the above-styled cause, by and through the undersigned counsel and hereby moves this Honorable Court pursuant to Rules 39(d)(5), 39(k) and 40(e) of the Alabama Rules of Appellate Procedure to adopt the Applicant's "Statement of Facts" as set out herein and substitute them in the stead of the statement of facts issued in its opinion and judgment of June 10, 2005, in this matter.

Respectfully submitted this the _16_ day of June, 2005.

Jon-Patrick Amason (AMA005)
Attorney For Applicant
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009 Telephone
(334) 793-2037 Facsimile

X

## STATEMENT OF THE FACTS

This matter was tried before the Hon. Judge Jerry White, Circuit Judge, presiding, on November 3$^{rd}$ through November 4$^{th}$, 2004, and December 9$^{th}$, 2004. The Hon. Henry C. Binford, Assistant District Attorney for the Circuit represented the State. The Hon. Tammy Stinson, Attorney at Law, Dothan, represented the Defendant, Mr. Lingo.

The State called its first witness, Sgt. Tony Luker, who was the investigating officer with the Dothan Police department. (R 24). Sergeant Luker testified that he was involved on a case where Ralph Lingo was accused of Intimidating a Witness. (R 24). Sergeant Luker testified further that he had interviewed Debra Tice Blackstone and Alicia Roberts during the course of his investigation. (R 25).

Sergeant Luker stated that Ms. Blackstone called the Police after receiving a package and a patrol officer came out and took an initial report and took the documents from her. He further stated that he had obtained the documents from the evidence vault. (R 25).

1

The State's Attorney asked Sergeant Luker the following question:

Q. What was the nature of Ms. Blackstone's complaint when she met with you?

A. Whenever I talked with her, she said that actually, she had taken a warrant out on Mr. Lingo for harassing communications - a city warrant in the city court. After she did that, he was, of course, arrested. And then she received a letter that contained naked pictures of her.

Sergeant Luker then stated that after interviewing Ms. Blackstone and Ms. Roberts he signed a warrant for the arrest of Mr. Lingo for the charge of Intimidating a Witness. (R 27-28). Sergeant Luker further testified that the documents at trial were the same documents he had recieved from the evidence vault. He also stated that Ms. Blackstone was shown these documents and confirmed that they were the same documents that she had received. (R 28).

Next the Defendant, Mr. Lingo, stood up and said that he would like to fire his attorney. Mr. Lingo stated that he had documents that he would like to enter to the court, and that he was not prepared for this trial because the jail would not let him take a bath, shave, have his legal

2

time with his attorney and that the State did not have any of his witnesses present. Mr. Lingo continued by stating that his home was searched in Henry County and that he was arrested in Henry County by a City of Dothan police officer without a Henry County Deputy present. (R 31).

Mr. Lingo stated further that he did not feel like he was being done right and that he wanted to enter some documents into the Court, whereby the Judge denied his motion. (R 32-33).

The state's next witness called was Ms. Debra Blackstone. She testified that Mr. Lingo was her ex-husband and that they had been married in 1989 and divorced in 1997. (R 33-34). Ms. Blackstone stated that she had signed a warrant against Mr. Lingo on April 24$^{th}$, 2003 for harassing communications in the City of Dothan Municipal Court. She also testified that about a week later she received a letter at her home from some unidentified deliveryman. (R 34).

The State's Attorney showed Ms. Blackstone the documents and asked her if they were nude photographs of her, which she answered yes. She then testified further that Mr. Lingo had taken these pictures of her and that no

3

one else had access to them as far as she knew. (R 35). Ms. Blackstone was then shown the entire document and asked if this was the exact document that she had received at her home, at which time she responded that it was the same document. (R 36).

Ms. Blackstone also stated that when she received the documents she was overwhelmed because she did not know what Mr. Lingo would do. She also stated that it made her afraid to go to Court but she later went to Court anyway whereby Mr. Lingo was convicted of harassing communications. (R 37). She then stated that when she received the documents she called the police right away and that a patrol officer came out and took a report at her house. At that time she gave the documents to the patrol officer. (R 39). Ms. Blackstone then testified that the documents were in the same condition as they were when she received them at her house. (R 40).

The State then called Alicia Roberts as their next witness. Ms. Roberts testified that she had worked for Mr. Lingo to help fill out paper work and clean his house as well as other odd jobs. The State's attorney then showed Ms. Roberts the documents that were admitted into evidence

and asked her if she recognized them. Ms. Roberts said that she did recognize them because she had written the document. (R 47).

The State's Attorney asked Ms. Roberts the following questions:

Q. And where did you write that?

A. At his home.

Q. Are these your words?

A. Those are his words.

Q. How do you know that these are his words?

A. He told me - - he told me what to write because he couldn't read or write.

Q. Did you write down what he asked you to write?

A. Yes, sir.

Ms. Roberts further testified that she wrote the letter while she was an employee of Mr. Lingo and that she did not add anything to the letter of her own. She also stated that she did not have an axe to grind with Ms. Blackstone and she just did it for Mr. Lingo because she thought it was just a marital thing. (R 48-49).

The state then called Ed Sasser as their next witness. Mr. Sasser testified that he was an investigator with the

Alabama Department of Corrections. (R 54). Mr. Sasser stated that he investigated a complaint concerning an inmate by the name of Ralph Lingo at Bullock County Correctional Facility. (R 54). Mr. Sasser told the State's Attorney that he was investigating a complaint concerning Mr. Lingo and that he was not working on behalf of the Dothan Police Department. He also stated that he had not been contacted by any D.A.'s office to go and investigate the complaint. (R 55).

Mr. Sasser then told the Court that he had went to Bullock County Correctional Facility to speak with Mr. Lingo regarding the complaint. He testified that he read Mr. Lingo his rights and that Mr. Lingo freely and voluntarily waived his rights by signing a Miranda waiver. Mr. Sasser then proceeded to explain the nature of Mr. Lingo's statement that he had taken. (R 56-57). Mrs. Stinson timely objected to the statement and requested that the statement be suppressed due to the fact that it was not relevant to the case and that Mr. Lingo could not read or write so he did not know what he was signing. At this time the Court heard arguments from both sides outside the

presence of the jury and overruled the Defense's objection.
(R 58-67).

Mr. Sasser continued to explain the statement that he
had taken from Mr. Lingo and said that they talked about
the complaint. He also stated that he asked Mr. Lingo about
the charge of Intimidating a Witness and asked him if he
had ever sent naked pictures to Ms. Blackstone at her
house. Mr. Sasser said that Mr. Lingo told him that the
deliveryman did not know what was inside the envelope but
Ms. Blackstone did. (R 68-69). Mr. Sasser then said that he
asked Mr. Lingo why he did that, and at that time Mr.
Sasser told him that he had been informed of his rights and
that they could stop at any time. Mr. Lingo then stated
that he would like to stop now. (R 69). The State then
rested.

Mrs. Stinson subsequently made a Motion for Judgment of
Acquittal. Mrs. Stinson argued that Mr. Lingo has been
charged with Intimidating a Witness, and that the State has
not met the burden of proof as to the elements of
Intimidating a Witness. (R 73). Mrs. Stinson argued that
Mr. Lingo might have taken things further than he should
have, but he was only trying to resolve the problems he had

7

with his ex-wife. Mrs. Stinson stated that the elements of Intimidating a Witness under 13A-10-123 are that the State must show one of the following: 1) That Mr. Lingo had to corruptly influence the testimony of a witness or a person he believes will be called as a witness; 2) That Mr. Lingo tried to induce that person to avoid legal process, summoning them to testify; or 3) That he induced that person to absent themself from an official proceeding. (R 73). Mrs. Stinson further argued that the State has simply not proven any of the three and the defendant should be acquitted.

The Trial Court then looked at the evidence in front of the court and agreed that there was nothing in the letter to show that Mr. Lingo's conduct fell into the parameters of Intimidating a Witness. (R 74-75). The Court then heard arguments from the State in rebuttal to Mrs. Stinson's argument at which time the trial court denied the motion for judgment of acquittal. (R 82).

The court then allowed closing arguments by both Defense counsel and the State. The Court then charged the jury as to the offense of Intimidating a Witness and the elements thereof. After the Court charged the jury Mrs.

8

Stinson timely objected to the court's refusal to give a jury charge on the offenses of Criminal Coercion and Tampering with a Witness, which should have been given as lesser-included offenses of Intimidating a Witness. (R 95). The Defendant then proceeded to address the court as to many issues that he felt needed to be discussed regarding his case, and after he had finished the Court overruled his objections. (R 96-99)

The Houston County Jury found the Defendant guilty of Intimidating a Witness. (R 102). The Court then set a sentencing hearing for December 9, 2004 upon the request of Mrs. Stinson. On December 9, 2004 Mr. Lingo requested to address the Court again to state objections to his trial, which after a lengthy recital the Court then sentenced the Defendant to twenty years in the penitentiary of the State of Alabama, a fine of $10,000 dollars and all cost of court, which will include a $1,000 Victim's Compensation assessment. (R 117).

Upon sentencing by the Court the Defendant then gave oral notice of Appeal. (R 117).

9

## STATEMENT OF THE STANDARD OF REVIEW
## APPLICABLE TO EACH ISSUE PRESENTED FOR REVIEW

"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. *Fulghum v. State,* 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. *Lami v. State,* 43 Ala. App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. *Burns v. State,* 229 Ala. 68, 155 So. 561(1934)."

The trial court's denial of a motion for a judgment of acquittal must be reviewed by, "determining whether there existed legal evidence before the jury, at the time the

10

motion was made, from which the jury by fair inference could have found the appellant guilty." *Thomas v. State*, 363 So.2d 1020 (Ala.Crim.App. 1978). "In determining the sufficiency of the evidence to support the verdict of the jury and the judgment of the trial court, we view the evidence in the light most favorable to the prosecution." *Cumbo v. State*, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).

"When reviewing a claim of ineffective assistance of counsel we apply the two-pronged standard of review first announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of his counsel's performance."

## SUMMARY OF THE ARGUMENT

Mr. Lingo argues that the trial court erred in refusing to give a jury instruction as to the lesser-included offenses of Criminal Coercion and Tampering with a Witness. Specifically, Mr. Lingo argues that the state failed to prove a prima facie case against him on the charge of Intimidating a Witness. Mr. Lingo argues that the State failed to prove that he attempted to corruptly influence the witness, attempted to induce the witness to avoid legal process, or that he attempted to induce a witness to absent him or her self from an official proceeding that they had been summoned to.

Mr. Lingo further argues that the trial court erred in denying his motion for judgment of acquittal. In particular, he argues that the evidence submitted at trial was merely circumstantial and that the evidence was insufficient to warrant a conviction on the charge of Intimidating a Witness. Mr. Lingo contends that the evidence presented at trial did not prove a prima facie case for the State and that the Judge should have granted his motion for judgment of acquittal.

Mr. Lingo also argues that he was denied the effective assistance of counsel at trial. Mr. Lingo specifically asserts that he requested for his attorney to call certain witnesses on his behalf at trial and his attorney refused to do so. Mr. Lingo also states that he asked his attorney to question the officer on the issues of the validity of his arrest and the search of his home, which trial counsel did not do. Mr. Lingo argues that had he been adequately represented at trial then he probably would have had a different outcome to his case.

## ARGUMENT

### ISSUE ONE

**WHETHER THE TRIAL COURT ERRED IN DENYING TO GIVE A JURY INSTRUCTION ON THE LESSOR INCLUDED OFFENSES OF CRIMINAL COERCION AND TAMPERING WITH A WITNESS? <u>YES</u>**

The Appellant, Ralph Lingo, contends that the trial court erred in refusing to instruct the jury on the elements of the crime of Criminal Coercion and Tampering with a Witness, arguing that they are lesser-included offenses of Intimidating a Witness. The trial court denied the Defense a jury instruction on Criminal Coercion and Tampering with a Witness. (R 95-99).

The Appellant, through his attorney, moved for a judgment of acquittal at the end of the State's case in chief and the trial court noted that the defense counsel had argued for lesser-included offenses. (R 80). Defense counsel also timely objected to the court's refusal to give a jury charge on the lesser-included offenses of Criminal Coercion and Tampering with a Witness, which the trial court overruled. (R 99). The Appellant argues that since there was no evidence presented at trial to prove

14

that he tried to corruptly influence the testimony of a witness or person he believes will be called as a witness; or that he tried to induce that person to avoid legal process; or that he tried to induce that person to absent themselves from an official proceeding pursuant to 13A-10-123 Code of Alabama 1975, which is Intimidating a Witness, then he should have been entitled to a jury charge on the lesser-included offenses of Criminal Coercion and Tampering with a Witness.

Pursuant to Section 13A-6-25 Code of Alabama 1975 and Section 13A-10-124 Code of Alabama 1975 the Trial Court should have charged with the jury charge of Criminal Coercion and Tampering With a Witness. The Code of Alabama 1975, Section 13A-6-25 states as follows:

(a) A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act.

(b) Criminal Coercion is a Class A misdemeanor;

And Section 13A-10-124 Code of Alabama 1975, on Tampering with a Witness states as follows:

a) A person commits the crime of tampering with a witness if he attempts to induce a witness or a person he believes will be called as a witness in any official proceeding to:

(1) Testify falsely or unlawfully withhold testimony; or

(2) Absent himself from any official proceeding to which he has been legally summoned.

(b) Tampering with a Witness is a Class B misdemeanor.

In the instant case the Appellant's trial counsel argued in her motion for judgment of acquittal that there was no evidence presented at trial to prove that the Appellant was guilty of Intimidating a Witness. Trial counsel simply stated that even though the letter that the Appellant sent to his ex-wife was a bit harsh, in no way did it rise to the level of Intimidating a Witness. (R 74) The Appellant was simply trying to resolve the issue with his ex-wife, and in no way did he try to corruptly influence her testimony, or induce her to absent herself from a proceeding, or to avoid legal process. (R 74).

Furthermore, the Trial Court stated that it did not see how the conduct of the Defendant satisfied any of the

16

elements of 13A-10-123 Code of Alabama 1975. The trial

Court stated:

> The statute on Intimidating a witness, in order to
> constitute the offense of Intimidating a witness, it
> says that a person commits the crime of Intimidating a
> witness if he attempts by use of a threat directed to
> a witness or a person he believes will be called as a
> witness in any official proceedings to corruptly
> influence the testimony of that person. I don't see in
> here where - in this letter where there's any attempt
> to corrupt her testimony -- or to avoid legal process
> summoning her to testify - and I don't see any demand
> that that be done - or induce that person to absent
> herself from an official proceeding to which she has
> been legally summoned. There's nothing in here - the
> threats that are made are concerning that legal
> proceeding is, I want you to drop that case… I will
> never contact you again. You drop your phony warrant
> or you will be sued at the right time and arrested
> with warrants against you… I guess my whole problem is
> that I don't see where this fits into any of these
> one, two, or three.

(R 74-75).

The Trial Court refused to give the jury instructions

on Criminal Coercion and Tampering with a Witness because

the State argued that the letter taken as a whole could be

construed as threat and that the jury should decide if the

Appellant intended to intimidate a witness according to the

statute. The Trial Court stated that it just seemed like it

would be reversible error if they instructed the jury on

the offenses of Criminal Coercion and Tampering with a

17

Witness. However, there was no evidence admitted or testimony given that the appellant's conduct rose to the level set out in the statute for Intimidating a Witness.

The Appellant contends that although there was testimony that the Appellant threatened Ms. Blackstone, the ultimate decision of his conduct should have been given to the jury under the jury charge of Criminal Coercion and Tampering with a Witness.

"A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.' *MacEwan v. State*, 701 So.2d 66, 69 (Ala.Crim.App. 1997). An accused has the right to have the jury charged on "any material hypothesis which the evidence in his favor tends to establish.'" *Ex parte Stork*, 475 So.2d 623, 624 (Ala. 1985). 'Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence however weak, insufficient, or doubtful in credibility,' *Ex parte Chavers*, 361 So.2d 1106, 1107 (Ala. 1978), 'even if the evidence supporting the charge is offered by the State.' *Ex*

18

parte *Myers*, 699 So.2d 1285, 1290-91 (Ala. 1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, the court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'"

Therefore a determination of whether under the facts of the instant case, there is a reasonable theory from the evidence to support the theory that Criminal Coercion and Tampering with a Witness were lesser-included offenses of Intimidating a Witness needs to be made.

Section 13A-1-9, Ala. Code 1975, provides, in pertinent part:

(a)    A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:

(1)    It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or

. . . ;

(4)    It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."

*Moss v. State*, CR-03-1180 (Ala.Crim.App. 2005).

It seems to be well settled that "a defendant is entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that would support the lesser included offenses." *Gavin v. State*, 891 So.2d 907 (Ala.Crim.App. 2003); *MacEwan v. State*, 701 So.2d 66, 69 (Ala.Crim.App. 1997).

The Appellant argues that had the trial court instructed the jury on Criminal Coercion and Tampering with a Witness as a lesser-included offense, then the jury may have found the defendant guilty of one of these lesser offenses rather than Intimidating a Witness under Section 13A-10-123.

It is clear that the evidence presented in this case at trial would have supported instructions on Criminal Coercion and Tampering with a Witness as lesser-included offenses of the offense of Intimidating a Witness, and the trial court committed reversible error by refusing to give such instructions.

<u>ISSUE TWO</u>

**WHETHER THERE WAS INSUFFICIENT EVIDENCE TO WARRANT A MOTION FOR JUDGMENT OF ACQIUTTAL OF INTIMIDATING A WITNESS? <u>YES</u>**

The second issue presented for review by the Appellant pertains to the sufficiency of the evidence and whether the evidence warrants the Appellant's conviction for Intimidating a Witness. The Appellant asserts that the evidence was insufficient to sustain the conviction. Once the State rested, defense counsel moved for a judgment of acquittal based on the fact that the State had failed to prove a prima facie case on the charge in the indictment. The court denied the motion for judgment of acquittal after supporting arguments were made, and then the defense rested.

The Appellant argues that the State failed to prove the charge in the indictment, specifically, the part of the indictment that states that the Appellant attempted by use of a threat to a witness or person he believed would be called as a witness, to corruptly influence their testimony, to induce them to avoid legal process summoning them to testify, or to induce them to absent themselves from an official proceeding that they had been

21

summoned to. The State failed to prove beyond a reasonable doubt that the Appellant intended to intimidate a witness.

If the Appellant raises an argument that is based on a sufficiency of evidence issue, then the Court in reviewing that issue must view the evidence presented at trial in a light most favorable to the state. *Seaton v. State*, 645 So.2d 341,343 (Ala.Crim.App. 1994); *Daniels v. State*, 581 So.2d. 536 (Ala.Crim.App. 1990) writ denied; *Poole v. State*, 645 So.2d. 330, 331 (Ala.Crim.App. 1994). Furthermore, " a verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." *Ward v. State*, 610 So.2d. 1190, 1191 (Ala.Crim.App. 1992); *Johnson v. State*, 378 So.2d. 1164 (Ala.Crim.App. 1979), cert. Quashed, 378 So.2d. 1173 (Ala. 1979).

The Appellant contends that there was insufficient evidence to support his conviction. The Appellant was convicted of Intimidating a Witness. The appellant argues

22

that the State did not prove any of the three elements of Intimidating a Witness. The trial Court even states that they do not see any evidence in the letter that shows that the appellant tried to corruptly influence the testimony of a witness, induce the witness to avoid legal process, or induce the witness to absent themself from an official proceeding. (R 74-75) The evidence in this case was mostly circumstantial and there was no evidence offered to show that the appellant intended to intimidate a state witness. This Court has previously addressed the viewpoint an appellate must follow in reviewing a conviction based on sufficiency of the evidence.

"'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.'" *Ballenger v. State*, 720 So.2d. 1033, 1034 (Ala.Crim.App. 1998); (quoting *Faircloth v. State*, 471 So.2d. 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d. 493 (Ala. 1985)). " The test used in determining the sufficiency of evidence to sustain a conviction is

whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt." *Nunn v. State*, 697 So.2d. 497, 498 (Ala.Crim.App. 1997) (quoting *O'Neal v. State*, 602 So.2d 462, 464 (Ala.Crim.App. 1992)). It is clear in the present case that based on the facts a rational fact finder could not find the appellant guilty of Intimidating a Witness because the State failed to prove any of the elements of the offense that the appellant was charged with.

The trial court's denial of a motion for judgment of acquittal must be reviewed by determining if there was legal evidence in existence before the jury at the time the motion was made, in which a jury, by fair inference, could have found the appellant guilty. *Thomas v. State*, 363 So.2d. 1020 (Ala.Crim.App. 1978). The appellate court, in reviewing the denial of a judgment of acquittal, will only determine if the legal evidence presented was such that a jury could have found the defendant guilty beyond a reasonable doubt. *Willis v. State*, 447 So.2d. 199 (Ala.Crim.App. 1983).

24

It is customary that when a defendant moves for a judgment of acquittal, that the trial court must examine the evidence in order to determine its sufficiency in light of the charges contained in the indictment. *Ward v. State*, 557 So.2d 848, 850 (Ala.Crim.App. 1990).

The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. *Thomas v. State*, 363 So.2d 1020 (Ala.Crim.App. 1978).

It has also been stated that a motion for judgment of acquittal tests the sufficiency of the evidence to support a conviction, "when the evidence raises a question of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal by the trial court does not constitute error. *Breckenridge v. State*, 628 So.2d 1012, 1018 (Ala.Crim.App. 1993); *Young v. State*, 283 Ala. 676, 220 So.2d 843 (1969). This is not the case here because the evidence was insufficient to prove that the appellant was guilty of the offense he was charged with. However, such a

determination and ruling by a trial court would not prevent the appellate court from reviewing the issue. *Newsome v. State*, 570 So.2d 703,710 (Ala.Crim.App. 1989). The review by an appellate court requires that " in determining the sufficiency of the evidence to sustain a conviction, the reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." *Ballenger v. State*, 720 So.2d. 1033, 1034 (Ala.Crim.App. 1998); (quoting *Faircloth v. State*, 471 So.2d. 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d. 493 (Ala. 1985)). Furthermore, if an appellate court does discover that there is the existence of conflicting evidence, then it will prevent any appellate review of the evidence or its sufficiency. *Metzger v. State*, 565 So.2d 291, 292 (Ala.Crim.App. 1990).

The Appellant understands that it is necessary to protect the record for review, and that to protect this record for review the defendant must file a motion for new trial or a motion for judgment of acquittal. Rule 20.2(a), Ala.R.Crim.P. In the case at bar, the Appellant filed a motion for judgment of acquittal. (R 73).

Therefore, the question to be answered is whether a jury might find that the evidence excluded every reasonable hypothesis except that of guilt? *Cumbo v. State*, 368 So.2d 871 (Ala.Crim.App. 1978), cert denied, 368 So.2d 877 (Ala. 1979). The Appellant contends that a jury could not reasonably do so here, and that the Appellant's case should be reversed and remanded with the appropriate instructions.

## ISSUE THREE

### WHETHER TRIAL COUNSEL'S ASSISTANCE AT TRIAL WAS INEFFECTIVE? YES

Appellant, Ralph Lingo, contends that he was denied the effective assistance of counsel at trial. Mr. Lingo argues that during his trial he made an attempt to fire his attorney because of her failure to investigate his case and for her failure to cross examine the State's witnesses as to pertinent information that might have led to his acquittal. (R 31-32).

The appellant filed a motion for new trial on November 10, 2004 stating the reasons that he should be entitled to a new trial. (C 195-201). Mr. Lingo states in his motion that his attorney had misled him and would lie to him about his case, and he states that his attorney would not cross-examine any of the witnesses as to certain areas he believed to be relevant. (C 195-196) Mr. Lingo also says that his attorney had not informed him that none of witnesses would be called at trial; he also claims that his attorney would not question the officers about him being arrested outside of the county that issued the arrest warrant. Mr. Lingo also contends that he asked his attorney

28

to bring up the issue of his home being searched without a valid search warrant and she refused to do so. (C 196)

Mr. Lingo also states in his motion that his attorney did not question the jury properly because some of the jurors were co-workers of the victim. (C 197). Mr. Lingo further argues that he had asked his attorney several times to withdraw from his case because she said not to call him and to only write her once a month, and that she would only get prepared for trial right before trial. Also, he brings up the fact that his attorney would not question the victim about her common law marriage to Mr. Lingo, which would have brought her testimony under the spousal privilege not to testify against your spouse. (C 198-199). Thus, for the reasons set out above the appellant believes that his trial counsel denied him the right to effective assistance that was necessary for him to get a fair trial.

The appellant argues that even though his motion for new trial was not extremely specific and was not supported with affidavits he is not precluded from review by this court under *Ex parte Jefferson*, 749 So.2d 406 (Ala. 1999). "Normally, a defendant's motion for a new trial requires verification in the form of an affidavit. *Jones v. State*,

727 So.2d 866, 867 (Ala.Crim.App. 1998) (citing *Hill v. State*, 675 So2d. 484 (Ala.Crim.App. 1995).

In *Similton v. State*, 672 So.2d 1363 (Ala.Crim.App. 1995) the Court of Criminal Appeals said that an unverified motion were only bare allegations and could not be considered as evidence of the facts alleged. However, in *Hill v. State*, 675 So2d. 484 (Ala.Crim.App. 1995), "the Court of Criminal Appeals changed their holding from *Similton* and reversed the trial court's denial of a motion for new trial and remanded the case to the trial court because the allegations of ineffective assistance of counsel were supported by facts contained in the record on appeal. Supporting affidavits or other evidence is not necessary where the grounds relied on in the motion for new trial are shown by the record." *Hill v. State*, supra.

To analogize with *Hill*, in the present case the allegations relied on by Mr. Lingo can be supported by the actual trial transcript. The record reflects that during the trial the allegations that Mr. Lingo asserts can be proven very easily simply by reading the transcript and noticing that the counsel at trial did not in fact do what a reasonable attorney would have done. Furthermore, Mr.

30

Lingo argues that, "If the record on appeal shows that the trial counsel's assistance at trial was so deficient as to fall below an objective standard of reasonableness, as the record here reflects, there is no need for a more specific motion." Therefore, in the present case Mr. Lingo's motion for new trial that raises allegations of ineffective assistance of counsel was sufficient to preserve the issue for appeal.

The appellant is aware that in order to raise the issue of ineffective assistance of counsel on appeal that he must first present the issue to the trial court in a motion for new trial. *Montgomery v. State*, 781 So.2d 1007, 1010 (Ala.Crim.App. 2000). Mr. Lingo did file a motion for new trial on November 5, 2004. (C 195) He filed the motion before his sentence date and it was ruled on before his sentence date, which in effect deems the motion to have been filed on the date of sentencing, and denied by operation of law. . Rule 24.1(a), Ala.R.Crim.P.

In order for an appellant to prevail on a claim for ineffective assistance of counsel they must satisfy the test set by the Supreme Court which is:

31

1.   An appellant must show that his counsel's

     performance at trial was deficient and,

2.   That he was prejudiced by the deficient performance.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984).

   In order to prove the first element of the test the

appellant must prove that his counsel made errors that

were so agregious that he was denied the representation

that is guaranteed him under the Sixth Amendment. The

appellant must also show that he was prejudiced by the

deficient performance by proving that his counsel made

errors that were so serious that he was deprived of a

fair trial. *Id* at 687. In proving the elements of the

test the appellant has the burden of proof and must

satisfy the test with by a preponderance of the evidence.

*Wilson v. State*, 644 So.2d 1326, 1328 (Ala.Crim.App.

1994). However, there is a presumption that trial counsel

did provide the appellant with effective assistance at

trial. *Halford v. State*, 629 So.2d 6 (Ala.Crim.App.

1992).

   In a case such as this the performance element is an

objective standard that is, "whether counsel's

assistance, judged under prevailing professional norms was reasonable considering the circumstances." *Daniels v. State*, 650 So.2d 544, 552 (Ala.Crim.App. 1994) (quoting *Strickland*, supra). " A court in deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, supra. The prejudice component requires that there be proof that counsel's errors at trial were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, supra.

When asserting an ineffective of counsel claim the Defendant has to prove that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the case would have been different. Even a reasonable probability is sufficient to undermine confidence in the outcome of the case. Id at 696.

In the case at bar Mr. Lingo argues that his trial counsel's performance at trial was deficient. Mr. Lingo points to the record and alleges in his motion for new trial that his attorney did not call any witnesses on his

33

behalf like he requested, his attorney would not cross examine any of the witnesses on issues that would have helped his case significantly. (R 195-201) Specifically, he asserts that his attorney would not question the officer that arrested him on the grounds of the validity of the arrest warrant whereby he was arrested in Henry County with a Houston County warrant without said warrant being domesticated. (R 31-32). Mr. Lingo believes that his Constitutional right to have the effective assistance of counsel has been violated. Mr. Lingo further contends that his attorney failed to question the victim as to her common law marriage with the Appellant, which could preclude her testimony against Mr. Lingo. (C 199).

Mr. Lingo also states that he did not have any time to talk with his attorney, that she did not want him to call her, and that he had requested that she withdraw from his case and the court would not allow it. (R 31-32). Furthermore, Mr. Lingo asserts that because of the above mentioned errors performed by his attorney he was prejudiced by the deficient acts of his trial counsel, because if counsel had of investigated his case more

professionally then the outcome of his case would have been different.

Therefore, the fact that Mr. Lingo's counsel at trial failed to perform many of the ministerial acts performed by attorney's at trial, he was rendered helpless and without the effective assistance of counsel. The record in this case shows that Mr. Lingo requested his attorney to perform a number of acts pertaining to his case in which the trial counsel simply had refused to perform. The mere fact that the trial counsel was requested to perform these functions and the record supporting the fact that they were not done proves that the trial counsel's performance was deficient and that because of this deficiency Mr. Lingo was prejudiced by an unjust result at his trial.

Mr. Lingo prays this Honorable Court will grant him relief by reversing and remanding this matter to the Trial Court with instructions to enter a judgment of acquittal, or in the alternative, reverse the trial court and render a verdict of not guilty.

## CONCLUSION

Mr. Lingo submits to this Honorable Court that the Trial Court erred in refusing to give a jury instruction as to the offenses of Criminal Coercion and Tampering with a Witness, which should have been lesser-included offenses of Intimidating a Witness.

Mr. Lingo further contends that his motion for judgment of acquittal should have been granted due to the fact that the State failed to meet their burden in proving a prima facie case against him. The State did not produce any evidence or testimony at trial that would prove that the conduct of Mr. Lingo was commensurate with the conduct required to be guilty of the offense of Intimidating a Witness.

Mr. Lingo also asserts that he was prejudiced by his attorney and if he had been afforded the effective assistance of counsel at trial then the result of his case would have been different. Mr. Lingo states several times in the record that he was unhappy with the assistance that he was being given and that his attorney would not proceed with his case in the manner that a reasonable attorney would have.

Wherefore, Mr. Lingo prays this Honorable Court will grant him relief by reversing and remanding this matter to the Trial Court with instructions to enter a judgment of acquittal, or in the alternative, reverse the trial court and render a verdict of not guilty.

Respectfully submitted this the ___/6___ day of _June_____, 2005.


_____
Jon Patrick Amason, Attorney at Law (AMA 005)
Ala. Bar # ASB-1057-T78A
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT

37

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above
and foregoing Application For Rehearing and Supporting
Brief upon the Attorney General for the State of Alabama,
Alabama State House, 11 South Union Street, Montgomery, AL
36130, by placing a copy of the same in the United States
Mail, postage prepaid and properly addressed to him on this
the _16_ day of June, 2005.

_____
Jon-Patrick Amason, Attorney at Law

# IN THE SUPREME COURT OF ALABAMA



August 12, 2005

**1041488**

Ex parte Ralph Wilson Lingo.  PETITION FOR WRIT OF CERTIORARI TO THE
COURT OF CRIMINAL APPEALS  (In re: Ralph Wilson Lingo v. State of Alabama)
(Houston Circuit Court: CC03-599; Criminal Appeals : CR-04-0602).

## <u>CERTIFICATE OF JUDGMENT</u>

### <u>Writ Denied</u>

    The above cause having been duly submitted, IT IS CONSIDERED AND
ORDERED that the petition for writ of certiorari is denied.
    LYONS, J. -  Nabers, C.J., and Woodall, Smith, and Parker, JJ., concur.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court
of Alabama, do hereby certify that the foregoing is
a full, true and correct copy of the instrument(s)
herewith set out as same appear(s) of record in said
Court.
Witness my hand this _12th_ day of _August,_ _2005_

*Robert G Esdale Sr*

**Clerk, Supreme Court of Alabama**

EXHIBIT
F
PENGAD 800-631-6989

/bb

*Scales*
*75586*

*7/15*

IN THE SUPREME COURT OF ALABAMA

---

EX PARTE: RALPH WILSON LINGO

---

RALPH WILSON LINGO,
APPELLANT

V.

STATE OF ALABAMA,
APPELLEE

PETITION FOR WRIT OF CERTIORARI TO
THE SUPREME COURT OF ALABAMA

---

AN APPEAL FROM THE CIRCUIT COURT

HOUSTON COUNTY, ALABAMA

CIRCUIT COURT CASE NO. CC-03-599

CRIMINAL APPEALS COURT NO. CR-04-0602

---

JON-PATRICK AMASON (AMA 005)
ATTORNEY FOR APPELLANT
BRANTLEY & MCLENDON, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, AL  36303
(334) 793-9009

**RALPH WILSON LINGO,**               *

    **PETITIONER,**               *

**V.**                                *

**STATE OF ALABAMA,**                 *

    **RESPONDENT.**               *

**TO THE SUPREME COURT OF ALABAMA:**

COMES NOW your petitioner, RALPH WILSON LINGO, and petitions this Honorable Court for a Writ of Certiorari to issue to the Court of Criminal Appeals in the above styled cause, pursuant to Rule 39, Alabama Rules of Criminal Procedure, and as grounds for said petition shows as the following:

    1.    The Appellant, Mr. Lingo, was convicted on the charge of Intimidating a Witness in the Circuit Court of Houston County. The basis for the charge in this case was a letter that the Appellant sent to his ex-wife that contained some threatening

2

language and photographs. Mr. Lingo was tried on November 3$^{rd}$ and 4$^{th}$, 2004, and December 9$^{th}$, 2004, before the Hon. Jerry White, Circuit Court Judge, Houston County Alabama, and convicted of Intimidating a Witness by a jury via the indictment. Mr. Lingo filed a Motion for New Trial on November 5$^{th}$, 2004, and the Motion for New Trial was denied on November 18$^{th}$, 2004. Mr. Lingo also made a Motion for a Judgment of Acquittal on November 3$^{rd}$, 2004, and the Motion for Judgment of Acquittal was denied on November 3$^{rd}$, 2004. Mr. Lingo argues that the trial court erred in refusing to give a jury instruction as to the lesser-included offenses of Criminal Coercion and Tampering with a Witness. Specifically, Mr. Lingo argues that the state failed to prove a prima facie case against him on the charge of Intimidating a Witness. Mr. Lingo also argues that the trial court

3

erred in denying his motion for judgment of acquittal. In particular, he argues that the evidence submitted at trial was merely circumstantial and that the evidence was insufficient to warrant a conviction on the charge of Intimidating a Witness. Mr. Lingo further argues that he was denied the effective assistance of counsel at trial.

2.    Mr. Lingo was sentenced on December 9, 2004, to the penitentiary of the State of Alabama for a period of twenty years. The Defendant gave oral Notice of Appeal on December 9th, 2004 and Appellant's brief was filed with the Court of Criminal Appeals on April 15, 2005. This case was affirmed by memorandum opinion on June 10, 2005 and Appellant filed his Application For Rehearing on June 16, 2005. Appellant's Application For Rehearing was denied on June 24, 2005. This Petition for

Writ of Certiorari follows said denial of Application for Rehearing.

3.      That petitioner has attached a copy of the opinion of the Court of Criminal Appeals, which was provided to him as Exhibit "A".

4.      That the Petitioner has attached the order of the Court of Criminal Appeals denying his application for rehearing as Exhibit "B" to this petition;

5.      (a) Petitioner seeks to have controlling Supreme Court cases overruled, which were followed in the decision of the court of appeals.

(b) The second basis of this petition for the writ is that the decision of the appellate court is in conflict with its prior decision on the same point of law or has misapprehended the law in this case. In its opinion in the case at bar the Court of Criminal Appeals held:

"No party may assign as error the court's … failing to give [an]

instruction … unless the party

objects thereto before the jury

retires to consider its verdict,

stating the matter to which he or

she objects and the grounds of the

objection." Rule 21.3, Ala. R. Crim.

P.

The basis of the opinion in this case is in direct

conflict with this Honorable Court's previous opinion

set out in Toles v. State, 854 So.2d 1171

(Ala.Crim.App. 2002).;

> "We find support for the proposition
> that Toles preserved his jury charge
> argument in Ex parte Weaver, 763
> So.2d 982 (Ala. 1999). In Weaver, at
> the close of the jury charge, but
> before the jury retired to
> deliberate, the following exchange
> took place:
>
> "`[Defense counsel]: What about on
> his right to remain silent and not
> testify and to have that not used
> against him? You didn't give any
> instruction on that.
>
> "`THE COURT: Well, it is not
> mandatory to give anything on that.
> It hasn't been raised as an issue.

6

"`[Defense counsel]: Well, he
didn't testify. I don't think that —

"`THE COURT: Well, you went through
that in voir dire. It is too late
now.

"`[Defense counsel]: I don't think
it's too late. We object to it.

"`THE COURT: Okay. Anything
further?

"`[Prosecutor]: The State is
satisfied.'

"(R. 326-27.)"

Weaver, 763 So.2d at 984. The State
argued on appeal that Weaver's claim
that the trial court erred in
refusing to give the requested jury
instruction was not preserved for
appellate review because, it argued,
the objection was not sufficiently
specific. The Alabama Supreme Court
stated that Weaver "did not make a
proper objection to the refusal of
the requested charge." Weaver, 763
So.2d at 986. However, the Alabama
Supreme Court, quoting Felder,
stated: "`Although the "magic
words" were never employed and
although defense counsel should have
been specific in stating the grounds
of his objection, it is apparent
that both defense counsel and the
trial court understood [the
objection to the jury charge].'"
Weaver, 763 So.2d at 985 (quoting
Felder v. State, 593 So.2d 121, 122-
23 (Ala.Crim.App. 1991)).

7

> The Alabama Supreme Court further noted that, unlike Felder, there had been no charge conference in Weaver's case, so the requested charges were not discussed prior to the jury charge. In this case, Toles, like Weaver, did not have the benefit of a charge conference and therefore "objected after the court had already given its instructions to the jury." Weaver, 763 So.2d at 986.

Based on the holding in Toles v. State the trial court erred in refusing to give a jury instruction as to the lesser-included offenses of criminal Coercion and Tampering with a Witness. If these charges had been given then it would possibly have changed the outcome of the case.

Furthermore in this case the defense counsel adequately and timely argued her case to the judge in her motion for judgment of acquittal at the close of the State's case in chief as to why the lesser-included offenses should be addressed by the Court. There had been no charge conference in this case, so the requested charges were not discussed prior to the jury charge. Defense counsel then stated generally again to the Court that she would object to jury instructions

8

not being given on the lesser-included offenses after
the jury was charged.

This general objection should not bar this Court
from reviewing this appeal because even though the
specific words were never stated and although defense
counsel should have been specific in stating the
grounds of her objection, it is apparent that both
defense counsel and the trial court understood the
nature of her objection to the jury charge.

(c) The third basis of this petition is
that the Court of Criminal Appeals
misapprehended the law as applied to the
facts of this case. In Thomas v.
State,363 So.2d 1020 (Ala.Crim.App.
1978). This court stated;

> While a jury is under a duty to draw
> whatever permissible inferences it
> may from the evidence, including
> circumstantial evidence, mere
> speculation, conjecture, or surmise
> that the accused is guilty of the
> offense charged does not authorize a
> conviction. Smith v. State, 345
> So.2d 325 (Ala.Cr.App.), cert.
> quashed, 345 So.2d 329 (Ala. 1976);
> Colley v. State, 41 Ala. App. 275,
> 128 So.2d 525 (1961). A defendant
> should not be convicted on mere
> suspicion or out of fear that he

9

might have committed the crime.
Harnage v. State, 49 Ala. App. 563,
274 So.2d 333 (1972). While
reasonable inferences from the
evidence may furnish a basis for
proof beyond a reasonable doubt,
Royals v. State, 36 Ala. App. 11, 56
So.2d 363, cert. denied, 256 Ala.
390, 56 So.2d 368 (1952), mere
possibility, suspicion, or
guesswork, no matter how strong,
will not overturn the presumption of
innocence. Sauls v. State, 29 Ala.
App. 587, 199 So. 254 (1941); Riley
v. State, 28 Ala. App. 389, 187 So.
247(1939); Rungan v. State, 25 Ala.
App. 287, 145 So. 171 (1932);
Guin v. State, 19 Ala. App. 67, 94
So. 788 (1922).

An inference is merely a permissible
deduction from the proven facts,
which the jury may accept or reject
or give such
probative value to as it wishes.
Roberts v. State, 346 So.2d 473
(Ala.Cr.App.), cert. denied, 346
So.2d 478 (Ala. 1978);
Hale v. State, 45 Ala. App. 97, 225
So.2d 787, cert. denied,284 Ala.
730, 225 So.2d 790 (1969); Orr v.
State, 32 Ala. App. 77, 21 So.2d 574
(1945). It is a logical and
reasonable deduction from the
evidence and is not supposition or
conjecture. Guesswork is not a
substitute. Stambaugh v. Hayes, 44
N.M. 443, 103 P.2d 640 (1940); Bolt
v. Davis, 70 N.M. 449, 374 P.2d 648
(1962). A supposition is a
conjecture based on the possibility
or probability that a thing could
have or may have occurred without
proof that it did occur. Louisville

10

& N.R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S.W.2d 257 (1929). The possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur. Parker v. State, 280 Ala. 685,198 So.2d 261 (1967); Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414 (1910).

The Appellant argues that the State failed to prove the charge in the indictment, specifically, the part of the indictment that states that the Appellant attempted by use of a threat to a witness or person he believed would be called as a witness, to corruptly influence their testimony, to induce them to avoid legal process summoning them to testify, or to induce them to absent themselves from an official proceeding that they had been summoned to. The State failed to prove beyond a reasonable doubt that the Appellant intended to intimidate a witness.

The appellant argues that the State did not prove any of the three elements of Intimidating a Witness. The trial Court even states that they do not see any evidence in the letter that shows that the appellant tried to corruptly influence the testimony of a witness, induce the witness to avoid legal process,

or induce the witness to absent themselves from an official proceeding. The evidence in this case was mostly circumstantial and there was no evidence offered to show that the appellant intended to intimidate a state witness. Therefore the jury verdict in this case simply becomes mere speculation or conjecture as to what the Appellant intended by the letter. It is clear that the letter the Appellant sent to his ex-wife alone, without any other evidence being offered to prove the meaning of the letter, is not sufficient to sustain a conviction based upon the speculation of the jury as to the meaning of the letter.

It is clear in the present case that based on the facts a rational fact finder could not find the appellant guilty of Intimidating a Witness. The Court of Criminal Appeals may have misapprehended the interpretation of the law in this case, and may have overlooked the fact that the State failed to prove any of the elements of the offense that the appellant was charged with beyond a reasonable doubt.

WHEREFORE, Petitioner respectfully requests that after a preliminary examination, the writ of certiorari be granted and that this Court proceed under its' rules to review the matters complained of, and to reverse the judgment of the Court of Criminal Appeals, and for such other relief as Petitioner may be entitled.

Respectfully submitted this the ___1___ day of _____, 2005.

BRANTLEY & MCLENDON, L.L.C.

JON-PATRICK AMASON (AMA005)
ATTORNEY FOR APPELLANT
BRANTLEY & MCLENDON, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, ALABAMA 36303
(334) 793-9009

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Petition of Appellant upon the Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36130, and the Alabama Court of Criminal Appeals, 300 Dexter Ave., Montgomery, Alabama, and to the Appellant, Draper Correctional Facility, by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, on this the _____ day of _____, 2005.

Jon-Patrick Amason (AMA 005)
ATTORNEY FOR APPELLANT
Brantley & McLendon, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009

14

Rec'd 6-13-05

**Notice:** This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

P. O. Box 301555

Montgomery, AL 36130-1555

**RELEASED**

**JUN 10 2005**

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

**MEMORANDUM**

CR-04-0602                    Houston Circuit Court CC-03-599

Ralph Wilson Lingo v. State of Alabama

Baschab, Judge.

The appellant was convicted of intimidating a witness, a violation of §13A-10-123(a), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of twenty years in prison. See §13A-5-9(a)(1), Ala. Code 1975. The appellant filed motions for a judgment of acquittal and for a new trial, which the trial court summarily denied. This appeal followed.

Debra Tice Blackstone, the victim, testified that the appellant is her ex-husband; that they were married in January 1989 and divorced in January 1997; that the appellant could not read and write very well; that, on April 24, 2003, she signed a warrant against the appellant in the Dothan Municipal

EXHIBIT A

Court for harassing communications based on a telephone call;
that she also got a protection from abuse order against the
appellant; that, about one week later, she received an
unsigned letter, which included copies of photographs of her
naked and written threats, from an unidentified delivery man
at her home; that the appellant was the only person who had
access to the photographs; and that she was overwhelmed,
scared, terrified, and afraid to go to court, even though she
did later go to court.  She also testified that the appellant

> "has threatened to burn my house down.  He has tried
> to hire somebody to kill me.  He has made the
> comment to me that the next person that puts him
> away will die."

(R. 45.)

The State introduced the photographs and the letter into
evidence.  The letter included the following:

> "You brought this on your own self.  No one has
> seen these.  You tricked me and you did something
> very, very wrong.  I still have the phone tape.  I
> can ruin you real badly with fraud counts against
> you with the internal revenue.  You love blacks, and
> cops but you don't think more that 3,000 of these
> will be placed all over Dothan.  Every stop sign,
> light poles, just think again.  Copies are made.
> You better see me or I will have to start defending
> myself.

> "I do not want any trouble with you.  You know
> the law is on me real bad, trying to get anything on
> me.  You know all about it, but I ain't guilty.  I
> was framed and set up by Sue.  I didn't know
> anything about it until it was all over with.  I
> told the internal Revenue a little about you, but
> not enough to get you in any trouble.  I would never
> do that unless I was forced to.

> "4 out of 20 pictures

> "You know I can hurt you by a lot of people you

2

ran off from my [business], that you have cussed
out. I know at least three of those people want to
sign warrants on you right now. I know why you did
all of this is because of you lover, so here's the
way it will go. You can keep your black lovers,
your cop lovers. I haven't done anything but help
you and giving you money. Yes I was trying to fight
to keep you, and to make sure you had plenty of
money every week. That was what I wanted to do to
keep you, to make sure you had your medication,
money, and whatever your kid needed. I will never
call you again. I will never contact you again.
You drop your phony warrant or you will be sued at
the right time and be arrested with [warrants]
against you. I will push the internal revenue to
step in to investigate you. [A]lso GE to
investigate you also. I will do whatever it takes
to ruin you, destroy you, your name. You have lied
on me, and tricked me with a phone call, and there's
some stuff on you I won't mention. If you don't
want to go down you better back off from me. I will
be going to have a meeting with my investigators and
I will put them on the case. I kept you out of
these trials like you asked me, but you [will] be in
3 in the near future, under oath. These phone tapes
will prove you deal with a lot of customers. You
want me to nail you but you remember the fox. You
know what this means. I am leaving and going to the
beach this weekend. I will have my cell phone with
me. I don't want to talk or see anyone but you face
to face, to talk out our differences. You know my
number. I am very depressed. I have cried a
million tears over you.

    "I am <u>not</u> threatening you in no way. I am
making you a promise. You have 24 hours to see me
face to face. And we will start to work to
defending myself against accusations which aren't
true. Debra this will be up to you. You know my
cell number. If you want to meet me to work this
thing out, then I'd be more than willing [to] show
you I'm not joking with you. Three of your family
members will get a copy of a videotape and a copy of

3

these pictures along with copies of phone tapes, this weekend. I have not got any of this in my possession. All it would take is a phone call and it will be delivered. You have 24 hours for these to start [coming] out on you. You want to go to the law, fine. We will also tell the law a lot of shit too, and it won't stop there. I know you have these judges on your side, but you just don't know what I know. I don't want any problems out of you. It's your money and your life. Do you want it destroyed or a person to person talk to work all of this out. I might not word this letter right, but one of your friends knows how to contact me. This will be up to you. I will have to do what I have to do. Thank you very much. We can work this out and go our [separate] ways.

"Take this the way you want to take this. It's your choice.

"Thank you.

"1-4 pages - you have copies of your pictures. Do what you want to do."

(C.R. 224-26.)

Alicia Roberts testified that she worked for the appellant; that she wrote the above-referenced letter, using the appellant's words, at the appellant's request; and that she helped the appellant copy the photographs.

Finally, the appellant made a statement to Ed Sasser, an investigator for the Alabama Department of Corrections, in which he admitted that he had sent someone to the victim's house with a photograph of her naked. He contended that the person did not know what was in the package, but that the victim did.

I.

The appellant argues that the trial court erroneously

4

refused to instruct the jury on criminal coercion[1] and tampering with a witness.[2]

> "No party may assign as error the court's ... failing to give [an] instruction ... unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection."

Rule 21.3, Ala. R. Crim. P. After the trial court's oral charge, the appellant made a general objection to the fact that the trial court had not instructed the jury on criminal coercion and tampering with a witness, but he did not state any grounds in support of the objection. Therefore, he did not properly preserve this argument for our review. See Rule

---

[1]Section 13A-6-25(a), Ala. Code 1975, provides, in pertinent part:

> "A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act."

[2]Section 13A-10-124, Ala. Code 1975, provides, in pertinent part:

> "(a)  A person commits the crime of tampering with a witness if he attempts to induce a witness or a person he believes will be called as a witness in any official proceeding to:
>
>     "(1)  Testify falsely or unlawfully withhold testimony; or
>
>     "(2)  Absent himself from any official proceeding to which he has been legally summoned."

5

21.3, Ala. R. Crim. P.; <u>Bullock v. State</u>, 697 So. 2d 66 (Ala. Crim. App. 1997).

Moreover, in response to the appellant's objection, the trial court stated:

> "I just don't believe that -- a lesser included offense is an offense that is lesser -- less than all of the other -- of the main charge as I understand it of the law of Alabama. And the way I see it under the testimony that was given, and the testimony was pretty much undisputed, that it -- that this has got to be either intimidating a witness or nothing. It's one or nothing is the way I see it. As a matter of fact, I think if I gave a charge on those offenses as lesser included offenses and he were convicted on one of them, that it would be reversible error."

(R. 95-96.)

> "No error occurs in not giving a charge on a lesser included offense when there is no reasonable theory to support the lesser offense. See <u>Dill</u>. '"A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense."' <u>Dill</u>, 600 So. 2d at 360, quoting <u>Gurganus v. State</u>, 520 So. 2d 170, 174 (Ala. Cr. App. 1987)."

<u>Williams v. State</u>, 601 So. 2d 1062, 1075 (Ala. Crim. App. 1991), aff'd, 662 So. 2d 929 (Ala. 1992) (table).

The record supports the trial court's finding that jury instructions on criminal coercion and tampering with a witness were not warranted. Under the facts of this case, the appellant was either guilty of intimidating a witness or not guilty of anything. Therefore, the appellant's argument is without merit.

II.

6

The appellant also argues that the State did not present sufficient evidence to support his conviction.

"(a)  A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:

"(1) Corruptly influence the testimony of that person;

"(2) Induce that person to avoid legal process summoning him to testify; or

"(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.

"(b) 'Threat,' as used in this section, means any threat proscribed by Section 13A-6-25 on criminal coercion."

§13A-10-123, Ala. Code 1975.

"In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So. 2d 280 (Ala. Cr. App.), cert. denied, 387 So. 2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So. 2d 1020 (Ala. Cr. App. 1978). In applying this standard, the

7

appellate court will determine only if legal
evidence was presented from which the jury could
have found the defendant guilty beyond a reasonable
doubt. <u>Willis v. State</u>, 447 So. 2d 199 (Ala. Cr.
App. 1983); <u>Thomas v. State</u>. When the evidence
raises questions of fact for the jury and such
evidence, if believed, is sufficient to sustain a
conviction, the denial of a motion for a judgment of
acquittal by the trial court does not constitute
error. <u>Young v. State</u>, 283 Ala. 676, 220 So. 2d 843
(1969); <u>Willis v. State</u>."

<u>Breckenridge v. State</u>, 628 So. 2d 1012, 1018 (Ala. Crim. App.
1993).

"'In determining the sufficiency of the evidence to
sustain the conviction, this Court must accept as
true the evidence introduced by the State, accord
the State all legitimate inferences therefrom, and
consider the evidence in the light most favorable to
the prosecution.' <u>Faircloth v. State</u>, 471 So. 2d
485, 489 (Ala. Cr. App. 1984), affirmed, <u>Ex parte
Faircloth</u>, [471] So. 2d 493 (Ala. 1985).

"'...

"'"The role of appellate courts is not to
say what the facts are. Our role, ... is
to judge whether the evidence is <u>legally</u>
sufficient to allow submission of an issue
for decision to the jury." <u>Ex parte
Bankston</u>, 358 So. 2d 1040, 1042 (Ala.
1978). An appellate court may interfere
with the jury's verdict only where it
reaches "a clear conclusion that the
finding and judgment are wrong." <u>Kelly v.
State</u>, 273 Ala. 240, 244, 139 So. 2d 326
(1962). ... A verdict on conflicting
evidence is conclusive on appeal. <u>Roberson
v. State</u>, 162 Ala. 30, 50 So. 345 (1909).
"[W]here there is ample evidence offered by
the state to support a verdict, it should
not be overturned even though the evidence

8

offered by the defendant is in sharp
conflict therewith and presents a
substantial defense." <u>Fuller v. State</u>, 269
Ala. 312, 333, 113 So. 2d 153 (1959), cert.
denied, <u>Fuller v. Alabama</u>, 361 U.S. 936, 80
S. Ct. 380, 4 L. Ed. 2d 358 (1960).'
<u>Granger [v. State]</u>, 473 So. 2d [1137,] 1139
[(Ala. Crim. App. 1985)].

"... 'Circumstantial evidence alone is enough to
support a guilty verdict of the most heinous crime,
provided the jury believes beyond a reasonable doubt
that the accused is guilty.' <u>White v. State</u>, 294
Ala. 265, 272, 314 So. 2d 857, cert. denied, 423
U.S. 951, 96 S. Ct. 373, 46 L. Ed. 2d 288 (1975).
'Circumstantial evidence is in nowise considered
inferior evidence and is entitled to the same weight
as direct evidence provided it points to the guilt
of the accused.' <u>Cochran v. State</u>, 500 So. 2d 1161,
1177 (Ala. Cr. App. 1984), affirmed in pertinent
part, reversed in part on other grounds, <u>Ex parte
Cochran</u>, 500 So. 2d 1179 (Ala. 1985)."

<u>White v. State</u>, 546 So. 2d 1014, 1017 (Ala. Crim. App. 1989).
Also,

"'[c]ircumstantial evidence is not inferior
evidence, and it will be given the same
weight as direct evidence, if it, along
with the other evidence, is susceptible of
a reasonable inference pointing
unequivocally to the defendant's guilt.
<u>Ward v. State</u>, 557 So. 2d 848 (Ala. Cr.
App. 1990). In reviewing a conviction
based in whole or in part on circumstantial
evidence, the test to be applied is whether
the jury might reasonably find that the
evidence excluded every reasonable
hypothesis except that of guilt; not
whether such evidence excludes every
reasonable hypothesis but guilt, but
whether a jury might reasonably so
conclude. <u>Cumbo v. State</u>, 368 So. 2d 871

9

(Ala. Cr. App. 1978), cert. denied, 368 So.
2d 877 (Ala. 1979).'

"Ward, 610 So. 2d at 1191-92."

Lockhart v. State, 715 So. 2d 895, 899 (Ala. Crim. App. 1997).

Based on the evidence presented, the jury could have reasonably concluded that the appellant was guilty of intimidating a witness. Therefore, the appellant's argument is without merit.

### III.

Finally, the appellant argues that his counsel rendered ineffective assistance during the trial proceedings. In his unverified motion for a new trial, he listed several instances in which he contended that his counsel rendered ineffective assistance. We have reviewed the record and the appellant's ineffective-assistance claims. Although he has made several allegations, he has not satisfied his burden, under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), of proving that counsel's performance was deficient and that such allegedly deficient performance prejudiced him. In fact, we note that many of the appellant's claims appear to relate to other judicial proceedings in which he is involved rather than to this proceeding. Furthermore, the record on appeal does not show that his trial counsel's performance was so deficient that it fell below an objective standard of reasonableness. See Ex parte Jefferson, 749 So. 2d 406 (Ala. 1999). Accordingly, the appellant is not entitled to relief on his ineffective-assistance-of-counsel claims.

For the above-stated reasons, we affirm the trial court's judgment.

AFFIRMED.

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.

10

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA

Lane W. Mann
  Clerk
Sonja McKnight
  Assistant Clerk



P. O. Box 301555
Montgomery, AL 36130-1555
(334) 242-4590
Fax (334) 242-4689

June 24, 2005

**CR-04-0602**

Ralph Wilson Lingo v. State of Alabama  (Appeal from Houston  Circuit Court: CC03-599)

## NOTICE

You are hereby notified that on June 24, 2005 the following action was taken in the above referenced cause by the Court of Criminal Appeals:

Application for Rehearing Overruled.


**Lane W. Mann, Clerk**
**Court of Criminal Appeals**

cc: Hon. Judy Byrd, Circuit Clerk
    Jon-Patrick Amason, Attorney
    Robin Blevins Scales, Asst. Atty. Gen.

