RECEIVED

2006 NOV 30  A 9: 48

_____RA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

In The United States
District Court For
The Middle District
of Alabama

1: 06CV 703-MHT

Ralph Wilson Lingo,
Petitioner

V.

Sheriff James "Herbie"
Johnson, et. al.
Respondent

| Title | Page No. |
|---|---|
| The Cover Page | i |
| Table of Contents | ii |
| Statement of Case | 1-2 |
| Argument | 3-72 |
| Relief Sought | 73 |
| Conclusion | 73-74 |
| Certificate of Service | 73-74 |
| Exhibits | 75-84 |

In The United States District Court
For The Middle District of Alabama
The Northern Division

RECEIVED
2006 NOV 30 A 11:48
DEBRA P. HACKETT, CL.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Ralph Wilson Lingo
Petitioner

v.

Sheriff James
"Herbie" Johson,
Respondent

Civil Actions No.
1:06-CV-703-MHT

Reply To Respondent's
Answer

    Comes now your Petitioner, Ralph
Wilson Lingo, pro se, and would make this
his reply to the Respondent's Answer to
his 28 U.S.C. § 2254 Habeas Corpus claims
wherein Respondents position is that the pe-
tition not be granted due to Petitioner's claims
being procedurally barred and that his claims
lack merit. In response to Respondent's pos-
ition Petitioner would submit the following:
    On September 5, 2003 Petitioner was in-
dicted by a Houston County Grand Jury on
a charge of Intimidating a Witness, in
Violation of Section 13A-10-123 Code of Ala-
bama, 1975. (C 7-8). On November 3, 2004
Petitioner's trial began in Houston County
Circuit Court on November 4, 2004 the

to the charge of Intimidating a Witness.
(C-4). On December 9, 2004, Judge Jerry
White sentenced Petitioner to a term of
twenty years' imprisonment under Ala-
bama's Habitual Offender Act § 13A-5-9
(a)(1), Code of Alabama, 1975.

Petitioner appealed his conviction and
sentence. The trial Court appointed Jon-
Patrick Amason, Esquire, to represent Petitioner
on appeal. Exhibits B & C. On June 10, 2005,
the Alabama Criminal Court of Appeals affirmed
Petitioner's conviction in a unpublished mem-
orandum, and subsequently over ruled his
application for rehearing. Exhibit D & E.
The Supreme Court of Alabama denied Peti-
tioner's petition for a Writ of Certiorai on
August 12, 2005. Exhibit F.

On August 9, 2006, Petitioner filed
the 28 U.S.C. § 2254 the instant case at bar.
Petitioner met the one year statue of limitations
required by 28 U.S.C. § 2244(d). He filed his
petition on August 9, 2006, which was
within the one year limitation of his con-
viction becoming final on August 12, 2005,
when the Alabama Supreme Court denied
his petition for a writ of certiorai.

- 2 -

## Reply To Respondents Answer

The Respondent's contentions that the Petitioner's claims as being procedurally barred due to their position that his claims were not raised at trial, on direct appeal, or in state post conviction petition, are in-correct as Petitioner raised all of his claims enumerated in his habeas corpus petition by his numerous correspondences to the trial court; pro se motions filed with the trial Court, as well as his oral complaints made to the bench. All such pro se pleads are a part of the records of the Trial Court and are preserved in the Court Reporter's Official Transcript on Appeal Volume I + II. (R 31-32), (R 95-99).

Petitioner would also contend that he will show cause as to why the court should not dismiss his claims by procedural de-fault due to there being extraordinary cir-cumstances in which precluded Petitioner from seeking state post conviction relief by way of Rule 32 Petition, Alabama Rules of Criminal Procedure.

Petitioner will also show that he was prejudiced by the extraordinary

-3-

sets of circumstances which precluded him from seeking state post conviction relief by way of a Rule 32 Petition

Petitioner would aver that he brought all his claims to the Trial Court by way of his pro se motions, his correspondences written to the Court, and his oral complaints made during his Trial, all such complaints were made before trial, during trial, as well as post trial, and can be proven by simply reading the Court Reporters Transcript on Appeal. Petitioner contends he will show cause, as well as actual prejudice as excuses that will allow the Honorable District Court to consider his claims on the merits of each.

Petitioner contends that he will prove that his counsel's deficient performance did prejudice his case in that had she done what any reasonable attorney would have done then the result of his trial would have been different.

Petitioner would also contend that his contention that his 20 year sentence is excessive, and is illegal due to the manner in which it was imposed. He would also contend that there is no time limit on an illegal sentence.

-4-

Petitioner would contend that procedural default should be excused due to the following facts:

1.) That there is good cause for Petitioner not having met the statue of limitations 1 year limit from the date of the issuance of the certificate of judgment on direct appeal clause under Alabama Rules of Criminal Procedure 32.2(c). Your Petitioner was incarcerated within the confines of The Federal Mental Hospital Facility located in Miami, Florida from May of 2005 until February of 2006, and due to his mental and emotional state at the time of his hospitalization he could not have filed a state post conviction Rule 32 Petition. Petitioner would contend that because of these extraordinary circumstances precluded him from seeking further state post conviction remedies due to his locale, and due to his mental and emotional state at the time, coupled with the fact that he could not legally be held to take part in any legal actions due to his being a patient in a mental hospital.

Petitioner did not receive notification of the status of his appeal, in fact he wasn't notified of the status of his state

-5-

appeal until he recieved a priority mail
package from his appointed appellant
attorney, i.e. Jon-Patrick Amason, on
November 5, 2005. This package consisted
of the copies of his attorney's appeal brief,
the Attorney General of Alabama appeal
brief, a copy of the Alabama Criminal
Court of Appeals memorandum affirming
his conviction, along with a copy of the
Alabama Supreme Court's denial of his
certiorai dated August 12, 2005.

Petitioner was in no emotional condition
to present a pro se argument in a Petition
for a Writ of Certiorai in the United States
Supreme Court under the Rule 13.1, nor did
he have time to have prepared such a brief
in argument between November 5, 2005 and
the last date to file the Certiorai on Novem-
ber 10, 2005, even if he had of been in the
mental state to do so.

Petitioner's State Certiorai was denied
on August 12, 2005, therefore upon the ex-
haustion of these state appeals Petitioner
no longer had an attorney, as the attorney
was only appointed by the State Trial Court
for the appeal process and upon the comple-
tion of such litigation his attorney was no
longer available to assist Petitioner in his

legal matters.

\*    Petitioner is illiterate with only a 8TH grade education, as well as having a speech impediment, coupled with his mental state during his hospital confinement, along with the fact that there was no one at his place of confinement that possessed the mental faculties to assist him in (as he was accustomed to) filing a pro se complaint. Petitioner was simply rendered helpless to have filed any post conviction litigations, not to mention in the absence of any indication of when, given his circumstances of hospitalization and locale, he could have reasonably been expected to learn of what other state post conviction remedy was available to him.

   Certainly Petitioner would contend that these sets of circumstances are extraordinary in nature and would fall in one of the two sets of circumstances to which procedural default may be excused in order for a federal court to review a procedurally defaulted claim. <u>Murray v. Carrier</u>, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed. 2d. 397 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. [72], 87, 97 S.Ct. 2497, 2506 (1977).

   Petitioner would contend further

*see
\* Exhibit
2-2(c)
pages
80-83

- 7 -

Petitioner would contend further that he has established a "cause" for procedural default in demonstrating that his particular circumstances would certainly be an objective factor external to the defense which impeded the effort to raise any of his claims properly in state court. Wright v. Hopper, 169 F. 3d. 695, 703

Petitioner would aver that had he been able to have pursued a post conviction state Rule 32 Petition that there is a reasonable probability that the result of the case would have been different, and to bar Petitioner's claims due to procedural default would further prejudice him. Crawford v. Head, 311 F. 3d. 1288, 1327-28 (11TH Cir 2002). Additionally while the one year limit for filing a state post conviction Rule 32 Petition did indeed pass him by on August 12, 2005, he would maintain that extraordinary circumstances existed which caused him to fail to file for state post conviction relief. While Petitioner realizes that federal courts may apply state rules of procedural default to conclude that future attempts at exhaustion would be futile Snowdon v.

-8-

<u>Singletary</u>, 135 F. 3d. 732, 737 (11ᵗʰ Cir. 1988), and dismiss a petition upon such ruling, Petitioner would contend that the dismissal of a first habeas corpus petition is a particularly serious matter, since such dismissal denies the petitioner the protections of the "Great Writ" entirely, risking injury to an important interest in a prisoner's liberty. Equally troubling in the dismissal of a habeas corpus petition - due to the fact that the writ plays such a vital role in protecting constitutional rights - is the fact that to dismiss the claims of such a petition would deprive the Petitioner of his valuable right to one full round of federal review by way of habeas corpus that Congress intended he have, therefore to refuse to grant a review to Petitioner's claims for procedural default, as the Respondent's have requested of the Court, would be particularly unfair, and the State can hardly claim a legitimate interest in the finality of this judgment, thus the Honorable District Court should consider the Petitioners claims of constitutional violations by a state court. <u>Lonchar v. Thomas</u>, 517 U.S. 314, 324, 134 L. Ed. 2d. 440, 116 S. Ct. 1293 (1996), <u>Slack v. McDaniel</u>, 529 U.S. 473, 483, 146 L. Ed. 542

— 9 —

120 S. Ct. 1595 (2000).

    2.) Your Petitioner would aver that the only reason he had federal remedies available to him, and was able to meet the mandates of U.S.C. § 2244(d) and timely file his federal habeas corpus petition was because he corresponded to the U.S. District Court for the Middle District of Alabama requesting information to pursue relief of a state conviction, and the federal court clerk responded by supplying him with the 28 U.S.C. § 2254 standard form, in which a complaint could be filed.

    Your Petitioner would further contend that he wrote the Circuit Court of Houston County, Alabama requesting information for filing a post conviction petition for state relief, but he never received an answer to his request, so he abandoned any attempt to seek review by way of a state post conviction state remedy, because this official silence carried the weight of no information enough to convince your Petitioner, a pro se litigant, that no other state remedy was available to him.

    2(a) Your petitioner would aver that he has shown reasonable diligence in his attempt to seek post conviction state

— 10 —

relief and he feels certain that there is prob-
able merit to his underlying claims, there-
fore he chose to pursue relief by way of
federal habeas corpus in order to meet
the one year requirement of § 2244(d), so
on August 9th, 2006, he officially filed
his federal complaints.

2(b.) Your Petitioner would aver that
he has shown reasonable diligence in his
efforts to seek state relief, especially consider-
ing the fact that he his illiterate, and has had
to depend on other inmates in order to pur-
sue any pro se litigation, and while he be-
lieves he has shown extraordinary circum-
stances existed due to his hospitalization,
and emotional state not being conducive to
pursuing any type of type litigation, while he
was in Miami, Florida, he would assert that
once he was returned to Alabama, he was
held at the Montgomery City Jail. Once Peti-
tioner got settled in at this Federal holding
facility he begin to seek information about
post conviction remedies as best he could.
Considering his abilities are compromised,
in that he can not read or write, he only
has a fifth grade education, and he has
a speech impediment, and had to depend
on other inmates to assist him in his legal

— 11 —

endeavors, and it took him quite awhile to find any other inmates to help him file any legal claims in his plight to seek relief from the wrongs done him by a state court. Petitioner also wrote the Southern Poverty Law Center in Montgomery Alabama seeking legal assistance but he recieved no answer to his correspondence.

Certainly it should be abundantly clear that there can not be any doubt that Petitioner's efforts during this period of time (from January through August 2006) reveals no lack of diligence on his part, as a pro se litigant, to find any state remedy.

3.) Petitioner does agree that while it is true that federal courts may apply state rules regarding procedural bars to conclude that further attempts at exhaustion would be futile Snowden vs. Singletary, 135 F. 3d. 732, 737 (11ᵀᴴ Cir. 1998), he would nevertheless assert that the District Court may still review a procedural default, and consider it's merits if he can establish "cause" for his failure to follow state procedural rules, and he is able to show "prejudice resulting from his failure. Edwards vs. Carpenter * 529 U.S. 446

- 12 -

451 (2000), *Wainwright vs Sykes*, 433 U.S. 72 (1977). Petitioner would also contend that an application for state post conviction relief can be "properly filed" even if the state court dismiss it as procedurally barred. *Artuz v. Bennett*, 531 U.S. 4, 148 L.Ed.2d.213, 121 S.Ct.361.

3(a.) Petitioner will admit that the court has perhaps only received scant briefings on the probable merits of his claims within the standard 28 U.S.C. § 2254 form which he filed, however, he would suggest that his perceptions of having had his constitutional rights violated by the state trial court are clearly seen simply by reading the record of the court, wherein the court refused to admit his pro se documents, claiming such constitutional violations, into the record of the court, in his attempt to bring his contentions of wrong doings to the attention of the court, and the trial court's refusal to acknowledge Petitioner's dissatisfaction with his attorney of record, due to what Petitioner claimed were irreconcilable differences between himself and his appointed attorney are pretty straight forward. (R 31-32). as being unfair.

Petitioner would claim that the trial

-13-

Court violated his Sixth Amendment right to a fair trial, as well as his Fourteenth Amendment right to due process of law, due to the Trial Court's refusal to accept the documents Petitioner attempted to enter into the records of the Court, wherein he makes known his wishes to fire his lawyer, as well as his perception that the Court was violating his rights. Petitioner would assert that these claims of constitutional violations made by the Trial Court are colorable claims that the Federal District Court should address. Finch vs. Vaughn, 67 F.3d.909 (CA11 1995), Mabry vs. Johnson, 467 U.S. 504, 81 L.Ed.437, 104 S.Ct. 2543(1984).

36) Furthermore, Petitioner contends that the Honorable District Court should considerations to the constitutional wrongs done him by the Trial Court, law enforcement, and his counsel. Counsel's refusal to call his witnesses violated his due process right to call witnesses for himself. Ferguson vs. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed. 783 (1961). Lonchar vs. Thomas, 517 U.S. 314, 324 L.Ed. 2d. 440, 116 S.Ct. 1293 (1996). Petitioner believes he has shown extraordinary circumstances did exist

- 14 -

which precluded from filing a Rule 32
Petition in state court, and prejudicial
effects have resulted from the "cause" of his
having been unable to pursue a Rule 32 post
conviction remedy, and the damages done are
evident in that he is now barred from being
able to pursue any state remedies, and this
fact, in and of itself, is further prejudicing
him, in that he could be precluded from
any federal review of his claims, because
federal courts can apply state rules to
procedurally bar further attempts for post
conviction relief. Petitioner would contend
that it would be particularly inappropriate
for the District Court to dismiss his claims as
being procedurally barred from review, due
to procedural errors regarding his failure
to file a state Rule 32 Petition in a timely
manner, when it would have been impossible
for him to have filed such a claim due to his
set of circumstances. So impose such an ex-
pectation on Petitioner, a pro se litigant,
who used such diligence in his efforts to
make known the wrongs being done him,
by dismissing his claims would be grossly
unfair, and would be holding Petitioner
to impossible expectations.
    Petitioner is handicapped by being

-15-

illiterate with only a fifth grade education, but he did his best to make known the fact that he perceived that his rights were being violated by the Trial Court, therefore it would be a terribly unjust move for the District Court to dismiss his claims without having afforded him the benefits of an evidentiary hearing.

It is apparent that the adequacy of Petitioner's claims are largely affected by his intelligence and the legal advice available to him, and to hold him to any greater expectations would simply be unrealistic. Surely he can't be expected to stand on equal ground as the Respondent's attorneys, or to be expected to be on point as the Honorable Court requires out of counseled litigants, for to hold Petitioner to the strigent expectactions as that of an attorney is simply ludicrous. Ackerman vs. United States, 340 U.S. 193, 95 L.Ed. 207, 71 S. Ct. 209 (1950). The Court should never hold pro se prisoners to the same standards as counseled litigants. Haines vs. Kerner, 404 U.S. 519, 30 L.Ed. 652, 92 S. Ct. 594 (1972).

3(c.) Petitioner would contend that the Trial Court records would reflect that his

allegations of wrong doings, including ineffective assistance of counsel along with all the other claims raised pro se throughout the trial can be easily proven simply by reading the record of the court.

Petitioner's pro se motions, and his oral complaints to the court do more than make mere suggestions of his perception that his rights are being violated, especially when one takes into account Petitioner's illiteracy, his only having a fifth grade education, and his speech impediment, it should become clear to any reasonable person that he was doing his best to object to, and make known to the court the wrong doings he felt were being done to him by the state court, the prosecutor, as well as his court appointed attorney, and just be-cause he could not articulate his percep-tions well enough by the use of the "majic words" of constitutional violations or by the use of the legal jargon to describe a point of law should not preclude him from review of his claims by the federal court. In fact, it would be a terrible injus-tice not to give Petitioner the credit due him for his diligence in his attempt to preserve these issues for future review by bringing

-17-

his complaints into the record of the Trial
Court in the only way he knew how. (R 31-32)
(C 195-201).

Petitioner would contend that all
his allegations of wrong doings by the
court are preserved and supported by
the facts contained in the record of the
Trial court, therefore his contentions are
preserved for review. Ex parte Jefferson,
749 So. 2d. 406 (Ala. 1999) Hill vs. State,
675 So. 2d. 484 (Ala. Crim. App. 1995).

3 (d.) It should also be clear to the
Honorable District Court that the Respon-
dent's position of his claims being pro-
cedurally defaulted due to a state court
having not previously elvaluated such
claims are in error as the Trial Court's re-
cord reflects the fact that Petitioner brought
his claims before the state court for review, but
the trial court refused to evaluate his request
by denying his attempts to admit documents
supporting his contentions into the record
of the court, as well as over ruling his ob-
jections. For these reasons Petitioner's hab-
eas corpus petition should not be proce-
durally barred from federal court review,
because Petitioner did present his claims
to the Trial Court for review. Brownlee vs.

- 18 -

_Haley_ 306 F. 3d. 1043, 1065 (11th Cir. 2002).
(C 195-201), (R31-32).

    4.) Your Petitioner would assert that due to the circumstances that caused him not to meet the time limitations of Rule 32. 2(c), which now barrs him from such state court review, and post conviction relief, is prejudicially precluding him from the ability to get the relief due him, and it is Petitioner's contention that if he could have pursued a state Rule 32 Petition it is his belief that the claims he would have raised would have brought about a different result in his case, therefore the cause of his inability to file a timely state post conviction Rule 32 Petition has resulted in damage to his rights to federal review which now prejudices him by the effects the cause proproduced. _Ex parte Nesbitt,_ ___ so2d. ___ (2002).

    4(a.) Petitioner would point out the fact that he has hurdled the Respondent's position that he failed to properly exhaust his claims in state court and is therefore barred from federal review, _Henderson vs. Campbell,_ 353 F. 3d. 880, 891 (11th Cir. 2003), by showing both cause for default and actual pre-

judice resulting from the default; therefore meeting the two narrow circumstances of excusable default for obtaining federal review of the merits of his habeas corpus claims. Murry vs. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 397 (1986). Wright vs. Hooper, 169 F.3d. 695, 703 (11th Cir. 1999).

5.) Your movant avers that on May 7th, 2003 around 1:00 p.m. he was traveling north on Highway 431 in the city of Headland, Alabama - his place of residence - which is located in Henry County, Alabama, approximately 10-12 miles outside the city of Dothan, Alabama which is located in Houston County, Alabama, when he passed Detective Tony Luber, a police detective of the City of Dothan, Alabama, traveling south on highway 431. When Detective Luber saw Petitioner he immediately made a U turn and began to flash his blue lights. He then fell in behind Petitioner pulling him over on the shoulder of the road. Once he pulled Petitioner over he executed an arrest warrant for intimidating a witness against Petitioner, and took him into custody, he then radioed in to the Dothan Police Depart-

- 20 -

ment and requested a police unit be sent in order to transport Petitioner to the Dothan City Jail.

Your Petitioner would contend that this arrest was illegal and violated his Fourth Amendment right that protects him from illegal arrest. Rose vs. Neff, 905 F. 2d. 1353 - 1354, because Petitioner was arrested by a police officer outside the boundry of the county which contained the city employing him, therefore Juker was exceding his jurisdiction and his authority to make an arrest. Moore vs. Crocker, 852 So. 2d. 89 (2002), (SEE Exhibits 1 - 1(c) pgs. 75 - 79)

Your movant would maintain that his arrest in Headland, Alabama - a city incorporated within the boundries of Henry County, Alabama - by a police officer from the City of Dothan, Alabama - which is incorporated within the boundries of Houston County - Alabama - was illegal due to it's being a breach of § 15-10-10, Code of Alabama, 1975.

Section 15-10-10 reads as follows:

"A law enforcement officer may not obtain an arrest warrant in one county and execute it

— 21 —

in another county without
also obtaining, before exe-
cution of the warrant, it's
endorsement by a magis-
trate of the county where
the arrest is to take place".

Due to this police officer's breach
of this state statue by arresting Petitioner
without first having the warrant domes-
ticated as Section 15-10-10 requires
then the arrest of Petitioner is not only
a violation of §15-10-10, Code of Ala-
bama, 1975, but is also a violation of Pe-
titioner's 14th Amendment rights to equal
protection and the due process clause of
the United States and Alabama's consti-
tutions, As well as the 4th Amendment right
to protect Petitioner from an illegal arrest.
Clutchett v. Procunier, 497 F. 2d. 809 (9th
Cir. 1974), Young v. State, 22 Ala. App. 468,
117 So. 3d.

Your Petitioner would contend that
the arresting officer, i.e. Detective Jony
Luker also breached §15-10-70 Code of Ala-
bama, 1975, which governs the duty of the
arresting officer and the Sheriff of the
other County.

Section 15-10-70 reads as follows:

"When any person charged with the commission of any offense is arrested in any county other than that in which he is triable by an officer of the county in which he is arrested, such arresting officer shall immediately committ him to a jail or guardhouse nearest to the place of arrest, and said Sheriff of such county shall at once notify the Sheriff of the county in which such person is triable of the fact of such arrest and confinement"

Petitioner's arrest occurring in Henry County, Alabama, within the city limits of Headland, Alabama, and being taken from the place of arrest to the city of Dothan, Alabama, located in Houston County, Alabama, where he was illegally confined within the Dothan City Jail, rather than having been taken to the nearest jail to the place of arrest, which would have been either the Headland City Jail, or the Henry County

- 23 -

Jail as directed by §15-10-70, <u>Code of Ala-bama, 1975</u>, the arresting officer never con-tacted the Sheriff in Henry County to inform him of Petitioner's arrest or of his incarcer-ation in the Dothan City Jail located in Hou-ston County, Alabama as is required by §15-10-70; <u>Code of Alabama, 1975</u>, therefore Petitioner's arrest and confinement were not only illegal and contrary to well established state law, but were also violations of Petitioner's Fourth Amendment right to be protected from an illegal arrest.

Petitioner would maintain that due to this false arrest and illegal incarceration, that "all else that follows" would be had by illegal means or being the "fruits from a poison-ous tree". <u>Helms v. State</u>, ___ So.2d. ___, (Ala. Crim. App. 1988), meaning that Petitioner's con-viction and sentence are also illegal, and Habeas Corpus would be the proper vehicle to seek relief and protection from Petitioner's right to be free from wrongful restraints upon [their] his liberties. <u>Hammond v. Lenfest</u>, 398 F. 2d. 705 (2d Cir 1968), <u>Morgan v. Thomas</u>, 321 F. Supp 565 (S.D. Miss. 1970).

6.) Petitioner would further assert that his Sixth Amendment right to counsel being present during interrogations was

violated by an Alabama Department of
Correction's Investigator; Mr. Ed Sassar,
when he interrogated Petitioner at Bullock
Correctional Facility regarding an allega-
tion made by another inmate, wherein he
claimed that Petitioner had made a re-
mark to him, while he was assisting Peti-
tioner with law work, that he (Petitioner)
had arranged for someone to burn his com-
mon law wife's house down while she was
in it. (R-70), (R64).

        Petitioner would contend that the
Trial Court violated his Sixth and Seventh
Amendment rights to a fair jury trial when
it allowed the state prosecutor to question
this D.O.C. Investigator about the statements
Petitioner made to him in the absence of his
attorney, and without him having made an
intellectual and knowing waiver of such rights
to counsel, before the jury. (R54-70). Petitioner
would also contend that the court violated his
Fifth Amendment rights to self incrimination
when the state prosecutor was allowed to bring
a statement he made regarding his alleged
part in the intimidating a witness case out
of Houston County. He would also allege
that this testimony violated his Fourteeth
Amendment rights to due process of law.
                    - 25 -            (R 67-69).

## History of Petitioner's Interrogation

Once Petitioner entered the Alabama Department of Corrections he was classified and sent to the Bullock Correctional Facility in Union Springs, Alabama. Upon arriving at this facility he begin to seek medicine for pain and medical treatment for injuries he maintained he received in the custody of the Houston County Jail. The Warden was informed of this problem so he called an Investigator from the D.O.C.'s Intelligence and Investigation Division, i.e. Mr. Ed Sassar, who just happened to be at the prison. Investigator Sassar had the Petitioner brought to the administration building in order to take pictures of Petitioner and to make certain the D.O.C. wasn't blamed for the assault.

Sassar after interviewing Petitioner regarding the alleged assault ordered the medical unit to x-ray Petitioner due to the fact he claimed to have a broken jaw and loose teeth as a result of the assault. Petitioner felt a certain respect and appreciation for Sassar's having ordered medical treatment for the injuries he received. Sassar told Petitioner that he would be investigating the assault he received at the Houston County Jail, and he would get back with Petitioner once he concluded this invet-

igation. This was the first interview and meeting between Sassar, and Petitioner. The second interview would be under drastically different sets of circumstances. (R70)(R64).

In the second interview taken some two to three weeks after the initial meeting between Sassar, and Petitioner was on October 13, 2004. The interrogation began at 9:35 AM. Investigator Sassar talked to Petitioner for five minutes about his claim of having been assaulted then he asked Petitioner to sign the Miranda form at 9:40 AM. (C227). Petitioner assumed that this interview, was merely a continuation of the first interview, so he signed the form. Upon the first question Petitioner felt no need of an attorney or no need to not answer Sassar's questions due to it's only being an interview about the assault Petitioner received while in the custody of the Houston County Jail. However, once Sassar asked Petitioner did he know Debra Blackstone, and he alleged that they had been discussing an alleged threat made against Debra Blackstone, and the fact that they were now being recorded, Petitioner begin to realize that he had been abused and manipulated by Sassar, and he at that time started an attempt to end the interview. (SEE ATTACHED AFFIDAVIT). (C228-229). SEE Exhibit 3 pg. 84

Petitioner after answering Sassar's

-27-

questions, in a round about way, and without admitting guilt to any kind of threat towards anyone. In fact when Sassar asked Petitioner about the charge of intimidating a witness Petitioner told Sassar that the offense he had been charged with and convicted of was "Harassment of Communications". The interrogation went as follows in part:

E.S. "Do you have a case pending or is that case already been tried of threatening a witness?"

R.L. "You mean intimidating the ..."

E.S. "Intimidating the witness. Okay."

R.L. "Alright, the phone regiment had been tried. Uh the (inaudible) and that had been tried and I was found guilty on that and now the intimidating of the state witness uh had not been tried (inaudible) tried."

E.S. "Uh, so you have threatened Debra before by sending a person to her home with a naked picture of her?"

R.L. "By only telephone. This here is something (inaudible) it didn't mean."

- 28 -

E.S. "It doesn matter what kind, well what kind of case it is. Whether it was telephone harassment or whatever. You sent a person to her house with a naked picture of her. Is that correct?"

R.L. "That person didn't know what were in there."

E.S. "I (inaudible) Debra knew what was in it. There was a naked picture"

R.L. "Debra did".

E.S. "There was a naked picture of Debra in there?"

R.L. "That true."

E.S. "Why did you send that picture to Debra?"

R.L. "(inaudible) the way for for you go in (inaudible) I got a case coming up on that, I mean you might."

E.S. "Hay, you've been advised of your rights. You got a right to stop answering at any time you want to." (Inaudible)

R.L. "Well we'll stop it right now."

E.S. "That completed this interview at uh 12 minutes til 10 a.m."

-29-                    (C 228-229).

Petitioner tried to end the interrogation by telling Sassar that he had been found guilty of the petty charge of "Harassment of Communications", but Sassar kept talking about the naked picture of his common law wife, so Petitioner said he wanted to end the interrogation. The interrogation stopped at 10:48AM some 13 minutes after it had begun at 9:35AM. (C227-229).

The second meeting between Petitioner and Investigator Sassar was due to a claim made by another inmate at Bullock Correctional Facility, that while he was assisting Petitioner with some law work that Petitioner claimed he had someone that was going to burn down his common law wife's house down with her in it. (R64).

Petitioner maintained in a pro se motion for Retrial, filed on November 5, 2004, that he felt like he had been ambushed and mislead by Investigator Sassar due to Sassar's having kept Petitioner believing that this second interview was simply a continuation of his first meeting with Sassar, regarding his medical matters arising from the assault he received while in the custody of Houston County Sheriff's Department. He maintained that Investigator Sassar lead him to believe that they were talking about the assault, until he mentioned his common law

-30-

wife, and turned on the tape recorder and he
caught Petitioner off guard. Petitioner would
aver that the statements elicited from him were
outside the presence of councel which is a vio-
lation of his constitutional rights. Massiah
v. United States, 377 U.S. 201, 84 S. Ct. 1199, 12
L. Ed. 246 (1964). (C-197).

    Petitioner would point out that up on the
objection by Petitioners counsel to the use of this
witness, and his testimony of the interview be-
tween Sassar and Petitioner on 10-13-04, that
the state prosecutor, i.e. Mr. Binford, quoted a
case, which he never cited, that had to do with
suppression of evidence elicited from a person
in police custody. Mr. Binford stated that he
had run up on the case on his lunch break on
lexis, and in essence the case had to do with
a police action of precluding an arrestee
from speaking to an attorney while in their
custody. The situation was this arrestee was
in police custody and being questioned by them.
In the mean time his wife found out he had been
arrested so she had called the police station in
an effort to speak to him or to have a message
given to him, but she was blocked by police.
She finally gets the help from an attorney
who attempts to speak to the arrestee, but
he too is precluded from speaking with

-31-

the arrestee. Then she hires another lawyer who tries and tries to get to the arrestee; but the police block him and they never even advise the defendant that his lawyer is out their trying to get in touch with him, but instead they seclude him away from the people that are trying to get in touch with him to help him. The prosecutor makes the point that in this case the Alabama Supreme Court said that even this intentional police tactic to prevent the defendant from having an attorney present while being interrogated by police did not rise to the level of a due process violation such as would justify a court from suppressing the statements made by an arrestee outside the presence of his attorney. Conveniently, Mr. Binford failed to cite this specific case in which these decisions were made by the Alabama Supreme Court, which left the trial court's record bare of such supporting case on point. (R 60-63).

Petitioner would contend that the state prosecutor must have felt that he was standing on legally shakey ground in bringing this witness, and his testimony before the jury or he would have had no need to have been shepardizing lexis in search of a some precedent case law to justify his

-32-

constitutionally impermissible prosecutorial misconduct. (R 60-63).

Petitioner would contend that his 14TH Amendment rights to due process of law was violated by Investigator Sassar's testimony being allowed before the jury, as well as his Sixth and Seventh Amendment rights to a fair jury trial, and he believes his 5TH Amendment right to not incriminate himself was violated, as well by the admission of Sassar's testimony. Petitioner contends that the Houston County Circuit Court having allowed this testimony during the adjudication of his trial was contrary to clearly established federal law, as determined by the United States Supreme Court. <u>Chapman v. California</u>, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 705 (1967), 987, 87 U.S. Ct. 1283, 18 L. Ed. 2d. 241. <u>Brown v. Payton</u>, 544 U.S. 133. 140-41 (2005).

It is important to note that Investigator Sasser was made aware that Petitioner had an attorney by the inmate who claimed Petitioner made statements about someone burning his common law wife's house down. Sassar admits this under the questions of Mrs. Stinson, attorney for Petitioner, when he testified that this inmate said that Petitioner had told him he needed something to send his lawyer." (R 66-67).

- 33 -

7.) Petitioner would contend that the trial Court's denial of allowing the jury to be instructed on the lesser included offenses of his charge of Intimidating a Witness, which are specifically: Coercion of a Witness and Tampering with a Witness, precluded him from a fair trial guaranteed him by the Sixth & Seventh Amendments to the Constitution of the United States and the Constitution of Alabama, 1901.

Petitioner avers that because there just wasn't any evidence at trial to prove he attempted to corruptly influence the testimony of a Witness, or a person he believed would testify, or that he believed would be called as a witness, or a person, or that he tried to induce that person to avoid legal process, or that he tried to induce that person to absent themselves from an official proceeding, pursuant to §13A-10-123, Code of Alabama, 1975, which are the facts needed for a charge of Intimidating a witness, therefore Petitioner should have been entitled to a jury charge of Criminal Coercion, and/or Tampering with a Witness which are the lesser included offenses of Intimidating a Witness. §13A-6-25 states as follows:

- 34 -

(a.) "A person commits the crime of Criminal Coercion of a Witness if without legal authority, he threatens to confine, restrain, or cause physical injury to the threatened person, or another against his will to do an unlawful act; or refrain from doing a lawful act."

(b.) Criminal Coercion of a Witness is a class A misdemeanor.

And Section 13A-10-124, *Code of Alabama, 1975,* on Tampering with a Witness states as follows:

(a.) A person commits the crime of tampering with a witness if he attempts to induce a witness or a person he believes will be a witness or called as a witness in any official proceeding to:

(1.) Testify falsely or unlawfully without testimony; or

-35-

(2) Absent himself from any official proceeding to which he/she has been legally summoned.

(b.) Tampering with a Witness is a class B misdemeanor.

Your movant would bring the fact that this whole ordeal came from his common law wife's having filed a warrant on him for "Harassment of Communications" (R 26). which is a petty crime and only carries a fine in Municipal court. Knowing this fact it is hard to imagine — looking at the totality of these matters going on between Petitioner and his common law wife — how law enforcement brought Petitioner's actions up to the level of a class c felony, when it is clear that these matters between them are no more than a domestic dispute between two people who have gone through this same kind of senseless behavior before, as they have been together for years.

Petitioner would contend that there just was not any evidence that would support a charge of Intimidating a Witness, a class c felony, much less a conviction. Any

-36-

reasonable person would find it to be a large stretch of one's imagination to raise the facts of Petitioner's conduct, of trying to get his common law wife just meet with him to work out their problems, as they had done many times in the past, to the level of a felonious bit of behavior. Certainly his actions seem harsh, but he was desperate to talk to his common law wife in order to work out their differences, and end their quarreling, albeit his actions of allegedly having sent a letter to her contain naked photographs of her was unusually bizarre, it just did not rise to the level of a felio felonious offense. Especially when it is taken into account that what he was trying to avoid was only a petty offense which only carried a fine if he were convicted of such in Municipal Court.

Petitioner's intent was not to harm his common law wife or hurt her reputation, only for her to call him in order for reconciliation. While it is true that intent is a question for a jury to decide, it is the contention of the Petitioner that the jury should have been instructed on the lesser included offenses of Criminal Coercion of a Witness - which is a class A misdemeanor - or of Tampering with a Witness - which is a class B felony -

—37—

which are offenses closer in definition to any alleged criminal intent that the Petitioner may have had in his efforts to convince his common law wife to drop the petty offense of "Harassing Communications" and for this reason these offenses should have been given to the jury in the Trial Court's instructions. Cope v. Gobel, 39 Cal. App. 2d. 448, 103 P. 2d. 568 (1940), Jones v. Talbot, 87 Idaho 498, 394 P. 2d. 316 (1964). It could be conceivable perhaps for Petitioner's actions to avoid the petty offense of "Harassing Communications" to have risen to the level of a class A or B misdemeanor which would be more cognizable and closer to the seriousness of the breach of law that petitioner may have made in his efforts to discourage his common law wife's decision to pursue the petty offense of "Harassment of Communications."

Unfortunately for the Petitioner the prosecution had no motivation to prosecute at the misdemeanor level because convictions of these offenses are of minimal interest, not because the administration of justice in these lower echelons of criminal activity are inferior, but because interest to prosecute at this level is almost non existant. Warren v. Marsh, 215 Minn 615, 11 N. W. 2d.

-38-

2d. 528 (1943).

Petitioner would contend that the arrest and prosecution of the charge of Intimidating a Witness against him flies in the face of legislative intent in Section 13A-10-123, Code of Alabama, 1975, because what the legislature intended was that this statue was to protect state witnesses from any harm being done them while being a witness and an important part of a prosecution at the level of a misdemeanor, or felony prosecution wherein their testimony would be an important part of the prosecution of such case.

Petitioner would aver that legislative intent was not to enable the state to prosecute ~~it petty~~ anyone attempting to persuade a witness in a petty offense to drop charges and not go through with the prosecution of such charges, rather their intent was clearly to preserve the integrity of the testimony of a witness whose testimony was crucial to the prosecution of a felonious or misdemeanor case.

Petitioner would contend that even the trial court stated that it did not see how the conduct of the Petitioner satisfied any of the elements of §13A-10-123, Code of

Alabama, 1975, the Trial Court stated as follows: (R74-75).

The statue on Intimidating a Witness, in order to constitute the offense of Intimidating a Witness, it says that a person commits the crime of Intimidating a Witness if he attempts by use of a threat directed to witness in any official proceeding to corruptly influence the testimony of a person, I don't see in here where — in this letter, where there's any attempt to corrupt her testimony -- or avoid legal process summing her to testify --- and I don't see any demand that that be done -- or induce that person to absent herself from an official proceeding to which she has been summoned --- There's nothing in here --- the threats that are made are concerning the legal proceeding is I want you to drop your phony warrant or you will be sued

- 40 -

at the right time and arrested with warrants against you... I guess my whole problem is that I don't see where this fits into any of these one, two or three... (R.74-75).

The trial court refused to give the jury instructions on Criminal Coercion or Tampering with a Witness, because the state argued that the letter taken as a whole could be construed as a threat and that the jury should decide if the Petitioner's intent was to intimidate a witness according to the statue. Even though Petitioner would agree that "intent" is a question for a jury to decide, he would assert that had the jury been instructed on the lesser included offenses of Intimidating a Witness then the jury could have had a different decision. Petitioner assert that there just wasn't any evidence admitted or testimony given that showed that the Petitioner's conduct rose to the level set out in the statue for Intimidating a Witness. (R.75).

Petitioner would contend further that although there was testimony that Petitioner had threatened his wife, the ultimate decisions of his conduct should have been

- 41 -

been given to the jury under the charges of Criminal Coercion and Tampering with a Witness, especially considering the fact that what he ultimately attempted to accomplish was for her to drop the charges of the petty offense of "Harassing Communications".

Petitioner would contend he was denied due process of law because the Trial Court refused to instruct the jury on the lesser included offenses Coercion & Tampering with a Witness thereby violating his 14th Amendment right to due process of law, as well as being denied his Sixth and Seventh Amendment rights to a fair trial. Petitioner would aver that there is a rational connection of the greater includes the lesser offenses in a criminal case, Ferry v. Ramsey, 277 U.S. 88, 48 S. Ct. 443, 72 L. Ed. 796 (1928).

A person accused of the greater offense has a right to have the court charge the jury on the lesser included offense when there is a reasonable theory from the evidence of supporting those lesser included offenses. MacEwan v. State, 701 So. 2d. 166, 69 (Ala. Crim. App. 1997). An accused has the right to have the jury charged on "any material hypothesis" which the evidence in his favor

- 42 -

tends to establish" Ex parte Stork, 475 So. 2d. 623, 624 (Ala. 1985). Every accused is entitled to have charges given which would not be misleading which are supported by any evidence however weak, insufficient or doubtful in creditifility. Ex parte Chavers 361 So. 2d. 1106, 1107 (Ala. 1978), even if the evidence supporting the charge is offered by State. Ex parte Myers, 699 So. 2d. 1285 1290-91 (Ala. 1997). Cert. denied, 522 U.S. 1054, 118 S. Ct. 706 139 L. Ed. 648 (1998).

Petitioner avers that there was a rational basis for the jury being charged on the lesser included offenses of Criminal Coercion + Tampering with a Witness, because the actions he took towards his common law wife were ▓▓▓▓ mere attempts to resolve the issue of a warrant she had charged against him for the petty offense of Harassing Communications. The rational basis being that because his actions, if proven to be a threat, to resolve the Harassing Communications charge could hardly rise to the level of a felonious offense when what he sought to resolve was only a petty offense.

Therefore a determination of whether under the facts of the instant case at bar, there is a reasonable theory from

the evidence to support the theory that Criminal Coercion and Tampering with a Witness were lesser included offenses of Intimidating of a Witness needs to be made.

Section 13A-1-9 Code of Alabama, 1975, provides in part:

(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:

(1.) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged, or

(4.) "It differs from the offense charged only in the respect that a less serious, injury or risk of injury to the same person, property of public interest, or a lesser kind of culpability suffices to establish it's commission".

Moss v. State, CR-03-1180 (Ala. Crim. App. 2005). It seems to be well settled that

— 44 —

a defendant is entitled entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that would support the lesser included offenses. Gavin v. State, 701 So. 2d. 66, 69 (Ala. Crim. App. 2003). MacEwan v. State, 701 So.2d. 66, 69 (Ala. Crim. App. 1997). Gavin v. State, 891 So. 2d. 907 Ala. Crim. App. 2003).

The Trial Court could have avoided collision with Petitioner's constitutional rights had it charged the jury with the lesser included offenses. Furthermore, Petitioner would contend that had the trial court instructed the jury on the lesser included offenses rather than Intimidating a Witness alone, then the jury would likely have found him guilty of the lesser included offenses rather than the Intimidating a Witness, under Section 13A-10-123, Code of Alabama, 1975. It is clear that the evidence presented in the instant case at bar would have supported instructions on the lesser included offenses.

8.) Your movant would aver that the Trial Court violated the common law rule of the fact that one spouse not to testify against the other when the court allowed his common law wife to testify against him in his trial. Petitioner would assert that the court's

-45-

having allowed the testimony of his common law wife violated his constitutional right to a fair trial. See Hutchins and Slesinger. Some Observations on the Law of Evidence - Family Relations, 3 Minn L. Rev. 675 (1929). Hawkins v. United States, 358 U.S. 74, 79 S. Ct. 136, 3 L. Ed. 125 (1958).

9.) Petitioner would aver that his court appointed counsel was ineffective as her performance was deficient and that her deficient performance prejudiced his case, because her representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984).

Your Petitioner would contend that counsel's refusal to call the witnesses he requested she call and subpoena prejudiced him due to the fact that their testimony would have brought about new light to his trial and quite possibly a different outcome of his jury trial. Petitioner had requested that Ms. Stinson call Mr. Bobby Roberts, and Mr. Billy Wallace as witnesses for the defense. These 2 witnesses testimonies would have shown that one of the state's witnesses testimonies was not true, and it is the Petitioner's belief that if his attorney had called these witnesses that their

-46-

testimony would have likely have changed the outcome of the trial and her refusal to call these witnesses prejudiced the Petitioner as her performance was far below the standard of reasonableness expected of any attorney under the circumstances of Petitioners trial, therefore her unprofessional conduct caused damage to Petitioner's defense by prejudicing him with her unprofessional and deficient performance. Strickland v. Washington, 466 U.S. 668 (1984).

Petitioner also contends that counsel's refusal to question his common law wife about her common law marriage to Petitioner further prejudiced him, because had she questioned her in regards to their common law marriage it would have brought her testimony under the spousal privilege of not to testify against your spouse. Hawkins v. United States, 358 U.S. 74, 79 S. Ct. 136, 3 L. Ed. 125 (1958), therefore counsel's failure to do so, as he had requested of her precluded him from receiving a fair trial guaranteed him by the Sixth, and Seventh Amendments of the U.S. Constitution, as well as having denied him due process of law guaranteed him by the 14TH Amendment, thereby prejudicing him by her ineffectiveness.

In fact Petitioner requested that the trial court allow him to fire his attorney due

-47-

to her refusal to oblige him in his request of her. (R31-32), (CP98-199).

Your Petitioner would contend that counsel failed to make timely objections to the Trial Court's failure to instruct the jury on the lesser included offense of Criminal Coercion or Tampering with a Witness, although she objected to the fact that Court had not given jury instructions to lesser included offenses, her objection came to late to preserve the issue for review as the jury had retired to consider it's verdict. (R95).

Counsel failed to meet the burden of Rules 21.3 Alabama Rules of Criminal Procedure, 1975 wherein one must object to any error of a court's instruction to the jury before the jury retires to consider it's verdict, and she must state the matter for which she objects, and the grounds of her objection. Bullock v. State, 697 So. 2d. 66, 66 (Ala. Crim. App. 1997), Burger v. State, 2005 WL 435117, at *3.

Petitioner would assert that counsel's failure to make a timely objection to the Court's not having instructed the jury on the lesser included offenses prejudiced him because these errors were not preserved for post conviction review. (R95).

Petitioner would assert that his attorney was too inexperienced in trial procedure as

as to be aware of the requirements of Rule 21.3, Ala. Rules of Crim. Procedure, or worse she knew of the rule but purposely failed to apply it, which has prejudiced Petitioner due to the fact that now these errors of the Trial Court are barred from post conviction review. In fact the record is devoid of any written instruction to do with the oral objection she made regarding the Court's error of not instructing the jury on the lesser included offense, nor is there any in-dication in the record of the Court that she orally requested the instructions to the Court of the lesser included offenses.

 The Court made reference to her having mentioned in her opening argument about lesser included offenses, and after this statement by the Court the Judge then solicited discussion from the state and the defense concerning the difference between Tampering with a Witness and Criminal Coercion of a Witness. (R-80). Even at this point, his state appointed counsel and did not request that the jury be given these instructions. (R 80-82). However this dis-cussion was insufficient to preserve the issue for review. Burger v State, CR 03-0236, 2005 WL 435117, at *3. (Ala. Crim. App. February 25, 2005).

 Counsel's mistakes were so egregious

-49-

that Petitioner's right to effective representation
of counsel guaranteed him by the Sixth Amendment
was denied him, and her performance was so
deficient as to deprived him of a fair trial.
Id. at 687, as guaranteed him by the Sixth
and Seventh Amendment.

    In fact counsel became so confused during
her argument before the court in which she makes
an attempt at explaining the difference between
§13A-10-123, Code of Alabama, 1975, and §13A-
6-25, Code of Alabama, 1975, which define In-
timidating a witness and Criminal coercion of
a witness; that she even admitted into the re-
cord that she wasn't making any sense in her
argument before the Trial court. (R81).

    Petitioner's contentions of counsel's trial
ineffectiveness and of her trial inexperience came
to light during her questioning of the states
witness and alleged victim, i.e. Petitioner's
common law wife, because her question's of
the witness encouraged prejudical and damaging
responses. She asked the witness, "Has Mr. Lingo
ever beat you?" (R43). Futhermore, she pursues
this line of questioning in her cross examination
by asking, "Has he made any kind of threats or
anything to you as far as beating you recently?"
This brought about seriously damaging testimony
once again when the witness responded with,

-50-

"He has threatened to burn my house down. He has tried to hire someone to kill me. He has made the comment to me that the next person that puts him away will die. (R 44-45). After soliciting these damaging statements from this state witness Mrs. Stinson simply concludes her cross examination of the witness without any attempt to "remove the sting" of these extremely damaging statements, nor did she make any effort to mitigate or repair these prejudicial responses made before the jury. (R-45).

These severely damaging pieces of testimony, elicited from the states leading witness by Petitioner's attorney, are "screaming" examples of how seriously deficient his counsel's performance had fallen to, and are without any question so seriously prejudicial in nature as to have denied Petitioner a fair jury trial. Petitioner would contend that these errors made by his counsel during her cross examination of this state witness proves her performance at trial was deficient, and that because of her errors he was prejudiced by her severely deficient performance. He would also aver that her performance was so unprofessional as to have denied him his Sixth Amendment right to effective assistance of counsel. (R 44-45).

- 51 -

Petitioner would aver that these damaging statements that came from the state's leading witness, having been heard by the jury, was so prejudicial to his defense as to have brought about a conviction. Petitioner would aver that he has satisfied the test set by the United States Supreme Court in that he has proven ... (1.) That his counsel's performance at trial was so deficient and (2.) That he was prejudiced by the deficient performance of his appointed attorney. Strickland vs. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d. 674 (1984).

These particular statements made by this state witness further damaged Petitioner, due to the fact that when counsel later made an objection to the testimony of an Alabama Department of Correction's Investigator wherein he was testifying about a statement Petitioner had made to him about having hired someone to burn ~~down~~ his wife's house down with her in it, ~~the court~~ made outside the presence of his attorney, was overruled by the Court due to the jury having already heard, from his wife that he had threatened her, and said he would burn her house down with her in it. (R60 + R57). The Trial Court allowed the testimony of this Investigator due to the

[that the] prosecution maintained that the defense had elicited the same statement from Petitioner's common law wife upon her cross examination which "opened up the door" with the response of "he had threatened to burn her house down with her in it." (R 66-67). Even though Petitioner made these statements to this investigator outside the presence of his attorney, and even though he was ambushed, and manipulated by this investigator to sign a miranda form waiving his right to an attorney, the Trial court allowed his statements to be heard by the jury, due to his counsel's having elicited such prejudicial statements from her cross examination of the states leading witness. These errors of counsel were so flagrant that Petitioner was prejudiced to the degree that he was convicted of the charges against him. (R 67).

Petitioner would further assert that his [trial] counsel's inexperience and ineffectiveness is shown again when in her objection to the state's entering the Exhibit #3, a transcript of the interrogation of Petitioner by the D.O.C. investigator, wherein she makes out a point in such objection that is totally irrelevant to the issue she is objecting to, that even the Court asks what difference did such factors matter. She is objecting to the fact Petitioner's state

-53-

made to this D.O.C. Investigator, regarding
the alleged statement about the solicitation
of someone to burn the victims house down
with her in it, is made outside the presence of
his attorney and should therefore be suppressed.
Her inexperience and her confusion are very
clear in this showing before the Court. Her
objection is as follows:

"I object to, of course the statement
about the supposed other crime
that's occurring ... the solicitation
of murder where ... Debra Black-
stone supposed they are trying to ..
Well, excuse me, I'm sorry, Mr.
Lingo is supposedly soliciting
somebody to burn her house
down while she is in it. I object
completely to that. I don't think
its relevant to this case right here.
They have got an individual ...
an inmate in Bullock County
by the name of Morris Bowman
that has a long record. In fact,
he's serving right now life with
the possibility of parole, and I ...
~~yeah~~ yeah, two
robbery charges. So to me ... (R 60).
-54-

Which brings about the response from the Prosecutor, and the Court in reaction to her rambling as follows: (R 60).

Mr. Binford: "What does that have to do with this when we're not even calling him as witness, Judge?"

Judge White: "Yeah I don't understand that."

Petitioner would contend that his counsel's representation fell below the professional norms of reasonableness, and that her inexperience as a trial lawyer prejudiced him, and he still believes he has shown by a preponderance of the evidence, supported by the facts within the record of the court, that counsel's performance was ineffective, and denied him a fair trial, as well as having deprived him of the representation guaranteed him by the Sixth Amendment. Petitioner would submit that he has met the burden of proof required of him to satisfy the test of ineffectiveness of coun-

- 55 -

sel. Wilson v. State, 644 So. 2d 1396, 1398

sel <u>Wilson v. State</u>, 644 So. 2d. 1326 (Ala. Crim. App. 1994).

Petitioner would contend that the Trial Court had decided that the testimony of Mr. Ed Sasser, the Investigator for the Alabama Department of Corrections, which interviewed Petitioner, would be partially suppressed, and not allowed before the jury. However, due to his attorney's having elicited testimony from his common law wife in which she stated that the Petitioner had tried to solicite someone to burn her house down with her in it, the Trial court changed its ruling on the suppression of the Petitioners statements to Sassar, and allowed such testimony to be heard by the jury, because the jury had already been exposed to such testimony by the responses from his common law wife in his attorney's cross-examination. (R.67).

Petitioner would maintain that counsel's having elicited such damaging testimony from his common law wife not only prejudiced him once as when the jury heard the response that the victim made regarding counsel's question on cross-examination, as to whether he had ever threatened her, but such error on counsels

- 56 -

part prejudiced him twice by the

part prejudiced him twice upon the Court's changing it's initial ruling of allowing the whole testimony of Investigator Sassar. (R 67).

Petitioner contends that but for his counsel's errors the result of his trial would have been different, therefore her ineffective-ness prejudiced him to the degree that he could not have a fair trial, and that in the instant case at bar the performance element is proven to be deficient, as well as being unreasonable judging by the evidence within the records of the court. Petitioner also avers that even a reasonable probability is sufficient to under-mine confidence in the outcome of the case. Id. at 696.

In proving the elements of Strickland v. Washington test the Petitioner has the bur-den of proof and must satisfy the test with a preponderance of the evidence which Peti-tioner submits he has done Wilson v. State, 644 So. 2d. 1326, 1328 (Ala. Crim. App. 1994).

In the instant case at bar the perfor-mance element is an objective standard that is whether counseling assistance judged under prevailing professional norms was reasonable considering the circumstances. Daniel v.

State, 650 So. 2d. 544, 552 (Ala. Crim. App. 1994). (quoting Strickland, supra). "A court in deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, supra.

Petitioner would contend that counsel's errors during his trial were so serious that the prejudice which occurred due to her ineffectiveness deprived him of a fair trial as guaranteed him under the Sixth and Seventh Amendments. Strickland Supra, U.S. v Crippan, 961 F. 2d. 882 (9th Cir. 1992).

Petitioner is aware that in order to raise an ineffective assistance of counsel for post conviction review that he must first present the issue to the trial court in a motion for new trial Montgomery v. State, 781 So. 2d. 1007, 1010 (Ala. Crim. App. 2000). Petitioner did file a pro se motion for new trial on November 5th, 2004. (C-195).

Even though his pro se motion for a new trial was not extremely specific and not supported by or with affidavits he is not prepared precluded from review. Ex parte Jefferson, 749 So. 2d. 406 (Ala. 1999)

-58-

new trial requires verification in the form of an affidavit. Jones v. State, 727 So. 2d. 866, 867 (Ala. Crim. App. 1998). (quoting + citing Hill v State, 675 So. 2d. 484 [Ala. Crim. App. 1995]).

In Similton v. State, 672 So. 2d. 1363 (Ala. Crim. App. 1995), the Court of Criminal Appeals said that an unverified motion was only bare allegations that could not be considered as evidence of the facts alleged. However in Hill v. State, 675 So. 2d. 484 (Ala. Crim. App. 1995). the court of Criminal Appeals changed their holding from ~~Hill~~ Similton, and reversed the trial court's denial of a motion for new trial and remanded the case back to the trial court, because the allegations of ineffective assistance of counsel was supported by facts contained in the record on appeal. Supporting affidavits or other evidence is not necessary where the grounds relied on in the motion for new trial are shown by the record." Hill v State, Supra.

Petitioner would state that in the instant case at bar the allegations of ineffectiveness of counsel are supported by the actual trial transcripts. These allegations he has asserted can be proven very easily simply by reading transcripts

- 59 -

and noticing that the counsel at trial did not in fact do what a reasonable attorney would have done.

Petitioner further avers that the fact that counsel at trial failed to perform many of the ministerial acts performed by attorneys at trial, and that because of these failures he was rendered helpless and without the effective assistance of counsel. The record in this case shows that Petitioner requested his attorney to perform these functions, and a number of acts pertaining to his case in which trial counsel simply refused to do or perform. The mere fact that the trial court counsel was requested to perform these functions and the record supporting the fact that they were not done proves that the trial counsel's performance was deficient and that because of this deficiency Petitioner was prejudiced by an unjust result at his trial.

Petitioner would assert that considering his incarceration within a state county jail in which has no law library to research for supporting case law on points, and considering his scarce resources and his lacking the proper tools in which he could

address the deficient performance of his attorney of record, and meet the burden of proof required of him in order to show the prejudicial effects of her deficient performance by way of providing federal case law that is materially indistinguishable from the facts of his case, but in which the federal court arrived at an opposite conclusion from that reached by the state court seems to be an unreasonable expectation to put upon Petitioner, a pro se litigant, certainly the Court must consider the petitioner's lack of legal expertise and not hold the Petitioner to the same standards as counseled litigants. Haines v. Kerner, 404 U.S. 519, 30 L. Ed. 652, 92 S. Ct. 594 (1972).

Petitioner would contend that due to these hardships it would be particularly inappropriate for the District Court to dismiss his petition as Respondents have requested. In fact, to dismiss his petition without affording him and evidentiary hearing would be terribly unfair, as Petitioner, a pro se prisoner, can hardly be expected to go toe to toe with the Attorney General, who has at his disposal a law library, as well as the benefit of a research team of "legal beagles" who are

next to none, whereas the Petitioner is left to stand alone, with only a fifth grade education and his inadequate research materials to support his fight for federal relief of a state judgement that has been had by unconstitutional tactics. Petitioner would aver that habeas corpus is the correct vehicle in which to attack the legality of his custody pursuant to a judgement of a state court. Preiser v. Rodriguez, 411 U.S. 475 (1973). Petitioner would further assert that unless it is clear from the record/pleadings, and the files, and records that the prisoner is entitled to no relief, the statute makes an evidentiary hearing is mandatory. Raines v. United States, 423 F.2d. 526, 529-530 (4th Cir. 1970). Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas corpus applicant did not receive a fair evidentiary hearing in state court, either at the time of the trial or in a collateral proceeding. Townsend v Sam, 372 U.S. 293, 319 (1963), 372 U.S. at 312

10.) Petitioner would contend that his 20 year sentence for intimidating a witness is not only excessive, but is an illegal sentence as it was had based on informations incorrectly used to enhance his sentence un-

-62-

der Alabama's Habitual Offender Act, § 13A-5-9, Code of Alabama, 1975 (R117).

Petitioner was indicted by a Houston County Grand Jury on September 5, 2003 for Intimidating a Witness § 13A-10-123, Code of Alabama, 1975, (C-7-9).

He was found guilty by a Houston County Jury on November 4, 2004 of Intimidating a Witness which is a class C felony. (R101-102).

Petitioner was sentenced to a term 20 years in the state penitentiary with an order for it to run consecutively with any sentence presently being served. He was sentenced on December 9, 2004 by Honorable Judge Jerry White, Houston County Circuit Court Judge. (R117), (C214-215).

Petitioner would aver that the state prosecutor, i.e., Mr. Binford brought forward past arrest, a past conviction that was reversed and rendered in the Petitioners favor, misdemeanor convictions, cases that had not been adjudicated, he mentions an arson case, and a theft case pending in Houston County which were remanded back to the Grand Jury due to it not being a true bill, because of it having a defect in the indictment. The prosecutor alleged that there were arsons involving burning trailers and filing false insurance claims,

-63-

however he produced only one document certifying only one prior felony. (R 107-108). (C 204-206).

The state prosecutor's oral address to the court is "dripping of motivations to mis-represent" the informations regarding Petitioner's past problems with the law. The State prose-cutor's verbal ambush of the Petitioner at his sentencing was for one purpose and one pur-pose only, and that was to prompt the sentencing Court to be prejudicial towards the Petitioner. (R 106-108).

The prosecutor's address to the court was full of allegations of past arrests, unverified and uncertified misdemeanor convictions, as well as claiming that Petitioner was presently serving a sentence out of Barbour County, Alabama, where where he was convicted of arson, however, he failed to produce certified copies of his alleged convictions. He then alleges that the Petitioner "has some other cases which do not appear on this record that arise from Covington County." He then goes on to allege that Petitioner has cases which are pending in Houston County of theft and arson, but he explains that the indictment had to be returned to the Grand Jury due to defects which caused it to be consi-dered unable to be served as it was not a "true bill". (R 106-109).

— 64 —

The state could only produce one certi-fied copy of a felony conviction that could be used for enhancement purposes under the Habitual Offender Act. §13A-5-9 Code of Alabama, 1975. All prior felony convictions to be used for enhancement purposes must be certified copies from whatever jurisdictions the convictions originated from, and they must be certified as being true copies by the Circuit Court Clerk in order to be used for sentencing purposes. The record of Petitioners sentencing only contains one certified copy of one prior felony conviction. (C 204-206).

The only prior felony conviction that appears in the "Records of the court" is a conviction out of Houston County, Alabama for the crime of Receiving Stolen Property II in which he pleaded guilty to on March 2ND, 1983. Peti-tioner received a 2 year suspended sentence, and was the only felony conviction that was certified by the Circuit Court Clerk as required by Alabama Rules of Criminal Procedure, and Section 13A-5-9, Code of Alabama, 1975, in order to be used for the enhancement purposes in sentencing under Alabama's Habitual Offender Act (C 204-206).

Petitioner would contend that he was prejudiced by the prosecutor's recital

— 65 —

of his history of criminal arrests before the Sentencing court, wherein he alleges all kinds of criminal activity being committed by Petitioner. In fact, the prosecutor's ranting before the court goes so far as to ask the court to "consider giving him a sentence which is commensurate not only with his record that he presents to the court today but with the facts of the case that you have heard at this trial". (R-108).

None of the state prosecutor's allegations were backed up by any actual evidence to support his allegations. His contentions were not regarding certified convictions at all, but were simply being used by the prosecutor to prejudice the Petitioner before the Trial Court because none of these past convictions were felony convictions, with the exception of the Receiving Stolen Property II out of Houston County. None of the criminal matters were convictions in which could be used for sentencing enhancement under §13A-5-9, Code of Alabama, 1975. Other than the conviction for the Receiving Stolen Property II, which was the only felony conviction that was certified as required by the provisions of §13A-5-9, Code of Ala, 1975,

— 66 —

which could be used for sentencing enhance-
ment purposes by the trial court. (C. 207-213).

Petitioner would aver that his 20
year sentence is in excess of the maximum
authorized by law, because Petitioner was
convicted of a class C felony of the charge
of Intimidating a Witness, which only
carries a sentence of from 1 year to 10 years.

It is important for the Honorable
District Court to know that this inmate assis-
ting the Petitioner has no Southern Reporters,
nor Federal Reporters or Supplements or any
other research materials other than some notes
taken by this inmate assistant over a one
year period from prison law libraries. We
will simply have to hope the Honorable Court
will give our contentions a broader scope
of review than that of the Respondent's
legal experts, as a pro se prisoner should
never be held to the same standards as
counseled litigants. Haines v. Kerner,
404 U.S. 519, 30 L.Ed. 652, 92 S.Ct. 594
(1972).

Petitioner would also contend that the
prosecutor's having put dismissed cases,
other cases he was acquitted of, as well as
the cases he pleaded down to prejudiced
him, because even though these past crim-

— 67 —

-inal allegations could not legally be used for enhancement purposes, it is the Petitioners contention that these past problems with the law inflamed the Trial Court against him, and that these cases, which were dismissed or in which he was not found guilty of and acquitted of, should not have been brought before the Court because these cases were not convictions, nor were these cases proof of guilt. Therefore it is Petitioner's contention that the prosecutor's actions in motions before the Trial Court during his sentencing hearing was a violation of his Fourteenth Amendment rights to due process of law and that the 20 year sentence he received resulted from an unfair sentencing hearing wherein the Court used inapplicable and illegal informations were used to enhance his sentence. (R 106-109). (C 204-213).

Petitioner would contend that the manner in which his sentenced was imposed does raise a question of the denial of due process in the sentencing itself which is a cognizable claim under 28 U.S.C. § 2254. United States v Malcolm, 432 F. 2d. 809, 814, 818 (2nd Cir. 1970). Petitioner would aver that the Honorable District Court

- 68 -

should hold an evidentiary hearing due to the fact that Petitioner did not receive a fair evidentiary hearing in that the State Court either at the trial or a sentencing proceeding, gave him a fair hearing. (Townsend V Sam, 372 U.S. 293, 319 (1963).

Petitioner would contend further that his sentence was illegally imposed due to the manner in which given by the Court where it used inapplicable informations in it's decision to enhance his sentence under §13A-5-9 Code of Alabama, 1975 (R.108). See lines 11-16 (C.204-213). Hill v. United States, 368 U.S. 424 (1962) See 4 descentors at 368 U.S. at 430.

## Conclusion

Petitioner believes he has shown that the State Court violated his constitutional rights and he believes he has shown a cause for his inability to have filed a timely state post conviction petition, and he believes has shown prejudice as a result of his inability to have filed a state post conviction petition. Petitioner believes he is due relief from the claims he has made in his habeas corpus petition for the following errors of the Trial Court:

- 69 -

1.) That extraordinary circumstances existed that precluded him from filing a State post conviction Rule 32, and that because he could not file a timely Rule 32 Petition he was hurt by prejudicial effects of such inabilities, and that due to these sets of circumstances he believes he should not be procedurally barred by default, and that the District Court should not dismiss his habeas corpus petition. Henderson v. Campbell, 353 F. 3d. 880, 891 (11th Cir. 2003). Thereby having met the two narrow reasons for excusable default Petitioner should able to have the federal Court review the merits of his habeas corpus claims Murry v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 397 (1987). Wright v. Hooper, 169 F. 3d. 695, 703 (11th Cir. 1999).

2.) Petition believes that his arrest was illegal in that he was arrested in Henry County by a detective from Houston County due to the warrant not having been domesticated as required by Title 15 Section 15-10-10, Code of Alabama, 1975, and that he was made to be incarcerated in the City of Dothan's City Jail rather than in the city or county of arrest as required by § 15-10-70, Code of Alabama, 1975.

- 70 -

and since his arrest was illegal the Peti-
tioner believes his 4th Amendment rights to
be protected against illegal arrest was vio-
lated and that his 14th Amendment rights
to due process of law was violated. Ham-
mond v. Thomas, 398 F. 2d. 705 (2nd Cir 1968).

3.) That his Sixth Amendment right to
have counsel present during police interroga-
tion was violated by an investigator of the
Alabama Department of Corrections, as well
as his 14th Amendment right to due process
of law.

3(a.) That the Trial Court violated his
Sixth and Seventh Amendment rights were vio-
lated to a fair jury trial, when the Court allowed
his statements made outside the presence of his
lawyer to be brought before the jury, as well as
having violated his 5th Amendment protection
against self incrimination, and his 14th Amend-
ment rights to due process of law.

4.) That the Trial Court denied Petitioner a fair
Jury Trial when it refused to instruct them
for the lesser included offenses of Coercion
and Tampering with a Witness, thereby viola-
lating his Sixth and Seventh Amendment
rights to a fair trial and his Fourteenth

- 71 -

Amendment rights to due process of law.
Ferry v. Ramsey, 277 U.S. 88, 48 S. Ct. 443, 72
L. Ed. 796 (1928). MacEwan v. State, 701
So. 2d. 66, 69 (Ala. Crim. App. 1997).

5.) That the Trial Court violated the
common law rule of one spouse not testifying
against the other spouse. Hawkins v. United
States, 358 U.S. 74, 79 S. Ct. 136, 3 L. Ed. 125
(1958).

6.) That his trial counsel was ineffec-
tive in her performance thereby denying
Petitioner his Sixth Amendment right to
effective representation by an experienced
attorney at trial. Strickland v. Washington,
466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d.
674 (1984)

7.) That Petitioners sentence is illegal
and excessive for the crime he is convicted
of. as well as the manner in which he was sen-
tenced and the manner in which his sentence
was imposed raises a due process claim which
is a cognizable claim under 28 U.S.C. §2254.
United States v. Malcolm, 482 F. 2d. 809, 814,
818 (2nd. Cir 1970).

## Wherefore These Premises Considered,

Your Petitioner would move the Honorable District Court to hold an evidentiary hearing on the disputed facts between the Petitioner and the Respondent's, and he would request he be appointed counsel in order to have a fair chance at proving his facts herein are true and that he should receive this relief as well as any other relief the Honorable District Court would deem available to him. That the Court

## For This We Forever Pray

would reverse & remand his case back to the state Court

Done this the 27th day of November, 2006

Respectfully Submitted,

Ralph Wilson Lingo

Ralph Wilson Lingo
Petitioner
136 North Court Street
Prattville, Al. 36067

## Certificate of Service

I, Ralph Wilson Lingo, do hereby certify that I have delivered a copy of the foregoing motion by placing the same in the United States mail properly addressed to the U.S. District Court office of the Clerk at P.O. Box 711 • Montgomery, Alabama, 36101-0711, as well as the

- 73 -

agencies below, with proper postage affixed and prepaid this the _27th_ day of November, 2006.

Ralph Wilson Lingo
Ralph Wilson Lingo
Petitioner
136 North Court Street
Prattville, Alabama
36067

Attorney General for
The State of Alabama
Alabama State House
11 South Union Street
Montgomery, Alabama
36130-0152

## Oral Argument Requested

Your Petitioner would move the Honorable United States District Court for a hearing to be set in order for him to present oral argument before the Honorable Court.

Ralph Wilson Lingo
Petitioner





322

Badge #

08-13-91

Date

**Henry County**
# Sheriff's Dept.

DEPUTY

This is to certify that

TONY LUKER

is a duly appointed Deputy Sheriff
of Henry County, Alabama

Lawton Ed Armstrong, Sheriff

## HENRY COUNTY SHERIFF'S OFFICE

Know All Men By These Presents:
That I, Lawton Ed Armstrong, as Sheriff
of Henry County, under and by virtue of
the authority conferred on me by the statutes in such cases, made and provided,
do hereby constitute and empower
sworn ___Tony Luker___ as a
___Deputy Sheriff___ in and
for Henry County to act for me and in my
stead to enforce the law and to execute
any legal papers placed in his hands.

Under my hand this ___13th___ day,
___August___ __ 19.91

_____
SIGNATURE

| DOB | | BLOOD TYPE | |
|-----|-----|-----|-----|
| ▓▓▓▓ | | AB+ | |
| HEIGHT | WEIGHT | HAIR | EYES |
| 5'11" | 200 | bro | blu |
| LEFT THUMB | | RIGHT THUMB | |

Exhibit 1(a6)

 **Sheriff**    LAWTON ED ARMSTRONG — HENRY COUNTY

February 14, 2005

Mr. Ralph Lingo   AIS# 190083
Draper Correctional Facility
P. O. Box 1107
Elmore, Alabama  36025

Dear Mr. Lingo:

I am writing in response to your letter dated February 10, 2005.  In response to your letter, please be advised that Officer Tony R. Luker is employed  with the City of Dothan Police Department as a Detective.  He has never been employed with this department as a Deputy Sheriff.  Also, I must advise you that I am unfamiliar with the case that you wrote me about, and also I am unfamiliar with the remaining portion of your letter.

If I can provide you with any further assistance, please feel free to call me.

Sincerely,

Lawton Ed Armstrong, Sheriff

- 76-



# Sheriff — LAWTON ED ARMSTRONG — HENRY COUNTY

March 8, 2005

Ralph Lingo   AIS 190083 C-3-34
P. O. Box 1107 DCF
Elmore, Alabama  36025

Dear Mr. Lingo:

I am in receipt of your letter dated March 7, 2005.  Please be advised that Detective Tony
Luker, to my knowledge, has never been employed by the Henry County Sheriff's
Department, and has never held any type of position with this department.  Detective
Luker does not have a Henry County Sheriff's Department badge to any of my
knowledge, nor has he ever been issued one.  As I stated in a previous letter to you,
Detective Tony Luker is employed with the City of Dothan, Alabama, as a Detective.
He has been employed with that department for quite some time.

Sincerely,

Lawton Ed Armstrong, Sheriff

— 77 —

Exhibit 1(b)



**Sheriff** LAWTON ED ARMSTRONG — HENRY COUNTY

May 3, 2006

Kevin L. Butler, AFD
Federal Defenders, Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104

Re: Ralph Lingo
    Case Number: 1:05CR32-A

Dear Mr. Butler:

Please be advised I am in receipt of the above subpoena, and mailed all of
the documents I had pertaining to this case to you on April 12, 2006.

In response to your request for documents, please be advised there is not
an incident/offense report, arrest report, narrative supplement, offense
supplement, photographs, dispatch sheets, dispatch tapes, audio, video or
other written record concerning the April 14, 2003, search of Ralph Lingo's
residence located at 10666 Highway 431 South, Newville, Alabama.

Attached, please find a copy of the Henry County Sheriff's Department Radio
log for April 14, 2003, as well as an I.D. card for Officer Tony Luker. Upon checking
with the Abbeville Police Department, who also dispatches for this office, they were
unable to locate any information regarding the search of Ralph Lingo's residence.

To explain Tony Luker's status as a Henry County Sheriff's Deputy, I must
advise you that Officer Tony Luker was given a Henry County Sheriff's Department
I.D. card on 08-13-91, when he was working with the Dothan Police Department
assigned to the Henry/Houston County Drug Task Force Unit. All Officers that were
assigned to this task force were sworn in by the Henry and Houston County Sheriff's.
The task force was dissolved in the mid to late 1990's. Officer Luker has never been
employed with the Henry County Sheriff's Department, nor has he ever been
compensated for any services.

— 78 —

Exhibit 1(E)

Lingo
Page 2

If I can provide you with any further information, please feel free to contact me.

Sincerely,

Lawton Ed Armstrong, Sheriff

LEA/ks

Enclosure

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

TO:       *REHOBETH HIGH SCHOOL*

FROM:   **Federal Defenders**

RE:       *RALPH LINGO*

_____

## AUTHORIZATION AND MEDICAL RELEASE

I hereby authorize the above named persons and/or corporations to provide to any representative of the **Federal Defender Program, Inc.**, any information regarding me, including but not limited to credit history, both personal and business related; income information; tax information; employment history; school records; legal history and legal files; court records; medical information, including but not limited to sensitive issues such as mental illness, HIV status, or drug and alcohol related illnesses; psychiatric information; insurance and medical claims; and/or other personal or financial information in your possession.

I hereby declare, pursuant to 28 U.S.C. §1746, under penalty of perjury, that the foregoing authorization is true and correct.

Executed on the *14th* day of *December* 200*5*.

*Ralph Lingo*
NAME:
Social Security Number: *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*
D/O/B: *9/4/62*

*Jennifer A. Hart*
WITNESS

*exhibit 2*

-80-

# A/9 Cumulative Record Folder

NAME _____ LAST _____ FIRST _____ MIDDLE

BOY ☑ GIRL ☐   DATE OF BIRTH _____ YEAR _____ MONTH _____ DAY

RACE W   BORN _____ CITY, COUNTY, OR PARISH _____ STATE OR COUNTRY

DATE OF ENTRANCE _____ YEAR _____ MONTH _____ DAY

TYPE OF RECORD VERIFYING DATE OF BIRTH _____

BEGINNER ☐ OR SCHOOL LAST ATTENDED _____ DISTRICT NO. OR NAME _____ GRADE _____

PARENT'S NAME — FATHER OR GUARDIAN _____ OCCUPATION _____

NATIONAL EXTRACTION _____

CITIZEN YES ☐ NO ☐

MOTHER'S NAME _____

NATIONAL EXTRACTION _____

PARENT'S RESIDENCE _____ SCHOOL DISTRICT NO. _____ TELEPHONE NO. _____ TOWNSHIP AND COUNTY, PARISH, OR STREET AND CITY _____ STATE _____

PUPIL'S ADDRESS _____

PUBLIC ☐ PRIVATE · PAROCHIAL ☐ ACCREDITED ☐ UNACCREDITED ☐

RANK IN FAMILY _____ NO. OF CHILDREN IN FAMILY _____ ECONOMIC STATUS _____ OR USE WITH WHOM LIVING IF DIFFERENT FROM PARENT _____

CHECK IF LIVING WITH: GRANDPARENTS ☐   AUNT ☐   SISTER ☐   BOARDING ☐

CHANGES IN RESIDENCE OR ADDITIONAL DATA: _____

## ELEMENTARY SCHOOL RECORD

| GRADE ENROLLED | 1st | 2nd | 3rd | | | | |
|---|---|---|---|---|---|---|---|
| NAME OF TEACHER | O.B.P. | O.B.P. H.H.K. | | | | | |
| BUILDING | | | | | | | |
| SCHOOL YEAR | '69-'70 | '70-'71 | '71-'72 | '72-'73 | '73-'74 | '74-'75 | |
| SEMESTER | | | | | | | |
| READING | 30 | 30 | 30 | | | | |
| LANGUAGE ARTS | | | | | | | |
| CITIZENSHIP | | | C | | | | |
| ARITHMETIC | 30 | 30 | 50 | 70 | | | |
| SPELLING | 30 | 30 | 30 | 70 | | | |
| GEOGRAPHY | | | | | | | |
| HISTORY | | | | | | | |
| HANDWRITING | | | C | C | | | |
| MUSIC | | | C | C | | | |
| AGRICULTURE | | | | | | | |
| SCHOOL ATTITUDE | | | | | | | |
| EFFORT IN WORK | 0 | 0 | 50 | 70 | | | |
| DAYS ABSENT | 8 | 8 | 30 | 7 | | | |
| TIMES TARDY | 0 | 0 | 5 | 3 | | | |
| PROMOTED TO | | | 3rd | | | | |

Ralph is a troublesome influence on the work of a normal classroom. Ralph needs to be in a special school for training.

APTITUDE OR SPECIAL INTERESTS — ENTER DATA WITH DATES

TRANSFER, WITHDRAWAL, RE-ENTRY RECORD

| DATE | T-W-R | FROM-OR-TO | REASON |
|---|---|---|---|

*1. ILLNESS; 2. DEATH; 3. CHANGE OF ADDRESS; 4. WORK; 5. OTHER SCHOOL ACC.; 6. EXPULSION; 7. INSTITUTIONALIZED; 8. PROMOTED; 9. OTHER

CREDITS SENT TO: _____

EMPLOYMENT CERTIFICATE: _____

PHOTOGRAPH WITH DATE, FINGERPRINTS, OR OTHER IDENTIFICATION

## APTITUDE AND INTELLIGENCE TESTS

| DATE | TEST | FORM | SCORE | NORM | C.A. | M.A. OR M.U. | I.Q. OR P.A. |
|---|---|---|---|---|---|---|---|

UNCLASSIFIED RECORDS: _____

— 81 —

Exhibit 2(a)

## A/g Cumulative Record Folder

NAME _King_ _Ralph_   BORN _December_ _R/_

BOY ☒ GIRL ☐   DATE OF BIRTH _6 2 4_

### HIGH SCHOOL RECORD

**SCHOOL** _Kershaw High_   GRADE _7_   YEAR 19 _75-76_

| SUBJECT | 1ST SEM | 2ND SEM | FINAL GRADE | CREDITS OR UNITS | H. R. TEACHER | CLASSROOM TEACHER |
|---------|---------|---------|-------------|------------------|---------------|-------------------|
| English | 73 | 83 | 83 | 1 | | Johnston |
| P.E. | 74 | | | | | Palmer |
| Math | 71 | | | | | Johnston |
| Science | | | | | | Johnston |

DAYS ABSENT ___ TIMES TARDY ___

**SCHOOL** _Central High_   GRADE _8_   YEAR 19 _76-77_

| SUBJECT | 1ST SEM | 2ND SEM | FINAL GRADE | CREDITS OR UNITS | H. R. TEACHER | CLASSROOM TEACHER |
|---------|---------|---------|-------------|------------------|---------------|-------------------|
| English | 85 | 86 | 86 | | | |
| | 81 | 74 | 78 | | | |
| | 73 | 77 | | | | |
| | 74 | 49 | | | | |
| | 86 | 86 | 83 | | | |

DAYS ABSENT ___ TIMES TARDY ___

**SCHOOL** ___   GRADE ___   YEAR 19 ___ 19 ___

| SUBJECT | 1ST SEM | 2ND SEM | FINAL GRADE | CREDITS OR UNITS | H. R. TEACHER | CLASSROOM TEACHER |
|---------|---------|---------|-------------|------------------|---------------|-------------------|
| English | | | | | | |

DAYS ABSENT ___ TIMES TARDY ___

**SCHOOL** ___   GRADE ___   YEAR 19 ___ 19 ___

| SUBJECT | 1ST SEM | 2ND SEM | FINAL GRADE | CREDITS OR UNITS | H. R. TEACHER | CLASSROOM TEACHER |
|---------|---------|---------|-------------|------------------|---------------|-------------------|
| English | | | | | | |

DAYS ABSENT ___ TIMES TARDY ___

### EXTRA-CURRICULAR ACTIVITIES

| TYPE OF ACTIVITY | YEAR IN SCHOOL |||||||
|------------------|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 | 12 |
| Football | | | | | | |
| Basketball | | | | | | |
| Glee Club | | | | | | |
| Choir | | | | | | |

| TYPE OF ACTIVITY | YEAR IN SCHOOL |||||||
|------------------|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 | 12 |

DATE ___

### GRADUATION DATA

GRADE SCHOOL: YEAR ___ MONTH ___

JUNIOR HIGH SCHOOL: YEAR ___ MONTH ___

HIGH SCHOOL: YEAR ___ MONTH ___ DAY ___

NO. IN CLASS ___ RANK IN CLASS ___

SCORE IN COLLEGE APTITUDE TEST ___ PERCENTILE RANK ___

TOTAL FOUR YEAR ☐ SENIOR HIGH SCHOOL ☐ CREDITS ___

HONORS AND AWARDS ___

TRANSCRIPT OF CREDITS SENT TO ___

ENROLLED IN COLLEGE OR UNIVERSITY ___

EMPLOYED BY ___

### EDUCATIONAL AND VOCATIONAL PLANS

MEASUREMENT RECORDS AND INFORMAL DIAGNOSIS

| | YEAR IN SCHOOL |||||||
|--|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 | 12 |

### AVOCATIONAL OR HOBBY INTERESTS

RECORDS AND INFORMAL DIAGNOSIS

| | YEAR IN SCHOOL |||||||
|--|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 | 12 |

### COUNSELOR'S RECOMMENDATIONS

_— 82_

_Exhibit B_

Exhibit 2(c)

JANE KIRKLAND = Counslor Rehobeth High School



*State of Alabama*
# Alabama Department of Corrections

Investigation and Intelligence Division
P. O. Box 301501
301 S. Ripley St. Ste. A2-504
Montgomery, Alabama 36130



BOB RILEY
GOVERNOR

Paul D. Yarbrough
DIRECTOR

DONAL CAMPBELL
COMMISSIONER

Art Crumpton
INTERIM ASST. DIRECTOR

October 13, 2004

**TO:**      Mr. Randy Yarbrough, Director I and I Division

**FROM:**   Ed Sasser, Investigator

**SUBJECT:**  Inmate Ralph Lingo AIS 190083

On 10-8-04, Warden Arnold Holt advised this investigator that Inmate Morris Bowman, AIS 162110, came to him with information regarding Inmate Ralph Lingo. Inmate Bowman told Warden Holt that Inmate Ralph Lingo wanted him (Bowman) to look over some of his legal papers, especially the search warrant on a case that he had pending. Then, according to Bowman, Lingo said it really doesn't matter because I got someone that's gone take care of the witness, Debra Blackstone.

This investigator advised Warden Holt to lock Inmate Lingo down and not allow him to make any phone calls until this investigator could interview Lingo. This investigator then called the Houston County District Attorney's Office and spoke with an assistant district attorney who advised this investigator that she was aware of Inmate Lingo, but believed he got his current sentence out of Barbour County. This investigator talked with District Attorney Investigator, Ronnie Dollar of Barbour County, and advised him of the threat against Ms. Blackstone. Investigator Dollar stated he was familiar with Ralph Lingo and wouldn't put anything past him, and that Ms. Blackstone was a witness in a pending case against Lingo.

On 10-13-04, this investigator interviewed Inmate Morris Bowman. Inmate Bowman stated he does legal work around the prison for inmates and Ralph Lingo came to him wanting him to look at a search warrant to see if there was anything wrong with the search warrant that he could use in a pending case. Inmate Lingo, according to Bowman, stated it really didn't matter because he had met someone while in the Houston County Jail that was going to take care of witness Debra Blackstone, and that this person was going to burn Debra's house down with Debra in the house. Inmate Morris Bowman's statements are attached to this report.

This investigator advised Inmate Ralph Lingo of his Miranda Rights and Lingo agreed to talk with this investigator. Inmate Lingo said Debra Blackstone was his ex-wife and he love Debra and would never do anything to hurt her. Inmate Lingo was asked if he sent a person to Debra's house with a naked picture of her to threaten her. He stated the person he sent never saw the picture. When asked again if he had sent a naked picture to Debra's house by someone to intimidate her, he stated he sent the picture, but this was regarding a telephone harassment charge. Inmate Lingo was asked if he threatened Debra in regards to a case that he had pending. He stated he wished to stop this statement, because he didn't want to answer any questions about pending cases. This statement was stopped at this point.

Telephone (334) 353-8912                          Fax (334) 353-8922

EXHIBIT 3              -84-