IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RALPH WILSON LINGO,                )
                                   )
            Petitioner,            )
                                   )
v.                                 )        CIVIL ACTION NO. 1:06cv703-MHT
                                   )                    (WO)
                                   )
STATE OF ALABAMA, *et al.*,        )
                                   )
            Respondents.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION AND PROCEDURAL HISTORY

On November 4, 2004, Ralph Wilson Lingo (Lingo) was convicted of intimidating a witness. The trial and conviction took place in the Circuit Court of Houston County, Alabama. Lingo was sentenced as a habitual felony offender to twenty years' imprisonment. On August 8, 2006, Lingo filed this 28 U.S.C. § 2254 petition for habeas corpus relief, (Doc. No. 1, p. 15.) which he amended on October 2, 2006. (Doc. No. 18.)

After his conviction in state court, Lingo filed a direct appeal, in which he raised the following three claims:

(1)    Whether the trial court erred in denying to give a jury instruction on the lessor included offenses of criminal coercion and tampering with a witness?

(2)    Whether there was insufficient evidence to warrant a motion for judgment of acquittal of intimidating a witness?

(3)    Whether trial counsel's assistance at trial was ineffective?

(Doc. No. 10, State's Ex. B, p. 2.)  On June 10, 2005, the Alabama Court of Criminal Appeals affirmed Lingo's conviction in a memorandum opinion. (State's Ex. D.) On August 12, 2005, the Alabama Supreme Court denied Lingo's petition for a writ of certiorari. (State's Ex. F.)

In his amended § 2254 petition, Lingo presents the following claims:

(1)    He received the ineffective assistance of trial counsel based on the following:

    (a)    Trial counsel failed to call defense witnesses as requested;

    (b)    Trial counsel failed to question Lingo's wife concerning their common-law marriage or otherwise establish the spousal privilege;

    (c)    Trial counsel failed to object in a proper manner concerning the trial court's failure to instruct on the lesser-included offenses of criminal coercion and tampering with a witness.

    (d)    Trial counsel failed to question the Houston County Police investigator concerning his arrest of Lingo in Henry County without first domesticating the warrant.

    (e)    Trial counsel's cross-examination of the State's witnesses prejudiced his case.

(2)    The court failed to give instructions on the lesser-included offenses of coercion of a witness or tampering with a witness in violation of his constitutional rights.

(3)    The court erred in allowing his common-law wife to testify against him at trial in violation of the spousal privilege and constitutional law.

(4)    The trial court violated his constitutional rights by allowing his statements to an Alabama Department of Corrections investigator, which were made outside the presence of his attorney, to be introduced at trial.

(5)    His sentence of twenty years' imprisonment under the Alabama Habitual Felony Offender Act is excessive. Specifically, he asserts that the enhancements were based on prior misdemeanor offenses, a case in which he was acquitted, and charges which had yet to be adjudicated.

(6)    He was subjected to an illegal arrest in Henry County because the arresting officer, a detective from the City of Dothan police department in Houston County, failed to properly domesticate the warrant and executed the warrant outside of his jurisdiction.

(Doc. No. 18, pp. 3-8.)[1] The respondents filed an answer in which they argue that Lingo's claims are either procedurally defaulted or were properly adjudicated by the state courts. (Doc. No. 21.)

Upon review of the amended § 2254 petition, the answer of the respondents and Lingo's response to the answer, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION OF THE CLAIMS

### A.  The State Law Claim

Lingo argues that the trial court erred in failing to instruct the jury on the lesser-

---

[1] In Lingo's amended petition, he lists the aforementioned claims as Claims Three, Four, Five, Six, Seven, and Eight. However, for clarity's sake, the court has summarized Lingo's arguments and renumbered the petitioner's contentions as Claims One through Six.

included offenses of criminal coercion and tampering with a witness.  On direct appeal, the

Alabama Court of Criminal Appeals applied state law and determined that the trial court

properly instructed the jury.[2]   (State's Ex. D, p. 6.) The fact that a jury instruction was

allegedly incorrect under state law is not a basis for federal relief.  *See Estelle v. McGuire*,

502 U.S. 62, 71 (1991); *Erickson v. Secretary for Dept. of Corrections,*  243 Fed.Appx. 524,

528, 2007 WL 2212682, 4 (11th Cir. 2007) ("Where the claim is merely that a jury instruction

was incorrect under state law, federal habeas relief is not available.")  Accordingly, Lingo's

request for habeas relief on this claim is not warranted.

## B.  The Adjudicated Claims

Lingo's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended

---

[2] After the Alabama Court of Criminal Appeals initially noted that defense counsel's general objection on the grounds that the trial court had not instructed the jury on criminal coercion and tampering with a witness did not preserve Lingo's argument for review, the state court discussed the trial court's response to the objection, conducted a thorough analysis of the claim, and determined that Lingo's contention was without merit.  (State's Ex. D, pp. 5-6)

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure.  In *Harris v. Reed*, 489 U.S. 255 (1989), the Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds.  Adopting the *Michigan v. Long*, 463 U.S. 1032 (1983), plain statement rule, the Court held that if a state court issues a "plain statement" that its decision rests on independent and adequate state grounds, a federal court should not address the merits of the federal claim. *Harris v. Reed, supra.*  However, if a state court's reasons for rejecting a claim are ambiguous such that a federal court cannot determine whether the decision is based on procedural grounds or the merits, federal review is not precluded.  *Id.*

 Because the state court further discussed the trial court's exhaustive response to the objection, conducted an analysis of the claim on the merits, and concluded that Lingo's argument concerning the lesser-included offenses was without merit, this court will treat Lingo's contention as an adjudicated claim.

by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under the provisions of 28 U.S.C. § 2254(d), with respect to claims adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Court held that:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision

of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. [at] 405-406." *Price*, 538 U.S. at 640 (2003). Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409]." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636.

### 1.    Sufficiency of the Evidence

To the extent Lingo asserts that the evidence was insufficient to convict him of intimidating a witness, this court concludes that the petitioner's request for relief is due to be denied. The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), sets forth the clearly established federal law on this issue. Thus, this court will decide whether the Alabama Court of Criminal Appeal's determination that, "[b]ased on the evidence presented, the jury could have reasonably concluded that [Lingo] was guilty of intimidating a witness"[3] resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In its memorandum opinion, the Alabama Court of Criminal Appeals summarized the testimony of the victim, Debra Blackstone ("Blackstone"), including testimony that she

---

[3] (State's Ex. D, p. 10.)

received an unsigned letter along with attached copies of risque photographs of her

approximately one week after signing a warrant against Lingo for harassing communications.

A former employee also testified that she transcribed the letter for Lingo.  The letter included

the following statements:

> You brought this on your own self.  No one has seen these.  You tricked me and you did something very, very wrong.  I still have the phone tape.  I can ruin you real badly with fraud counts against you with the internal revenue.  You love blacks, and cops but you don't think more that 3,000 of these will be placed all over Dothan.  Every stop sign, light poles, just think again.  Copies are made.  You better see me or I will have to start defending myself.

> I do not want any trouble with you.  You know the law is on me real bad, trying to get anything on me.  You know all about it, but I ain't guilty.  I was framed and set up by Sue.  I didn't know anything about it until it was all over with.  I told the internal revenue a little about you, but not enough to get you in any trouble.  I would never do that unless I was forced to.

> 4 out of 20 pictures.

> You know I can hurt you by a lot of people you ran off from my [business], that you have cussed out.  I know at least three of those people want to sign warrants on you right now.  I know why you did all of this is because of you lover, so here's the way it will go.  You can keep your black lovers, your cop lovers.  I haven't done anything but help you and giving you money.  Yes I was trying to fight to keep you, and to make sure you had your medication, money, and whatever your kid needed.  I will never call you again.  I will never contact you again.  You drop your phony warrant or you will be sued at the right time and be arrested with [warrants] against you.  I will push the internal revenue to step in to investigate you. [A]lso GE to investigate you also.  I will do whatever it takes to ruin you, destroy you, your name.  You have lied on me, and tricked me with a phone call, and there's some stuff on you I won't mention.  If you don't want to go down you better back off from me.  I will be going to have a meeting with my investigators and I will put them on the case.  I kept you out of these trials like you asked me, but you [will] be in 3 in the near future, under oath.  These phone tapes will prove you deal with a lot of customers.  You want me to nail you but you remember the fox.  You know what this means.  I am leaving and going to the beach this weekend.  I will have my cell phone with me.  I don't want to talk or see

anyone but you face to face, to talk out our differences. You know my number. I am very depressed. I have cried a million tears over you.

I am not threatening you in no way. I am making you a promise. You have 24 hours to see me face to face. And we will start to work to defending myself against accusations which aren't true. Debra this will be up to you. You know my cell number. If you want to meet me to work this thing out, then I'd be more than willing [to] show you I'm not joking with you. Three of your family members will get a copy of the videotape and a copy of these pictures along with copies of phone tapes, this weekend. I have not got any of this in my possession. All it would take is a phone call and it will be delivered. You have 24 hours for these to start [coming] out on you. You want to go to the law, fine. We will also tell the law a lot of shit, too, and it won't stop there. I know you have these judges on your side, but you just don't know what I know. I don't want any problems out of you. It's your money and your life. Do you want it all destroyed or a person to person talk to work all of this out. I might not word this letter right, but one of your friends knows how to contact me. This will be up to you. I will have to do what I have to do. Thank you very much. We can work this out and go our [separate] ways.

Take this the way you want to take this. It's your choice.

Thank you.

1-4 pages – you have copies of your pictures. Do what you want to do.

(State's Ex. D, pp. 3-4; State's Ex. A, C. 224-26.) In its analysis, the Alabama Court of

Criminal Appeals discussed the elements of intimidating a witness[4] and other applicable law

---

[4] Section 13A-10-123, ALA. CODE 1975, provides:

(a)    A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or person he believes will be called as a witness in any official proceedings, to:

   (1)    Corruptly influence the testimony of that person;

   (2)    Induce that person to avoid legal process summoning him to testify; or

   (3)    Induce that person to absent himself from an official proceeding to which he has been legally summoned.

(b)    "Threat," as used in this section, means any threat proscribed by Section

when determining that, based on the evidence, the jury could have reasonably concluded that Lingo was guilty of intimidating a witness.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson, supra.*

> But this inquiry does not require a court to "ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 318-19 (citations and footnote omitted).

The Alabama Court of Criminal Appeals did not decide Lingo's sufficiency claim "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 529 U.S. at 412. Consequently, the state appellate court's determination was not contrary to actual Supreme Court decisions. Moreover, a thorough review of the evidentiary materials submitted in this case establishes that the rejection of Lingo's sufficiency claim by the state courts was objectively reasonable. The decision issued by the Alabama Court of Criminal Appeals likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties. Lingo is therefore due no relief from

---

13A-6-25 on criminal coercion.

this court on his sufficiency claims.

### 2.     The Ineffective-Assistance-of-Counsel Claims

On direct appeal, the Alabama Court of Criminal Appeals discussed several of Lingo's claims of ineffective assistance of trial counsel which were previously raised in a motion for a new trial, including his contentions that trial counsel failed to call defense witnesses, failed to question his wife concerning their common-law marriage, and failed to question a Houston County Police officer regarding the arrest warrant.  (Gov's Ex. A, C. 195-201; Gov's Ex. D, p. 10.)  Specifically, the court found as follows:

> . . .  In his unverified motion for new trial, he listed several instances in which he contended that his counsel rendered ineffective assistance.  We have reviewed the record and the appellant's ineffective-assistance claims.  Although he has made several allegations, he has not satisfied his burden, under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), of proving that counsel's performance was deficient and that such allegedly deficient performance prejudiced him.  In fact, we note that many of the appellant's claims appear to relate to other judicial proceedings in which he is involved rather than to this proceeding.  Furthermore, the record on appeal does not show that his trial counsel's performance was so deficient that it fell below an objective standard of reasonableness.  *See Ex parte Jefferson*, 749 So. 2d 406 (Ala. 1999).  Accordingly, the appellant is not entitled to relief on his ineffective-assistance-of-counsel claims.

(Gov's Ex. D, p. 10.)

The Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984), in determining that Lingo's claims of ineffective assistance of counsel were

11

without merit.  *Strickland* sets forth the clearly established federal law on this issue.  Thus, this court will determine whether the Alabama Court of Criminal Appeal's rejection of Lingo's claims of ineffective assistance of trial counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687-89.  The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

To succeed on a claim of ineffective assistance, a petitioner must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

12

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of an ineffective-assistance-of-counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *U.S. v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly

13

harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a petitioner satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

### a.     The Failure to Call Defense Witnesses Claim.

Lingo asserts that trial counsel failed to subpoena any defense witnesses. Specifically, he alleges that Bobby Roberts ("Roberts") and Billy Wallace ("Wallace") would have provided testimony indicating that the testimony of one of the State's witnesses was not true. Lingo, however, has failed to provide any evidence from Roberts or Wallace in support of his allegations. More importantly, even assuming that trial counsel's failure to call Roberts or Wallace for impeachment purposes was somehow deficient, Lingo has not shown that such failure prejudiced him in any way such that the jury would not have convicted him. *See Strickland*, *supra*; *Aikens v. McDonough*, No. 8:05cv413-T-17TGW, 2007 WL 470420, * 8 (M.D. Fla. Feb. 13, 2007) (petitioner failed to demonstrate that trial counsel's failure to attack witness' identification through impeachment resulted in prejudice under *Strickland*).

14

The Alabama Court of Criminal Appeals' rejection of this ineffective-assistance-of-counsel claim was not an unreasonable application of the *Strickland* standard.  *See Williams v. Taylor*, *supra.*

####     b.    **The Spousal Privilege Claim.**

Lingo contends that trial counsel was ineffective for failing to question his common-law wife or otherwise introduce evidence indicating that her testimony was protected pursuant to the spousal or marital privilege.  First, the court questions whether the evidence indicates that Blackstone was in fact Lingo's common-law wife at the time of the criminal proceedings.[5]  She certainly was the victim of the intimidation.  The state court's summary of the facts indicate that Blackstone testified that she and Lingo were married in January 1989 and divorced in January 1997.  (Gov's Ex. D, p. 1.)   Nonetheless, even assuming a recognizable common law marriage between Lingo and Blackstone, Alabama law provides that a "husband and wife may testify for or against each other in criminal cases, but shall not be compelled to do so."  ALA. CODE 1975 § 12-21-227.   In addition, a defendant has no federal constitutional right to bar his wife from testifying against him and no standing to object when his wife refuses to invoke the spousal privilege.  *See Corbitt v. State*, 596 So. 2d 426, 427 (Ala. Crim. App. 1991).  *See also Trammel v. United States*, 445 U.S. 40, 53 (1980) (holding that "the witness-spouse alone has a privilege to refuse to testify adversely;

---

[5]Lingo did not at trial and does not here present any evidence to prove the existence of a common law marriage.  That was his burden at trial, *Crawford v. State*, 629 So.2d 745 (Ala. Crim. App. 1993) and is his burden here.  *See Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) (Burden is on petitioner to prove claimed violation).

the witness may be neither compelled to testify nor foreclosed from testifying"). Because Blackstone did not invoke the spousal privilege and voluntarily testified against Lingo at trial, trial counsel's failure to object to Blackstone's testimony or question her concerning her marital status does not establish that counsel's performance fell below and objective standard of reasonableness and prejudiced Lingo's case. *See Strickland*, *supra*; *Corbitt*, 596 So. 2d at 428. Therefore, the Alabama Court of Criminal Appeal's determination that Lingo failed to meet the requirements of *Strickland v. Washington*, *supra*, with respect to his claim that trial counsel was ineffective for failing to cross-examine Lingo's spouse concerning her marital status was objectively reasonable. *See Williams*, *supra*.

   c.    **The Warrant**

   Lingo asserts that trial counsel was ineffective for failing to cross-examine a Houston County Police investigator regarding his failure to domesticate the warrant in Henry County or otherwise challenge the arrest warrant on this basis. In Alabama, a law enforcement officer may not obtain an arrest warrant in one county and execute it in another county without also obtaining, before executing the warrant, its endorsement by a judge or magistrate of the county where the arrest is to take place.[6] ALA. CODE, § 15-10-10 (1975);

---

   [6] In their brief, the respondents rely on *Smith v. State*, 727 So. 2d 147, 158 (Ala. Crim. App. 1998), for the proposition that, under the law in effect at the time of Lingo's arrest, a law enforcement officer had the authority to arrest a person with or without a warrant anywhere within the state. (Doc. No. 21, p. 12.) Inexplicably, the respondents fail to point the court to *Ex parte Borden*, 769 So. 2d 950 (Ala. 2000), in which the Alabama Supreme Court discredited *Smith* and held as follows:

      We hold that a law enforcement officer may not obtain an arrest warrant in one county and execute it in another county without also obtaining, before executing the warrant, its endorsement by a judge or magistrate of the county where the arrest is to take place. This

*Ex parte Borden*, 769 So. 2d 950 (Ala. 2000). Exigent circumstances, however, may justify an arrest without a domesticated warrant. *See Borden*, 769 So. 2d at 959-60. It is unnecessary for this court to determine whether exigent circumstances existed at the time of Lingo's arrest because a jury found beyond a reasonable doubt that Lingo was guilty of intimidating a witness. Consequently, Lingo has failed to demonstrate that he suffered prejudice as the result of trial counsel's failure to challenge the arrest warrant. *See, e.g.*, *Luckett v. Berghuis*, No. 04cv73037-DT , 2006 WL 1779383, *9 (E.D. Mich. June 26, 2006) (concluding trial counsel was not ineffective for failing to attack arrest warrant because "[e]ven if the arrest warrant was facially invalid, a showing of probable cause that Petitioner committed the charged offense was sufficient to justify the arrest"); *Igbinoba v. Dretke*, No. 3:02cv2038-L, 2005 WL 562549, *8 (N.D. Tex. March 9, 2005) (determining that petitioner could not demonstrate prejudice with respect to his claim that trial counsel failed to request production of the arrest warrant because the evidence clearly demonstrated petitioner's guilt); *Lacey v. Burt*, No. 02-71220, 2003 WL 22284559, *7 (E.D. Mich. 2003) (determining that trial counsel was not ineffective for failing to challenge arrest warrant where petitioner was found guilty beyond a reasonable doubt).

The deficient arrest about which Lingo complains took place in May 2003. (Doc. # 25 at 20) Lingo was indicted in September 2003; that indictment established probable cause

---

procedure is required by § 15-10-10, Ala. Code 1975. We have had prior cases holding to the contrary, but these cases were based on a mistakenly expansive reading of Rule 3.3(a), Ala. R. Crim. P. *See . . . Smith v. State*, 727 So. 2d 147 (Ala. Crim. App. 1998). . . .

769 So. 2d at 959.

to believe that he had committed the crime of intimidating a witness.  Even if his arrest in May was improper under Alabama law, it could have no adverse affect on the criminal proceedings against him.  Thus, the Alabama Court of Criminal Appeal's rejection of Lingo's contention that trial counsel failed to question the investigator or otherwise challenge the arrest warrant on the basis of the investigator's failure to domesticate the warrant was not an unreasonable application of the *Strickland* standard.  *See Williams*, *supra*.

### C.  The Procedurally Defaulted Claims

Lingo's remaining claims, including his contention that trial counsel was ineffective because she asked the State's witnesses prejudicial questions and failed to provide a more specific objection concerning the trial court's failure to instruct on the lesser-included offenses, his challenges to the testimony provided by his alleged common-law wife and a correctional investigator, and his claims of self-incrimination, excessive sentence, prosecutorial misconduct, and an illegal arrest, are procedurally defaulted as these claims were never presented to the state courts.  *See Teague v. Lane*, 489 U.S. 288 (1989); *Henderson v. Haley*, 353 F.3d 880 (11th Cir. 2003); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

This court may reach the merits of Lingo's procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed.

2d 397 (1986); [*Wainwright v.*] *Sykes*, 433 U.S. [72,] 87 [(1977)]....  Second, a federal court

may also grant a habeas petition on a procedurally defaulted claim, without a showing of

cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-

96, 106 S. Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary

case, where a constitutional violation has resulted in the conviction of someone who is

actually innocent.  *Id.*"  *Henderson*, 353 F.3d at 892.

### 1.  Cause and Prejudice

"To establish 'cause' for procedural default, a petitioner must
demonstrate that some objective factor external to the defense impeded the
effort to raise the claim properly in the state court."  *Wright v. Hopper,* 169
F.3d 695, 703 (11th Cir.1999).  To establish "prejudice," a petitioner must
show that there is at least a reasonable probability that the result of the
proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288,
1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

First, Lingo asserts that his procedural defaults should be excused because he was

incarcerated in a federal mental hospital between May 2005 and February 2006.  Specifically,

he contends that he was unable to pursue a state post-conviction petition during this time due

to his mental and emotional state.  (Doc. No. 25, p. 5.)  Lingo also contends that he was

unable to file a state post-conviction petition because his attorney did not provide him notice

of the status of his appeal until November 5, 2005.  (*Id.*, pp. 5-6.)  The record indicates that

the Alabama Supreme Court denied Lingo's petition for a writ of certiorari on August 12,

2005.  Thus, Lingo's conviction for intimidating a witness became final, at the latest, on

November 14, 2005, and the one year limitation period set forth in ALA.R.CRIM.P. 32.2(c) began to run no later than November 15, 2005. *See* Rule 13.1, *Rules of the United States Supreme Court* (a petition for writ of certiorari to the United States Supreme Court may only be filed to review a judgment or order entered by a state court of last resort and must be filed within ninety (90) days of the action undertaken by the aforementioned state court). Thus, the time for filing a state post-conviction petition pursuant to ALA.R.CRIM.P 32 expired on November 15, 2006. Therefore, Lingo had sufficient time after his release from the hospital and after receiving notice of the status of his appeal to file a state post-conviction petition. Moreover, the records indicate that Lingo was able to file both his initial and amended federal habeas petitions within the applicable limitations period. Therefore, during the periods relevant to the procedural defaults at issue, Lingo had the ability to prosecute his post-conviction petitions in both state and federal court. *Cf. Smith v. Holt*, No. 3:05cv470-MHT, 2008 WL 1929905, *21 (M.D. Ala. April 29, 2008) (determining that petitioner had the ability to pursue state court actions during the relevant time period and that his diagnosis of paranoid schizophrenia failed to establish cause for his procedural defaults). Consequently, Lingo's assertion that he was unable to file a state post-conviction petition within the relevant time period because he did not receive notice of the status of his appeal until November 2005 and was hospitalized until February 2006 does not demonstrate cause for his procedural defaults.

In addition, Lingo claims that his failure to present his claims to the trial court in a

state post-conviction petition should be excused because he was not represented by an attorney and did not have access to any legal assistance during his hospitalization in a federal mental facility.   A petitioner has no right to counsel in state post-conviction petition proceedings. *See Lawrence v. Florida*, No. 05-8820, 2007 WL 505972, *6 (Feb. 20, 2007); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).   Thus, Lingo's argument that he should not be barred from presenting his claims because he was unrepresented during the time he could have filed a state post-conviction proceedings fails to demonstrate sufficient cause for his procedural defaults.

Lingo also contends that his procedural defaults should be excused because he is illiterate and has an eighth-grade education and a speech impediment.   Illiteracy and lack of education do not establish cause for a petitioner's procedural default. *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992); *Smith v. Newsome*, 876 F.2d 1461, 1466 (11th Cir. 1989).   In addition, Lingo's difficulty speaking does not excuse his procedural defaults. *Cf. Burtchett v. Idaho*, 116 Fed. Appx. 835, 835 (9th Cir. 2004) (petitioner's poor communication skills did not establish cause for his procedural default); *Bastista v. U.S. Dep't of Justice*, 129 Fed. Appx. 724, 725 (3d Cir. 2005) (petitioner's inability to speak English did not constitute cause for his procedural default).

Lingo's argument that the state court failed to advise him about the proper route in which to pursue a state post-conviction petition likewise fails to demonstrate cause for his procedural defaults.   Ignorance of the law fails to establish cause for a procedural default.

*Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986).  Consequently, Lingo's contention that he was unaware of the proper procedures in which to file a post-conviction petition fails to demonstrate sufficient cause for his procedural defaults.

The court concludes that Lingo has failed to demonstrate the existence of cause for the failure to present his federal habeas claims to the state courts in compliance with applicable procedural rules and has likewise presented nothing which establishes the existence of actual prejudice arising from infringement of federal law.  Nevertheless, this court may reach the merits of Lingo's procedurally defaulted claims only if necessary to prevent a fundamental miscarriage of justice.

### 2.  Fundamental Miscarriage of Justice

The miscarriage of justice standard is directly linked to actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id.*, 513 U.S. at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*.  "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.'  *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S. Ct. 851, 867-868, 130 L. Ed. 2d 808 (1995)."  *Bousley v. U.S.*, 523 U.S. 614, 623 (1998).  "[T]he *Schlup* standard is demanding and permits review

only in the "'extraordinary'" case." *House v. Bell*, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." Id., 547 U.S. at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518-2519, 120 L. Ed. 2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324.

Lingo has presented no reliable evidence nor suggested that any exists which could satisfy the arduous standard set forth in *Schlup*. Consequently, Lingo's procedurally defaulted claims are foreclosed from federal habeas review.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Ralph Wilson Lingo be denied and that this case be

dismissed with prejudice.  It is further

ORDERED that **on or before September 2, 2008** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of August, 2008.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

24